## EXHIBIT B

## CLAIMS AGENT AGREEMENT



# AGREEMENT FOR SERVICES

This Agreement for services dated ___July 6___, 2021, (the "Services Agreement" or "Agreement") is entered between __Limetree Bay Services LLC__ and related entities (collectively "Customer") and BMC Group, Inc. ("BMC").

## I. SERVICES

A. BMC agrees to provide Customer with services assisting the Customer, Customer's counsel "Counsel" and Office of the Clerk with legal noticing and compilation, administration, evaluation and production of documents and information necessary to support a restructuring effort. At Customer's, Counsel's or the Clerk's Office's direction, as the case may be, and in accordance with any court orders or rules in the bankruptcy case(s) (including any court order authorizing BMC's engagement), BMC will (1) prepare and serve those notices required in the bankruptcy cases; (2) receive, record and maintain copies of all proofs of claim and proofs of interest filed in the bankruptcy cases; (3) create and maintain the official claims register(s); (4) receive and record all transfers of claims pursuant to Bankruptcy Rule 3001(e); (5) maintain an up-to-date mailing list for all entities who have filed proofs of claim and/or requests for notices in the bankruptcy cases; (6) assist Customer and Counsel with the administrative management of claims and notice data; (7) if requested, print, mail and tabulate ballots for purposes of plan voting; (8) create and maintain a case-specific information website, (9) assist with the production of reports, exhibits and schedules of information or use by the Customer, Counsel or to be delivered the Court, the Clerk's Office, the U.S. Trustee or third parties; and (10) provide other technical and document management services of a similar nature requested by Customer or the Clerk's office.

B. BMC also agrees, upon request, to provide the Customer with consulting services regarding bankruptcy noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statement of financial affairs, communications, confidential online workspaces and data rooms (publication to which should not violate the confidentiality provisions of this agreement) and any other service agreed upon by the parties or otherwise required by

   applicable law, governmental regulations or court rules or orders (Collectively the "Services").
C. The Customer acknowledges and agrees that BMC will often take direction from the company's representatives, employees, agents and/or professionals with respect to providing Services hereunder.  The parties agree that BMC may rely upon, and the Customer agrees to be bound by, any request, advice or information provided by the Customer and its agents to the same extent as if such requests, advice or information were provided by the Customer.
D. Customer agrees that none of the Services provided by BMC contain legal advice or opinion, and neither BMC nor its personnel shall be deemed to practice law thereunder.

## II. TECHNOLOGY SUPPORT

BMC agrees to provide computer software support and to educate and train Customer in the use of the support software, provide BMC's standard reports as well as consulting and programming support for Customer requested reports, program modifications, database modification, and/or other features.

## III. TERMS AND CONDITIONS

A. This Services Agreement is effective as of the date of its acceptance by both the Customer and BMC.  BMC acknowledges, however, that two orders approving BMC's engagement may be required in order to provide services in support of Customer's formal bankruptcy matters.
B. If the Customer commences case(s) under chapter 11 of the Bankruptcy Code, the Customer shall promptly file applications with the Bankruptcy Court to retain BMC (i) as a claims and noticing agent pursuant to 28 U.S.C Section 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. Section 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to BMC.
C. If any Customer Chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, BMC will continue to be paid for Services pursuant to Section 156(c) and the terms of the Services Agreement.

## IV. PRICES, CHARGES AND PAYMENT

A. BMC will provide Services upon request or agreement of the Customer, in accordance with the Pricing Schedule attached.

B. Customer agrees to reimburse BMC for any reasonable out-of-pocket expenses necessarily incurred in support of the services provided under this Agreement.

C. Wire transfer information for the transmission of payments is as follows:

> Bank Name - Bridge Bank, N.A.
> ABA/Routing # - 121143260
> Account Name - BMC Group, Inc.
> Account # - 0102705027

D. In connection with high volume noticing, or publication services, Customer may be required to prepay BMC estimated postage or publication amounts with respect to each notice. Alternatively, Customer may authorize BMC to cause courier's charges (such as UPS or FedEx) to be stated to Customer's own account with such courier.

E. BMC agrees to regularly invoice Customer and Customer agrees that the amount invoiced is due and payable within ten (10) days. In the case of a dispute in the invoice amount, notice shall be given to BMC within ten (10) days of receipt of the invoice by Customer. Late charges shall not accrue on any amounts in dispute. The undisputed balance of the invoice amount is due and payable in the normal course.

F. Customer shall pay or reimburse all taxes applicable to services performed under this Agreement and, specially, taxes based on disbursements made on behalf of Customer, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of BMC.

G. To the extent permitted by applicable law, BMC shall receive a retainer in the amount of $25,000.00 (the "Retainer").  The Retainer is due upon signing of the Agreement. BMC may use the Retainer against all pre-petition fees and expenses; the Retainer will then be replenished to the original amount by the Customer. BMC shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, BMC shall return to Customer any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

H. In the event of termination pursuant to Section XII hereof, Customer shall be liable for all reasonable amounts then accrued and any to the extent that the work performed is reasonably usable in the bankruptcy proceeding and if necessary, as replacement can be acquired.



## V. RIGHTS OF OWNERSHIP

A. The parties understand that the software programs and other similar proprietary materials furnished by BMC pursuant to this Agreement and/or developed during the course of this Agreement by BMC are the sole property of BMC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, subroutines, procedural manuals, and documentation. Customer agrees not to copy or permit others to copy for unauthorized use the source code from the support software or any other programs or similar proprietary materials furnished pursuant to this Agreement.
B. Customer further agrees that any ideas, concepts, know-how or techniques relating to data processing or BMC's performance of its services developed during the course of its Agreement by BMC shall be exclusive property of BMC Fees and Expenses paid by the Customer do not vest in the Customer any rights in such property.
C. The Customer agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished/provided under the Services Agreement.

## VI. CUSTOMER DATA

A. The Customer is responsible for, and BMC does not verify, the accuracy of the programs, data and other information the Customer submits for processing to BMC, including without limitation, with respect to preparation of statement of financial affairs and schedules of assetsand liabilities.
B. The Customer agrees and represents and warrants to BMC that before delivery of any information to BMC: (i) the Customer has full authority to deliver such information to BMC, (ii) BMC is authorized to use such information to perform Services hereunder,
C. Any data, storage media, programs or materials furnished to BMC by the Customer may be retained by BMC until the Services hereunder are paid in full. The Customer shall remain liable for all fees and expenses incurred by BMC under this Agreement as a result data storage or other materials maintained, stored or disposed by BMC.
D. The Customer agrees to initiate and maintain back up files that would allow the Customer to regenerate or duplicate all programs, data or information provided by Customer to BMC.
E. Upon Customer's request at any time or times while this Agreement is in effect, BMC shall immediately deliver to Customer at Customer's sole expense, any or all of the nonproprietary data, information and records held or controlled by



      BMC pursuant to this Agreement, in the form requested by Customer. Any information, data and records, in whatever form existing, whether provided to BMC by Customer or developed by BMC for Customer under this Agreement, may be retained by BMC until all amounts due under this Agreement are paid in full, it being understood that neither party asserts rights of ownership in the official claims register or materials filed with BMC as an agent of the court.

F.  Customer shall remain liable for all charges imposed under this Agreement as a result of data or physical media maintained by BMC. BMC shall dispose of the data and media in the manner requested by Customer. Customer agrees to pay BMC for reasonable expenses incurred as a result of the disposition of the data or media. After giving Customer thirty (30) days' advance notice, BMC reserves the right to dispose of data or media maintained by BMC for Customer if Customer has not utilized the services provided herein for a period of at least ninety (90) days or if Customer has not paid all charges due to BMC.

## VII.  FORCE MAJEURE

Whenever performance by BMC of any of its obligations hereunder is completely prevented or impacted by reason of any act of god, government requirement, law, regulation or ordinance, act of terrorism, war or war condition, of by reason of any other matter beyond BMC's reasonable control, then such performance shall be excused, and the Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter, unless terminated at Customer's discretion.

## VIII. ATTORNEYS FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance of or interpret the provisions of the Services Agreement, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs and other related exercises.

## IX. SYSTEM IMPROVEMENTS

As part of its ongoing efforts to improve our service offering, BMC is constantly improving its proprietary database and related reports.  BMC therefor reserves the right to make changes in operating procedures/systems, programming languages, application programs and time-period accessibility so long as such changes do not materially interfere with ongoing services provided to the Customer in accordance with the Services Agreement and/or Customer's chapter 11 filing.

## X. NON-SOLICITATION

Customer agrees that it shall not, directly or indirectly, solicit for employment, employ or otherwise retain staff of BMC during the term of this Agreement, nor for a period of twelve (12) months after termination of this Agreement unless BMC provides prior written consent.

## XI. CONFIDENTIALITY

BMC agrees to, and shall cause its servants, agents, employees, licensees, and subcontractors,  to safeguard and keep confidential all data, records, information and communications of any sort or form, regardless of whether written, oral, visual or otherwise recorded or transmitted, with respect to Customer, but excluding such data, records, information and communications that exist in the public domain by reason other than a breach of BMC's obligations under this Section. BMC will use the Confidential Information only for the benefit of Customer in connection with the provision of services under this Agreement. Customer agrees to, and will cause its servants, agents, employees, licensees, and subcontractors to keep all information with respect to BMC's system, procedures and software confidential; provided, however, that if either party is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five business days' written notice to the other party, release the required information. The obligations set forth in this paragraph shall survive termination of this Services Agreement.

## XII. TERMINATION

   A. This Agreement shall remain in force until terminated by Customer, or, by BMC upon thirty (30) days' prior written notice to the other party.  The failure of the Customer to pay BMC invoices for more than 60 days from the date of the invoice or accrual of invoices or unpaid services in Excess of the Retainer held by BMC where BMC reasonably believes it will not be paid.
   B. If this agreement is terminated after BMC is retained pursuant to Bankruptcy Court Order, the Customer promptly shall seek entry of a Bankruptcy Court order discharging BMC of its duties under such retention, which order shall be in form and substance reasonably acceptable to BMC.
   C. In the event that this contract is terminated, regardless of the reason for such termination, BMC shall cooperate with Customer to orderly transfer to Customer or its designee (or destroy, at Customer's direction) data, records and information in its possession or control and to effect an orderly transition of



record-keeping functions. BMC shall provide all necessary staff, services and assistance required for an orderly transfer and transition. Customer agrees to pay for such services in accordance with BMC's then existing prices for such services.

### XIII. NO REPRESENTATIONS OR WARRANTIES

BMC makes no representation or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

### XIV. INDEMNIFICATION

Except with respect to breaches under Section XI "Confidentiality" above, each party shall indemnify and hold the other, its officers, employees and agents harmless against any and all losses, claims, damages, judgments, liabilities and expense whether direct or indirect (including reasonable counsel fees and expenses) resulting from action taken or permitted by the other in good faith with due care and without negligence in reliance upon the other as to anything arising in connection with its performance under this Agreement. Each party's indemnification obligation shall survive the termination of this agreement.

### XV. LIMITATION OF LIABILITY

Except as expressly provided herein, BMC's liability to the Customer for any losses, unless due to BMC's negligence or willful misconduct, shall be limited to the amount paid by the Customer for the portion of the particular work that gave rise to the alleged loss.  In no event shall BMC's liability to the Customer for any losses arising out of this services Agreement exceed the total amount actually paid to BMC for Services provided hereunder.  In no event shall BMC be liable for any direct, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

### XVI. NOTICES

All notices in connection with this Agreement shall be sufficiently given or made if given or made in writing and sent by e-mail:

**If to BMC Group, Inc.:**

BMC Group, Inc.
Attn: Tinamarie Feil
3732 W 120th Street
Hawthorne, CA 90250
e-mail: tfeil@bmcgroup.com
Telephone: 206.499.2169

**If to the Customer:**

ATTN: Stephan Tompsett
Limetree Bay Refining, LLC
1 Estate Hope
Christiansted, St. Croix
U.S. Virgin Islands 00820-5652

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

## XVII. APPLICABLE LAW

This agreement shall be construed in accordance with the laws of the State of California, without regards to that state's provisions for choice of law and may be modified only by a written instrument duly executed by an authorized representative of Customer and an officer of BMC.

## XVIII. ENTIRE AGREEMENT/ MODIFICATIONS/SEVERABILITY

Each party acknowledges that it has read this Services Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Services Agreement. The Services Agreement may not be modified or altered by written instrument duly executed by both parties. Customer represents that it has the authority to enter into this Agreement, may be subject to bankruptcy court approval, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to

be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. In the event of any conflict between a term of this Agreement and any order of the court exercising jurisdiction over the Customer bankruptcy case, the term(s) of the order shall govern.

## XIX. ASSIGNMENT

The Services Agreement and the rights and obligations of BMC and the Customer hereunder shall bind and inure to the benefit of any successors or assigns hereto.

## XX. EFFECTIVENESS OF COUNTERPARTS

This Services Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This services Agreement will become effective when one or more of the counterparts have been signed by each of the parties and delivered to the other party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

| **BMC Group, Inc. Representative:** | **Customer Representative:** |
|---|---|
| *Tinamarie Feil* (Digitally signed by Tinamarie Feil, DN: cn=Tinamarie Feil, o=BMC Group, Inc., ou, email=tfeil@bmcgroup.com, c=US, Date: 2021.07.06 10:05:53 -07'00') | *[signature]* |
| Signature | Signature |
| Tinamarie Feil, President | Mark Shapiro, Chief Restructuring Officer |
| Printed Name & Title | Printed Name & Title |

# RATES

## BASIC PRINT, MAIL & NOTICING SERVICE

| | |
|---|---|
| Copy/Print | $0.10 / image (further volume discounts apply) |
| Fold/Collate, Insert, Post | $.05 per document |
| Envelopes | Varies by size |
| Postage, Courier | At Cost (including optimization) |
| Mass data transmission | Varies by media (CD-Rom, Flash, USB, FTP) |
| Certified Electronic Noticing Service | $50/1000 |
| Legal Notice Publication | Quote |

## CLAIMS MANAGEMENT

| | |
|---|---|
| eClaims & eBallot platform hosting | Included |
| Filed Claim Receipt, Process, Docketing | At Clerical hourly rate |
| Add'l Scans & Link to DB | $0.08/image |
| Schedules Data Collection & Prep | Upon request at standard hourly rates |
| Analysis & Reconciliation | Upon request at standard hourly rates |
| Secure Client Access | Included |
| Balloting solicitation & tabulation | Upon request at hourly blended rates |

## DOCUMENT & INFORMATION MANAGEMENT

| | |
|---|---|
| Document Imaging & link to DB | $0.08/image |
| Live Operator Call Center | $65 per hour |
| Automated (IVR) Call Center | $0.30 per minute |
| Data storage & maintenance | $0.08/record/month |
| Public case website hosting | Included |
| SmartRoom (VDR) | Complimentary for case management |
| Physical Document Storage | Included |

## HOURLY RATES

| | |
|---|---|
| Clerical & Document Custody | $35-$45 per hour |
| Analysts/Case Support Associates | $45-$85 per hour |
| Technology/Programming | $85-$125 per hour |
| Consultants/Senior Consultants | $95-$125 per hour |
| Project Manager/Director | $150 per hour |
| Executive | CEO management oversight included |