IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.* [1] | CASE NO.: 21-32351 |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION FOR AUTHORITY TO (I) PAY PREPETITION WAGES, BENEFITS, AND EMPLOYEE BUSINESS EXPENSES; AND (II) CONTINUE THE POSTPETITION MAINTENANCE OF EMPLOYEE BENEFIT PROGRAMS, POLICIES, AND PROCEDURES IN THE ORDINARY COURSE**

> **Emergency relief has been requested. A hearing will be conducted on this matter on July 13, 2021, at 3:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk St., Houston, Texas 77002. You may participate in the hearing either in person or by audio/video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691.**
>
> **You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

> **hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **Relief is requested not later than July 13, 2021.**

Limetree Bay Services, LLC ("**Limetree**") and its debtor affiliates (collectively, the "**Debtors**"), as debtors and debtors in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), respectfully represent as follows in support of this motion (the "**Motion**").

### Relief Requested

1. Pursuant to Sections 105(a), 363, and 507(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), the Debtors request entry of an order authorizing, but not directing, the Debtors (i) to pay, among other things, prepetition wages, salaries, employee benefits, and reimbursable expenses and (ii) to continue the post-petition maintenance of any employee benefit programs, policies, and procedures in the ordinary course of business in accordance with the Debtors' prepetition practices.

2. A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

### Jurisdiction and Venue

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

### Background

4. On July 12, 2021 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code—thereby commencing the above-captioned Chapter 11 Cases. The Debtors continue to operate their businesses as

debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

5. By separate application submitted to the Court, the Debtors have sought entry of an order authorizing the joint administration of the Debtors' respective bankruptcy cases with the Limetree Bay Services, LLC case, as the lead case, and permission to use a consolidated case caption.

6. A discussion of the facts and circumstances surrounding these Chapter 11 Cases and underlying the relief requested herein is set forth in the *Declaration of Mark Shapiro in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"), which is being filed simultaneously with this Motion and incorporated herein by reference in its entirety.

## Debtors' Prepetition Employee Obligations[2]

7. As of the Petition Date, Limetree Bay Refining Operating, LLC ("**LBRO**") employs 271 individuals (the "**Employees**").[3] The Employees perform a wide variety of services

---

[2] As used herein, the "Prepetition Employee Obligations" refers to any and all wages, benefits, and other payments owed by the Debtors to the Employees prior to the Petition Date, including, without limitation, any benefits or expenses of the sort identified in paragraphs 8 to 16 of this Motion.

[3] The Debtors are in the process of considering available exit strategies for the Chapter 11 Cases. Accordingly, out of an abundance of caution, LBRO gave notice to its Employees of a potential reduction in force ("**RIF**") in accordance with the The Worker Adjustment and Retraining Notification (WARN) Act and, in case applicable, the Virgin Islands Plant Closing Act (the "**VIPCA**"), which requires no less than 90 days' notice prior to a RIF. Notwithstanding, LBRO continues to require the services of its Employees to maintain the Refinery and preserve assets of the estates and, moreover, may retain many of its current Employees in some capacity. Accordingly, and especially in light of the RIF notification, LBRO requires authority to pay Prepetition Employee Obligations to ensure, to the extent possible, the continued availability of its workforce.

Prior to the Petition Date, certain employees of Limetree Bay Services, LLC ("**LBS**") were terminated by LBS and retained by Limetree Bay Terminals, LLC ("**LBT**"), a non-debtor affiliate of the Debtors. The employees consist primarily of executives and management, which provided, and will continue to provide, services to the Debtors and LBT pursuant to that certain Shared Services Systems Agreement dates as of November 30, 2018 (the "**Shared Services Agreement**") by and between LBT and Limetree Bay Refining, LLC. Moreover, certain employees of Limetree Bay Refining Operating, LLC ("**LBRO**") render services to LBT, or its non-debtor affiliates, and certain employees of LBT, or its non-debtor affiliates, render services to the Debtors under the Shared Services Agreement. Pursuant to this Motion, the Debtors seek to pay the portion of Wages (defined below) due to Employees allocated

for the Debtors, including managing the Debtors' day-to-day operations, information technology, accounting, human resources, refining operations, engineering, and other business-related functions. Certain of LBRO's Employees provide services for LBT under the Shared Services Agreement (the "**Shared Employees**"), including, without limitation, tasks related to health, safety, and regulatory compliance. The Employees' skills and knowledge of the Debtors' infrastructure and operations are essential to the Debtors' businesses and orderly administration of the Debtors' estates. Without the Employees' continued and uninterrupted services, it would be difficult to maintain and preserve the Debtors' assets—especially in light of the limited availability of workers given the remote location of the Debtors' operations.

8. The most significant components of the Prepetition Employee Obligations are described in further detail below. No Employee is owed or will be paid prepetition wages or benefits in an amount exceeding the limit for priority wage claims imposed by Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

9. The Debtors employ 271 Employees on either a salaried or hourly basis. The Debtors pay the Employees bi-weekly (i.e. 26 pay periods per year). The Debtors' next payroll payment is due on July 16, 2021 (the "**July 16 Payroll**") in the estimated amount of approximately $**1,150,110.50** and is for the two-week period from June 28, 2021 to July 11, 2021. The July 16 Payroll accrued prepetition. The Debtors use ADP as a payroll service. Funds for the July 16 Payroll will be debited from the Debtors accounts and/or transferred to ADP two (2) days prior to the payment date.

---

to the Debtors under the Shared Services Agreement and all other Prepetition Employee Obligations. The Debtors, however, shall not make any payments to employees of LBT, or its non-debtor affiliates, for services rendered to the Debtors under the Shared Services Agreement, except as expressly authorized by subsequent order of this Court. Notwithstanding, the Debtors intend to pay amounts due under the Shared Services Agreement to LBT for services rendered to or for the benefit of the Debtors by employees of LBT on or after the Petition Date in accordance with the Shared Services Agreement.

10. The July 16 Payroll amounts stated herein account for all Prepetition Employee Obligations, without accounting for any portion allocated to LBT. Under the Motion, Debtors request authority to pay all Prepetition Employee Obligations, except for the portion of the Wages (defined below) allocated to LBT under the Shared Services Agreement, which amounts the Debtors are presently calculating following the close of the July 16 Payroll on July 11, 2021. Ordinarily, Shared Employees allocate approximately 20% of their time (on average) to LBT. The Debtors anticipate the July 16 Payroll to be allocated in a similar manner, which would result in an allocation to LBT of roughly 5.1% of Wages or $42,706.79 (the "**LBT Allocation**").[4] In addition to their portion of Wages, the Debtors seek authority to pay any other Prepetition Employee Obligations, including, without limitation, tax withholding, garnishments, health insurance, life insurance, and retirement contributions, to ensure the compliance with applicable law and continuity of these essential programs.

11. In the ordinary course of business, the Debtors incur and pay obligations relating to the Employees' salaries (the "**Wages**"). The Debtors estimate that approximately **$837,388.16** of the July 16 Payroll consist of Wages attributable to the prepetition period. For the reasons stated herein, the Debtors seek authority to pay any and all amounts of the July 16 Payroll consisting of Wages earned or attributable to the period prior to the Petition Date, with the exception of those amounts allocated to LBT under the Shared Services Agreement.

12. The Debtors withhold from payroll certain amounts that the Debtors are required to transmit to third parties, including, without limitation, amounts due for Social Security, Medicare, federal, state, and local taxes, other taxes imposed by law, and payroll deduction payment programs, such as child support, garnishment, and other similar orders (the

---

[4] Approximately 69 Shared Employees rendered services to LBT during the July 16 Payroll period, or 25.5% of the LBRO's Employees, with an average of 20% of the Shared Employees' time being spent on tasks for LBT, which results in an allocation to LBT of approximately 5.1% of Wages.

"**Withholding Obligations**"). The Debtors believe that such withheld funds, to the extent that they were in the Debtors' possession as of the Petition Date, or remain in the Debtors' possession, are not property of the Debtors' bankruptcy estates under Section 541 of the Bankruptcy Code. As such, the Debtors do not believe authorization is necessary to remit the Withholding Obligations; however, out of an abundance of caution, the Debtors hereby seek authority to remit or pay any and all Withholding Obligations for the July 16 Payroll attributable to the prepetition period.

13. The Debtors are also required to make certain payments from their own funds in connection with certain of the Withholding Obligations ("**Employer Contributions**"), which include, for example, matching payments on account of Social Security and Medicare taxes (the "**Employer Payroll Taxes**"). Collectively, the Debtors estimate that, for the July 16 Payroll, the Debtors owe and/or intend to contribute or withhold Employer Contributions, Employer Payroll Taxes and/or Withholding Obligations in the approximate amount of **$310,996.96**. The Debtors anticipate that a portion of that amount is attributable to the prepetition period. Accordingly, the Debtors seek authority to satisfy all such prepetition Employer Contributions, Employer Payroll Taxes and Withholding Obligations, or any portion of the foregoing.

14. Additionally, the Debtors maintain a qualified defined contribution plan that meets the requirements of section 401(k) of the Internal Revenue Code (the "**Retirement Plan**") for the benefit of the Employees. The Retirement Plan is funded partially through withholdings from participating Employees' wages and salaries. Additionally, the Debtors' match certain of the participating Employees' 401(k) contributions. For the July 16 Payroll, the Debtors anticipate withholding approximately **$100,239.55** from the Employees' compensation to contribute to the Retirement Plan and **$4,534.42** to contribute to the Employees' ROTH

6

accounts. Additionally, the Debtors anticipate contributing approximately **$64,955.15** of the Debtors' funds in matching payments to the Employees' Retirement Plan. The Debtors anticipate that a portion of the Retirement Plan obligations accrued prepetition and seek authority to honor all prepetition obligations, or any portion thereof, under the Retirement Plan in the ordinary course of business.

15. In addition to the July 16 Payroll, the Debtors offer several health and welfare benefit plans for their Employees including coverage for medical, prescription, dental, vision, life, and disability, and ancillary programs, such as health savings accounts (collectively, the "**Health and Welfare Plan Obligations**"). The Debtors are obligated under these plans to pay periodic premiums and other expenses, which total approximately **$371,656 per month**. Prior to the Petition Date, the Debtors prepaid all Health and Welfare Plan Obligations for the prepetition period and, as such, the Debtors do not anticipate having to pay any prepetition Health and Welfare Plan Obligations postpetition. Notwithstanding, out of an abundance of caution, the Debtors seek authority to pay any prepetition Health and Welfare Plan Obligations, or any portion thereof, that may become due postpetition in the ordinary course of business.

16. In addition, the Debtors customarily reimburse Employees who incur business expenses in performing their duties on behalf of the Debtors. These reimbursement obligations include a variety of business-related expenses, such as travel, meals, lodging, and supplies for business use (collectively, the "**Reimbursement Obligations**"). Because Employees incur Reimbursement Obligations on an ongoing basis, it is difficult to determine how much is owed by the Debtors at any given time. As of the filing of this Motion, the Debtors are unable to determine the outstanding Reimbursement Obligations for the prepetition period. However, the

Debtors seek authority to satisfy all prepetition Reimbursement Obligations, or any portion thereof, as and when they arise in the ordinary course of business.

17.     The Debtors generally allow employees to accrue paid time off ("**PTO**") based on the Employees' classification with the Debtors ("**PTO Policy**"). PTO is accrued bi-weekly and must be used by the end of the year unless approved to rollover to the next year. All accrued but unused PTO is paid out on the date of an Employee's termination. The Debtors seek authority to continue their prepetition PTO Policy and honor any outstanding obligations, or any portion thereof, with respect to their PTO Policy in the ordinary course of business up to, but not to exceed, the limit for priority wage claims imposed by Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

18.     The Debtors' most significant Prepetition Employee Obligations are outlined above; however, for the avoidance of doubt, the Prepetition Employee Obligations may include other employee programs, policies, or procedures historically maintained by the Debtors and the associated obligations, and by this Motion, the Debtors seek authorization, but not the obligation, to satisfy any unpaid Prepetition Employee Obligations, subject to the limitation imposed by Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

19.     The Debtors further request that the Court authorize the Debtors' banks to receive, process, honor, and pay all prepetition and postpetition checks issued or to be issued, and funds transfers requested, or to be requested, by the Debtors for the Prepetition Employee Obligations. The Debtors also seek authority to issue new postpetition checks, or effect new fund transfers, for Prepetition Employee Obligations to replace any prepetition checks or fund transfers that may be dishonored or rejected and to reimburse the Employees or the applicable

8

payee, as the case may be, for any fees or costs incurred by them in connection with a dishonored or voided check or funds transfer.

**Basis for Relief Requested**

20.     By this Motion, the Debtors seek authority to pay Prepetition Employee Obligations. Section 363(b) of the Bankruptcy Code expressly authorizes the court to approve the trustee's use of property outside the ordinary course of business, and courts regularly grant first day relief allowing debtors to pay prepetition employee wages and benefits in chapter 11 cases because an employee exodus, or even significant damage to morale, can scuttle a reorganization. *See In re American Plumbing & Mechanical*, *Inc.*, 323 B.R. 442, 459-60 (Bankr. W.D. Tex. 2005) (benefits of payments to employees outweigh harm to principal of *pro rata* distribution); *In re CEI Roofing, Inc.*, 315 B.R. 50, 57 (Bankr. N.D. Tex. 2004) ("'wage claims are payable out of necessity'" particularly because they are generally entitled to priority) (quoting *In re CoServ, LLC*, 273 B.R. 487, 493 n. 10 (Bankr. N.D. Tex. 2002)).

21.     If the Debtors are not permitted to pay the Prepetition Employee Obligations to their Employees in the ordinary course of business, Employees will not receive full payment for services already performed. Such a result would seriously undermine the morale and loyalty of the Employees and place the Debtors' Chapter 11 Cases in substantial jeopardy. To maintain the continuity of the Debtors' businesses and to preserve the morale of its continuing workforce, it is essential that the Debtors be permitted to pay the Prepetition Employee Obligations.

22.     The Debtors believe it is in the best interest of creditors for the requested Prepetition Employee Obligations to be maintained and satisfied.

9

### Request for Emergency Relief

23.     Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Specifically, the Debtors submit that their estates could be immediately and irreparably harmed if they are unable to satisfy their Prepetition Employee Obligations. The Debtors' failure to pay such amounts could undermine the morale and loyalty of the Employees and lead to a significant Employee exodus at a time when the Debtors need the remaining Employees to remain in place. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis.

24.     Pursuant to Local Rule 9013-1(i), this Motion is verified as to its accuracy by Debtors' proposed counsel.

### Waiver of Bankruptcy Rule 6004(a) and (h)

25.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h), to the extent applicable.

### Notice

24.     Notice of this Motion, whether by facsimile, electronic mail, or overnight courier, will be given to the following parties: (a) the United States Trustee for the Southern District of Texas; (b) all secured creditors; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest consolidated unsecured creditors for

the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g) other interested parties as identified by the Debtors; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The method of service for each party will be described more fully in the certificate of service prepared by the Debtors' claims and noticing agent. The Debtors respectfully submit that, under the circumstances, such notice is sufficient and that no other or further notice of this Motion is required.

**WHEREFORE**, Debtor respectfully requests that this Court enter an order authorizing the Debtor to pay the Prepetition Employee Obligations as set forth herein and granting such other and further relief as is just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 12th day of July, 2021.

        **BAKER & HOSTETLER LLP**

        */s/ Elizabeth A. Green*
        **Elizabeth A. Green, Esq.**
        Fed ID No.: 903144
        **Jimmy D. Parrish, Esq.**
        Fed. ID No. 2687598
        SunTrust Center, Suite 2300
        200 South Orange Avenue
        Orlando, FL 32801-3432
        Telephone: 407.649.4000
        Facsimile: 407.841.0168
        Email: egreen@bakerlaw.com
                jparrish@bakerlaw.com

        **BAKER & HOSTETLER LLP**
        **Jorian L. Rose, Esq.**
        N.Y. Reg. No. 2901783
        45 Rockefeller Plaza
        New York, New York
        Telephone: 212.589.4200
        Facsimile: 212.589.4201
        Email: jrose@bakerlaw.com
        *(Motion for admission pro hac vice to be filed)*

        *Proposed Counsel for the Debtors and Debtors in Possession*

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

        */s/ Elizabeth A. Green*
        Elizabeth A. Green

## Certificate of Service

I certify that on July 12, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

        */s/ Elizabeth A. Green*
        Elizabeth A. Green