## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,**[1] | **CASE NO.: 21-32351** |
| Debtors. | **Jointly Administered** |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF ORDER: (I) ESTABLISHING BIDDING AND SALE PROCEDURES; (II) APPROVING THE SALE OF ASSETS; AND (III) GRANTING RELATED RELIEF

**Emergency relief has been requested. A hearing will be conducted on this matter on August 2, 2021, at 3:30 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk St., Houston, Texas 77002. You may participate in the hearing either in person or by audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691.**

**You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222).  The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

> **hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **Relief is requested not later than August 2, 2021.**

Limetree Bay Services, LLC and its debtor affiliates (collectively, the "**Debtors**"), as debtors and debtors in possession in the above-captioned, jointly administered chapter 11 cases (collectively, the "**Chapter 11 Cases**"), represent as follows in support of this motion (the "**Motion**"):

### Relief Requested

1.       Pursuant to Sections 363(b), (f), and (m) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Section K of the Procedures for Complex Cases in Southern District of Texas (the "**Complex Rules**"), the Debtors hereby move for entry of:

      a.       an order (the "**Bidding Procedures Order**"), substantially in the form attached hereto as <u>Exhibit A</u>: (a) approving the proposed bidding and sale procedures attached as Appendix A to the Bidding Procedures Order (the "**Bidding Procedures**") for the proposed sale(s) (the "**Sale**") of all or substantially all assets (the "**Assets**")[2] of the Debtors' bankruptcy estates (collectively, the "**Estates**"); (b) scheduling an auction (the "**Auction**") and final sale hearing (the "**Sale Hearing**") for approval of the Sale; (c) establishing procedures for the assumption and assignment of executory contracts and unexpired leases of the Debtors (collectively, the "**Executory Contracts**") in connection with the Sale; and (d) granting certain further and additional relief as described herein; and

      b.       with respect to any Sale of Assets pursuant to the Bidding Procedures, and following the Sale Hearing (defined below), an order (the "**Sale Order**"): (a) authorizing the Sale to the winning bidder, free and clear of any and all Interests (as defined below), except for any assumed liabilities; (b) authorizing the assumption and assignment of Executory Contracts, if any, designated for assignment to the purchaser in connection with any Sale; and

---

[2] For the avoidance of doubt, the "Assets" do not include any IFF Property (as defined in the Interim DIP Order). The Debtors are not seeking authority to market or sell the IFF Property by and through this Motion.

(c) granting certain further and additional relief as described herein, the Designation of Winning Bid (defined below), or in the proposed Sale Order.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue of the Chapter 11 Cases in the district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This Court has constitutional authority to enter final orders with respect to the relief requested herein.  The Debtors further confirm their consent to this Court's entry of final orders or judgments on this Motion, if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

### Background

**A.     Chapter 11 Cases**

4.      On July 12, 2021 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code—thereby commencing these Chapter 11 Cases.  The Debtors continue to operate their businesses as debtors in possessions pursuant to Section 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.  On or about July 26, 2021, an Official Committee of Unsecured Creditors was appointed (the "**Committee**"). *See* Docket No. 189.

5.      On July 13, 2021, the Court entered an order authorizing the joint administration of the Chapter 11 Cases and permission to use a consolidated case caption.  *See* Docket No. 20.

6.      A discussion of the facts and circumstances surrounding these Chapter 11 Cases is set forth in the *Declaration of Mark Shapiro in Support of Chapter 11 Petitions and First Day*

*Motions* (the "**First Day Declaration**"), which is incorporated herein by reference.  *See* Docket No. 8.

**B.      The Refinery and Related Operations**

7.      In or about September 1965, the United States Virgin Islands (the "**USVI**") and Hess Oil Virgin Islands Corp. ("**HOVIC**"), a subsidiary of Hess Corporation (f/k/a Amerada Hess Corporation), entered into a Concession Agreement dated September 1, 1965 providing for the construction and operation of an oil refinery (the "**Refinery**") and an oil storage facility (the "**Terminal**") on the southern coast of the Island of St. Croix in the USVI.  HOVIC continued operating the Refinery and Terminal until 1998, at which time HOVIC assigned its interests to HOVENSA—a joint venture of HOVIC and PDVSA V.I., Inc., a subsidiary of the national oil company of Venezuela, Petróleos de Venezuela, S.A.

8.      While the Refinery and Terminal brought economic prosperity, the operation of an industrial oil refinery on a tropical island created dissonance with residents, federal and local environmental agencies, and non-governmental organizations concerned about the impacts of the operation on the local ecosystem and environment at large—a dissonance only amplified in recent decades as the Refinery aged amidst increasingly stringent environmental regulation.  Ultimately, adverse economic and regulatory climates, as well as increased competition in the region, resulted in HOVENSA's refinery operations suffering losses totaling approximately $1.3 billion between 2009 and 2011; accordingly, on or about February 16, 2012, HOVENSA idled the Refinery operations and, thereafter, began marketing the Terminal and Refinery for sale.

9.      In September 2015, HOVENSA and Limetree Bay Holdings, LLC ("**LBH**") entered into a purchase and sale agreement for the Terminal, pursuant to which LBH agreed to serve as the stalking horse bidder for a sale through bankruptcy.  On September 15, 2015, HOVENSA filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the

4

"**HOVENSA Chapter 11 Case**") in the United States District Court for the Virgin Islands, Bankruptcy Division (the "**HOVENSA Court**").  On or about December 1, 2015, the HOVENSA Court entered an order approving the sale of substantially all assets of HOVENSA to LBH, or its assignee, including, without limitation, the Terminal and Refinery.

10.     In conjunction with the acquisition of the Refinery and Terminal, Limetree Bay Refining, LLC ("**LBR**") and Limetree Bay Terminals, LLC ("**LBT**"), which, together with its parent and subsidiary entities, own and operate the Terminal, entered into operating agreements with the USVI (as amended and supplemented, the "**Operating Agreements**") that, among other things, granted the USVI certain entitlements and financial incentives in exchange for the right to acquire and operate the Refinery and Terminal.  Additionally, LBR and Limetree Bay Refining Marketing, LLC ("**LBRM**"), on the one hand, and LBT, on the other hand, entered into a series of agreements governing the use and occupancy of the Limetree Bay facility and business dealings between the Refinery and Terminal, including, without limitation, the Shared Services Systems Agreement dated as of November 30, 2018 (as amended and supplemented, the "**Shared Services Agreement**").

C.     **Event Precipitating Chapter 11 Filing**

11.     The Debtors have worked diligently to refurbish and relaunch the aging Refinery— ultimately investing more than $4 billion into the venture since 2018.  The Debtors reopened the Refinery in February 2021 with anticipation of the economic opportunities for investors as well as the community of St. Croix.  While the relaunch proved promising initially, the Refinery began experiencing operational issues in or about April 2021.  In response, the United States Environmental Protection Agency (the "**EPA**") and Virgin Islands Department of Planning and National Resources (the "**DPNR**") opened investigations regarding the Refinery and, on or about

May 14, 2021, the EPA issued a Clean Air Act Emergency Order (the "**EPA Order**") requiring the Debtors to immediately cease any and all operations at the Refinery for a period of 60 days and engage in an audit of certain identified operational and regulatory compliance issues.

12.     At the time of the suspension of operations, the Debtors lacked access to sufficient liquidity or financing under existing facilities to fund Refinery expenses through the 60-day suspension under the EPA Order.  Accordingly, the Debtors engaged professionals to advise on potential restructuring and recapitalization options; however, the Debtors were unable to obtain new financing under the existing capital structure.  As such, the Debtors solicited proposals for debtor in possession financing to fund idling of the Refinery and a structured sale process through bankruptcy—ultimately selecting a debtor in possession facility (the "**DIP Facility**") administered by 405 Sentinel, LLC (the "**DIP Agent**").[3]  On July 12, 2021, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

13.     Pending a sale or reorganization through the Chapter 11 Cases, the Debtors intend to idle the Refinery in accordance with applicable law and consultation with the EPA to ensure the protection of the surrounding communities and environment.  Simultaneously, and in accordance with the terms of the DIP Loan Documents (as defined in the Interim DIP Order), the Debtors intend to market the Assets for sale and solicit proposals for the acquisition thereof pursuant to the proposed Bidding Procedures, as set forth herein.  As of the filing of this Motion, the Debtors do not have a stalking horse bidder for the Assets.

### Proposed Bidding Procedures

14.     The Debtors developed the Bidding Procedures (detailed below), with the assistance of advisors and in consultation with the DIP Agent and the Prepetition Secured Parties

---

[3] On July 14, 2021, the Court entered an interim order approving the DIP Facility (the "**Interim DIP Order**").  *See* Docket No. 104.

(as defined in the Interim DIP Order) to maximize the value of the Assets for the benefit of the Estates and their creditors through an efficient and streamlined sale process, which comports with the terms of the DIP Loan Documents and the Bankruptcy Code.  In short, the Bidding Procedures provide for the solicitation of bids from potential purchasers in an effort to identify a stalking horse bidder.  Prior to the Bid Deadline (defined below), the Debtors, in consultation with the Notice Parties,[4] shall select one or more bids to serve as stalking horse bid(s) for all or substantially all assets of the Debtors, individually or collectively.  Thereafter, if additional Qualified Bids (defined below) are received prior to the Bid Deadline, the Debtors intend to hold an Auction to provide other Qualified Bidders (defined below) an opportunity to bid against the selected stalking horse bid(s).  Upon conclusion of the Auction, the Debtors, in consultation with the Notice Parties, shall select a Winning Bid (defined below) and file a notice and designation of the Winning Bid for approval at the Sale Hearing.

15.     The provisions of the Bidding Procedures Order approving the Bidding Procedures shall be subject to the terms of the Interim DIP Order.  In the event the relief granted in the Bidding Procedures Order or any action taken or proposed to be taken under the Bidding Procedures Order is inconsistent with the terms of the Interim DIP Order, the terms of the Interim DIP Order shall control.

16.     The following is a summary of the dates and deadlines proposed under the Bidding Procedures:[5]

---

[4] As used herein, "Notice Parties" refers to, collectively, the DIP Agent, each of the Prepetition Agents (as defined in the Interim DIP Order), and any official committee(s) appointed in these Chapter 11 Cases.
[5] Some of the dates and deadlines in the table are dependent on the occurrence of certain events.  In such cases, the dates provided are estimated or proposed dates or the last date upon which the subject date or deadline may occur under the Interim DIP Order and/or DIP Loan Document.  Any capitalized terms used in the table shall have the meanings ascribed to them in this Motion.

| Date/Deadline | Event |
|---|---|
| August 2, 2021 | Hearing on bidding procedures motion |
| August 6, 2021 | Deadline to establish and populate Data Room |
| September 7, 2021 | Bid Summary Deadline |
| September 10, 2021 | Stalking Horse Designation Deadline |
| September 13, 2021 | Deadline to file Stalking Horse Notice |
| September 17, 2021, at 5:00 p.m. CT | Bid Deadline and Credit Bid Designation Deadline |
| September 17, 2021 | Deadline to object to Stalking Horse Notice |
| September 20, 2021, at 10:00 a.m. CT | Deadline to provide notice of Auction location |
| September 22, 2021, at 10:00 a.m. CT | Auction Date |
| September 24, 2021 | Deadline to file the Designation of Winning Bid |
| October 4, 2021, at 5:00 p.m. CT | Deadline to object to the Sale |
| October 8, 2021, at 5:00 p.m. CT | Deadline to reply to objection(s) to the Sale |
| October 8, 2021 | Deadline to file Amended Designation of Winning Bid to add previously unidentified Executory Contracts |
| October 12, 2021, at 12:00 p.m. CT | Contract Assumption Objection Deadline |
| October 14, 2021 | Sale Hearing (subject to Court availability) |
| October 15, 2021 | Expected entry of Sale Order |
| October 31, 2021 | Deadline to file Amended Designation of Winning Bid to remove previously identified Executory Contracts |
| November 1, 2021, at 5:00 p.m. CT | Deadline for Winning Bidder to close sale transaction |
| November 8, 2021, at 5:00 p.m. CT | Deadline for Back-up Bidder to close sale transaction (if applicable) |

## A.    Participation Requirements

17.    To participate in the bidding process or otherwise be considered for any purpose hereunder, each interested person or entity interested in submitting a Bid to purchase any of the

4830-5234-0722.16

Assets (each, a "**Potential Bidder**") must deliver or previously have delivered to the Debtors the following documents (the "**Preliminary Bid Documents**"):

    a.    An executed confidentiality agreement in a form acceptable to the Debtors, in consultation with the Notice Parties (the "**Confidentiality Agreement**");

    b.    Preliminary documentary evidence satisfactory to the Debtors, in consultation with the Notice Parties, of the Potential Bidder's financial ability to fully and timely perform and close the Sale;

    c.    Documents identifying the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity; and

    d.    A list with the names and contact information for any financial, legal, and other advisors of the Potential Bidder has engaged to assist in connection with the proposed Sale.

**B.**    **Bid Requirements**

18.    Any Potential Bidder may submit a bid (each a "**Bid**") for either: (a) all or substantially all of the Assets; or (b) any portion or combination of Assets (a "**Piecemeal Bid**"). For the avoidance of doubt, no Bid or Piecemeal Bid may include the IFF Property. The DIP Lenders and Prepetition Secured Parties need not comply with the proposed Bidding Procedures to submit a credit bid and, for proposes of participating at the Auction, shall be deemed a Qualified Bidders.

19.    To participate in the Sale process, each Potential Bidder must, on or before September 17, 2021, at 5:00 p.m. prevailing Central Time (the "**Bid Deadline**"):

    a.    Fully disclose the identity of each entity that will be bidding for the assets or otherwise participating in connection with such Bid and the complete terms of any such participation.

b.      Submit to the Debtors an executed purchase agreement substantially in the form of the APA (as defined below), as well as a redline of such agreement marked against the APA, memorializing a Bid for all or substantially all of the Assets or a Piecemeal Bid that comports with the terms of the Bidding Procedures and the proposed Sale, discussed *infra*.  No later than August 6, 2021, the Debtors shall upload to the Data Room (defined below) a proposed form of asset purchase agreement for the acquisition of substantially all Assets of the Estates (the "**APA**").

c.      Submit a Bid that is: (i) binding and irrevocable for a period of no less than 120 days[6] from the Bid Deadline, unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Back-up Bidder; (ii) without financing, due diligence, internal approval or any other contingencies, including with respect to title defect or environmental laws, unless otherwise consented to by the Debtors, in consultation with the Notice Parties; *provided, however*, that a Bid may contain a list of anticipated required regulatory approvals and the expected timing for obtaining such approvals; (iii) on terms substantially similar to those terms contained in the APA; and (iv) in compliance with the Bidding Procedures.

d.      Indicate the form of consideration of the Bid and the estimated market value of any non-cash consideration.

e.      If the Potential Bidder is submitting a Piecemeal Bid, the Potential Bidder must identify specifically the Assets subject to the Piecemeal Bid.

f.      If the Potential Bidder proposes acquiring any assets of LBT, or any parent or subsidiary of LBT, including, without limitation, any of the Terminal assets, or any other non-Debtor entities (collectively, the "**Non-Debtor Assets**"), the Potential Bidder must (i) identify any and all Non-Debtor Assets subject to the Bid and (ii) either (A) confirm that the closing of the

---

[6] Unless otherwise stated, all references to "days" contained herein refer to calendar days.  Bankruptcy Rule 9006 shall govern the computation of any and all dates and deadline under the Bidding Procedures.

proposed Sale of the Debtors' Assets is not contingent on the acquisition of the Non-Debtor Assets or (B) provide evidence in a form acceptable to the Debtors, after consulting with the Notice Parties, that the Potential Bidder and owner(s) of the Non-Debtor Assets subject to the Bid have entered into a binding and enforceable agreement, subject to any conditions related to the approval of the proposed Sale by the Court, for the sale and acquisition of the subject Non-Debtor Assets. For the avoidance of doubt, the Debtors shall not (i) market or sell any Non-Debtor Assets, (ii) condition the Sale of any Assets on the sale or acquisition of any Non-Debtor Assets, (iii) incur or pay any expenses related to the marketing or sale of any Non-Debtor Assets, or (iv) provide any assistance with due diligence related to any Non-Debtor Assets. Any Non-Debtor Assets shall not be subject to the proposed Sale Order or jurisdiction of the Court.

g.      Specify the portion of the aggregate purchase price that is being allocated to each type or group of Assets, including to insurance claims or proceeds, inventory (including any Inventory Financing Collateral (as defined in the Interim DIP Order)), equipment and any other type or group of Assets that may be subject to a lien held by the DIP Lenders or any of the Prepetition Secured Parties.

h.      Unless the Bid is a credit bid being submitted by the DIP Lenders or a Prepetition Secured Party, make a good faith cash deposit in the form of a cashier's check or wire transfer into an interest bearing escrow account (the "**Escrow Account**") maintained by the Debtors' counsel in an amount not less than ten percent (10%) of the total consideration for the Bid, which deposit shall immediately become non-refundable and credited toward the purchase price if and when the Qualified Bidder (as defined below) making such deposit is declared to be the winning bidder (the "**Winning Bid**" and "**Winning Bidder**") or back-up bidder (the "**Back-up Bid**" and "**Back-up Bidder**") at the Sale Hearing. In the event a Qualified Bidder is not the

Winning Bidder or Back-up Bidder, such Qualified Bidder's deposit shall be refunded as set forth herein.

i.      Identify the liabilities, if any, that the Potential Bidder seeks to assume through the Sale transaction.

j.      Provide a list of the Debtors' Executory Contracts the Potential Bidder seeks to have the Debtors assume and assign to the Potential Bidder by and through the Sale.  No later than August 6, 2021, the Debtors shall upload to the Data Room a list of Executory Contracts that may be subject to assumption and assignment as part of a Sale.

k.      Provide documentary evidence satisfactory to the Debtors, in consultation with the Notice Parties, of the Potential Bidder's financial ability to (i) fully and timely perform and close the Sale pursuant to the Bid and proposed assets purchase agreement, if declared to be the Winning Bidder, and (ii) provide adequate assurance of future performance of all Executory Contracts identified for assumption and assignment to the Potential Bidder, including, without limitation, the following:

i.    evidence of the Potential Bidder's internal resources and proof of unconditional debt funding commitments from a recognized financial institution and, if applicable, equity commitments in an aggregate amount equal to the purchase price and any applicable cure amounts and other closing payments, if any, or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in such amount, in each case, as are needed to close the proposed Sale transaction;

ii.   contact names and telephone numbers for verification of financing sources;

iii.  current audited financial statements (or such other form of financial disclosure and credit-quality support or enhancement, acceptable to the Debtors, in consultation with the Notice Parties) of the Potential Bidder or those entities that will guarantee in full the payment obligations of the Potential Bidder;

iv.   a description of the Potential Bidder's *pro forma* capital structure; and

12

> v.  any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors demonstrating that such Qualified Bidder has the ability to close the applicable Sale transaction.

l.      Disclose any connections or agreement with the Debtors or their affiliates, any of the Notice Parties, or any other known Potential Bidder or Qualified Bidder, and/or any officer, director or equity security holder of the Debtors or their affiliates or any of the foregoing and confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale transaction.

m.      Confirm in writing its agreement to accept and abide by the terms, conditions and procedures set forth herein and provide evidence of due authorization to enter into the proposed Sale pursuant to the asset purchase agreement submitted, or any derivation thereof. In the event that the Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Potential Bidder must furnish written evidence acceptable to the Debtors, in consultation with the Notice Parties, of the approval of the contemplated transaction by the equity holders or members of such Potential Bidder.

n.      Identify any and all bid protections (the "**Bid Protections**") required by the Potential Bidder to serve as the Stalking Horse Bidder (defined below) for the Sale, including without limitation, any break-up fee, expense reimbursement, termination fee or similar type of payment or bid protections; *provided, however*, that the aggregate amount of any proposed Bid Protections may not exceed three percent (3%) of the total purchase price under the Bid.

20.      The Debtors, in consultation with the Notice Parties, shall determine whether a Bid or Piecemeal Bid that meets the above minimum requirements constitutes a qualified bid (a "**Qualified Bid**", and the bidder submitting such Qualified Bid, a "**Qualified Bidder**").  The Debtors will promptly advise each Potential Bidder in writing whether or not the Potential Bidder

13

is a Qualified Bidder.  If a Bid submitted on or prior to the Bid Deadline fails to meet all requirements of a Qualified Bid, the Debtors, after consulting with the Notice Parties, may work with the Potential Bidder in an effort to cure any defects in the Bid and to cause such Bid to become a Qualified Bid prior to the commencement of the Auction (as defined below).  Each DIP Lender and Prepetition Secured Party shall be deemed a Qualified Bidder and shall be allowed to participate in the Auction without the need to submit a Qualified Bid.

21.     The Debtors, in consultation with the Notice Parties, shall select a Qualified Bid and Qualified Bidder to serve as the Stalking Horse Bid (defined below) and Stalking Horse Bidder on or before September 10, 2021 (the "**Stalking Horse Designation Deadline**").

**C.      Submission of Bids**

22.     A Potential Bidder must deliver written copies of its Bid and all supporting documents and information, by mail, facsimile, or email, prior to the Bid Deadline to: (i) counsel to the Debtors, Baker & Hostetler, LLP, 200 SunTrust Center, Suite 2300, 200 South Orange Avenue, Orlando, Florida 32801, Attn: Elizabeth A. Green (egreen@bakerlaw.com), and 45 Rockefeller Plaza, New York, New York 10111, Attn: Jorian L. Rose (jrose@bakerlaw.com); and (ii) counsel for the Official Committee of Unsecured Creditors (the "**Committee**"), if any.  The Potential Bidder must deliver the proposed Bid, and all supporting documents and information, such that the Bid and related documents and information are actually received by the aforementioned parties no later than the Bid Deadline.

23.     As soon as reasonably practicable following receipt, the Debtors shall provide summaries of the materials terms of each Bid, which summaries shall be treated as confidential, "Professionals' Eyes Only" (the "**PEO Information**"), to the following professionals: (i) counsel to the DIP Agent, Gray Reed, 1300 Post Oak Blvd, Suite 2000, Houston, Texas 77056, Attention:

4830-5234-0722.16

Jason S. Brookner (jbrookner@grayreed.com) and Lydia R. Webb (lwebb@grayreed.com); (ii) counsel to Goldman Sachs Bank USA, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attn: Sean A. O'Neal (soneal@cgsh.com) and Jane VanLare (jvanlare@cgsh.com); (iii) counsel to J. Aron & Company LLC, Baker Botts L.L.P., 30 Rockefeller Plaza, New York, NY 10112, Attention: Robin Spigel (robin.spigel@bakerbotts.com) and Chris Newcomb (chris.newcomb@bakerbotts.com); and (iv) counsel to the Ad Hoc Term Lender Group, Akin Gump Strauss Hauer & Feld LLP, 2001 K. Street N.W., Washington, DC 20006, Attention: Scott Alberino (salberino@akingump.com) and Kevin Eide (keide@akingump.com) (collectively, the "**Lender Advisors**").  Lender Advisors may share PEO Information with third-party professionals retained by their respective clients, including, without limitation, any financial advisors or brokers; *provided, however,* that any recipient of any PEO Information, whether directly or indirectly, shall agree to maintain the confidentiality of the PEO Information and refrain from sharing or disclosing any PEO Information with or to their respective clients, including the DIP Agent, DIP Lenders, J. Aron, and Prepetition Secured Parties, or any other individual or entity; *provided, further*, that the Lender Advisors and any such third-party advisors shall be permitted to advise their respective clients that they are in receipt of such PEO Information and provide summaries or analyses to their respective clients that do not disclose PEO Information.  The use and dissemination of PEO Information is subject to the further provisions set forth in Paragraph 51, *infra*.  The obligation to maintain the confidentiality of any PEO Information shall terminate upon such information becoming known to all Potential Bidders, generally available to the public, or, solely with respect to the respective clients of the Lender Advisors, upon the Credit Bid Designation Deadline, in the event that such clients elect not to submit a credit bid.

### D.      Access to Due Diligence Materials

24.     The Debtors shall establish a digital data room (the "**Data Room**") for purposes of maintaining and providing Potential Bidders access to information regarding the Debtors and the Assets for purposes of conducting due diligence.  To the extent not already established, the Debtors shall establish a Data Room as soon as reasonably practicable after entry of the Bidding Procedures Order, but in no event later than August 6, 2021; *provided, however*, that the Debtors reserve the right to add or remove materials from the Data Room at any time.  The Debtors shall be authorized to retain and compensate in the ordinary course of business one or more individuals or entities to assist in the creation and/or maintenance of the Data Room; *provided, however,* that any compensation shall be subject to the Budget (as defined in the Interim DIP Order), terms of the Interim DIP Order, and, with respect to professionals, the requirements of the Bankruptcy Code.

25.     Upon delivery of the Preliminary Bid Documents, any Potential Bidder that wishes to conduct due diligence on the Assets may be granted access to the Data Room.  The due diligence period for Potential Bidders will end one (1) day prior to the Bid Deadline.

26.     The Debtors, along with their advisors, shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders and provide each Potential Bidder reasonable due diligence information, as requested by such Potential Bidder in writing as soon as reasonably practicable after such request; *provided, however*, the Debtors may decline to provide such information to Potential Bidders who the Debtors, in their reasonable business judgment (in consultation with the Notice Parties), determine do not intend in good faith to, or do not have the capacity to, consummate the purchase of any or all of the Assets or seek access to the Data Room and information contained therein for any improper purpose.

27.     Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors, including, without limitation, information regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale.  If a Potential Bidder fails to comply with any such request(s), the Debtors may, in their discretion, in consultation with the Notice Parties, disqualify the Potential Bidder and/or the subject Bid and deny or terminate access to the Data Room.

E.      **"As Is, Where Is"**

28.     The Sale of any Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or Estates, except to the extent set forth in the asset purchase agreement between the Debtors and a Winning Bidder, the assignment and bill of sale, if any, delivered pursuant to such asset purchase agreement, or the order approving the Sale of the Assets by the Debtors to the Winning Bidder. Except as may be provided in the subject asset purchase agreement, all of the Debtors' rights, title, and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interest thereon, but subject in all respects to J. Aron's right to set off and net against any obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents (as defined in the Interim DIP Order) (collectively, the "**Interests**"), with such Interests attaching to the proceeds of the Sale of the Assets, with the same validity and priority as existed immediately prior to such Sale.

29.     Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Assets prior to making its Bid, that it has relied solely upon its independent review, investigation and/or inspection of any documents or information in making its Bid, and that it did not rely upon any written or oral statements,

representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in any executed asset purchase agreement.

**F.      Designation of a Stalking Horse Bidder**

30.      The Debtors, in consultation with the Lender Advisors, shall prepare a summary of the highest and best Bid(s) for all or substantially all Asset and/or the highest and best Piecemeal Bid(s) (the "**Bid Summary**").  The Debtors shall upload the Bid Summary to the Data Room no later than September 7, 2021 (the "**Bid Summary Deadline**"), which shall be deemed to make such information "generally available to all potential bidders" for purposes of Paragraph 33 (soon to be Paragraph 37) of the Complex Rules.

31.      On or before September 10, 2021, the Debtors, in consultation with the Notice Parties, may designate one or more Qualified Bidders as the stalking horse bidder(s) (the "**Stalking Horse Bidder**") and one or more Qualified Bids as the stalking horse bid(s) (the "**Stalking Horse Bid**") with respect to a sale of all or substantially all the Assets of the Debtors.  The Debtors shall not designate any Qualified Bid as a Stalking Horse Bid unless such Bid is reasonably acceptable to each of the Prepetition Secured Parties.

32.      On or before September 13, 2021, if the Debtors have designated a Stalking Horse Bidder, the Debtors shall file a Notice of Designation of Stalking Horse Bidder (the "**Stalking Horse Notice**") and serve the Stalking Horse Notice on all interested parties, including any Potential Bidders and counterparties to any Executory Contracts identified as Purchased Contracts (defined below) in the Stalking Horse Bid or Stalking Horse APA (defined below).  The Stalking Horse Notice shall (a) identify the Stalking Horse Bidder, (b) provide a summary of the Stalking

18

Horse Bid, (c) outline any and all proposed Bid Protections, which may include the payment of a break-up fee and any other appropriate or customary protections, *provided* that the aggregate amount of the Bid Protections that may be paid to any or all Stalking Horse Bidders shall not exceed three percent (3%) of the proposed purchase price and that any Bid Protections shall only be payable upon the closing of and out of the proceeds of a sale transaction, and (d) provide a copy or the means of accessing a digital copy of the asset purchase agreement for the Stalking Horse Bid (the "**Stalking Horse APA**") and a redline marked against the APA.  The Debtors may modify the terms of the Bidding Procedures[7] (excluding the requirements set forth in Paragraph 19 of this Motion, which modifications thereto shall require the consent of the DIP Agent and each of the Prepetition Secured Parties) through the Stalking Horse Notice, in consultation with the Notice Parties.

33.     Any interested parties shall have four (4) days from the date of the Stalking Horse Notice to file any objections to the proposed Bid Protections for the Stalking Horse Bid or any amendments to the Bidding Procedures.  The failure to file a timely objection shall be deemed to be a waiver of any such objections and consent to the approval of the Bid Protections and amended Bidding Procedures.  If an objection is timely filed, the Debtors shall notice a hearing before the Court to consider the objection(s) on an emergency basis; *provided, however,* that the Bidding Procedures will be deemed approved regardless of whether or not the Auction occurs prior to the resolution of any objection to the Bid Protections or amended Bidding Procedures.  Interested parties shall be deemed to consent to the expedited and final resolution of any such objections by the Court.  The filing or pendency of any objection(s) shall not alter any dates or deadlines

---

[7] Unless otherwise stated, "Bidding Procedures" includes the Bidding Procedures, the procedures governing any Auction (the "**Auction Procedures**"), including the Open Auction Procedures, and the Assumption and Assignment Procedures.

4830-5234-0722.16

established under the Bidding Procedures or affect the binding nature of the Stalking Horse Bid or any other Bids.

**G.      Credit Bidding**

34.      In accordance with Paragraphs 9(e) and 29 of the Interim DIP Order, and, to the extent applicable, the Final DIP Order, when entered, the DIP Lenders (as defined in the Interim DIP Order) and the Prepetition Secured Parties may credit bid the full amount of the DIP Obligations (as defined in the Interim DIP Order) or the Prepetition Secured Obligations (as defined in the Interim DIP Order), respectively and as applicable, to acquire any or all Assets subject to the parties' respective security interests (other than any collateral in respect of the J. Aron Obligations),[8] on a dollar-for-dollar basis, as provided in Section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing such credit bid and whether any Sale is (a) pursuant to Section 363 of the Bankruptcy Code, (b) pursuant to a chapter 11 plan, or (c) by a chapter 7 trustee.

35.      Notwithstanding anything to the contrary contained herein, the Prepetition Secured Parties shall have the right to credit bid all or any portion of the aggregate amount of their applicable outstanding Prepetition Secured Obligations pursuant to section 363(k) of the Bankruptcy Code, and any such credit bid, whether submitted by a Prepetition Secured Party or a new entity formed by such Prepetition Secured Party, will be considered a Qualified Bid to the extent such bid is received by the deadline to submit a credit bid and complies with section 363(k) of the Bankruptcy Code; *provided* that a credit bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid or Piecemeal Bid that

---

[8] For the avoidance of doubt, the IFF Property shall not be the subject of any sale pursuant to this Motion or the Bidding Procedures.

4830-5234-0722.16

are senior in priority, including a priority in payment pursuant to the Intercreditor Agreement (as defined in the Interim DIP Order), to those of the party seeking to credit bid (unless such Prepetition Secured Party consents to alternative treatment).  For the avoidance of doubt, any credit bid by a DIP Lender of the DIP Obligations shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid or Piecemeal Bid that are senior in priority to the DIP Lender(s) seeking to credit bid (unless such Prepetition Secured Party consents to alternative treatment).

36.      If the DIP Lenders and/or any Prepetition Secured Party intends to credit bid for any of the Assets, such parties shall notify the Debtors, the Office of the United States Trustee for the Southern District of Texas ("**U.S. Trustee**"), and the other Notice Parties of their intention to credit bid no later than September 17, 2021 (the "**Credit Bid Designation Deadline**").  To the extent required by Paragraph 33 (soon to be Paragraph 37) of the Complex Rules, any entity that intends to submit a Bid for any or all of the Assets shall waive the right to receive (i) information that is not generally available to all Potential Bidders and (ii) any notices or consultation rights as Notice Parties under the Bidding Procedures or otherwise (the "**Consultation Rights**").

**H.      The Auction**

37.      If the Debtors receive one or more Qualified Bids from Qualified Bidders by the Bid Deadline, in addition to the Stalking Horse Bid, an Auction with respect to the sale of the subject Assets shall take place on September 22, 2021, at 10:00 a.m. (prevailing Central Time) (the "**Auction Date**") at (a) the offices of Baker & Hostetler, LLP, located at 811 Main Street, Suite 1100, Houston, Texas 77002 or (b) via an virtual platform, such as Zoom or GoToMeeting, as the Debtors designate.  No later than forty-eight (48) hours prior to the Auction Date, the

4830-5234-0722.16

Debtors shall provide notice of the Auction location and, if via a virtual platform, the credentials required to access such platform, to all Qualified Bidders, the Notice Parties, and the U.S. Trustee.

38.    If the Stalking Horse Bid is the only Qualified Bid the Debtors receive by the Bid Deadline, the Debtors reserve the right to cancel the Auction.  In such case, if cancelled, the Stalking Horse Bid and Stalking Horse Bidder shall be automatically designated the Winning Bid and Winning Bidder effective as of the Bid Deadline.

39.    If the Debtors do not receive any Qualified Bids by the Bid Deadline, the Debtors may elect to hold an open auction for the Assets, or any of them (an "**Open Auction**") on the Auction Date, subject to the agreement of the DIP Agent and Prepetition Secured Parties.  If the parties agree to hold an Open Auction, the Debtors shall provide notice to the Court, the U.S. Trustee, the Notice Parties, and any and all Potential Bidders that executed a Confidentiality Agreement of the Open Auction (the "**Open Auction Notice**").  The Open Auction Notice shall identify the procedures applicable to the Open Auction, including, without limitation, any deposits required to participate in the Open Auction (the "**Open Auction Procedures**").  The Debtors shall prepare the Open Auction Procedures in consultation with the Notice Parties and U.S. Trustee. Notwithstanding anything in the Motion, Bidding Procedures or Open Auction Procedures to the contrary, the DIP Lenders and Prepetition Secured Parties will be entitled to credit bid in any Open Auction and shall be deemed to be Qualified Bidders for purposes of any Open Auction.

40.    Unless modified by any Open Auction Procedures, the following rules shall apply to any Auction:

      a.    only Qualified Bidders shall be entitled to make a bid at and otherwise participate in the Auction;

      b.    each Qualified Bidder shall appear in person, or in the event of a virtual auction, appear virtually, or have an authorized representative appear on their behalf, *provided* the authorized representative has the authority to bind

the Qualified Bidder to the terms of any bid at the Auction without further or additional approval or authorization;

c.     each Qualified Bidder participating in the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

d.     the Debtors, in their business judgment and in consultation with the Notice Parties, shall select the number of Qualified Bidders participating in the Auction and will conduct the Auction in the manner that they determine will best promote the goals of the bidding process and will achieve the maximum value for the Assets;

e.     the Stalking Horse Bid shall constitute the opening bid at the Auction (the "**Opening Bid**") for the Assets subject to the Stalking Horse APA and the minimum overbid at the Auction shall be an amount equal to the total approved Bid Protections provided under the Stalking Horse APA *plus* $1,000,000, with each successive bid being in increments of at least $1,000,000 higher than the preceding bid; *provided, however*, if the Stalking Horse Bids constitute Piecemeal Bids, the minimum overbids and bid increments shall be specified in the Stalking Horse Notices;

f.     the Stalking Horse Bidder may not use the amount of approved Bid Protections as consideration under any bid during the Auction; *provided, however*, that the Debtors may consider the amount of approved Bid Protections in evaluating the highest and best Bid for purposes of designating the Winning Bid or Back-up Bid;

g.     the Debtors, in consultation with the Notice Parties, may, at any point during the Auction, modify the bid increment amounts;

h.     the Debtors, in consultation with the Notice Parties, may continue the Auction from time to time, adjourn the Auction at any time, and re-open the Auction at any time prior to the commencement of the Sale Hearing; and

i.     bidding at the Auction will be transcribed to ensure an accurate recording of the bidding.

41.    At the conclusion of the Auction, the Debtors, in consultation with the Notice Parties, shall select and identify the Winning Bid and the Winning Bidder.  There may be more than one Winning Bid and Winning Bidder if individual Piecemeal Bids are determined to be Qualified Bids.  The Debtors, in consultation with the Notice Parties, shall also select and identify the entity presenting the next highest and best bid (the "**Back-up Bid**") and the entity presenting

same (the "**Back-up Bidder**").  At the Sale Hearing (as defined below), the Debtors shall present the Winning Bid and Back-up Bid to the Court for approval.  The Debtors' presentation of the Winning Bid to the Court for approval does not constitute the Debtors' acceptance of such Winning Bid.  The Debtors shall have accepted a Winning Bid only when the Court has entered an order approving such bid and the Sale of the Asset subject thereto.

42.     Notwithstanding the foregoing, the Debtors reserve all rights to terminate the bidding process at any time if the Debtors, consistent with their fiduciary duties and business judgment, and in consultation with the Notice Parties, determine that the bidding process will not maximize the value of the Assets.  Without limiting the generality of the foregoing, the Debtors, in consultation with the Notice Parties, may reject at any time before entry of a Sale Order approving such bid, any Bid that, in the Debtors' discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors, their Estates and creditors.

43.     If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when: (i) such bid is declared the Winning Bid at the conclusion of the Auction; (ii) the Winning Bidder shall have paid an additional deposit which, when added to the initial deposit, equals fifteen percent (15%) of the Winning Bid (the "**Additional Deposit**"); *provided* that to the extent the Winning Bid is a credit bid submitted by a DIP Lender or Prepetition Secured Party, no Additional Deposit shall be required; (iii) definitive documentation has been executed in respect thereof; and (iv) the Court has entered an order approving such bid and the Sale of the Assets subject thereto.  The Winning Bidder shall make the Additional Deposit into the Escrow Account within one (1) business day after the conclusion of the Auction.  Acceptance by the Debtors of the Winning Bid is conditioned upon entry of a Sale Order approving such Winning Bid.

44.     As soon as practicable following the conclusion of the Auction, the Debtors shall file a notice designating the Winning Bid and Winning Bidder, as well as the Back-up Bid and Back-up Bidder (the "**Designation of Winning Bid**"), and serve the Designation of Winning Bid on all interested parties, including, without limitation, all counterparties to any Purchased Contract(s).  The Designation of Winning Bid shall: (i) identify the Winning Bidder and Back-up Bidder; (ii) provide a summary of the Winning Bid and Back-up Bid; (iii) if the Winning Bidder is not the Stalking Horse Bidder, provide a copy or the means of accessing a digital copy of the asset purchase agreement(s) for the Winning Bid(s) (the "**Modified APA(s)**") and a redline marked against the Stalking Horse APA; (iv) identify all Purchased Contracts designated by the Winning Bidder or Back-up Bidder; (v) identify the Cure Amount, if any, the Debtors estimate is required to assume and assign each Purchased Contract in compliance with Section 365(b) and 365(f)(2) of the Bankruptcy Code; and (vi) contain a statement as to the Winning Bidder's and Back-up Bidder's ability to perform the Debtors' obligations under the subject Purchased Contracts.  The Debtors reserve the right to amend the Designation of Winning Bid to identify additional Executory Contracts up to six (6) days before the Sale Hearing (defined below) and to remove any Executory Contracts up to the Closing Date (defined below).  Simultaneously with the filing of the Designation of Winning Bid, the Debtors shall file a proposed Sale Order and any supplemental filings related to the Designation of Winning Bid or approval of the proposed Sale pursuant thereto.

45.     In the event that the Winning Bidder fails to pay the Additional Deposit or otherwise comply with its obligations as the Winning Bidder, the Qualified Bidder with the Back-up Bid shall be declared the Winning Bid and Winning Bidder without further order of the Court. If the Winning Bid is a Piecemeal Bid (the "**Winning Piecemeal Bid**"), the bidder with the next

25

highest or best bid that is not entitled to the same reductions to the purchase price shall be deemed the Winning Bid and Winning Bidder without further order of the Court.

**I.     Sale Hearing**

46.     The Debtors shall schedule a hearing to approve the Sale (the "**Sale Hearing**") pursuant to the Stalking Horse APA or Modified APA(s), as applicable, as soon as practicable, but in no event later than October 14, 2021.  At the Sale Hearing, subject to the Bidding Procedures and result of the Auction, if any, the Debtors will request entry of the Sale Order that will, *inter alia*, approve (i) the Sale of the Assets in accordance with the terms of the Stalking Horse APA or Modified APA(s), as applicable, (ii) the assumption and assignment of the Purchased Contracts (defined below), and (iii) any further or additional relief deemed necessary to effectuate the proposed Sale transaction.  Objections, if any, to a proposed Sale transaction, other than objections to the assumption and assignment of Executory Contracts (a "**Sale Objection**"), must be filed and served on counsel for the Debtors, the U.S. Trustee, and the Notice Parties no later than October 4, 2021, at 5:00 p.m. (prevailing Central time) (the "**Sale Objection Deadline**").

**J.     Return of Deposit**

47.     Within five (5) business days after the closing of the Sale to the Winning Bidder ("**Closing**"), the deposits of all unsuccessful bidders shall be refunded, except for any deposits forfeited by a Winning Bidder under the Bidding Procedures.  In the event a dispute arises about whether a deposit is refundable or non-refundable, the deposit shall remain in the Escrow Account pending a resolution of the dispute by the Court.  In presenting a Bid, any and all Potential Bidders, including Qualified Bidders, Back-up Bidder(s), and Winning Bidder(s), shall be deemed to consent to the jurisdiction and final adjudication of any and all matters related to the Bid(s) by the Court.

**K.     Failure to Close**

48.    The transaction evidenced by the Winning Bid shall close not later than ten (10)
days after entry the Sale Order, but in no event later than November 1, 2021, at 5:00 p.m.
(prevailing Central time) (the "**Closing Date**"), unless the Closing Date is extended in accordance
with the Bidding Procedures, at which time the Winning Bidder shall pay the balance of the
Winning Bid (the Winning Bid amount less the deposit) into the Escrow Account.  In the event a
declared Winning Bidder fails to timely perform any of its obligations as set forth above or
pursuant to the approved transaction documents:

a.     The declared Winning Bidder shall forfeit all deposits made without regard
to the Debtors' ultimate damages occasioned by such failure; such deposits
shall be applied to the Debtors' damages, if any, and shall not constitute
liquidated damages; and, notwithstanding the foregoing, the Debtors and
the Estates shall retain all other rights, remedies, claims, counterclaims, and
defenses as to the Winning Bidder, including the right to seek equitable or
injunctive relief.

b.     Each Back-up Bidder shall keep its final and highest bid open pending a
closing of a transaction of the Winning Bid.  In the event that a transaction
of the Winning Bid is not consummated by the Closing Date (unless the
Closing Date is extended), the Back-up Bidder with the Back-up Bid shall
be deemed the Winning Bidder without further order of the Court, and such
bidder shall be required to close the transaction contemplated in its Back-
up Bid within seven (7) days of being deemed the Winning Bidder, but in
no event later than November 8, 2021, at 5:00 p.m. (prevailing Central
time), unless such deadline is extended in accordance with the Bidding
Procedures.  Any Back-up Bidder declared a Winning Bidder who fails to
timely perform shall forfeit all deposits made without regard to the Debtors'
ultimate damages occasioned by such failure; such deposits shall be applied
to the Debtors' damages, if any, and shall not constitute liquidated damages;
and, notwithstanding the foregoing, the Debtors and the Estates shall retain
all other rights, remedies, claims, counterclaims, and defenses with respect
to such bidder, including the right to seek equitable or injunctive relief.

c.     The Debtors, in consultation with the Notice Parties and agreement of the
DIP Agent and Prepetition Secured Parties, may grant any declared
Winning Bidder additional time to perform and, to the extent necessary,
extend the Closing Date.

L.      **Fees and Expenses**

49.      Any and all bidders submitting Bids shall bear their own fees, costs, and expenses in connection with the proposed sale, whether or not such sale is ultimately approved, except to the extent reimbursement of expenses constitutes an approved Bid Protection under a Stalking Horse APA.  Further, by submitting a Bid, a Potential Bidder shall be deemed to waive its right to pursue a substantial contribution claim under Section 503 of the Bankruptcy Code or other priority unsecured or administrative claims in any way related to the submission of its Bid or the Bidding Procedures.

M.      **Assumption and Assignment of Executory Contracts**

50.      The Debtors also seek approval of certain procedures to facility the fair and orderly assumption and assignment of certain Executory Contracts designated by the Winning Bidder following the Auction, if any, pursuant to Section 365(f) of the Bankruptcy Code (collectively, the "**Purchased Contracts**") in connection with the Sale.  Due to the nature of the bidding process, the Debtors are unable to currently identify the Purchased Contracts, or any of them, that will require assumption and assignment to the Winning Bidder.  As such, the Debtors propose certain procedures (the "**Assumption and Assignment Procedures**") by which counterparties to potential Purchased Contracts can ascertain the proposed cure payment and adequate assurance of future performance and, if deemed prudent, object to the potential assumption or assumption and assignment of the subject Purchased Contracts.  The proposed Assumption and Assignment Procedures are as follows:

   a.      As set forth above, the Debtors shall file the Stalking Horse Notice with the Court and serve the same on all known counterparties to the Executory Contracts designated therein.  The Stalking Horse Notice shall contain the following: (i) the executory contracts and unexpired leases that may be assumed and assigned to a potential purchaser; (ii) the name and address of the known contract counterparties thereto; (iii) the amount, if any,

determined by the Debtors to be necessary to be paid to cure any existing default in accordance with Section 365(b) and 365(f)(2) of the Bankruptcy Code (the "**Cure Amount**"); and (iv) the deadline by which any counterparties must file an objection to the proposed assumption and assignment of any designated contract; *provided, however,* that the inclusion of any executory contract or unexpired lease on the Stalking Horse Notice shall not constitute an admission that the subject contract(s) or lease(s) are executory contract(s) or unexpired lease(s) for purposes of Section 365 of the Bankruptcy Code or an agreement to assume or assign such Executory Contracts.

b.      The Debtors may (i) amend the Stalking Horse Notice or Designation of Winning Bid at any time prior to the date that is six (6) days before Sale Hearing to add or remove any Executory Contracts, subject to the right of any counterparties to newly identified Executory Contract(s) to object to the proposed cure payment, adequate assurance, or otherwise object to the assumption and assignment of the subject Executory Contracts, and (ii) amend the Stalking Horse Notice or Designation of Winning Bid to remove any previously-designated Executory Contracts at any time prior to the Closing Date, with such removal being effective immediately without further order of the Court. Any amendments to the Stalking Horse Notice or Designation of Winning Bid shall comply with the requirements of Paragraph 50.a; *provided, however,* that such amendments need not include information related to any previously-designated Executory Contracts unaffected by the amendment.

c.      Each Potential Bidder shall identify in its Bid any and all Executory Contracts the Potential Bidder may wish to designate for assumption and assignment to the Potential Bidder in any Sale; *provided, however*, the Winning Bidder(s) may amend such designation, consistent with the notice requirements of Paragraph 50.b.

d.      As provided in Paragraph 44, the Debtors shall file and serve the Designation of Winning Bid on each counterparty to any Purchased Contract (and its counsel, if known) that is designated for assumption and assignment under the Winning Bid, among other parties. Such Designation of Winning Bid shall: (i) identify the Winning Bidder and Back-up Bidder; (ii) identify all Purchased Contracts designated by the Winning Bidder, subject to the right to amend such designation; (iii) identify the Cure Amount, if any, the Debtors estimate is required to comply with Section 365(b) and 365(f)(2) of the Bankruptcy Code; and (iv) contain a statement as to the Winning Bidder's ability to perform the Debtors' obligations under the subject Purchased Contracts. The Debtors may amend or supplement the Contract Notice to add or remove any Executory Contracts by filing with the Court and serving on the affected counterparties to the Executory Contracts an amended Designation of Winning Bid in accordance with these Bidding Procedures.

e.  All objections to the proposed assumption and assignment of any Purchased Contracts must: (i) be filed with the Court on or before October 18, 2021, at 12:00 p.m. (prevailing Central time) (the "**Contract Assumption Objection Deadline**") and served on the Debtors, the U.S. Trustee and Notice Parties; (ii) identify the Purchased Contract(s) to which the objector is party; (iii) describe with particularity any cure the objector contends is required under Section 365 of the Bankruptcy Code (the "**Cure Claim**"); (iv) identify the bases of the alleged Cure Claim under the proposed Purchased Contract; and (v) attach all documents supporting or evidencing the Cure Claim.

f.  If no objection is filed by the Contract Assumption Objection Deadline, the Cure Amount set forth in the Designation of Winning Bid Notice, or any amended version thereof, as applicable, shall control and any counterparties to the subject Purchased Contract(s) shall be deemed to waive and shall be forever barred from asserting in any other claim or objection under Section 365 of the Bankruptcy Code, or otherwise, including, without limitation, any objection to the assignability of any of the purchased contracts, other than an objection to adequate assurance of performance under the Purchased Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code.

g.  To the extent any Cure Claim remains unresolved as of the Sale Hearing, such dispute shall be presented to the Court at the Sale Hearing, or such later date and time as the Debtors, the Winning Bidder, and the objecting party may agree or the Court may order, *provided* that the pendency of such dispute shall not affect in any way the closing of any proposed Sale or the effectiveness of any assumption and assignment of the subject Executory Contract under the Winning Bid.

## N.    Cooperation and Information Sharing

51.    The Debtors and their advisors shall consult regularly with the Lender Advisors and third-party professionals retained by their respective clients, including, without limitation, any financial advisors or brokers, regarding the status of the Sale process and any potential Bids and provide any related information that may be reasonably requested by the Lender Advisors and such third-party professionals.  To the extent required by Paragraph 33 (soon to be Paragraph 37) of the Complex Rules, any information provided to the Lender Advisors or such third-party professionals shall constitute PEO Information subject to the restriction set forth in Paragraph 23, *supra; provided, however*, that any PEO Information that becomes known to all Potential Bidders or

publicly available, other than as a result of a violation of the restrictions on the use and dissemination of PEO Information, shall no longer be subject to the restrictions provided in the Bidding Procedures. Any DIP Lender or Prepetition Secured Party that elects not to credit bid by the Credit Bid Designation Deadline shall have the right to any and all PEO Information, Consultation Rights, and other information and documentation pertaining to the marketing or Sale of any Assets, including, without limitation, any Bids and related documents, under the Bidding Procedures without restriction, except for a prohibition against sharing such information with any Potential Bidders that do not have such information.

### The Bidding Procedures are Reasonable and Should be Approved

52.     Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or auction. Fed. R. Bankr. P. 6004(f)(1). The paramount goal of any proposed sale of property of a debtor is to maximize the value received by the estate. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources. Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 659 ("It is a well-establish principal of bankruptcy law that the Debtors' duty with respect to [Section 363] sales is to obtain the highest price or greatest overall benefit possible for the estate"), *quoting Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988).

53.     To that end, debtors are granted significant latitude in devising and implementing bidding and sale procedures under Section 363 of the Bankruptcy Code. Indeed, bankruptcy courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the bid procedures to be used in selling assets of the estate. *See, e.g., In re Integrated Resources, Inc.*, 147 B.R. at 656-57 (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *See In re*

31

*ASARCO, L.L.C.*, 650 F.3d at 601 ("The business judgment standard in section 363 is flexible and encourages discretion."); *see also GBL Holding Co. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005) ("Great judicial deference is given to the Trustee's exercise of business judgment."), (citing *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 516 (Bankr. N.D. Ala.2002)); *see also In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836–37 (Bankr. E.D. Va. 1997) ("[G]reat deference is given to a business in determining its own best interests."); *see also In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n. 58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors….").

54.     The Debtors submit that the proposed Bidding Procedures are supported by their sound business judgment and serve the best interests of the Estates and their creditors.  Under the Interim DIP Order, the Debtors must consummate a sale of all or substantially all of the Debtors' assets within one hundred twenty (120) days after the Petition Date.  To do so, the Debtors, in consultation with the Notice Parties, have devised the proposed Bidding Procedures.  The Bidding Procedures provide a framework for a fair and orderly marketing and sale of the Assets and ensure the participation of *bona fide* bidders with the ability and desire to consummate a proposed transaction.  The Bidding Procedures also provide flexibility to maximize the opportunities and offers available to the Debtors, including the ability to entertain proposals for any and all Assets as well as only certain Assets of the Debtors (i.e., Piecemeal Bids).

55.     Further, the Bidding Procedures incorporate fair and reasonable procedures for the identification of Executory Contracts subject to any potential sale and the resolution of any disputes pertaining to the assumption and assignment of any Purchased Contracts—while balancing such protections against the need to maintain an expedited timeline for consummation

of a Sale under the Interim DIP Order and DIP Loan Documents.  Moreover, the Bidding Procedures are designed to prevent collusion among Potential Bidders.  Indeed, the Bidding Procedures require each Qualified Bidder participating in the Auction to confirm that it has not engaged in any collusion with respect to the bidding or the Sale and, thus, Section 363(n) of the Bankruptcy Code is inapplicable to any sale of the Debtors' Assets under the Bidding Procedures. *See* 11 U.S.C. § 363(n).

56.     Based on the foregoing, the Debtors respectfully request that the Court find that the Bidding Procedures are supported by the sound business judgment of the Debtors and comport with the milestones under the Interim DIP Order, and approve the proposed Bidding Procedures.

### The Sale is Supported by Sound Business Judgement and Should be Approved

57.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Although Section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of estate assets outside the ordinary course of business if such sale is based upon the sound business judgment of the debtor. *See Asarco, Inc. v. Elliott Management (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011), (quoting *The Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986)) ("'[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.").

58. "The business judgment standard in section 363 [of the Bankruptcy Code] is flexible and encourages discretion. 'Whether the proffered business justification is sufficient depends on the case.... [T]he bankruptcy judge "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike."'" *In re ASARCO, L.L.C.*, 650 F.3d at 601, *quoting In re Cont'l Air Lines, Inc.*, 780 F.2d at 1226 (*quoting In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir.1983)). Notwithstanding, a debtors' decision to sell property out of the ordinary course of business enjoys a strong "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Resources, Inc.*, 147 B.R. at 656.

59. The Debtors submit that the decision to sell all or substantially all Assets of the Estates is premised upon their sound business judgment. First and foremost, the sale of all or substantially all assets of the Estates is a condition to the DIP Facility under the terms of the Interim DIP Order and DIP Loan Documents. The Debtors require the funding under the DIP Facility to idle the Refinery in a safe and responsible manner; accordingly, a sale in accordance with the terms of the Interim DIP Order and DIP Loan Documents is supported by a sound business justification. Notwithstanding the obligations under the DIP Loan Documents, the Debtors lack the necessary funding to redress any issues identified in the audits under the EPA Order and relaunch operations at the Refinery. As such, the Debtors have concluded that an expeditious sale of the Assets in accordance with the proposed Bidding Procedures serves the best interests of creditors by maximizing the value of the Assets, while minimizing administrative claims through a streamlined sale process.

4830-5234-0722.16

60.     Based on the foregoing, the Debtors submit that the potential sale of the Assets serves the best interests of the Debtors, the Estates and creditors, and is based upon sound, reasoned and informed business judgment—thereby warranting approval under Section 363 of the Bankruptcy Code.

**Sale of the Assets Free and Clear of all Interests
Pursuant to Section 363(f) of the Bankruptcy Code is Warranted**

61.     The Debtors hereby request authority to sell the Assets of the Estates free and clear of all Interests pursuant to Section 363(f) of the Bankruptcy Code.   Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable non-bankruptcy law permits such a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (d) the interest is in *bona fide* dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.   11 U.S.C. § 363(f).   The Court also may authorize the sale of a debtor's assets free and clear of any liens pursuant to Section 105 of the Bankruptcy Code, even if Section 363(f) does not apply.   *See In re Trans World Airlines*, No. 01-0056(PJW), 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001), *aff'd sub nom. In re Trans World Airlines, Inc.*, 322 F.3d 283 (3rd Cir. 2003).

62.     The Debtors submit that the sale of the Assets free and clear of all Interests will satisfy the requirements of Section 363(f) of the Bankruptcy Code.   The Debtors also submit that the service of the Designation of Winning Bid and notice of the Sale Hearing, in accordance with applicable rules and the proposed procedures, will provide creditors and other interested parties sufficient notice of and opportunity to object to the proposed Sale, if deemed warranted, and, thus, support approval of the sale free and clear of any and all Interests.

35

## Purchasers of Assets Should be Entitled to Protections of
## Section 363(m) of the Bankruptcy Code

63.     Section 363(m) of the Bankruptcy Code provides, in relevant part, that "[t]he reversal or modification on appeal of an authorization under [Section 363(b)] … of a sale or lease of property [of the estate] does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."  *See* 11 U.S.C. § 363(m).  Although the Bankruptcy Code does not define "good-faith purchaser," "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of [purchaser's] conduct in the course of the sale proceedings."  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (internal citations omitted); *see Factory Mutual Insurance, Co. v. Panda Energy Int'l, Inc. (In re Hereford Biofuels, L.P.)*, 466 B.R. 841, 860 (Bankr. N.D. Tex. 2012).  "Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders."  *In re Hereford Biofuels, L.P.*, 466 B.R. at 860.

64.     The Debtors submit that any Bid or asset purchase agreement that results in the Sale of any Assets under the Bidding Procedures will be an arms'-length transaction following a transparent marketing, bid solicitation, and auction processes, and, thus, the Winning Bidder(s) should be entitled to the protections of Section 363(m) of the Bankruptcy Code.

## The Rights of the DIP Lenders and Prepetition Secured Parties to Credit Bid

65.     In accordance with Paragraphs 9(e) and 29 of the Interim DIP Order, the DIP Lenders and the Prepetition Secured Parties may credit bid the full amount of the DIP Obligations or the Prepetition Secured Obligations, respectively and as applicable, to acquire any or all Assets subject to the parties' respective security interests (other than any collateral in respect of the J.

36

Aron Obligations),[9] on a dollar-for-dollar basis, as provided in Section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing such credit bid and whether any Sale is (a) pursuant to Section 363 of the Bankruptcy Code, (b) pursuant to a chapter 11 plan, or (c) by a chapter 7 trustee.  *See* Docket No. 104, at pp. 44, 66-67.

66.    Section 363(k) of the Bankruptcy Code further supports the rights of the DIP Lenders and Prepetition Secured Parties to credit bid for the Assets, subject to the limitations of the Interim DIP Order and DIP Loan Documents.  Section 363(k) of the Bankruptcy Code provides that "[a]t a sale under section (b) of [Section 363 of the Bankruptcy Code] of property that is subject to a lien that secures an allowed claim, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property."  11 U.S.C. § 363(k).  "It is well settled among district and bankruptcy courts that creditors can bid the full face value of their secured claims under § 363(k) [of the Bankruptcy Code]."  *Cohen v KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 459 (3rd Cir. 2006); *see also RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012).

67.    Accordingly, to the extent further authorization is required, the Debtors submit that the DIP Lenders and Prepetition Secured Parties should be permitted to credit bid in accordance with the Interim DIP Order and Section 363(k) of the Bankruptcy Code.

**Approval of Reasonable Bid Protections for a Stalking Horse Bidder is Appropriate**

68.    In order to incentivize a Stalking Horse Bidder to enter into a Stalking Horse APA, thereby establishing a base price for the Assets at any Auction, the Debtors may need to offer certain Bid Protections, including, without limitation, break-up fees and expense reimbursement. The terms of any Bid Protections and the justification for the Debtors' need to offer such Bid

---

[9] For the avoidance of doubt, the IFF Property shall not be the subject of any sale pursuant to this Motion or the Bidding Procedures.

Protections shall be detailed in any Stalking Horse Notice and subject to objection and Court approval in accordance with the Bidding Procedures.

69.     The Debtors submit that any proposed Bid Protections will be fair and reasonable under the circumstances.  Any Bid Protections shall be negotiated at arms'-length and in good faith, and the Debtors shall only agree to Bid Protections to the extent deemed necessary to secure a beneficial Stalking Horse Bid.  While subject to further disclosure and objection, courts routinely approve bid protections, including break-up fees, expense reimbursement and other incentives as reasonable and, often, necessary to facilitate the sale of assets in chapter 11 cases.  *See, e.g., In re Acis Capital Mgmt., L.P.*, 604 B.R. 484, 517 (N.D. Tex. 2019) ("Without the Break-Up Fee, the Trustee would have had no ready, willing, and able partner for the proposed Plan. . . ."); *In re Lincolnshire Campus, LLC*, 2010 WL 5269706 at *2 (Bankr. N.D. Tex. July 23, 2010) ("The Break-Up Fee . . . induced the Buyer to submit a bid that will serve as a minimum or floor bid on which the Debtors . . . and other bidders can rely. Accordingly, the Break-Up Fee . . . [is] reasonable and appropriate and represent[s] the best method for maximizing the value for the benefit of the Debtors' estates."); *Reliant Energy Channelview LP v. Kelson Channelview LLC (In re Reliant Energy Channelview LP)*, 594 F.3d 200, 206-07 (3d Cir. 2010); *see also In re Integrated Res., Inc.*, 147 B.R. at 659-660 ("Breakup fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . In fact, because the . . . corporation ha[s] a duty to encourage bidding, break-up fees can be necessary to discharge [such] duties to maximize values."); *In re ASARCO, L.L.C.*, 650 F.3d at 603 (affirming a break-up fee that the bankruptcy court found helped to maximize the debtor's estate).

70.     To the extent the Debtors agree to any Bid Protections, the Debtors submit that the approval of the Bid Protections will be warranted under applicable law.  The Debtors reserve the

4830-5234-0722.16

right to supplement the discussion of any Bid Protections and the bases for approving such Bid Protections in any Stalking Horse Notices.

### Assumption and Assignment of Executory Contracts and Unexpired Leases Should be Authorized under the Bankruptcy Code

71.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a).  The standard governing bankruptcy court approval of the assumption, rejection, or assumption and assignment of an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports the assumption, rejection, or assumption and assignment of the subject contract or lease.  *Richmond Leasing Co. v. Capital Bank, N.A.*, 726 F.2d 1303, 1309 (5th Cir. 1985) ("As long as assumption . . . appears to enhance a debtor's estate, court approval . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.") (internal quotations omitted).

72.     The assumption and assignment of certain Executory Contracts may be an essential aspect of the Sale of the Debtors' Assets.  Accordingly, the Debtors submit that the agreement to assume and assign any Executory Contracts pursuant to the Assumption and Assignment Procedures is an appropriate exercise of the Debtors' business judgement.  The Debtors further submit that the notice provisions and objection deadlines for counterparties to Executory Contracts under the Assumption and Assignment Procedures are reasonable and appropriate, and provide counterparties an adequate notice and opportunity to object to or seek adequate assurance of future performance in connection with the assumption and assignment of any Executory Contracts.

73.     If a debtor has exercised sound business judgment in seeking to assume or assign an executory contract, the court must determine whether the assumption satisfies the requirements

of Section 365(b) of the Bankruptcy Code—namely, whether the debtor or assignee: (a) cures, or provides adequate assurance of promptly curing, prepetition defaults under the subject contract or lease; (b) provides adequate compensation for any pecuniary losses arising therefrom; and (c) provides adequate assurance of future performance by the assignee under the subject agreement.

74.     The Debtors submit that the requirements of Sections 365(b)(1) and 365(f)(2)(A) of the Bankruptcy Code shall be satisfied in accordance with the terms of the Assumption and Assignment Procedures, which provide for the identification and payment of any Cure Amount(s), the provision of adequate assurance of future performance upon selection of the Winning Bidder, and sufficient notice and opportunity to object to the assumption and assignment of any Executory Contracts, which permits counterparties to Executory Contracts an opportunity to raise and, amicably or through the Sale Hearing, resolve any issues pertaining to the assumption and assignment of the subject Executory Contract(s).

75.     Accordingly, the Debtors respectfully request that the Court approve the assumption and assignment of Executory Contracts in accordance with the Bidding Procedures, subject to the rights of any counterparties to object thereto.

**Notice of the Auction and Sale Hearing is Sufficient**

76.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide interested parties with 21-days' notice of the Sale Hearing and, pursuant to Bankruptcy Rule 2002(c)(1), such notice must also include the time and place of the Auction, the Sale Hearing and any deadline(s) for filing objections to the requested relief.  The Debtors submit that the notices provided in connection with this Motion and proposed under the Bidding Procedures satisfy the requirements of Bankruptcy Rules 2002(a) and 2002(c)(1) and further or additional notice is not warranted.

4830-5234-0722.16

## **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**

77.     The Debtors hereby request that the Court waive the 14-day stay requirements of Bankruptcy Rules 6004(h) and 6006(d).  The waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) will allow any Sale to close as soon as possible and, thus, prevent delay in the administration of these Chapter 11 Cases and avoidance of any holding costs associated with such Assets.  Further, a waiver of the 14-day stay may be necessary to comply with the milestones under the Interim DIP Order and DIP Loan Documents and, thus, avoid an event of default that could jeopardize the viability of these Chapter 11 Cases.  Accordingly, the Debtors respectfully submit that a waiver of the 14-day stay contained in Bankruptcy Rules 6004(h) and 6006(d) is appropriate.

## **Reservation of Rights**

78.     Nothing contained herein is intended to be or shall be deemed as (a) an admission as to the validity or amount of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute the validity, amount or priority of any claim against the Debtors, (c) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any applicable non-bankruptcy law; (d) an admission as to whether any contract or lease is an executory contract or unexpired lease within the meaning of Section 365 of the Bankruptcy Code; (e) an agreement to assume, reject, or assume and assign any executory contract or unexpired lease under Section 365 of the Bankruptcy Code; or (f) a waiver of the rights of parties in interest to contest whether any of the interests described herein constitute property of the Debtors' Estates.  The Debtors expressly reserve any and all rights with respect to the foregoing matters.

4830-5234-0722.16

## Request for Emergency Relief

79.     The Debtors respectfully request emergency consideration of this Motion.  Under the terms of the Interim DIP Order, the Debtors must obtain a binding stalking horse bid no later than September 10, 2021, and consummate a sale of all or substantially all Assets of the Estates on or before November 9, 2021.  If heard on regular notice, the Debtors would have less than four (4) weeks to market and solicit bids for the purchase of the Assets, which may significantly limit the potentially interested parties in the acquisition of the Assets—especially given the scale, complexity and expense of the Refinery operations and necessary governmental approvals.  In order to maximize the time to market the Assets and, in so doing, ensure the highest and best purchase price for the Assets, the Debtors respectfully submit that hearing the Motion on an emergency basis is warranted.  Further, hearing the Motion on an emergency basis will not adversely affect any interested parties as (a) the Debtors have consulted with the principal interested parties in preparing the Bidding Procedures and (b) any interested parties may object to any proposed Sale during the Sale Hearing.

80.     Pursuant to Local Rule 9013-1(i), this Motion is verified as to its accuracy Debtors' proposed counsel.

## No Prior Request for Relief

81.     No prior request for the relief sought herein has been made to this Court or any other Court in connection with these Chapter 11 Cases.

## Notice

82.     Notice of this Motion will be given to the following parties: (a) the United States Trustee for the Southern District of Texas; (b) all secured creditors; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest

consolidated unsecured creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g) other interested parties as identified by the Debtors; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002; (i) members of the Committee and their counsel, if known; (j) and such other parties as noted on the certificate of service.  The method of service for each party will be described more fully in the certificate of service prepared by the Debtors' claims and noticing agent. The Debtors respectfully submit that, under the circumstances, such notice is sufficient and that no other or further notice of this Motion is required.

**WHEREFORE**, Debtors respectfully request that this Court (a) enter the Bidding Procedures Order, in substantially the same form as attached hereto as Exhibit A, (b) after a Sale Hearing, enter one or more Sale Orders approving the Sale of Assets to the Winning Bidder(s), and (c) granting such further and additional relief as the Court deems due and proper.

RESPECTFULLY SUBMITTED this 26th day of July, 2021.

BAKER & HOSTETLER LLP

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: egreen@bakerlaw.com
          jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
(Admitted Pro Hac Vice)
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com

*Proposed Counsel for the Debtors and Debtors*
*in Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Elizabeth A. Green*
Elizabeth A. Green

**Certificate of Service**

I certify that on July 26, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Elizabeth A. Green*

Elizabeth A. Green