**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC,** *et al.*,[1] | **CASE NO.: 21-32351** |
| **Debtors.** | **Jointly Administered** |

**ORDER GRANTING DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF ORDER:
(I) ESTABLISHING BIDDING AND SALE PROCEDURES; (II) APPROVING THE
<u>SALE OF ASSETS; AND (III) GRANTING RELATED RELIEF</u>**

Upon the motion ("**Motion**")[2] of the debtors and debtors in possession (collectively, the

"**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") for

entry of an order (the "**Order**") (i) approving the proposed bidding and sale procedures attached

hereto as <u>Appendix A</u> (the "**Bidding Procedures**") for the proposed sale(s) of substantially all

assets of the Debtors' bankruptcy estates, (ii) scheduling an auction and final sale hearing for

approval of the Sale, and (iii) approving procedures for the assumption and assignment of

executory contracts and unexpired leases of the Debtors in connection with the Sale, as more fully

set forth in the Motion; finding this Court has jurisdiction over this matter pursuant to 28 U.S.C.

§ 1334; finding that this matter is a core proceeding pursuant to 28 U.S.C. § 157; finding this Court

may enter final orders in this matter consistent with Article III of the United States Constitution;

finding that this matter is properly venued in this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

finding emergency consideration of the Motion warranted under the circumstances presented;

finding notice of the Motion due and proper under the circumstances and in accordance with all

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services,  LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222).  The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

4833-2362-2899.8

applicable rules and orders, and no further or additional notice of the Motion being warranted; having considered the Motion and all other documents submitted in support of the Motion; and, after due deliberation, finding that the relief requested by and through the Motion, is due and proper and serves the best interests of the Estates and their creditors; and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED:**

1.     The Motion is granted as set forth herein.

2.     All objections to the Motion or entry of this Order, or granting of the relief provided herein, that have not been withdrawn, waived, resolved or settled, are hereby denied and overruled on the merits with prejudice.

3.     The Bidding Procedures, attached hereto as <u>Appendix A</u>, including, without limitation, the procedures for the Auction and the assumption and assignment of Executory Contracts set forth therein, are hereby approved in all respects and shall govern any and all bids and bid proceedings related to the Assets.  The Debtors and their professionals and agents are authorized to take any and all action necessary or appropriate to implement the Bidding Procedures, including, without limitation, engaging individuals or entities on reasonable terms, subject to consultation with the Notice Parties and compliance with the terms of the Interim DIP Order and Budget (as defined in the Interim DIP Order), to assist with the implementation of the Bidding Procedures; *provided, however*, that the engagement or compensation of any professionals shall be subject to compliance with any applicable provisions of the Bankruptcy Code.

4.     If the DIP Lenders and/or any Prepetition Secured Party intends to credit bid for any of the Assets, such parties shall notify the Debtors, U.S. Trustee, and the other Notice Parties of their intention to credit bid no later than **September 17, 2021**.

5.      The deadline for any Potential Bidders to submit a Bid for any or all of the Assets of the Debtors shall be **September 17, 2021, at 5:00 p.m.** (prevailing Central Time).  Bids must be delivered in writing and accompanied by all supporting documents and information, by mail, facsimile, or email, prior to the Bid Deadline to: (i) counsel to the Debtors, Baker & Hostetler, LLP, 200 SunTrust Center, Suite 2300, 200 South Orange Avenue, Orlando, Florida 32801, Attn: Elizabeth A. Green (egreen@bakerlaw.com), and 45 Rockefeller Plaza, New York, New York 10111, Attn: Jorian L. Rose (jrose@bakerlaw.com); and (ii) counsel for the Official Committee of Unsecured Creditors (the "**Committee**"), if any.  The Potential Bidder must deliver the proposed Bid, and all supporting documents and information, such that the Bid and related documents and information are actually received by the aforementioned parties no later than the Bid Deadline.

6.      The Debtors, in consultation with the Lender Advisors, shall prepare a summary of the highest and best Bid(s) for all or substantially all Asset and/or the highest and best Piecemeal Bid(s) (the "**Bid Summary**").  The Debtors shall upload the Bid Summary to the Data Room no later than **September 7, 2021** (the "**Bid Summary Deadline**"), which shall be deemed to make such information "generally available to all potential bidders" for purposes of Paragraph 37 of the Complex Rules.

7.      The Debtors may designate a Stalking Horse Bid and Stalking Horse Bidder on or before **September 10, 2021**.  Designation of a Stalking Horse Bid and Stalking Horse Bidder in accordance with the Bidding Procedures for all or substantially all Assets of the Debtors, or more than one Stalking Horse Bid and Stalking Horse Bidder, if the Assets subject to such Stalking Horse Bids, in the aggregate, constitute all or substantially all Assets of the Debtors, shall satisfy the Debtors' obligation under the Interim DIP Order to "obtain[]…a binding stalking horse bid for the sale of all or substantially all of the Debtors' assets…."  *See* Docket No. 104, at p. 45.  The

3

4833-2362-2899.8

Debtors shall not designate any Qualified Bid as a Stalking Horse Bid unless such Bid is reasonably acceptable to each of the Prepetition Secured Parties.

8.      If the Debtors designate a Stalking Horse Bidder, the Debtors shall file and serve the Stalking Horse Notice on or before **September 13, 2021**.  The Stalking Horse Notice shall include the following information and disclosures: (a) the identity of the Stalking Horse Bidder(s); (b) a summary of the material terms of the Stalking Horse Bid(s), including, without limitation, the Assets subject thereto, the consideration proposed for the Sale, any proposed Bid Protections and the bases therefor, and any amendments to the Bidding Procedures required under the Stalking Horse Bid(s), (c) outline any and all proposed Bid Protections, which may include the payment of a break-up fee and any other appropriate or customary protections, *provided* that the aggregate amount of the Bid Protections that may be paid to any or all Stalking Horse Bidders shall not exceed three percent (3%) of the proposed purchase price and that any Bid Protections shall only be payable upon the closing of and out of the proceeds of a sale transaction; and (d) the means of obtaining a copy of the Stalking Horse Bid and, if available, the Stalking Horse APA, and a redline marked against the APA; *provided, however*, that the Debtors shall provide copies of the Stalking Horse Bid and Stalking Horse APA to the Court and the U.S. Trustee, regardless of whether the Stalking Horse Bid and Stalking Horse APA are attached to the Stalking Horse Notice, no later than two (2) business days after the filing of the Stalking Horse Notice.

9.      Any objections to the Stalking Horse Notice, including any Bid Protections designated therein, shall be filed on or before **September 17, 2021**.  The failure to file a timely objection shall be deemed to be a waiver of any such objections and consent to the approval of the Bid Protections and amended Bidding Procedures.  If an objection is timely filed, the Debtors shall notice a hearing before the Court to consider the objection(s) on an emergency basis; *provided,*

4

*however,* that the Bidding Procedures will be deemed approved regardless of whether or not the Auction occurs prior to the resolution of any objection to the Bid Protections or amended Bidding Procedures. Any objecting parties shall be deemed to have consented to the expedited and final resolution of any such objections by the Court. The filing or pendency of any objection(s) shall not alter any dates or deadlines established under the Bidding Procedures or affect the binding nature of the Stalking Horse Bid or any other Bids.

10.     The Debtors are hereby authorized to conduct an Auction in accordance with the terms of the Bidding Procedures, including, without limitation, an Open Auction, subject to the agreement of the DIP Agent and Prepetition Secured Parties. If the Debtors conduct an Auction pursuant to the Bidding Procedures, the Auction shall begin on **September 22, 2021, at 10:00 a.m. (prevailing Central Time)** either (a) at the offices of Baker & Hostetler, LLP, located at 811 Main Street, Suite 1100, Houston, Texas 77002 or (b) via an virtual platform, such as Zoom or GoToMeeting, as the Debtors designate. No later than forty-eight (48) hours prior to the Auction Date, the Debtors shall provide notice of the Auction location and, if via a virtual platform, the credentials required to access such platform, to all Qualified Bidders, the Notice Parties, and the U.S. Trustee. The Debtors are authorized to continue the Auction from time to time, adjourn the Auction at any time, and re-open the Auction at any time prior to the deadline to file the Designation of Winning Bidder.

11.     Subject to the provisions of the Bidding Procedures, the Debtors are authorized to select a Winning Bidder following the conclusion of the Auction and execute, deliver, and perform all obligations of the Debtors under the Stalking Horse APA or asset purchase agreement of the Winning Bidder, and all other transactional documents related thereto, pending the Sale Hearing. The Debtors shall file and serve a Designation of Winning Bid as soon as practicable following

the conclusion of the Auction, but in no event later than **September 24, 2021**.  The Designation of Winning Bid shall: (i) identify the Winning Bidder and Back-up Bidder; (ii) provide a summary of the Winning Bid and Back-up Bid; (iii) identify all Purchased Contracts (defined below) designated by the Winning Bidder or Back-up Bidder; (iv) identify the Cure Amount, if any, the Debtors estimate is required to assume and assign each Purchased Contract in compliance with Section 365(b) and 365(f)(2) of the Bankruptcy Code; and (v) contain a statement as to the Winning Bidder's and Back-up Bidder's ability to perform the Debtors' obligations under the subject Purchased Contracts.

12.     Any objections to the Sale to the Winning Bidder or Back-up Bidder per the terms of their respective Bids shall be filed on or before **October 4, 2021, at 5:00 p.m. (prevailing Central time)**; *provided, however*, that objections to the assumption and assignment of any Executory Contracts may be filed up and until the Contract Assumption Objection Deadline.  The failure to file a timely objection shall be deemed to be a waiver of any such objections and consent to the approval of the Sale to the Winning Bidder pursuant to the terms of the Winning Bid and associated asset purchase agreement, as may be amended, supplemented or modified prior to or during the Sale Hearing.  Any reply or other response to any objections to the Sale shall be filed and served on or before **October 8, 2021, at 5:00 p.m. (prevailing Central time)**.

13.     The Debtors shall designate any Executory Contracts to be assumed and assigned to the Winning Bidder through the Sale not previously identified in the Designation of Winning Bid via an Amended Designation of Winning Bid filed no later than **October 8, 2021**.  The Debtors shall serve all known counterparties to any newly-identified Executory Contracts in the Amended Designation of Winning Bid with a copy of the Amended Designation of Winning Bid and notice of the Sale Hearing via email, facsimile or overnight courier, as soon as practicable thereafter;

4833-2362-2899.8

*provided, however*, that no such service shall be necessary if the counterparties to any newly-identified Executory Contracts, or their respective counsel, receive notice of filings via the Court's Electronic Case Filing System.

14.     Any objections to the assumption and assignment of any Purchased Contracts shall be filed and served on or before **October 12, 2021, at 12:00 p.m.** (prevailing Central Time) (the "**Contract Assumption Objection Deadline**"), and shall (a) identify the Purchased Contract(s) to which the objector is party, (b) describe with particularity any cure the objector contends is required under Section 365 of the Bankruptcy Code (the "**Cure Claim**"), (c) identify the bases of the alleged Cure Claim under the proposed Purchased Contract, and (d) attach all documents supporting or evidencing the Cure Claim.  If no objection is filed by the Contract Assumption Objection Deadline, or if the objection fails to comply with the requirements set forth herein, the Cure Amount set forth in the Designation of Winning Bid Notice, or any amended version thereof, as applicable, shall control and any counterparties to the subject Purchased Contract(s) shall be deemed to waive and shall be forever barred from asserting in any other claim or objection under Section 365 of the Bankruptcy Code, or otherwise, including, without limitation, any objection to the assignability of any of the purchased contracts, other than an objection to adequate assurance of performance under the Purchased Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code.  The Debtors may present any response to such objections in writing at any time prior to the Sale Hearing or orally during the Sale Hearing.

15.     The Court shall hold a hearing to consider the approval of the Sale pursuant to the Winning Bid or Back-up Bid (the "**Sale Hearing**") on **October 14, 2021, at _____ a.m./p.m. (prevailing Central time)**.  The Debtors shall serve all interested parties with a notice of the Sale

Hearing and proposed Sale Order in accordance with applicable rules upon the filing of the Designation of Winning Bid.

16.     If approved during the Sale Hearing, and subject to entry of the Sale Order, the Winning Bidder shall close the Sale transaction set forth in the Winning Bid and associated asset purchase agreement no later than **November 1, 2021, at 5:00 p.m. (prevailing Central Time)**.  If the Winning Bidder fails to close by this deadline, the Debtors may, in their discretion, designate the Back-up Bidder as the Winning Bidder and proceed with closing the transaction under the Back-up Bid and associated asset purchase agreement.  If designated as the Winning Bidder, the Back-up Bidder shall close the Sale transaction set forth in the Back-up Bid and associated asset purchase agreement no later than **November 8, 2021, at 5:00 p.m. (prevailing Central Time)**. The Debtors, in consultation with the Notice Parties and agreement of the DIP Agent and Prepetition Secured Parties, may grant any Winning Bidder additional time to perform and, to the extent necessary, extend the Closing Date.

17.     Notwithstanding anything in this Order to the contrary, any payment to be made, or any authorization contained, hereunder shall be subject to the terms of any orders granting the use of cash collateral and approving debtor in possession financing in these chapter 11 cases (including with respect to any budget governing or relating to such use) including, without limitation, the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "**Interim DIP Order**") and the Final Order (as defined in the Interim DIP Order and collectively, the "**DIP Orders**"),  and to the extent there is any inconsistency between the terms of the DIP Orders and any action taken or proposed to be taken

8

hereunder, the terms of the DIP Orders shall control.  For the avoidance of doubt, in the event of a Termination Event under paragraph 15 of the Interim DIP Order and related provisions of the Final Order, nothing in this Order shall alter or impact the DIP Lenders' and the Prepetition Secured Parties' rights pursuant the terms of the DIP Orders and the DIP Credit Agreement or the Prepetition Secured Documents (as those terms are defined in the Interim DIP Order), as applicable.

18.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

19.     The stay requirements of Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and the terms and conditions of this Order are immediately effective and enforceable upon its entry.

20.     Any period of time prescribed or allowed by this Order or the Bidding Procedures shall be computed in accordance with Bankruptcy Rule 9006.

21.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____

_____
Honorable David R. Jones
United States Bankruptcy Judge

4833-2362-2899.8

**APPENDIX A**

**BIDDING PROCEDURES**

4833-2362-2899.8

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,**[3] | **CASE NO.: 21-32351** |
| Debtors. | **Jointly Administered** |

## BIDDING PROCEDURES

The following procedures shall govern the solicitation and acceptance of any and all bids for the purchase or acquisition of any assets of Limetree Bay Services, LLC ("**LBS**") and its debtor affiliates (together with LBS, the "**Debtors**") by and through the above-captioned, jointly administered bankruptcy cases (the "**Chapter 11 Cases**"):

### Summary of Bidding Procedures

The Debtors developed the Bidding Procedures (detailed below), with the assistance of advisors and in consultation with the DIP Agent, Prepetition Secured Parties, and J. Aron (as those terms are defined in the Interim DIP Order (defined below)) to provide the best opportunity to maximize the value of the Assets for the benefit of the Estates and their creditors through an efficient and streamlined sale process, which comports with the terms of the DIP Loan Documents (as defined in the Interim DIP Order) and the Bankruptcy Code (11 U.S.C. §§ 101, *et seq*.).

In short, the Bidding Procedures provided for the solicitation of bids from potential purchasers in an effort to identify a stalking horse bidder. Following the Bid Deadline (defined below), the Debtors, in consultation with the Notice Parties,[4] shall select one or more bids to serve as stalking horse bids for all or substantially all assets of the Debtors, individually or collectively, depending on the nature of the subject bids. Thereafter, the Debtors shall hold an Auction to provide other Qualified Bidders (defined below) an opportunity to bid against the selected stalking horse bid(s). Upon conclusion of the Auction, the Debtors, in consultation with the Notice Parties, shall select a Winning Bid (defined below) and file a notice and designation of the Winning Bid for approval at the Sale Hearing.

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services,  LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222).  The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[4] As used herein, "Notice Parties" refers to, collectively, the DIP Agent, the Prepetition Secured Parties, J. Aron (as defined in the Interim DIP Order), and any committee(s) appointed in these Chapter 11 Cases.  Unless otherwise defined, any capitalized term used herein shall have the meaning ascribed to it in the motion to approve these Bidding Procedures.

4833-2362-2899.8

**Proposed Dates and Deadlines for the Sale**

Under the terms of the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 104] (the "**Interim DIP Order**"), the Court approved certain milestones under the DIP Financing (as defined in the Interim DIP Order), including, without limitation, milestones with respect to the marketing and sale of all or substantially all assets of the Debtors.  The Bidding Procedures are designed to comply with the milestones and consummate a sale of all or substantially all assets of the Debtors on or before November 9, 2021.

The dates and deadlines established under the Bidding Procedures to comply with the milestones are as follows:[5]

| Date/Deadline | Event |
| --- | --- |
| August 6, 2021 | Deadline to establish and populate Data Room |
| September 7, 2021 | Bid Summary Deadline |
| September 10, 2021 | Stalking Horse Designation Deadline |
| September 13, 2021 | Deadline to file Stalking Horse Notice |
| September 17, 2021, at 5:00 p.m. CT | Bid Deadline and Credit Bid Designation Deadline |
| September 17, 2021 | Deadline to object to Stalking Horse Notice |
| September 20, 2021, at 10:00 a.m. CT | Deadline to provide notice of Auction location |
| September 22, 2021, at 10:00 a.m. CT | Auction Date |
| September 24, 2021 | Deadline to file the Designation of Winning Bid |
| October 4, 2021, at 5:00 p.m. CT | Deadline to object to the Sale |
| October 8, 2021, at 5:00 p.m. CT | Deadline to reply to objection(s) to the Sale |
| October 8, 2021 | Deadline to file Amended Designation of Winning Bid to add previously unidentified Executory Contracts |
| October 12, 2021, at 12:00 p.m. CT | Contract Assumption Objection Deadline |
| October 14, 2021 | Sale Hearing (subject to Court availability) |

[5] Some of the dates and deadlines in the table are dependent on the occurrence of certain events.  In such cases, the dates provided are estimated or proposed dates or the last date upon which the subject date or deadline may occur under the Interim DIP Order and/or DIP Loan Document.  Any capitalized terms used in the table shall have the meanings ascribed to them in this Motion.

4833-2362-2899.8

| October 15, 2021 | Expected entry of Sale Order |
| October 31, 2021 | Deadline to file Amended Designation of Winning Bid to remove previously identified Executory Contracts |
| November 1, 2021, at 5:00 p.m. CT | Deadline for Winning Bidder to close sale transaction |
| November 8, 2021, at 5:00 p.m. CT | Deadline for Back-up Bidder to close sale transaction (if applicable) |

## Bidding Procedures

### A.   Participation Requirements

1.      To participate in the bidding process or otherwise be considered for any purpose hereunder, each interested person or entity interested in submitting a Bid to purchase any of the Assets (each, a "**Potential Bidder**") must deliver or previously have delivered to the Debtors the following documents (the "**Preliminary Bid Documents**"):

   a.      An executed confidentiality agreement in a form acceptable to the Debtors, in consultation with the Notice Parties (the "**Confidentiality Agreement**");

   b.      Preliminary documentary evidence satisfactory to the Debtors, in consultation with the Notice Parties, of the Potential Bidder's financial ability to fully and timely perform and close the Sale;

   c.      Documents identifying the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity; and

   d.      A list with the names and contact information for any financial, legal, and other advisors of the Potential Bidder has engaged to assist in connection with the proposed Sale.

### B.   Bid Requirements

2.      Any Potential Bidder may submit a bid (each a "**Bid**") for either: (a) all or substantially all of the Assets; or (b) any portion or combination of Assets (a "**Piecemeal Bid**"). For the avoidance of doubt, no Bid or Piecemeal Bid may include the IFF Property. The DIP Lenders and Prepetition Secured Parties need not comply with the proposed Bidding Procedures to submit a credit bid and, for proposes of participating at the Auction, shall be deemed a Qualified Bidders.

3.     To participate in the Sale process, each Potential Bidder must, on or before September 17, 2021, at 5:00 p.m. prevailing Central Time (the "**Bid Deadline**"):

a.     Fully disclose the identity of each entity that will be bidding for the assets or otherwise participating in connection with such Bid and the complete terms of any such participation.

b.     Submit to the Debtors an executed purchase agreement substantially in the form of the APA (as defined below), as well as a redline of such agreement marked against the APA, memorializing a Bid for all or substantially all of the Assets or a Piecemeal Bid that comports with the terms of the Bidding Procedures and the proposed Sale, discussed *infra*. No later than August 6, 2021, the Debtors shall upload to the Data Room (defined below) a proposed form of asset purchase agreement for the acquisition of substantially all Assets of the Estates (the "**APA**").

c.     Submit a Bid that is: (i) binding and irrevocable for a period of no less than 120 days[6] from the Bid Deadline, unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Back-up Bidder; (ii) without financing, due diligence, internal approval or any other contingencies, including with respect to title defect or environmental laws, unless otherwise consented to by the Debtors, in consultation with the Notice Parties; *provided, however*, that a Bid may contain a list of anticipated required regulatory approvals and the expected timing for obtaining such approvals; (iii) on terms substantially similar to those terms contained in the APA; and (iv) in compliance with the Bidding Procedures.

d.     Indicate the form of consideration of the Bid and the estimated market value of any non-cash consideration.

e.     If the Potential Bidder is submitting a Piecemeal Bid, the Potential Bidder must identify specifically the Assets subject to the Piecemeal Bid.

f.     If the Potential Bidder proposes acquiring any assets of LBT, or any parent or subsidiary of LBT, including, without limitation, any of the Terminal assets, or any other non-Debtor entities (collectively, the "**Non-Debtor Assets**"), the Potential Bidder must (i) identify any and all Non-Debtor Assets subject to the Bid and (ii) either (A) confirm that the closing of the proposed Sale of the Debtors' Assets is not contingent on the acquisition of the Non-Debtor Assets or (B) provide evidence in a form acceptable to the Debtors, after consulting with the Notice Parties, that the Potential Bidder and owner(s) of the Non-Debtor Assets subject to the Bid have entered into a binding and enforceable agreement, subject to any conditions related to the approval of the proposed Sale by the Court, for the sale and acquisition of the subject Non-Debtor Assets. For the avoidance of doubt, the Debtors

---

[6] Unless otherwise stated, all references to "days" contained herein refer to calendar days. Bankruptcy Rule 9006 shall govern the computation of any and all dates and deadline under the Bidding Procedures.

shall not (i) market or sell any Non-Debtor Assets, (ii) condition the Sale of any Assets on the sale or acquisition of any Non-Debtor Assets, (iii) incur or pay any expenses related to the marketing or sale of any Non-Debtor Assets, or (iv) provide any assistance with due diligence related to any Non-Debtor Assets.  Any Non-Debtor Assets  shall not be subject to the proposed Sale Order or jurisdiction of the Court.

g.     Specify the portion of the aggregate purchase price that is being allocated to each type or group of Assets, including to insurance claims or proceeds, inventory (including any Inventory Financing Collateral (as defined in the Interim DIP Order)), equipment and any other type or group of Assets that may be subject to a lien held by the DIP Lenders or any of the Prepetition Secured Parties.

h.     Unless the Bid is a credit bid being submitted by the DIP Lenders or a Prepetition Secured Party, make a good faith cash deposit in the form of a cashier's check or wire transfer into an interest bearing escrow account (the "**Escrow Account**") maintained by the Debtors' counsel in an amount not less than ten percent (10%) of the total consideration for the Bid, which deposit shall immediately become non-refundable and credited toward the purchase price if and when the Qualified Bidder (as defined below) making such deposit is declared to be the winning bidder (the "**Winning Bid**" and "**Winning Bidder**") or back-up bidder (the "**Back-up Bid**" and "**Back-up Bidder**") at the Sale Hearing.  In the event a Qualified Bidder is not the Winning Bidder or Back-up Bidder, such Qualified Bidder's deposit shall be refunded as set forth herein.

i.     Identify the liabilities, if any, that the Potential Bidder seeks to assume through the Sale transaction.

j.     Provide a list of the Debtors' Executory Contracts the Potential Bidder seeks to have the Debtors assume and assign to the Potential Bidder by and through the Sale.  No later than August 6, 2021, the Debtors shall upload to the Data Room a list of Executory Contracts that may be subject to assumption and assignment as part of a Sale.

k.     Provide documentary evidence satisfactory to the Debtors, in consultation with the Notice Parties, of the Potential Bidder's financial ability to (i) fully and timely perform and close the Sale pursuant to the Bid and proposed assets purchase agreement, if declared to be the Winning Bidder, and (ii) provide adequate assurance of future performance of all Executory Contracts identified for assumption and assignment to the Potential Bidder, including, without limitation, the following:

i.     evidence of the Potential Bidder's internal resources and proof of unconditional debt funding commitments from a recognized financial institution and, if applicable, equity commitments in an

aggregate amount equal to the purchase price and any applicable cure amounts and other closing payments, if any, or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in such amount, in each case, as are needed to close the proposed Sale transaction;

ii.      contact names and telephone numbers for verification of financing sources;

iii.     current audited financial statements (or such other form of financial disclosure and credit-quality support or enhancement, acceptable to the Debtors, in consultation with the Notice Parties) of the Potential Bidder or those entities that will guarantee in full the payment obligations of the Potential Bidder;

iv.      a description of the Potential Bidder's *pro forma* capital structure; and

v.       any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors demonstrating that such Qualified Bidder has the ability to close the applicable Sale transaction.

l.       Disclose any connections or agreement with the Debtors or their affiliates, any of the Notice Parties, or any other known Potential Bidder or Qualified Bidder, and/or any officer, director or equity security holder of the Debtors or their affiliates or any of the foregoing and confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale transaction.

m.      Confirm in writing its agreement to accept and abide by the terms, conditions and procedures set forth herein and provide evidence of due authorization to enter into the proposed Sale pursuant to the asset purchase agreement submitted, or any derivation thereof.  In the event that the Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Potential Bidder must furnish written evidence acceptable to the Debtors, in consultation with the Notice Parties, of the approval of the contemplated transaction by the equity holders or members of such Potential Bidder

n.       Identify any and all bid protections (the "**Bid Protections**") required by the Potential Bidder to serve as the Stalking Horse Bidder (defined below) for the Sale, including without limitation, any break-up fee, expense reimbursement, termination fee or similar type of payment or bid protections; *provided, however*, that the aggregate amount of any proposed Bid Protections may not exceed three percent (3%) of the total purchase price under the Bid.

4.      The Debtors, in consultation with the Notice Parties, shall determine whether a Bid or Piecemeal Bid that meets the above minimum requirements constitutes a qualified bid (a "**Qualified Bid**", and the bidder submitting such Qualified Bid, a "**Qualified Bidder**").  The Debtors will promptly advise each Potential Bidder in writing whether or not the Potential Bidder is a Qualified Bidder.  If a Bid submitted on or prior to the Bid Deadline fails to meet all requirements of a Qualified Bid, the Debtors, after consulting with the Notice Parties, may work with the Potential Bidder in an effort to cure any defects in the Bid and to cause such Bid to become a Qualified Bid prior to the commencement of the Auction (as defined below).  Each DIP Lender and Prepetition Secured Party shall be deemed a Qualified Bidder and shall be allowed to participate in the Auction without the need to submit a Qualified Bid.

5.      The Debtors, in consultation with the Notice Parties, shall select a Qualified Bid and Qualified Bidder to serve as the Stalking Horse Bid (defined below) and Stalking Horse Bidder on or before September 10, 2021 (the "**Stalking Horse Designation Deadline**").

## C.      Submission of Bids

6.      A Potential Bidder must deliver written copies of its Bid and all supporting documents and information, by mail, facsimile, or email, prior to the Bid Deadline to: (i) counsel to the Debtors, Baker & Hostetler, LLP, 200 SunTrust Center, Suite 2300, 200 South Orange Avenue, Orlando, Florida 32801, Attn: Elizabeth A. Green (egreen@bakerlaw.com), and 45 Rockefeller Plaza, New York, New York 10111, Attn: Jorian L. Rose (jrose@bakerlaw.com); and (ii) counsel for the Official Committee of Unsecured Creditors (the "**Committee**"), if any.  The Potential Bidder must deliver the proposed Bid, and all supporting documents and information, such that the Bid and related documents and information are actually received by the aforementioned parties no later than the Bid Deadline.

7.      As soon as reasonably practicable following receipt, the Debtors shall provide summaries of the materials terms of each Bid, which summaries shall be treated as confidential, "Professionals' Eyes Only" (the "**PEO Information**"), to the following professionals: (i) counsel to the DIP Agent, Gray Reed, 1300 Post Oak Blvd, Suite 2000, Houston, Texas 77056, Attention: Jason S. Brookner (jbrookner@grayreed.com) and Lydia R. Webb (lwebb@grayreed.com); (ii) counsel to Goldman Sachs Bank USA, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attn: Sean A. O'Neal (soneal@cgsh.com) and Jane VanLare (jvanlare@cgsh.com); (iii) counsel to J. Aron & Company LLC, Baker Botts L.L.P., 30 Rockefeller Plaza, New York, NY 10112, Attention: Robin Spigel (robin.spigel@bakerbotts.com) and Chris Newcomb (chris.newcomb@bakerbotts.com); and (iv) counsel to the Ad Hoc Term Lender Group, Akin Gump Strauss Hauer & Feld LLP, 2001 K. Street N.W., Washington, DC 20006, Attention: Scott Alberino (salberino@akingump.com) and Kevin Eide (keide@akingump.com) (collectively, the "**Lender Advisors**").  Lender Advisors may share PEO Information with third-party professionals retained by their respective clients, including, without limitation, any financial advisors or brokers; *provided, however,* that any recipient of any PEO Information, whether directly or indirectly, shall agree to maintain the confidentiality of the PEO Information and refrain from sharing or disclosing any PEO Information with or to their respective clients, including the DIP Agent, DIP Lenders, J. Aron, and Prepetition Secured Parties, or any other individual or entity; *provided, further*, that the Lender Advisors and any such third-party advisors shall be permitted to advise their respective clients that they are in receipt of such PEO

Information and provide summaries or analyses to their respective clients that do not disclose PEO Information.  The use and dissemination of PEO Information is subject to the further provisions set forth in Paragraph 35, *infra*.  The obligation to maintain the confidentiality of any PEO Information shall terminate upon such information becoming known to all Potential Bidders, generally available to the public, or, solely with respect to the respective clients of the Lender Advisors, upon the Credit Bid Designation Deadline, in the event that such clients elect not to submit a credit bid.

**D.      Access to Due Diligence Materials**

8.      The Debtors shall establish a digital data room (the "**Data Room**") for purposes of maintaining and providing Potential Bidders access to information regarding the Debtors and the Assets for purposes of conducting due diligence.  To the extent not already established, the Debtors shall establish a Data Room as soon as reasonably practicable after entry of the Bidding Procedures Order, but in no event later than August 6, 2021; *provided, however*, that the Debtors reserve the right to add or remove materials from the Data Room at any time.  The Debtors shall be authorized to retain and compensate in the ordinary course of business one or more individuals or entities to assist in the creation and/or maintenance of the Data Room; *provided, however,* that any compensation shall be subject to the Budget (as defined in the Interim DIP Order), terms of the Interim DIP Order, and, with respect to professionals, the requirements of the Bankruptcy Code.

9.      Upon delivery of the Preliminary Bid Documents, any Potential Bidder that wishes to conduct due diligence on the Assets may be granted access to the Data Room.  The due diligence period for Potential Bidders will end one (1) day prior to the Bid Deadline.

10.      The Debtors, along with their advisors, shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders and provide each Potential Bidder reasonable due diligence information, as requested by such Potential Bidder in writing as soon as reasonably practicable after such request; *provided, however*, the Debtors may decline to provide such information to Potential Bidders who the Debtors, in their reasonable business judgment (in consultation with the Notice Parties), determine do not intend in good faith to, or do not have the capacity to, consummate the purchase of any or all of the Assets or seek access to the Data Room and the information contained therein for any improper purpose.

11.      Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors, including, without limitation, information regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale.  If a Potential Bidder fails to comply with any such request(s), the Debtors may, in their discretion, in consultation with the Notice Parties, disqualify the Potential Bidder and/or the subject Bid and deny or terminate access to the Data Room.

**E.      "As Is, Where Is"**

12.      The Sale of any Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or Estates, except to the extent set forth in the asset purchase agreement between the Debtors and a Winning Bidder, the assignment and bill of sale, if any, delivered pursuant to such asset purchase

agreement, or the order approving the Sale of the Assets by the Debtors to the Winning Bidder. Except as may be provided in the subject asset purchase agreement, all of the Debtors' rights, title, and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interest thereon, but subject in all respects to J. Aron's right to set off and net against any obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents (as defined in the Interim DIP Order) (collectively, the "**Interests**"), with such Interests attaching to the proceeds of the Sale of the Assets, with the same validity and priority as existed immediately prior to such Sale.

13.    Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Assets prior to making its Bid, that it has relied solely upon its independent review, investigation and/or inspection of any documents or information in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in any executed asset purchase agreement.

**F.    Designation of a Stalking Horse Bidder**

14.    The Debtors, in consultation with the Lender Advisors, shall prepare a summary of the highest and best Bid(s) for all or substantially all Asset and/or the highest and best Piecemeal Bid(s) (the "**Bid Summary**").  The Debtors shall upload the Bid Summary to the Data Room no later than September 7, 2021 (the "**Bid Summary Deadline**"), which shall be deemed to make such information "generally available to all potential bidders" for purposes of Paragraph 37 of the Complex Rules.

15.    On or before September 10, 2021, the Debtors, in consultation with the Notice Parties, may designate one or more Qualified Bidders as the stalking horse bidder(s) (the "**Stalking Horse Bidder**") and one or more Qualified Bids as the stalking horse bid(s) (the "**Stalking Horse Bid**") with respect to a sale of all or substantially all the Assets of the Debtors.  The Debtors shall not designate any Qualified Bid as a Stalking Horse Bid unless such Bid is reasonably acceptable to each of the Prepetition Secured Parties.

16.    On or before September 13, 2021, if the Debtors have designated a Stalking Horse Bidder, the Debtors shall file a Notice of Designation of Stalking Horse Bidder (the "**Stalking Horse Notice**") and serve the Stalking Horse Notice on all interested parties, including any Potential Bidders and counterparties to any Executory Contracts identified as Purchased Contracts (defined below) in the Stalking Horse Bid or Stalking Horse APA (defined below).  The Stalking Horse Notice shall (a) identify the Stalking Horse Bidder, (b) provide a summary of the Stalking Horse Bid, (c) outline any and all proposed Bid Protections, which may include the payment of a break-up fee and any other appropriate or customary protections, *provided* that the aggregate amount of the Bid Protections that may be paid to any or all Stalking Horse Bidders shall not exceed three percent (3%) of the proposed purchase price and that any Bid Protections shall only be payable upon the closing of and out of the proceeds of a sale transaction, and (d) provide a copy or the means of accessing a digital copy of the asset purchase agreement for the Stalking Horse Bid (the "**Stalking Horse APA**") and a redline marked against the APA.  The Debtors may modify

the terms of the Bidding Procedures[7] (excluding the requirements set forth in Paragraph 3 of these Bidding Procedures, which modifications thereto shall require the consent of the DIP Agent and each of the Prepetition Secured Parties) through the Stalking Horse Notice, in consultation with the Notice Parties.

17.     Any interested parties shall have four (4) days from the date of the Stalking Horse Notice to file any objections to the proposed Bid Protections for the Stalking Horse Bid or any amendments to the Bidding Procedures.  The failure to file a timely objection shall be deemed to be a waiver of any such objections and consent to the approval of the Bid Protections and amended Bidding Procedures.  If an objection is timely filed, the Debtors shall notice a hearing before the Court to consider the objection(s) on an emergency basis; *provided, however,* that the Bidding Procedures will be deemed approved regardless of whether or not the Auction occurs prior to the resolution of any objection to the Bid Protections or amended Bidding Procedures.  Interested parties shall be deemed to consent to the expedited and final resolution of any such objections by the Court.  The filing or pendency of any objection(s) shall not alter any dates or deadlines established under the Bidding Procedures or affect the binding nature of the Stalking Horse Bid or any other Bids.

## G.     Credit Bidding

18.     In accordance with Paragraphs 9(e) and 29 of the Interim DIP Order, and, to the extent applicable, the Final DIP Order, when entered, the DIP Lenders (as defined in the Interim DIP Order) and the Prepetition Secured Parties may credit bid the full amount of the DIP Obligations (as defined in the Interim DIP Order) or the Prepetition Secured Obligations (as defined in the Interim DIP Order), respectively and as applicable, to acquire any or all Assets subject to the parties' respective security interests (other than any collateral in respect of the J. Aron Obligations),[8] on a dollar-for-dollar basis, as provided in Section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing such credit bid and whether any Sale is (a) pursuant to Section 363 of the Bankruptcy Code, (b) pursuant to a chapter 11 plan, or (c) by a chapter 7 trustee.

19.     Notwithstanding anything to the contrary contained herein, the Prepetition Secured Parties shall have the right to credit bid all or any portion of the aggregate amount of their applicable outstanding Prepetition Secured Obligations pursuant to section 363(k) of the Bankruptcy Code, and any such credit bid, whether submitted by a Prepetition Secured Party or a new entity formed by such Prepetition Secured Party, will be considered a Qualified Bid to the extent such bid is received by the deadline to submit a credit bid and complies with section 363(k) of the Bankruptcy Code; *provided* that a credit bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid or Piecemeal Bid that are senior in priority, including a priority in payment pursuant to the Intercreditor Agreement (as defined in the Interim DIP Order), to those of the party seeking to credit bid (unless such

---

[7] Unless otherwise stated, "Bidding Procedures" includes the Bidding Procedures, the procedures governing any Auction (the "**Auction Procedures**"), including the Open Auction Procedures, and the Assumption and Assignment Procedures.

[8] For the avoidance of doubt, the IFF Property shall not be the subject of any sale pursuant to this Motion or the Bidding Procedures.

Prepetition Secured Party consents to alternative treatment).  For the avoidance of doubt, any credit bid by a DIP Lender of the DIP Obligations shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid or Piecemeal Bid that are senior in priority to the DIP Lender(s) seeking to credit bid (unless such Prepetition Secured Party consents to alternative treatment).

20.     If the DIP Lenders and/or Prepetition Secured Parties intend to credit bid for any of the Assets, such parties shall notify the Debtors, U.S. Trustee, and the other Notice Parties of their intention to credit bid no later than September 17, 2021 (the "**Credit Bid Designation Deadline**").  To the extent required by Paragraph 33 (soon to be Paragraph 37) of the Complex Rules, any entity that intends to submit a Bid for any or all of the Assets shall waive the right to receive (i) information that is not generally available to all Potential Bidders and (ii) any notices or consultation rights as Notice Parties under the Bidding Procedures or otherwise  (the "**Consultation Rights**").

## H.     The Auction

21.     If the Debtors receive one or more Qualified Bids from Qualified Bidders by the Bid Deadline, in addition to the Stalking Horse Bid, an Auction with respect to the sale of the subject Assets shall take place on September 22, 2021, at 10:00 a.m. (prevailing Central Time) (the "**Auction Date**") at (a) the offices of Baker & Hostetler, LLP, located at 811 Main Street, Suite 1100, Houston, Texas 77002 or (b) via an virtual platform, such as Zoom or GoToMeeting, as the Debtors designate.  No later than forty-eight (48) hours prior to the Auction Date, the Debtors shall provide notice of the Auction location and, if via a virtual platform, the credentials required to access such platform, to all Qualified Bidders, the Notice Parties, and the U.S. Trustee.

22.     If the Stalking Horse Bid is the only Qualified Bid the Debtors receive by the Bid Deadline, the Debtors reserve the right to cancel the Auction.  In such case, if cancelled, the Stalking Horse Bid and Stalking Horse Bidder shall be automatically designated the Winning Bid and Winning Bidder effective as of the Bid Deadline.

23.     If the Debtors do not receive any Qualified Bids by the Bid Deadline, the Debtors may elect to hold an open auction for the Assets, or any of them (an "**Open Auction**") on the Auction Date, subject to the agreement of the DIP Agent and Prepetition Secured Parties.  If the parties agree to hold an Open Auction, the Debtors shall provide notice to the Court, the U.S. Trustee, the Notice Parties, and any and all Potential Bidders that executed a Confidentiality Agreement of the Open Auction (the "**Open Auction Notice**").  The Open Auction Notice shall identify the procedures applicable to the Open Auction, including, without limitation, any deposits required to participate in the Open Auction (the "**Open Auction Procedures**").  The Debtors shall prepare the Open Auction Procedures in consultation with the Notice Parties and U.S. Trustee. Notwithstanding anything in the Motion, Bidding Procedures or Open Auction Procedures to the contrary, the DIP Lenders and Prepetition Secured Parties will be entitled to credit bid in any Open Auction and shall be deemed to be Qualified Bidders for purposes of any Open Auction.

24.     Unless modified by any Open Auction Procedures, the following rules shall apply to any Auction:

a.      only Qualified Bidders shall be entitled to make a bid at and otherwise participate in the Auction;

b.      each Qualified Bidder shall appear in person, or in the event of a virtual auction, appear virtually, or have an authorized representative appear on their behalf, *provided* the authorized representative has the authority to bind the Qualified Bidder to the terms of any bid at the Auction without further or additional approval or authorization;

c.      each Qualified Bidder participating in the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

d.      the Debtors, in their business judgment and in consultation with the Notice Parties, shall select the number of Qualified Bidders participating in the Auction and will conduct the Auction in the manner that they determine will best promote the goals of the bidding process and will achieve the maximum value for the Assets;

e.      the Stalking Horse Bid shall constitute the opening bid at the Auction (the "**Opening Bid**") for the Assets subject to the Stalking Horse APA and the minimum overbid at the Auction shall be an amount equal to the total approved Bid Protections provided under the Stalking Horse APA *plus* $1,000,000, with each successive bid being in increments of at least $1,000,000 higher than the preceding bid; *provided, however*, if the Stalking Horse Bids constitute Piecemeal Bids, the minimum overbids and bid increments shall be specified in the Stalking Horse Notices;

f.      the Stalking Horse Bidder may not use the amount of approved Bid Protections as consideration under any bid during the Auction; *provided, however*, that the Debtors may consider the amount of approved Bid Protections in evaluating the highest and best Bid for purposes of designating the Winning Bid or Back-up Bid;

g.      the Debtors, in consultation with the Notice Parties, may, at any point during the Auction, modify the bid increment amounts;

h.      the Debtors, in consultation with the Notice Parties, may continue the Auction from time to time, adjourn the Auction at any time, and re-open the Auction at any time prior to the commencement of the Sale Hearing; and

i.      bidding at the Auction will be transcribed to ensure an accurate recording of the bidding.

25.     At the conclusion of the Auction, the Debtors, in consultation with the Notice Parties, shall select and identify the Winning Bid and the Winning Bidder. There may be more than one Winning Bid and Winning Bidder if individual Piecemeal Bids are determined to be Qualified Bids. The Debtors, in consultation with the Notice Parties, shall also select and identify

the entity presenting the next highest and best bid (the "**Back-up Bid**") and the entity presenting same (the "**Back-up Bidder**").  At the Sale Hearing (as defined below), the Debtors shall present the Winning Bid and Back-up Bid to the Court for approval.  The Debtors' presentation of the Winning Bid to the Court for approval does not constitute the Debtors' acceptance of such Winning Bid.  The Debtors shall have accepted a Winning Bid only when the Court has entered an order approving such bid and the Sale of the Asset subject thereto.

26.     Notwithstanding the foregoing, the Debtors reserve all rights to terminate the bidding process at any time if the Debtors, consistent with their fiduciary duties and business judgment, and in consultation with the Notice Parties, determine that the bidding process will not maximize the value of the Assets.  Without limiting the generality of the foregoing, the Debtors, in consultation with the Notice Parties, may reject at any time before entry of a Sale Order approving such bid, any Bid that, in the Debtors' discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors, their Estates and creditors.

27.     If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when: (i) such bid is declared the Winning Bid at the conclusion of the Auction; (ii) the Winning Bidder shall have paid an additional deposit which, when added to the initial deposit, equals fifteen percent (15%) of the Winning Bid (the "**Additional Deposit**"); *provided* that to the extent the Winning Bid is a credit bid submitted by a DIP Lender or Prepetition Secured Party, no Additional Deposit shall be required; (iii) definitive documentation has been executed in respect thereof; and (iv) the Court has entered an order approving such bid and the Sale of the Assets subject thereto.  The Winning Bidder shall make the Additional Deposit into the Escrow Account within one (1) business day after the conclusion of the Auction.  Acceptance by the Debtors of the Winning Bid is conditioned upon entry of a Sale Order approving such Winning Bid.

28.     As soon as practicable following the conclusion of the Auction, the Debtors shall file a notice designating the Winning Bid and Winning Bidder, as well as the Back-up Bid and Back-up Bidder (the "**Designation of Winning Bid**"), and serve the Designation of Winning Bid on all interested parties, including, without limitation, all counterparties to any Purchased Contract(s).  The Designation of Winning Bid shall: (i) identify the Winning Bidder and Back-up Bidder; (ii) provide a summary of the Winning Bid and Back-up Bid; (iii) if the Winning Bidder is not the Stalking Horse Bidder, provide a copy or the means of accessing a digital copy of the asset purchase agreement(s) for the Winning Bid(s) (the "**Modified APA(s)**") and a redline marked against the Stalking Horse APA; (iv) identify all Purchased Contracts designated by the Winning Bidder or Back-up Bidder; (v) identify the Cure Amount, if any, the Debtors estimate is required to assume and assign each Purchased Contract in compliance with Section 365(b) and 365(f)(2) of the Bankruptcy Code; and (vi) contain a statement as to the Winning Bidder's or Back-up Bidder's ability to perform the Debtors' obligations under the subject Purchased Contracts.  The Debtors reserve the right to amend the Designation of Winning Bid to identify additional Executory Contracts up to six (6) days before the Sale Hearing (defined below) and to remove any Executory Contracts up to the Closing Date (defined below).  Simultaneously with the filing of the Designation of Winning Bid, the Debtors shall file a proposed Sale Order and any supplemental filings related to the Designation of Winning Bid or approval of the proposed Sale pursuant thereto.

29.     In the event that the Winning Bidder fails to pay the Additional Deposit or otherwise comply with its obligations as the Winning Bidder, the Qualified Bidder with the Back-up Bid shall be declared the Winning Bid and Winning Bidder without further order of the Court. If the Winning Bid is a Piecemeal Bid (the "**Winning Piecemeal Bid**"), the bidder with the next highest or best bid that is not entitled to the same reductions to the purchase price shall be deemed the Winning Bid and Winning Bidder without further order of the Court.

**I.      Sale Hearing**

30.     The Debtors shall schedule a hearing to approve the Sale (the "**Sale Hearing**") pursuant to the Stalking Horse APA or Modified APA(s), as applicable, as soon as practicable, but in no event later than October 14, 2021.  At the Sale Hearing, subject to the Bidding Procedures and result of the Auction, if any, the Debtors will request entry of the Sale Order that will, *inter alia*, approve (i) the Sale of the Assets in accordance with the terms of the Stalking Horse APA or Modified APA(s), as applicable, (ii) the assumption and assignment of the Purchased Contracts (defined below), and (iii) any further or additional relief deemed necessary to effectuate the proposed Sale transaction.  Objections, if any, to a proposed Sale transaction, other than objections to the assumption and assignment of Executory Contracts (a "**Sale Objection**"), must be filed and served on counsel for the Debtors, the U.S. Trustee, and the Notice Parties no later than October 4, 2021, at 5:00 p.m. (prevailing Central time) (the "**Sale Objection Deadline**").

**J.      Return of Deposit**

31.     Within five (5) business days after the closing of the Sale to the Winning Bidder ("**Closing**"), the deposits of all unsuccessful bidders shall be refunded, except for any deposits forfeited by a Winning Bidder under the Bidding Procedures.  In the event a dispute arises about whether a deposit is refundable or non-refundable, the deposit shall remain in the Escrow Account pending a resolution of the dispute by the Court.  In presenting a Bid, any and all Potential Bidders, including Qualified Bidders, Back-up Bidder(s), and Winning Bidder(s), shall be deemed to consent to the jurisdiction and final adjudication of any and all matters related to the Bid(s) by the Court.

**K.      Failure to Close**

32.     The transaction evidenced by the Winning Bid shall close not later than ten (10) days after entry the Sale Order, but in no event later than **November 1, 2021, at 5:00 p.m. (prevailing Central time)** (the "**Closing Date**"), unless the Closing Date is extended in accordance with the Bidding Procedures, at which time the Winning Bidder shall pay the balance of the Winning Bid (the Winning Bid amount less the deposit) into the Escrow Account.  In the event a declared Winning Bidder fails to timely perform any of its obligations as set forth above or pursuant to the approved transaction documents:

          a.      The declared Winning Bidder shall forfeit all deposits made without regard to the Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Debtors and the Estates shall retain all other rights, remedies, claims, counterclaims, and

defenses as to the Winning Bidder, including the right to seek equitable or injunctive relief.

b.   Each Back-up Bidder shall keep its final and highest bid open pending a closing of a transaction of the Winning Bid.  In the event that a transaction of the Winning Bid is not consummated by the Closing Date (unless the Closing Date is extended), the Back-up Bidder with the Back-up Bid shall be deemed the Winning Bidder without further order of the Court, and such bidder shall be required to close the transaction contemplated in its Back-up Bid within seven (7) days of being deemed the Winning Bidder, **but in no event later than November 8, 2021, at 5:00 p.m.** (prevailing Central time), unless such deadline is extended in accordance with the Bidding Procedures.  Any Back-up Bidder declared a Winning Bidder who fails to timely perform shall forfeit all deposits made without regard to the Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Debtors and the Estates shall retain all other rights, remedies, claims, counterclaims, and defenses with respect to such bidder, including the right to seek equitable or injunctive relief.

c.   The Debtors, in consultation with the Notice Parties and agreement of the DIP Agent and Prepetition Secured Parties, may grant any declared Winning Bidder additional time to perform and, to the extent necessary, extend the Closing Date.

## L.   Fees and Expenses

33.   Any and all bidders submitting Bids shall bear their own fees, costs, and expenses in connection with the proposed sale, whether or not such sale is ultimately approved, except to the extent reimbursement of expenses constitutes an approved Bid Protection under a Stalking Horse APA.  Further, by submitting a Bid, a Potential Bidder shall be deemed to waive its right to pursue a substantial contribution claim under Section 503 of the Bankruptcy Code or other priority unsecured or administrative claims in any way related to the submission of its Bid or the Bidding Procedures.

## M.   Assumption and Assignment of Executory Contracts

34.   The Debtors also seek approval of certain procedures to facility the fair and orderly assumption and assignment of certain Executory Contracts designated by the Winning Bidder following the Auction, if any, pursuant to Section 365(f) of the Bankruptcy Code (collectively, the "**Purchased Contracts**") in connection with the Sale.  Due to the nature of the bidding process, the Debtors are unable to currently identify the Purchased Contracts, or any of them, that will require assumption and assignment to the Winning Bidder.  As such, the Debtors propose certain procedures (the "**Assumption and Assignment Procedures**") by which counterparties to potential Purchased Contracts can ascertain the proposed cure payment and adequate assurance of future performance and, if deemed prudent, object to the potential assumption or assumption and

4833-2362-2899.8

assignment of the subject Purchased Contracts. The proposed Assumption and Assignment Procedures are as follows:

    a.    As set forth above, the Debtors shall file the Stalking Horse Notice with the Court and serve the same on all known counterparties to the Executory Contracts designated therein. The Stalking Horse Notice shall contain the following: (i) the executory contracts and unexpired leases that may be assumed and assigned to a potential purchaser; (ii) the name and address of the known contract counterparties thereto; (iii) the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default in accordance with Section 365(b) and 365(f)(2) of the Bankruptcy Code (the "**Cure Amount**"); and (iv) the deadline by which any counterparties must file an objection to the proposed assumption and assignment of any designated contract; *provided, however,* that the inclusion of any executory contract or unexpired lease on the Stalking Horse Notice shall not constitute an admission that the subject contract(s) or lease(s) are executory contract(s) or unexpired lease(s) for purposes of Section 365 of the Bankruptcy Code or an agreement to assume or assign such Executory Contracts.

    b.    The Debtors may (i) amend the Stalking Horse Notice or Designation of Winning Bid at any time prior to the date that is six (6) days before Sale Hearing to add or remove any Executory Contracts, subject to the right of any counterparties to newly identified Executory Contract(s) to object to the proposed cure payment, adequate assurance, or otherwise object to the assumption and assignment of the subject Executory Contracts, and (ii) amend the Stalking Horse Notice or Designation of Winning Bid to remove any previously-designated Executory Contracts at any time prior to the Closing Date, with such removal being effective immediately without further order of the Court. Any amendments to the Stalking Horse Notice or Designation of Winning Bid shall comply with the requirements of Paragraph 34.a; *provided, however,* that such amendments need not include information related to any previously-designated Executory Contracts unaffected by the amendment.

    c.    Each Potential Bidders shall identify in its Bid any and all Executory Contracts the Potential Bidder may wish to designate for assumption and assignment to the Potential Bidder in any Sale; *provided, however*, the Winning Bidder(s) may amend such designation, consistent with the notice requirements of Paragraph 34.b.

    d.    As provided in Paragraph 28, the Debtors shall file and serve the Designation of Winning Bid on each counterparty to any Purchased Contract (and its counsel, if known) that is designated for assumption and assignment under the Winning Bid, among other parties. Such Designation of Winning Bid shall: (i) identify the Winning Bidder and Back-up Bidder; (ii) identify all Purchased Contracts designated by the Winning Bidder,

subject to the right to amend such designation; (iii) identify the Cure Amount, if any, the Debtors estimate is required to comply with Section 365(b) and 365(f)(2) of the Bankruptcy Code; and (iv) contain a statement as to the Winning Bidder's ability to perform the Debtors' obligations under the subject Purchased Contracts. The Debtors may amend or supplement the Contract Notice to add or remove any Executory Contracts by filing with the Court and serving on the affected counterparties to the Executory Contracts an amended Designation of Winning Bid in accordance with these Bidding Procedures.

e. All objections to the proposed assumption and assignment of any Purchased Contracts must: (i) be filed with the Court on or before October 18, 2021, at 12:00 p.m. (prevailing Central time) (the "**Contract Assumption Objection Deadline**") and served on the Debtors, the U.S. Trustee and Notice Parties; (ii) identify the Purchased Contract(s) to which the objector is party; (iii) describe with particularity any cure the objector contends is required under Section 365 of the Bankruptcy Code (the "**Cure Claim**"); (iv) identify the bases of the alleged Cure Claim under the proposed Purchased Contract; and (v) attach all documents supporting or evidencing the Cure Claim.

f. If no objection is filed by the Contract Assumption Objection Deadline, the Cure Amount set forth in the Designation of Winning Bid Notice, or any amended version thereof, as applicable, shall control and any counterparties to the subject Purchased Contract(s) shall be deemed to waive and shall be forever barred from asserting in any other claim or objection under Section 365 of the Bankruptcy Code, or otherwise, including, without limitation, any objection to the assignability of any of the purchased contracts, other than an objection to adequate assurance of performance under the Purchased Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code.

g. To the extent any Cure Claim remains unresolved as of the Sale Hearing, such dispute shall be presented to the Court at the Sale Hearing, or such later date and time as the Debtors, the Winning Bidder, and the objecting party may agree or the Court may order, *provided* that the pendency of such dispute shall not affect in any way the closing of any proposed Sale or the effectiveness of any assumption and assignment of the subject Executory Contract under the Winning Bid.

## N.    Cooperation and Information Sharing

35.    The Debtors and their advisors shall consult regularly with the Lender Advisors and third-party professionals retained by their respective clients, including, without limitation, any financial advisors or brokers, regarding the status of the Sale process and any potential Bids and provide any related information that may be reasonably requested by the advisors to the DIP Agent and/or Prepetition Secured Parties and such third-party professionals. To the extent required by Paragraph 33 (soon to be Paragraph 37) of the Complex Rules, any information provided to the

Lender Advisors or such third-party professionals shall constitute PEO Information subject to the restriction set forth in Paragraph 7, *supra; provided, however*, that any PEO Information that becomes known to all Potential Bidders or publicly available, other than as a result of a violation of the restrictions on the use and dissemination of PEO Information, shall no longer be subject to the restrictions provided in the Bidding Procedures.  Any DIP Lender or Prepetition Secured Party that elects not to credit bid by the Credit Bid Designation Deadline shall have the right to any and all PEO Information, Consultation Rights, and other information and documentation pertaining to the marketing or Sale of any Assets, including, without limitation, any Bids and related documents, under the Bidding Procedures without restriction, except for a prohibition against sharing such information with any Potential Bidders that do not have such information.