IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | § | Case No. 21-32351 (DRJ) |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |

**LIMITED OBJECTION OF UNIVERSAL PLANT SERVICES (VI), LLC
TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION
FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL,
(III) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERIORITY
ADMINISTRATIVE EXPENSE STATUS, (IV) APPROVING ADEQUATE
PROTECTION TO PRE-PETITION SECURED CREDITORS, (V) MODIFYING THE
AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING**
(Related to Dkt. No. 14)

Universal Plant Services (VI), LLC ("UPS") hereby submits this objection (the "Objection") to the Debtors' DIP Motion (the "Motion").[2] In support of the Objection, UPS respectfully states as follows:

**Jurisdiction and Venue**

1. The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superiority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* [ECF No. 14]. Capitalized terms used but not otherwise defined herein shall have the respective definitions given to them in the Motion.

4. The statutory basis for this Objection is section 364 of title 11 of the United States Code (the "Bankruptcy Code").

## Background

5. UPS is a Houston-based privately-owned company with an average of over 2,000 compensated personnel over the course of the last several years providing services to the refining, petrochemical, and power generation sectors.

6. On or about February 21, 2019, UPS entered into a Term Services Agreement with Debtor Limetree Bay Refining, LLC ("LBR"), designated Contract No. LTR-139 (the "Contract"). Under the terms of the Contract, UPS agreed to perform services for the Debtors, including at times engaging over 250 personnel on-site at the Debtors' refinery to install, uninstall, repair, and overhaul plant equipment, including fixed, rolling, rotating, reciprocating, and electrical equipment (including steam turbines). Such services improved the real property of the Debtors.

7. The Debtors failed to remit payment on services rendered under the Contract. Due to the Debtors' failure to remit payment, UPS filed its *Notice of Claim of Construction Lien*, attached hereto as **Exhibit A**, with the Office of the Lieutenant Governor of the U.S. Virgin Islands on June 15, 2021 (the "Notice of Lien"). The property upon which UPS has filed the Construction Lien (the "UPS Collateral") is described in further detail in the Property Descriptions attached to the Notice of Lien.[3]

8. With the filing of the Construction Lien, under the law of the U.S. Virgin Islands (described in greater detail below) the Construction Lien attached and was perfected.

9. On July 12, 2021 (the "Petition Date"), LBR and its debtor affiliates (collectively, the "Debtors"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases

---

[3] Exhibit A at 2.

2

(collectively, the "Chapter 11 Cases"), filed their petitions for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

10. On the Petition Date, the Debtors also filed the *Declaration of Mark Shapiro in Support of Chapter 11 Petitions and First Day Motions* [ECF No. 8] (the "First Day Declaration"). In the First Day Declaration, the Debtors detail common law and statutory liens (*e.g.*, construction liens) asserted by vendors and contractors, including a construction lien by UPS totaling $26,263,226.16[4] (the "Construction Lien").[5] In the First Day Declaration, the Debtors assert that they are "investigating the validity of the alleged [c]onstruction [l]iens" and that, although "the investigation remains ongoing, it is [their] understanding that . . . [UPS' Construction Lien] was asserted in the 90-day period immediately preceding the Petition Date."[6] The Debtors appear to view the Construction Lien as being primed by any obligations incurred under the DIP Financing and insinuate that it is an avoidable preference. Additionally, UPS was listed in the Debtors' Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders as having a claim in the amount of $24,423,282.42.[7]

11. On the Petition Date, the Debtors also filed the Motion, in which they seek the entry of interim and final orders approving post-petition financing and related relief pursuant to section 364 of the Bankruptcy Code.

12. On July 14, 2021, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral,*

---

[4] UPS reserves its rights to dispute the alleged amount and nature of its claim.

[5] First Day Declaration at ¶ 39.

[6] First Day Declaration at ¶ 39 (internal citations omitted).

[7] *See* Petition at 9, ECF No. 1. UPS reserves its rights to dispute the alleged amount and nature of its claim.

*(II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [ECF No. 104] (the "<u>Interim DIP Order</u>").  Although the proposed DIP financing does not prime "Permitted Prior Liens," the scope of such liens is improperly narrow, consisting only of (a) "valid, perfected, and non-avoidable liens on property of a Debtor that are in existence on the Petition Date and are senior in priority to any of the Prepetition Secured Parties Liens" and (b) "all liens, recoupment and setoff rights held by J. Aron."[8]

13.  Despite requests, UPS has not received a copy of the proposed final DIP order or the DIP budget (which was forecast by the Debtors to be circulated by July 28).  The Debtors agreed to provide UPS with an extension of the deadline to object to the proposed DIP Facility to July 30, 2021.

## Limited Objection

14.  UPS hereby objects to the Motion and the relief requested under sections 364 of the Bankruptcy Code.  Among other things, to the extent UPS' Construction Lien is not reflected as a Permitted Prior Lien as defined in the Interim DIP Order, UPS objects to the granting of priming liens on UPS Collateral because the Debtors do not propose to provide UPS with adequate protection of its Construction Lien on the UPS Collateral as required by section 364(d) of the Bankruptcy Code.

15.  In the Motion, the Debtors ask the Court to grant the DIP secured parties first-priority liens on substantially all of the Debtors' assets, subject only to the Carve-Out, the J. Aron Rights (each as defined in the Motion), and certain other permitted prior liens, including

---

[8] Interim DIP Order at ¶ 7(a)(i).

4

Permitted Prior Liens as defined in the Interim DIP Order.[9] As noted above, the Interim DIP Order defines "Permitted Prior Liens" a "valid, perfected and non-avoidable liens on property of a Debtor that are in existence on the Petition Date and are senior in priority to any of the Prepetition Secured Liens" and "all liens, recoupment and setoff rights held by J. Aron."[10] To the extent that the Construction Lien is not senior in priority to any of the Prepetition Secured Liens (as defined in the Interim DIP Order),[11] the Debtors improperly seek to prime the Construction Lien without adequate protection. To avoid such impermissible priming, UPS asks the following language be added to the definition of Permitted Prior Liens after "(i) the Carve-Out" and replacing clause (ii):

> (ii) any valid, perfected, and non-avoidable liens in existence immediately prior to the Petition Date, (iii) any valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code[12]

Additionally, "and clause (iii)" needs to be added before "the <u>Permitted Prior Liens</u>")."

## Basis for Relief

16. The Court may authorize the DIP Facility, secured by the DIP Liens, only under the circumstances set forth under section 364(d) of the Bankruptcy Code. Such circumstances includes the requirement that the interests of a primed prepetition lienholder, here, UPS, are

---

[9] Motion at ¶¶ 5(i), 38.

[10] Interim DIP Order at ¶ 7(a)(i).

[11] The First Day Declaration states that the Prepetition Secured Liens only encumber personal property. First Day Declaration at ¶ 37 ("[T]he Senior Lenders' Collateral is comprised of certain tangible and intangible personal property assets . . . ."). However, the stipulations in the Interim DIP Order state that such liens are secured by "substantially all of the assets of the Borrower and the Guarantors." Interim DIP Order ¶ F(c).

[12] Such language is similar to language in other DIP orders entered in cases filed in this Court. *See, e.g., Final Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Secured Parties, (E) Modifying the Automatic Stay, and (F) Granting Related Relief* at ¶ 8(a)(2), *In re Washington Prime Group Inc.*, Case No. 21-31948 (MI), ECF No. 267.

adequately protected.[13]  Because UPS' interests are not adequately protected, the Construction Lien should not be primed.

### I.   The Construction Lien attached and was perfected on June 15, 2021.

17.   As noted above, the Debtors appear to imply that UPS' liens are avoidable.[14] However, such assumption fails to appreciate applicable U.S. Virgin Islands law.  Under U.S. Virgin Islands law, a contractor has a lien on an owner's real estate that is being improved if such contractor records a notice of lien when an amount due to it is past due.[15]  Accordingly, as LBR had amounts past due and owing to UPS under the Contract, and such services rendered under the contract were associated with improvements on LBR's real estate, the Construction Lien attached and was perfected when the notice of lien was filed prepetition, on June 15, 2021.

### II.  The Construction Lien is not avoidable under section 547 of the Bankruptcy Code.

18.   As UPS' Construction Lien arose in the 90 days preceding the Petition Date, the Debtors suggest that it is an avoidable preference under section 547 of the Bankruptcy Code.[16] However, section 547(c)(6) of the Bankruptcy Code provides that a statutory lien is not avoidable as a preference under section 547 if the debtor cannot avoid the statutory lien under section 545 of the Bankruptcy Code.  Section 545 states that a debtor can avoid the fixing of a statutory lien if (a) the creation of the lien is triggered by the insolvency of the debtor, (ii) the lien was not perfected or enforceable at the time the bankruptcy case commenced against a *bona fide* purchaser (except with respect to certain tax liens), (iii) is for rent, or (iv) is a lien of distress for rent.[17]  The plain

---

[13] 11 U.S.C. § 364(d)(1)(B).

[14] *See* First Day Declaration at ¶ 39; Petition at 9, ECF No. 1.

[15] 28 V.I.C. §§ 253, 264.

[16] *See* First Day Declaration at ¶ 39; Petition at 9, ECF No. 1.

[17] 11 U.S.C. § 545.

reading of sections 545 and 547 of the Bankruptcy Code provides that a "statutory lien [that] has been perfected so as to be enforceable against a bona fide purchaser at any point prior to the commencement of the bankruptcy case . . . cannot be avoided by the trustee."[18]

19.     UPS' Construction Lien is a statutory lien because it arises under U.S. Virgin Islands law rather than under a contract or by judicial order.[19]  In the Fifth Circuit, "fixing" is defined as "when a creditor has perfected his security interest and 'fastens liability' against the debtor's property."[20]  Because the Construction Lien was perfected prior to the Petition Date and resulted from the Debtors' failure to pay amounts due under the Contract, none of the bases to avoid the "fixing" of a statutory lien under section 545 of the Bankruptcy Code apply, and it is not avoidable as a preference under section 547 of the Bankruptcy Code.

**III.     The Construction Lien should not be primed.**

20.     Section 364(d) of the Bankruptcy Code permits the Court to grant a postpetition lender an equal or senior lien on property of the estate that is subject to a prepetition lien, or a "priming lien," only if the interests of the primed prepetition lienholder are adequately protected. The Bankruptcy Code does not expressly define "adequate protection" or proscribe the specific form it must take.[21]  Nevertheless, Section 361 of the Bankruptcy Code states that adequate protection may be provided by a cash payment or periodic payments, providing an additional or

---

[18] *In re Motion Mktg. Sol'ns, Inc.*, 403 B.R. 403, 409 (Bankr. N.D. Tex. 2009) (discussing a tax lien that was perfected fifty days prior to the petition date).

[19] *In re DBSI, Inc.*, 432 B.R. 126, 134 (Bankr. D. Del. 2010) ("A statutory lien is one that is created by statute, arises automatically and is not based on an agreement to give a lien or on judicial action. Mechanics', materialmen's, warehousemen's and tax liens are examples of statutory liens.") (quoting 5 Collier on Bankruptcy ¶ 545.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)); *see also* 11 U.S.C. § 101(53) (defining statutory lien as "arising solely by force of a statute on specific circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.").

[20] *In re Ramba*, 416 F.3d 394, 400 (5th Cir. 2005) (citation omitted).

[21] *See In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 696–97 (Bankr. S.D. Tex. 2009) (internal citations omitted).

replacement lien, or granting such other relief.[22] The Debtors bear the burden of proof on the issue of adequate protection.[23]

21.  It is clear that no form of adequate protection has been proposed in the Motion that would protect UPS' interest in the UPS Collateral secured by the Construction Lien. Failure to provide UPS with adequate protection is a violation of section 364 of the Bankruptcy Code. Therefore, under the Debtors' proposed rubric, to avoid an improper result under the Bankruptcy Code, any order granting the Motion must make explicit that UPS' lien is a "Permitted Prior Lien" that is not primed by liens granted to the DIP lenders. Otherwise, the relief requested by the Motion violates section 364 of the Bankruptcy Code and must be denied.

## Reservation of Rights

22.  UPS hereby reserves any and all rights with respect to the Motion and all bases of objection thereto which it may raise at the hearing on the Motion.

*[Remainder of page intentionally left blank.]*

---

[22] 11 U.S.C. § 361.

[23] 11 U.S.C. § 364(d)(2).

WHEREFORE, UPS requests that the Court enter an order denying the DIP Facility to the extent that the Construction Lien is primed or otherwise impaired and for such other and further relief to which UPS may be entitled.

Dated: July 30, 2021
Houston, Texas

Respectfully Submitted,

*/s/ Duston K. McFaul*
**SIDLEY AUSTIN LLP**
Duston K. McFaul (24003309)
Maegan Quejada (24105999)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone: (713) 495-4500
Facsimile: (713) 495-7799
Emails: dmcfaul@sidley.com
mquejada@sidley.com

*Counsel to UPS*

**Certificate of Service**

The undersigned certifies that on July 30, 2021, a true and correct copy of this document was electronically filed using the CM/ECF system, which will send a notice of electronic filing to those parties receiving notice pursuant to the Court's ECF notification system.

*/s/ Duston K. McFaul*
Duston K. McFaul