IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § § § § § | Chapter 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] |  | Case No. 21-32351 |
| Debtors. |  | (Jointly Administered) |

**TERMINAL LENDERS' JOINDER TO THE TERMINAL ENTITIES' OBJECTION TO THE DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) APPROVING ADEQUATE PROTECTION TO PRE-PETITION SECURED CREDITORS, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING**

The ad hoc group of lenders (the "TerminalCo Lenders") to Limetree Bay Terminals, LLC ("Terminal") and AMP Capital Investors, Ltd., in its capacity as portfolio manager of the AMP Capital Infrastructure Debt Fund IV ("Terminal HoldCo Lenders," and collectively with the Ad Hoc Group, the "Terminal Lenders") hereby jointly submit this joinder to the Terminal Entities' Objection [ECF No. 252] to the Debtors' *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors, (V)*

---

[1] The Debtors in these chapter 11 cases (the "Cases"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

1

*Modifying the Automatic Stay and (VI) Scheduling a Final Hearing* [ECF No. 14] (the "DIP Motion").[2]

## PRELIMINARY STATEMENT

1. At the first day hearing in these Cases, the Debtors sought approval of DIP Financing that prejudiced Terminal in several significant ways. First, while Terminal provides approximately 11 million barrels of exclusive storage capacity to the Refinery at a contractual rate of more than $5.5 million per month plus additional charges, the DIP Financing budget prohibited the Debtors from paying Terminal more than $150,000 per week for such storage on a postpetition basis. Second, to the extent that Terminal has valid warehouseman's liens on the Debtors' inventory stored in Terminal's tanks, the DIP Financing sought to prime those liens without the consent of Terminal. And third, with respect to certain assets that are jointly owned by the Debtors and Terminal as tenants in common, the Interim DIP Order was not clear that the DIP Liens attach only to the Debtors' interests, and not to the interests of Terminal in such property.

2. The TerminalCo Lenders had been in purportedly constructive discussions with Terminal in the days and hours leading up to the hearing to approve the Interim DIP Order regarding these issues. Yet, against the wishes of these lenders, moments before the hearing Terminal reached a temporary "settlement" with the Debtors that effectively conceded each of these significant points. At the time, the TerminalCo Lenders alerted the Court to the fact that the Terminal board—appointed by the ultimate shareholders of both the Debtors and the Terminal Entities—did not include any independent directors to protect the interests of Terminal's stakeholders, noting in its objection "it will be important to ensure that decisions being made for

---

[2] Capitalized terms used herein and not defined have the meanings ascribed to such terms in the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [ECF No. 104] (the "Interim DIP Order").

the Terminal Entities are being made not to advance the interests of the Debtors, but instead are made to advance the separate (although potentially overlapping) interests of the Terminal Entities."

3. Since that time, the Debtors have initiated their sales process and made clear their intention to cease operations. Meanwhile, Terminal has appointed an independent director and a chief restructuring officer and now opposes approval of the proposed DIP Financing. Nonetheless, the Debtors have made no attempt to allay the concerns of Terminal with respect to the DIP Financing, taking positions that, without the consent of Terminal, lack any basis in law, including: (1) priming without consent or a showing of adequate protection; (2) seeking entry of an order that grants liens on property that does not belong to the Debtors' estates; and (3) forcing a counterparty to perform postpetition services without the benefit of administrative expense priority for those claims. Moreover, on July 27, 2021, in what appears to be a strategic maneuver in advance of the DIP hearing, the Debtors filed motions seeking to reject storage agreements with Terminal *nunc pro tunc* to the Petition Date. [Docket Nos. 199, 200]. Notably, these motions were filed with no advance notice to Terminal or the Terminal Lenders; notwithstanding the TerminalCo Lenders' objection at the first day hearing and subsequent attempts by the Terminal Lenders to engage with the Debtors, the Debtors have similarly made no attempt to seek compromise with the Terminal Lenders or address objections in advance of the filing of this Joinder.

4. The Terminal Lenders are gravely concerned that the Debtors are attempting to use the chapter 11 process to improperly shift expenses and liabilities to Terminal. To be clear, the Terminal Lenders support the Debtors' efforts to obtain financing, run a marketing process and position the Refinery for renewed investment and operations. However, these efforts cannot be sanctioned to the extent they trample Terminal's basic bankruptcy law and fundamental property

3

rights in the process.  Accordingly, the Terminal Lenders urge the court to deny the relief requested in the DIP Motion unless its deficiencies are addressed.

## JOINDER

5. *First,* a fundamental tenet of the Bankruptcy Code is that a party is entitled to an administrative expense priority claim for the "actual, necessary costs and expenses of preserving the estate," 11 U.S.C. § 503(b)(1)(A), and a debtor cannot confirm a chapter 11 plan without paying its administrative expenses.  11 U.S.C. § 1129 (a)(9).

6. The Debtors are party to two separate terminal service agreements with certain of the Terminal Entities: (i) the Terminal Services Agreement (Included Locations) among Limetree Bay Terminals, LLC, Limetree Bay Refining Marketing, LLC and J. Aron & Company LLC ("**J. Aron**") dated March 3, 2020 (the "**Included TSA**") and (ii) the Terminal Services Agreement (Non-Included) between Limetree Bay Terminals, LLC and Limetree Bay Refining Marketing, LLC dated March 3, 2020 (the "**Non-Included TSA**" and, collectively with the Included TSA, the "**TSAs**").

7. Terminal is entitled to an administrative expense priority claim on account of providing, **on a postpetition basis**, storage and related handling services for the Debtors' petroleum products pursuant to the TSAs, which have benefitted the Debtors' estates. *See Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 387 (5th Cir. 2001) ("[An administrative expense priority claim] against the estate must have arisen post-petition and as a result of actions taken by [a debtor] that benefitted the estate."). The Debtors (and their intermediation provider, J. Aron) continue to knowingly store their petroleum products in the tanks of Terminal, and Terminal has continued to perform under the TSAs. *Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.)*, 931 F.3d 432, 443 (5th Cir.

4

2019) (holding that administrative expense priority claims are attributable to the actions of a debtor when a debtor knowingly and voluntarily accepts post-petition desired goods or services). The Debtors' estates have benefitted from Terminal's postpetition storage and handling services because it has protected the petroleum products and the Debtors' interests therein. *See In re Lightning Techs., Inc.*, No. 21-41019, 2021 WL 1845332, at *3 (Bankr. E.D. Mich. May 7, 2021) (holding that fees incurred for postpetition storage of estate property are entitled to administrative expense status); *see also In re Imperial Beverage Grp., LLC*, 457 B.R. 490, 501–02 (Bankr. N.D. Tex. 2011) (finding that postpetition use of office space to store property of the estate constitutes an actual necessary expense of preserving the debtors estate and that fees incurred for such use constitute administrative expenses under section 503(b)(1)(A)); *In re Aerospace Techs., Inc.*, 199 B.R. 331, 342 (Bankr. M.D.N.C. 1996) (holding that shippers had postpetition administrative claims for storing chapter 7 debtor's personal property).

8.  In a professed effort to stop the accrual of Terminal's administrative expense priority claims, the Debtors have filed motions to reject the TSAs that seek to reject the TSAs *nunc pro tunc* to the Petition Date. Through these rejection motions, the Debtors are attempting to reclassify the postpetition fees and charges that have accrued and continue to accrue on a postpetition basis under the TSAs from administrative expense priority claims to unsecured rejection damages claims. *See Debtors' Motion to Reject Executory Contract Nunc Pro Tunc* ¶ 21 [ECF No. 199] ("Rejection as of the Petition Date will ensure that no exorbitant and unnecessary administrative obligations accrue."); *Debtors' Motion to Reject Executory Contract Nunc Pro Tunc* ¶ 21 [ECF No. 200] (same). However, the Debtors have no basis to seek such relief as they continue to store their petroleum in the tanks of Terminal. "*[N]unc pro tunc* orders are not some Orwellian vehicle for revisionist history—creating 'facts' that never occurred in fact. Put plainly,

5

the court cannot make the record what it is not." *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Felicano*, 140 S.Ct. 696, 701 (2020) (internal citations and quotations omitted). As a matter of law, Terminal's administrative expense priority claim will continue to accrue. Moreover, the effective date of any rejection of the TSAs should not occur until (and unless) the Court enters the orders approving such rejection. *Constant Ltd. P'ship v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33, 37 (1995) ("The majority of courts ... have held that the effective date of rejection is the date of the bankruptcy court's order approving rejection, and that court approval is a condition precedent to effective rejection."). Even if retroactive rejection is appropriate in certain circumstances, it is clearly not appropriate here, as the Debtors' petroleum products remain in the tanks of Terminal and Terminal continues to perform under the TSAs. *See In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (denying retroactive relief for lease rejection when the property was still occupied); *cf In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (granting retroactive relief for lease rejection only when the debtors had turned over the keys and vacated the premises prepetition, and served a motion to reject the lease as soon as possible[3]).

9. The proposed DIP Financing does not sufficiently fund—*and therefore does not permit*—payment of Terminal's administrative expense priority claim. Moreover, like the Interim DIP Order, the Debtors' proposed budget only contemplates a $150,000 payment to Terminal on account of postpetition services that are continuing to be performed under the TSAs. This amount is nothing short of a farce; it represents less than 10% of the contractual rate to which Terminal is entitled under the TSAs. However, even if this budget is approved, it should be made absolutely clear that any DIP Financing order, final or otherwise, has no effect on the administrative expense

---

[3] Notably, the Debtors waited until 15 days after the Petition Date to file the motions to reject the TSAs.

priority claim that is accruing and will continue to accrue unless and until the TSAs are actually rejected. The Debtors cannot be permitted to flout a basic tenet of the Bankruptcy Code—the required payment of administrative expense priority claims—while availing themselves of the protections of chapter 11.

10. *Second*, the proposed DIP Financing is positioned as a consensual priming DIP—with the liens of the Prepetition Secured Lenders being primed by agreement. But the Prepetition Secured Lenders have no right to consent to the priming of others' liens, including the liens of Terminal. To the extent Terminal's liens constitute valid, perfected and non-avoidable liens as of the Petition Date, they cannot be primed by the DIP Liens without (a) consent or (b) "adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." *See* 11 U.S.C. § 364(d)(1); *see also In re Reading Tube Indus.*, 72 B.R. 329, 332–33 (Bankr. E.D. Pa. 1987). Therefore, as with many priming DIPs, the DIP Financing should contain a provision that expressly distinguishes between the liens of the Prepetition Secured Lenders, which are being primed, and those of other parties, which are not being primed. Such a distinction is often found in DIP orders in this district and others, with the term "Permitted Prior Liens" used to describe such liens of third parties.

11. Currently, the Interim DIP Order ***does have*** a concept of Permitted Prior Liens, which are excepted from the general grant of priming liens. Specifically, paragraph 7(a)(i) of the Interim DIP Order, which provides for priming liens, provides as follows:

> "Priming Lien Pursuant to Section 364(d)(1). A first priority, priming security interest in and lien on, pursuant to section 364(d)(1) of the Bankruptcy Code, all encumbered DIP Collateral (the "Section 364(d)(1) Liens"), which Section 364(d)(1) Liens shall be senior to any existing liens or claims, including, but not limited to, the Prepetition Liens of the Prepetition Secured Parties or postpetition liens granted to the Prepetition Secured Parties (collectively, the "Prepetition Secured Parties Liens"), and subject and junior only to (i) the Carve-Out, (ii) valid, perfected, and non-avoidable liens on property of a Debtor that are in existence on

7

> the Petition Date ***and are senior in priority to any of the Prepetition Secured Parties Liens***, (iii) ***all liens, recoupment and setoff rights held by J. Aron*** (the "<u>Aron Rights</u>" and collectively with clause (ii), the "<u>Permitted Prior Liens</u>")."

(emphasis added). However, as drafted, the Permitted Prior Liens concept is wholly deficient and should not appear in any DIP Financing order, final or otherwise. First, existing liens constitute Permitted Prior Liens only if they are senior to the liens of the Prepetition Secured Parties. There is no basis for that in law. Moreover, even if the DIP Liens can "push down" liens that are junior to those of the Prepetition Secured Parties, that can only be true if the liens of the Prepetition Secured Parties are being primed. However, J. Aron, which is a Prepetition Secured Party, has not consented to the priming of its liens. Accordingly, if the language is proposed in any DIP Financing order, final or otherwise, it does something radical and impermissible by all accounts: slide the DIP Liens into the collateral waterfall junior to the liens of J. Aron, but senior to the valid, perfected and non-avoidable liens of other parties without such parties' consent.[4]

12.    Nor can the Debtors' show that such priming can be approved because Terminal is adequately protected. The Interim DIP Order does provide Terminal with replacement liens "solely to the extent of any diminution in value" of any valid, perfected, and unavoidable lien on any DIP Collateral held by Terminal. Interim DIP Order ¶ 9(h). But such replacement liens are junior to the DIP Financing and are *pari passu* with the adequate protection liens securing approximately $1.6 billion of the Debtors' prepetition secured debt. The Debtors have not provided any evidence—nor can they—to show that these replacement liens adequately protect Terminal for the diminution they will suffer from being primed.

---

[4] For the avoidance of doubt, this paragraph does not constitute an admission that any existing lien held by Terminal is *pari passu* with the Prepetition Secured Parties Liens, and the Terminal Lenders reserve all rights to assert that any such lien constitutes a Permitted Prior Lien as currently defined in the Interim DIP Order.

13. The harm to Terminal from being primed is substantial. The Debtors owe approximately $13 million in past due prepetition storage fees to Terminal, with additional amounts continuing to accrue on a postpetition basis. The Terminal Lenders believe Terminal's claims for past due payments against the Debtors are secured by valid warehouseman's liens on the hydrocarbons and other materials currently stored in Terminal's tanks (and may in fact represent Terminal's only source of recovery for its substantial claim against the Debtors). Section 7-209 of the U.S. Virgin Islands commercial code provides "[a] warehouseman has a lien against the bailor on the goods covered by a warehouse receipt or on the proceeds thereof in his possession for charges for storage . . . ." V.I. Code Ann. tit. 11A § 7-209(1). To the extent Terminal has an existing lien on the inventory currently stored in its tanks, the validity and priority of such lien should be preserved; to the extent the Debtors believe that no such liens exist, they should take no issue with such a modification, and the parties can litigate the existence of such liens at the appropriate time.

14. *Third*, under no circumstances can the lenders under the DIP Financing (the "DIP Lenders") take liens on any property or assets of the Terminal Entities. The Terminal Entities and the Debtors are joint owners of certain assets as tenants in common, namely certain shared services infrastructure that includes a power generation plant and a wastewater treatment facility. *Declaration of Mark Shapiro in Support of Chapter 11 Petitions and First Day Motions* ¶ 26 [ECF No. 8]. Section 364(d) by its express terms only permits liens on "property of the estate." 11 U.S.C. § 364(d)(1). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), which includes property the debtor has title to, property the debtor has a possessory interest in, and property that the debtor has an equitable interest in. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983) ("[Section]

541(a)(1) is intended to include any property made available to the estate by other provisions of the Bankruptcy Code."); *Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1274 (5th Cir. 1983) ("The specific meaning of the reference in section 541(a)(a) to 'all legal or equitable interests of the debtor in property' is also easily discerned. Even on its face, section 541(a)(1) is all-encompassing, and Congress meant for it to be construed commensurately"); *see also In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992) ("To the extent an interest is limited in the hands of a debtor, it is equally limited as property of the estate.") (internal quotation marks omitted). Accordingly, the Terminal Entities' interest in the shared assets are not property of the Debtors' estates and no lien may be granted on such interest pursuant to section 364.

15. Accordingly, any DIP Financing order, final or otherwise, should clarify that nothing contained therein operates to modify Terminal's or the Terminal Lenders' liens vis-à-vis any other parties, including the Debtors and the DIP Lenders.

16. To address these and other related issues, the Terminal Lenders submit that any DIP Financing order, final or otherwise, should be revised to contain the language included in the Terminal Entities' Objection.

## Conclusion

17. The Terminal Lenders respectfully request that the Court not approve the DIP Motion absent the modifications requested herein.

18. The Terminal Lenders hereby reserve all rights under the Bankruptcy Code or other applicable law, including to prosecute any and all outstanding objections to the DIP Financing at the final hearing or otherwise.

Dated: July 31, 2021  Respectfully submitted,
     Houston, Texas

| **RAPP & KROCK, PC** | **VINSON & ELKINS LLP** |
|---|---|
| By: */s/ Henry Flores* | By: */s/ David S. Meyer* |
| Henry Flores | David S. Meyer (admitted *pro hac vice*) |
| Texas State Bar No. 00784062 | George R. Howard (admitted *pro hac vice*) |
| 1980 Post Oak Blvd. Suite 1200 | Steven Zundell (admitted *pro hac vice*) |
| Houston, TX 77056 | The Grace Building |
| Telephone: (713) 759-9977 | 1114 Avenue of the Americas, 32nd Floor |
| Facsimile: (713) 759-9967 | New York, NY 10036 |
| Email: hflores@rappandkrock.com | Telephone.: (212) 237-0000 |
| | Facsimile.: (212) 237-0100 |
| -and- | Email: dmeyer@velaw.com |
| | Email: ghoward@velaw.com |
| **DAVIS POLK & WARDWELL LLP** | Email: szundell@velaw.com |
| Damian S. Schaible (admitted *pro hac vice*) | |
| Elliot Moskowitz (admitted *pro hac vice*) | -and- |
| Aryeh Ethan Falk (admitted *pro hac vice*) | |
| Jonah A. Peppiatt (admitted *pro hac vice*) | Trevor Spears |
| 450 Lexington Avenue | Texas State Bar No. 24106681 |
| New York, NY 10017 | 2001 Ross Avenue, Suite 3900 |
| Telephone: (212) 450-4000 | Dallas, TX 75201 |
| Facsimile: (212) 701-5800 | Telephone: (214) 220-7784 |
| Email: damian.schaible@davispolk.com | Facsimile: (214) 999-7784 |
| Email: elliot.moskowitz@davispolk.com | Email: tspears@velaw.com |
| Email: aryeh.falk@davispolk.com | |
| Email: jonah.peppiatt@davispolk.com | |
| | |
| **COUNSEL TO THE AD HOC GROUP OF TERMINAL LENDERS** | **COUNSEL FOR AMP CAPITAL INVESTORS LTD.** |

## CERTIFICATE OF SERVICE

    I certify that on July 31, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*Henry Flores*
Henry Flores
