United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 11, 2021
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*** [1] | **CASE NO.: 21-32351** |
| **Debtors.** | **Jointly Administered** |

### THIRD INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors"), the court enters this Order (the "Third Interim Order") extending the terms of the (i) *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief,* dated July 14, 2021 (Docket No. 104) (the "First Interim Order"); and the (ii) *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*, dated August 2, 2021 (Docket No. 271) (the "Second

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Interim Order," and together with the First Interim Order, the "Prior Interim Orders")[2] with respect to the Debtors' rights to use cash collateral through August 29, 2021, with the following revisions:

A.      In addition to the $5.5 million in postpetition financing previously authorized in the First Interim Order and advanced in full to the Debtors, the Debtors are hereby authorized to (a) obtain additional postpetition financing in an aggregate principal amount not to exceed $10 million on an interim basis, pursuant to the terms of that certain DIP Credit Agreement, a copy of which was attached to the First Interim Order as Exhibit A, as modified pursuant to the terms of that certain First Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement, a copy of which is attached hereto as **Exhibit A** (the "First Amendment"). The Debtors are authorized to enter into the First Amendment.

B.      Attached hereto as **Exhibit B** is the Debtors' Approved Budget for the period from August 9, 2021 through and including October 31, 2021. *See* First Interim Order ¶ N.

C.      Notwithstanding paragraph 15(d) of the First Interim Order or anything contained in the DIP Loan Documents, the Debtors' failure to obtain entry of the Final Order shall not constitute, or be deemed to cause, a Termination Event unless the Debtors fail to obtain entry of the Final Order by September 17, 2021.  Notwithstanding paragraphs 9(g) and 15(p) of the First Interim Order, any breach of paragraph 9(g) of the First Interim Order with respect to a thirteen-week budget is hereby waived and shall not constitute, or be deemed to cause, a Termination Event. The requirements of Paragraph 9(g)(ii) of the First Interim Order are satisfied by the attached Approved Budget.

D.      Those certain Events of Default, Defaults, Termination Events, and/or Material Adverse Effect that were alleged in the Reservation of Rights Letter filed at Docket No. 355, and

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Prior Interim Orders.

any other Events of Default, Defaults (as such term is defined in the DIP Credit Agreement), Termination Events, and/or Material Adverse Effects of which the DIP Agent or any Lender (as such term is defined in the DIP Credit Agreement) has knowledge as of the date hereof are deemed cured and/or waived.

E.       The DIP Lenders ratify and affirm that, as of the date of this Order, the aggregate maximum outstanding principal amount of the DIP Loans, if fully advanced to the Borrower, will be $25,000,000, and that, subject to the Borrower's satisfaction of the conditions precedent set forth in Section 4.02 of the DIP Credit Agreement, the remaining aggregate Commitment of the DIP Lenders is $19,500,000. After giving effect to the First Amendment, none of the DIP Agent or the DIP Secured Parties have any knowledge or notice of any Default or Event of Default which would permit the DIP Agent or DIP Lenders to conclude that any of the conditions precedent set forth in Section 4.02 have not been satisfied as of the date hereof.  The DIP Lenders, and/or their Administrative Agent (as that term is defined in the First Amendment), shall be entitled to a $50,000 amendment fee on the terms provided in the First Amendment.

F.       Notwithstanding anything to the contrary in Prior Interim Orders, the DIP Loan Documents, or any Approved Budget, all accrued and unpaid professional fees and expenses of the Ad Hoc Term Lender Group, the Term Administrative Agent, the Project Collateral Agent, the Revolver Administrative Agent and J. Aron owed by the Debtors under paragraphs 8(b) and 9(a) – (c) of the First Interim Order shall be included in the Carve-Out, subject to a total aggregate cap of $1.3 million for the fees of such Prepetition Secured Parties; *provided*, that, for the avoidance of doubt, such cap is subject to further adjustment in connection with any further interim orders or the Final Order, and all rights with respect thereto are preserved.

G.     Resolution of Committee Issues.

1.     On July 26, 2021, the U.S. Trustee appointed the Official Committee of Unsecured Creditors in these Chapter 11 Cases [Docket No. 189] (the "Committee").

2.     In addition to counsel to the DIP Agent, the DIP Lenders, and the Prepetition Agents, the Debtors shall deliver a copy of the Approved Budget to the Committee.

3.     Notwithstanding paragraph 5 of the First Interim Order, the Committee Investigation Budget shall be in an amount up to an aggregate cap of $200,000.  Notwithstanding paragraph 42 of the First Interim Order, all rights of the Committee to seek an extension of the Challenge Period for purposes of the Final Order are preserved.

4.     For the avoidance of doubt, the Carve-Out in paragraph 5(i) of the First Interim Order includes all fees and expenses of bankruptcy professionals reflected as accrued in the Budget.  The Debtors will work in good faith with the Committee to establish a professional fee escrow consistent with the Approved Budget and the Debtors' liquidity needs.

5.     Notwithstanding paragraphs 6 and 7(a) of the First Interim Order, until the entry of the Final Order, the DIP Superpriority Claims and the DIP Liens shall not attach to or be payable from the Unencumbered Assets (as defined below).  Following entry of the Final Order, the DIP Superpriority Claims and the DIP Liens shall attach to the proceeds of, or property recovered in connection with, Unencumbered Assets, *provided that* such proceeds and property shall only be used to satisfy the DIP Superpriority Claims and the DIP Liens, to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations in full.

6.     Notwithstanding paragraphs 9(a), 9(b) and 9(c) of the First Interim Order, until the entry of the Final Order, (i) the adequate protection liens and security interests granted in paragraphs 9(a)(1), 9(b)(1) and 9(c)(1) shall not attach to or be payable from Avoidance Actions,

Avoidance Proceeds, commercial tort claims, or the proceeds thereof (collectively, the "Unencumbered Assets") and (ii) the superpriority administrative claims granted in paragraphs 9(a)(4), 9(b)(4) and 9(c)(4) shall not attach to or be payable from the Unencumbered Assets. Notwithstanding the Committee Investigation Budget or anything to the contrary in the First Interim Order, nothing herein shall prevent the Committee from seeking approval of all fees and expenses incurred by its professionals to be payable from the Unencumbered Assets.

7.     Notwithstanding paragraph 9(a)(6) of the First Interim Order, the right to credit bid the Prepetition Secured Obligations under the Prepetition Term Documents in connection with any sale of Prepetition Debt Collateral shall be subject to section 363(k) of the Bankruptcy Code.

8.     Notwithstanding paragraph 9(b)(6) of the First Interim Order, the right to credit bid the Prepetition Secured Obligations under the Revolver Transaction Documents in connection with any sale of Prepetition Debt Collateral shall be subject to section 363(k) of the Bankruptcy Code.

9.     Notwithstanding paragraph 9(c)(6) of the First Interim Order, the right to credit bid the prepetition obligations under the J. Aron Transaction Documents in connection with any sale of Inventory Financing Collateral shall be subject to section 363(k) of the Bankruptcy Code.

10.     Notwithstanding paragraph 9(e) of the First Interim Order, the rights of the Prepetition Secured Parties to credit bid their respective Prepetition Secured Obligations in connection with the sale of any of their respective Prepetition Collateral shall be subject to section 363(k) of the Bankruptcy Code.

11.     The Debtors shall arrange Weekly Meetings with the Committee and its advisors under paragraph 9(f) of the First Interim Order (which, for the avoidance of doubt, may be conducted as separate calls for the Prepetition Secured Parties and the Committee). The Committee's professionals may reasonably request topics of discussion at the Weekly Meetings.

12.     The Committee shall be entitled to the financial reporting and inspection rights described more fully in paragraph 12 of the First Interim Order.

13.     Notwithstanding paragraph 16(c) of the First Interim Order, the closing date of a 363 Sale shall not constitute a Cash Collateral Termination Event.

14.     Notwithstanding paragraph 19(b) of the First Interim Order, the DIP Collateral and proceeds thereof, proceeds of the DIP Financing, and the Prepetition Collateral and proceeds thereof may be used to investigate the actions described therein for the purposes described in, and a manner consistent with, the terms of paragraph 42 of the First Interim Order.

15.     Notwithstanding paragraph 26 of the First Interim Order, the Debtors shall obtain the consent of the Committee before modifying the Approved Budget with respect to the fees and expenses of the Committee professionals, which consent shall not be unreasonably withheld or delayed, or unless such modification is otherwise approved by the Court.

16.     Notwithstanding anything contained in paragraph 42 of the First Interim Order:

(a)     for the avoidance of doubt, the Challenge and Challenge Period shall not apply to any claims or causes of action of the Debtors with respect to the Insider Creditors;

(b)     the Challenge Period will be tolled for the Committee if it formally moves for an order of this Court conferring standing or authority (the "Standing Motion") prior to the Challenge Period, from the date the Committee so moves until five (5) business days from the

date that the Standing Motion is granted or the date when the Standing Motion is denied pursuant to an Order of the Court; *provided*, that the Challenge Period: (i) will only be tolled if such Standing Motion attaches a proposed complaint identifying the specific Challenge(s) that the Committee proposes to assert and the defendant(s) against whom such Challenge(s) are proposed to be asserted, and (ii) will only be tolled with respect to such Challenge(s) and defendant(s) specifically identified therein. Nothing in the First Interim Order or herein shall limit the Committee's ability to (x) file a timely Standing Motion in respect of any timely Challenge for which it cannot obtain standing as a matter of law because the applicable Debtor is a limited liability company (an "LLC Challenge Motion"), and (y) seek pursuant to such LLC Challenge Motion a mechanism by which to prosecute such Challenge, provided that the Committee otherwise satisfies the requirements in paragraph 42(a) of the First Interim Order. In the event the Committee files a timely LLC Challenge Motion for which it cannot obtain standing, and provided that the Committee otherwise satisfies the requirements set forth in paragraph 42(a) of the First Interim Order, the expiration of the Challenge Deadline solely for the specific Challenge set forth in the LLC Challenge Motion, and solely as to the defendant(s) named therein, shall be tolled pending further order of the Court, and applicable parties shall meet and confer with respect to an appropriate process (if any) for the prosecution of any such Challenge. If timely notified of a Challenge for which the Committee cannot gain standing because the applicable Debtor is a limited liability company, the Debtors (or a designated representative) shall, to the extent permitted by applicable law, retain the authority to prosecute such Challenge in the exercise of their business judgment and subject to any applicable further order of the Court.

(c)     Any Challenge, Standing Motion, or LLC Standing Motion commenced by the Committee (the "Committee Action") may be pursued by any chapter 7 trustee

in these Cases (a "Chapter 7 Trustee"), appointed subsequent to the filing of the Committee Action, in the Trustee's sole and exclusive discretion. The filing of a *Notice of Substitution of Trustee* for and in the stead of the Committee in the Committee Action, shall be automatically effective upon filing, without further Order of the Court, and the Chapter 7 Trustee shall be deemed automatically substituted for the Committee, which substitution shall be deemed retroactive to the date of the filing of the Committee Action.

17.     Notwithstanding anything to the contrary in paragraph 49 of the First Interim Order, (i) the Terminal Replacement Liens shall not attach to any Unencumbered Assets and (ii) any superpriority administrative claims granted therein shall not attach to or be payable from the Unencumbered Assets.

H.     To the extent any of the Terminal Entities have Permitted Prior Liens on Product or goods (as defined under the Uniform Commercial Code) or the proceeds thereof under the Non-Included Locations TSA[3] (the "Terminal Liens"), the Section 364(d)(1) Liens shall be junior to the Terminal Liens on such property.     _____

I.     Resolution of Objection by the United States of America.

1.     Notwithstanding anything to the contrary in the Prior Interim Orders, this Third Interim Order or the DIP Loan Documents, nothing in this Third Interim Order, the Prior Interim Orders or the DIP Loan Documents shall relieve the Debtors of any obligations under federal, state, territorial, or local police or regulatory laws or under 28 U.S.C. § 959(b), provided

---

[3] As that term is defined in the Objection and Reservation of Rights of Terminal Entities to Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing [Doc. No. 252].

that nothing herein shall limit or impair the Debtors' rights to assert defenses under applicable law and nothing herein shall create new defenses to obligations under police or regulatory laws or 28 U.S.C. § 959(b).

      2.      Notwithstanding anything to the contrary in the Prior Interim Orders, this Third Interim Order or the DIP Loan Documents, nothing in this Third Interim Order, the Prior Interim Orders or the DIP Loan Documents shall impair or adversely affect the United States of America's rights, claims and defenses of set-off and recoupment, if any, or any of its agencies, departments or agents, if any, and all such rights, claims and defenses, if any (the "Setoff/Recoupment Rights") shall be preserved in their entirety; *provided, however*, that the exercise of any such Setoff/Recoupment Rights must be in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; *provided further, however*, that (a) exercise of such Setoff/Recoupment Rights shall not impair or adversely affect the rights of the DIP Secured Parties and the Prepetition Secured Parties, as applicable, to assert remedies (if any) with respect to any Event of Default or Cash Collateral Termination Event, as applicable, in the event any such governmental unit exercises any such Setoff/Recoupment Rights, (b) nothing in this paragraph shall limit the right of any party in interest to challenge the Setoff/Recoupment Rights of any such governmental unit, and (c) nothing in the Prior Interim Orders, this Third Interim Order, or the DIP Loan Documents shall modify or determine the rights or priority of any governmental unit's Setoff/Recoupment Rights vis-à-vis the rights and liens of the DIP Secured Parties and the Prepetition Secured Parties, as applicable, and all rights of the governmental units and the DIP Secured Parties and Prepetition Secured Parties with respect to the determination of such rights or priority (to the extent such priority is a disputed issue) are preserved.

3.      With respect to environmental liabilities to any governmental unit, to the extent that the actions of the DIP Secured Parties or Prepetition Secured Parties constitute, within the meaning of 42 U.S.C. § 9601(20)(F) and (G), actual participation in the management or operational functions of a vessel or facility owned or operated by the Debtors, the rights of such governmental unit under applicable laws are preserved, and all rights of the DIP Secured Parties and the Prepetition Secured Parties to contest such liability or status under applicable law are preserved.  For the avoidance of doubt, in determining to make any loan or other extension of credit under the DIP Credit Agreement, permitting the use of Cash Collateral, performing under the Prior Interim Orders, the Third Interim Order and the DIP Loan Documents in the ordinary course, no DIP Secured Party or Prepetition Secured Party shall be deemed to have participated in the management or operational functions of a vessel or facility owned or operated by the Debtors, or to have otherwise caused lender liability to arise or assumed the status of control, responsible person, owner, or operator provided, however, that participating in management within the meaning of 42 U.S.C. § 9601(20)(F) and (G) would not be ordinary course performance.

4.      Within one business day of any modification to the Approved Budget, the Debtors must provide notice of the modified budget to the United States by e-mail through its counsel.

J.      <u>Reservation of Rights of Universal Plant Services (VI), LLC AltairStrickland V.I., LLC, Vivot Equipment Corporation and Virgin Islands Industrial Services, LLC</u>.  Notwithstanding anything in this Third Interim Order indicating to the contrary, nothing in this Third Interim Order will change or otherwise modify the prepetition priority of (i) any statutory liens, and (ii) any other rights and/or claims of Universal Plant Services (VI), LLC ("<u>UPS</u>"), AltairStrickland V.I. LLC ("<u>AltairStrickland</u>"), Vivot Equipment Corporation ("<u>Vivot</u>") and Virgin Islands Industrial

Services, LLC ("VIIS") (collectively, the "Construction Lien Objectors"), whose rights, if any, are hereby expressly preserved, except with respect to the DIP Liens granted to the DIP Secured Parties under the circumstances set forth in this paragraph. To the extent that a Construction Lien Objector has a lien on any DIP Collateral as of the Petition Date that is valid, enforceable, nonavoidable, and perfected, including as permitted by section 546(b) of the Bankruptcy Code, and such lien (or any amount owed associated with such lien) was senior in priority to any of the Prepetition Secured Parties Liens, such lien shall be treated as a Permitted Prior Lien and shall not be junior in priority to the DIP Liens or subordinated to any other liens created under this Order, including adequate protection liens granted to any party. The Construction Lien Objectors reserve their rights and nothing in this Third Interim Order limits their rights, if any, to request adequate protection equal to the diminution in value of their interest in collateral, if any, or seek other legal and equitable remedies with respect to the Debtors' assets. Each of the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties' rights to contest or otherwise object to such request or exercise of legal or equitable remedies or to any assertion of liens, interest or other claims of the Construction Lien Objectors are hereby reserved.

K.     Hearing Date.  The Final Hearing shall occur on August 31, 2021 at 9:30 a.m. prevailing Central Time.   The Debtors shall file proposed revised terms for obtaining additional credit and use of cash collateral following expiration of this Third Interim Order, if any, by August 27, 2021 at 12:00 p.m. prevailing Central Time.   Objections and responses to such proposed relief shall be due by August 30, 2021 at noon prevailing Central Time.

L.     Except as otherwise set forth herein, all terms and provisions of the Prior Interim Orders remain unchanged and in full force and effect.

M.     This Third Interim Order is immediately valid, effective and enforceable upon the
date signed by the Court and entered on the docket in the Chapter 11 Cases.

**Signed:  August 11, 2021.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## **Exhibit A**

First Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement

Gray Reed Draft (v3)  8/11/21

**FIRST AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR IN POSSESSION CREDIT AGREEMENT**

This FIRST AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR IN POSSESSION CREDIT AGREEMENT ("***Amendment***"), dated as of August [11], 2021 (the "***First Amendment Effective Date***"), is entered into by and among LIMETREE BAY REFINING, LLC, a U.S. Virgin Islands limited liability company ("***Borrower***"), LIMETREE BAY REFINING HOLDINGS II, LLC, a U.S. Virgin Islands limited liability company ("***Holdings***"), LIMETREE BAY SERVICES, LLC, a Delaware limited liability company ("***LBS***"), LIMETREE BAY REFINING HOLDINGS LLC, a U.S. Virgin Islands limited liability company ("***LBRH***"), LIMETREE BAY REFINING MARKETING LLC, a U.S. Virgin Islands limited liability company ("***LBRM***"), LIMETREE BAY REFINING OPERATING LLC, a U.S. Virgin Islands limited liability company ("***LBRO***", and together with LBRM, LBRH, LBS and Holdings, the "***Guarantors***", and together with the Borrower, the "***Borrower Parties***"), the Lenders party to the Credit Agreement described below, and 405 SENTINEL LLC, as administrative agent for the Lenders (the "***Administrative Agent***").

## RECITALS

WHEREAS, Borrower, the Guarantors, the Lenders, the Administrative Agent and certain other Persons are parties to the Senior Secured Superpriority Debtor In Possession Credit Agreement, dated as of July 13, 2021 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "***Credit Agreement***"); and

WHEREAS, the Borrower has requested that the Administrative Agent and the Lenders amend the Credit Agreement in certain respects as set forth herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants, representations and warranties contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

## AGREEMENT

Section 1.    <u>Definitions</u>.  Capitalized terms used herein but not defined herein shall have the meanings as given them in the Credit Agreement, unless the context otherwise requires.

Section 2.    <u>Amendments to Credit Agreement</u>.  The following provisions shall be effective upon the First Amendment Effective Date.

(a)    <u>Amendment of Section 1.1</u>. Section 1.1 of the Credit Agreement is hereby amended by adding the following definitions to such Section in appropriate alphabetical order:

"***First Interim DIP Order***" means the first Interim DIP Order entered in the Chapter 11 Cases on July 13, 2021.

4852-3190-5012.7

13900629.11

"*First Amendment*" means the First Amendment to Senior Secured Superpriority Debtor In Possession Credit Agreement dated as of August [11], 2021 among Borrower, the Guarantors, the Lenders and the Administrative Agent.

"*Second Interim DIP Order*" means the second Interim DIP Order entered in the Chapter 11 Cases on August 2, 20201.

"*Third Interim DIP Order*" means the third Interim DIP Order entered in the Chapter 11 Cases on or about the date hereof.

(b)     Amendment of Section 1.1.   Section 1.1 of the Credit Agreement is amended by deleting the definitions of "Fee Letter", "Initial Commitment Period", "Interim DIP Order", and "Maturity Date" and replacing them in their entirety with the following:

"*Fee Letter*" means the letter agreement, dated on or about the Closing Date, between the Borrower and the Administrative Agent, as amended restated, supplemented or otherwise modified from time to time.

"*Initial Commitment Period*" means the period commencing on the date of entry of the First Interim DIP Order and ending on the date of entry of the Final DIP Order.

"*Interim DIP Order*" means, collectively, each order of the Bankruptcy Court (including the First Interim Order, the Second Interim Order, and the Third Interim Order) entered in the Chapter 11 Cases after an interim hearing under Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure in form and substance reasonably acceptable to the Required Lenders and the Agent authorizing and approving, among other things, the DIP Facility on an interim basis, the terms of this Agreement and the other Loan Documents on an interim basis, and the granting of the Liens on the Collateral with the priority contemplated in this Agreement, as the same may be amended, amended and restated, supplemented or otherwise modified from time to time with the express consent of the Required Lenders.

"*Maturity Date*" means earliest to occur of: (a) the date that is nine (9) months after the date of entry of the First Interim DIP Order, (b) the date of the closing of a sale of all or a material portion of the Borrower Parties' assets under section 363 of the Bankruptcy Code, (c) the effective date of any confirmed plan in the Chapter 11 Cases, (d) the filing of a motion or other pleading requesting (or the entry of an order approving) the appointment of a trustee, other estate fiduciary or an examiner with special or expanded powers which the Debtors fail to timely oppose without the prior written consent of the Administrative Agent and the Lenders; (e) the date of acceleration of the Advances or termination of the Commitment by the Required Lenders or the Administrative Agent (at the direction of the Required Lenders) pursuant to Section 7.01 following an Event of Default; and (f) the occurrence of a Termination Event (as defined in the DIP Order).

"*Milestones*" has the meaning specified in Section 6.01(p), as amended by the First Amendment.

(c)     Amendment of Section 2.01(a).   Section 2.01(a) of the Credit Agreement is hereby amended and restated in its entirety to the following:

4852-3190-5012.7

13900629.11

"(a)     Subject to the terms and conditions set forth herein and in the DIP Order, each Lender severally agrees to make advances of its Commitment (each an "***Advance***" and, collectively, the "***Advances***") from time to time on any Business Day during the Commitment Period to the Borrower in an aggregate principal equal to its Pro Rata Share of the aggregate Borrowing requested in each Funding Notice delivered under Section 2.02; *provided that* the Advance to be made by each Lender shall not exceed, on the date of such Advance, such Lender's Available Commitment at such time (each, a "***Borrowing***" and collectively the "***Borrowings***"); *provided* that, notwithstanding anything to the contrary herein, (x) during the Initial Commitment Period, only two Borrowings of Advances shall be available to the Borrower, and the aggregate principal amount of such Borrowings shall not exceed $15,500,000; *provided further* that $5,500,000 shall be available upon entry of the First Initial DIP Order and the additional $10,000,000 shall be available upon the effectiveness of the First Amendment; and (y) upon and after the entry of the Final DIP Order, one or two additional Borrowings of Advances shall be available to the Borrower and the aggregate principal amount of such additional Borrowings shall not exceed $9,500,000; *provided further* that the aggregate principal amount of Advances to be made by the Lenders shall not exceed $25,000,000; *provided further* that the Lenders shall not be obligated to fund any Borrowing request if such disbursement would result in the Borrower Parties' pro-forma cash balance to exceed the Borrower Parties' cash balance in the DIP Budget at such time by $5,000,000 or more during the thirty (30) day period following the funding of the Borrowing requested in the Funding Notice, after giving pro forma effect to any planned expenditures projected to be made over such period in accordance with the DIP Budget.  Amounts repaid under the DIP Facility may not be reborrowed."

(d)     <u>Amendment of Section 2.02(a)</u>.   Section 2.02(a) of the Credit Agreement is hereby amended and restated in its entirety to the following:

"(a)     Whenever the Borrower desires to incur Advances hereunder, the Borrower shall deliver the Funding Notice to the Administrative Agent not later than 12:00 p.m., New York City time (or such later time as may be required by the Administrative Agent or acceptable to the Required Lenders), no less than three (3) Business Days (or such shorter period as agreed by the Administrative Agent in its sole discretion) before the date of the proposed Borrowing. Each such notice (the "***Funding Notice***") shall be in writing, may be delivered by telecopier or electronic communication, and shall be in substantially the form of Exhibit C, specifying therein the requested (i) Funding Date as the date of such Borrowing and (ii) aggregate amount of such Borrowing. The Funding Notice for the first Advance upon or after the entry of the Interim DIP Order shall be in a principal amount of $5,500,000. The Funding Notice for the Advance upon or after the effectiveness of the First Amendment shall be in a principal amount of $10,000,000. Each subsequent Funding Notice for Advances upon or after entry of the Final DIP Order shall be in a principal amount of $5,000,000 or more, unless the aggregate of each Lender's Available Commitment is less than $5,000,000, in which case the request for Advances may be for the aggregate amount of each Lender's Available Commitment. Upon and after the entry of the Final DIP Order, the Borrower may not request more than two (2) Advances in any ten (10) Business Day period."

(e)     <u>Amendment of Section 6.01(k)(i)</u>.   Section 6.01(k)(i) of the Credit Agreement is hereby amended by deleting each reference to "Within 30 days of the Closing Date" and replacing it with "Within 14 days of the date of the First Amendment,"

4852-3190-5012.7

13900629.11

(f)      Amendment of Section 6.01(k)(ii).     Section 6.01(k)(ii) of the Credit Agreement is hereby amended by deleting each reference to "Within 30 days of the Closing Date" and replacing it with "Within 30 days of the date on which Borrower's counsel receives a draft of the Pledge Agreement from DIP Agent's counsel,"

(g)      Amendment of Section 6.01(p)(ii).     Section 6.01(p)(ii) of the Credit Agreement is hereby amended by deleting "on or before the thirty-fifth (35th) day after the entry of the Interim DIP Order" and replacing it with "September [___], 2021."

(h)      Amendment of Section 7.01(p)(i).   Section 7.01(p)(i) of the Credit Agreement is hereby amended by deleting "the date that is forty-five (45) days after the Petition Date" and replacing it with "September [___], 2021."

Section 3.      Waiver. Counsel to the DIP Agent, Gray Reed, sent a letter to counsel to the Loan Parties, Baker & Hostetler LLP, dated August 9, 2021, alleging the occurrence of certain Events of Default, Defaults, and the occurrence of a Material Adverse Effect said to arise from a change in the value of the Collateral, all as more particularly set forth therein (the "DIP Agent Counsel's Letter"). As provided in the Third Interim Order, the DIP Agent and DIP Lenders waive any Default or Event of Default referred to, directly or indirectly, in the DIP Agent Counsel's Letter and further agree that, as of the date hereof, no Material Adverse Effect has arisen due to any change in the value of the Collateral. The DIP Agent and the DIP Lenders have no knowledge or notice of any Default or Event of Default after giving effect to this Amendment and the Third Interim Order.

Section 4.      Conditions Precedent. This Amendment shall be deemed effective (subject to the conditions herein contained) as of the First Amendment Effective Date when the Administrative Agent has received counterparts hereof duly executed by Borrower, the Guarantors, the Administrative Agent and the Required Lenders and upon the prior or concurrent satisfaction of each of the following conditions:

(a)      the Administrative Agent shall have received for its own account, or for the account of each Lender, as the case may be an amendment fee in the amount of $50,000.00, which shall be payable either in cash by Borrower or by offsetting the proceeds of the Advance to be made upon the effectiveness of this Amendment. For the avoidance of doubt, if such fee is being paid by offsetting the proceeds of the Advance to be made upon the effectiveness of this Amendment, the Administrative Agent will advance $9,950,000 to Borrower but Borrower will be deemed to have received an Advance of $10,000,000.  The Borrower shall not be responsible to the DIP Agent or any Lender for the application of the proceeds of such amendment fee by the DIP Agent.

(b)      the Administrative Agent shall have received for its own account, or for the account of each Lender, as the case may be (i) all fees, costs and expenses due and payable pursuant to Section 3.02 of the Credit Agreement, if any, and (ii) if then invoiced, any amounts payable pursuant to Section 10.02 of the Credit Agreement;

(c)      after giving effect to the Interim DIP Orders and this Amendment, the representations and warranties in Section 4 below are true and correct; and

(d)      the Administrative Agent shall have received a certificate, dated as of the

-4-

date hereof, of a Responsible Officer of the Borrower certifying as to the matters described in item (b) above.

Section 5.     Representations and Warranties.   Each of the Loan Parties hereby represents and warrants that after giving effect to this Amendment and to the Third Interim DIP Order:

(a)     the representations and warranties of the Loan Parties contained in the Loan Documents are true and correct in all material respects, other than those representations and warranties that expressly relate solely to a specific earlier date, which shall remain correct in all material respects as of such earlier date;

(b)     the Loan Parties shall be in compliance with the terms of the Interim DIP Order;

(c)     no Material Adverse Effect has occurred since the Petition Date; and

(d)     no Default or Event of Default has occurred and is continuing.

Section 6.     Loan Document; Ratification.

(a)     This Amendment is a Loan Document.

(b)     Each Loan Party hereby ratifies, approves and confirms in every respect all the terms, provisions, conditions and obligations of the Credit Agreement as amended hereby and each of the other Loan Documents to which it is a party.

(c)     In the event of any conflict between the terms of any Interim DIP Order and the Credit Agreement (as amended hereby), the terms of the Interim DIP Order shall govern and control. Without limiting the foregoing, no "Default" or "Event of Default" shall be deemed to have occurred under the Credit Agreement if a corresponding "Termination Event" (as defined in the DIP Orders) has been amended or waived pursuant to the terms of an DIP Order or other order of the Bankruptcy Court.

Section 7.     Costs and Expenses.   As provided in Section 10.02 of the Credit Agreement, Borrower agrees to reimburse Administrative Agent for all fees, costs, and expenses, including the reasonable fees, costs, and expenses of counsel or other advisors for advice, assistance, or other representation, in connection with this Amendment and any other agreements, documents, instruments, releases, terminations or other collateral instruments delivered by the Administrative Agent in connection with this Amendment.

Section 8.     Incorporation of Certain Provisions by Reference.   The provisions of Sections 10.13 and 10.14 of the Credit Agreement captioned "Governing Law; Jurisdiction, Etc." and "Waiver of Jury Trial" are incorporated herein by reference, *mutatus mutandis*, for all purposes.

Section 9.     Severability.   Any provision of this Amendment that is prohibited or unenforceable in any jurisdiction shall, as to such provision and such jurisdiction, be ineffective to

13900629.11

the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Amendment or affecting the validity or enforceability of such provision in any other jurisdiction.

Section 10.    Counterparts.  This Amendment may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any party hereto may execute this Amendment by signing one or more counterparts. Any signature hereto delivered by a party by facsimile or electronic transmission shall be deemed to be an original signature hereto.

Section 11.    No Waiver.   The execution, delivery and effectiveness of this Amendment shall not operate as a waiver of any default of Borrower or any other Loan Party or any right, power or remedy of the Administrative Agent or the other Secured Parties under any of the Loan Documents, nor constitute a waiver of (or consent to departure from) any terms, provisions, covenants, warranties or agreements of any of the Loan Documents. The parties hereto reserve the right to exercise any rights and remedies available to them in connection with any present or future defaults with respect to the Credit Agreement or any other provision of any Loan Document.

Section 12.    Successors and Assigns.  This Amendment shall be binding upon the Loan Parties and their respective successors and permitted assigns and shall inure, together with all rights and remedies of each Secured Party hereunder, to the benefit of each Secured Party and the respective successors, transferees and assigns.

Section 13.    Entire Agreement.    THIS AMENDMENT, THE CREDIT AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT OF THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*(Signature Pages Follow)*

4852-3190-5012.7

IN WITNESS WHEREOF, this Amendment is executed as of the date first written above.

**BORROWER**:

LIMETREE BAY REFINING, LLC,
a U.S. Virgin Islands limited liability company

By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

**GUARANTORS**:

LIMETREE BAY REFINING HOLDINGS II, LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY SERVICES, LLC,
a Delaware limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING HOLDINGS LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING MARKETING LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING OPERATING LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

**ADMINISTRATIVE AGENT**:

405 SENTINEL LLC,
a Delaware limited liability company


By:_____
Name: Lawrence Cutler
Title: Authorized Signatory


**LENDER**:

405 SENTINEL LLC,
a Delaware limited liability company


By:_____
Name: Lawrence Cutler
Title: Authorized Signatory

[Signature page to First Amendment to
Senior Secured Superpriority Debtor in Possession Credit Agreement]

**<u>Exhibit B</u>**

Approved Budget for the period from August 9, 2021 through and including September 13, 2021

**Limetree Bay Refinery**

**Forecasted Results of Operations and Cash Flows**

Wks Beginning   *8/9/21*   thru   *10/25/21*

| Week -----> | | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning of Week | | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | 9/20/21 | 9/27/21 | 10/4/21 | 10/11/21 | 10/18/21 | 10/25/21 | |
| End of Week | | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | 9/26/21 | 10/3/21 | 10/10/21 | 10/17/21 | 10/24/21 | 10/31/21 | |
| **Cash Receipts** | | | | | | | | | | | | | | |
| BP | [1] | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Excess Construction Material | [2] | 100 | - | 100 | - | 600 | - | 100 | 500 | - | - | 100 | 500 | 2,000 |
| Est. J. Aron Proceeds/Lien Release | | - | - | - | - | - | - | - | - | 18,008 | - | 20,000 | - | 38,008 |
| Resale of Flushing Oil | | - | - | - | - | - | - | 560 | - | - | - | - | - | 560 |
| Insurance Proceeds - TBD | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Sale of Spare Parts | | - | - | - | - | - | - | - | - | - | - | - | 2,500 | 2,500 |
| Asset Sale - TBD | [3] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total    Cash Receipts** | | $ 100 | $ - | $ 100 | $ - | $ 600 | $ - | $ 660 | $ 500 | $18,008 | $ - | $20,100 | $3,000 | $ 43,068 |
| **Cash Disbursements** | | | | | | | | | | | | | | |
| Payroll / Benefits | | $ 1,357 | $ 250 | $ 1,268 | $ 311 | $ 1,183 | $ 90 | $ 1,144 | $ - | $ 156 | $ - | $ - | $ - | $ 5,759 |
| Fuel | | 365 | 390 | 390 | 390 | 390 | 390 | 390 | 195 | 195 | 195 | 195 | 195 | 3,680 |
| Maintenance and Other Outside Services | | 442 | 298 | 298 | 298 | 298 | 298 | 30 | 30 | 30 | 30 | 30 | 30 | 2,110 |
| Insurance | [4] | - | - | 571 | - | - | - | - | - | 367 | - | - | 311 | 1,249 |
| IT Support / Software / Hardware | | - | 195 | 10 | 88 | 185 | 10 | 10 | 86 | 185 | 20 | 10 | 59 | 858 |
| Environmental / Safety | | - | 184 | - | - | 184 | - | - | - | 184 | - | - | - | 552 |
| Admin / Site Services | | 185 | 582 | 146 | 146 | 146 | 548 | 146 | 146 | 146 | 548 | 146 | 146 | 3,027 |
| Relocation Costs | | 550 | - | - | 1,392 | - | - | - | - | 612 | - | - | - | 2,554 |
| Community Incident Response | [5] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Limetree Bay Terminal Services | | 150 | 150 | 150 | 150 | 150 | - | - | - | - | - | - | - | 750 |
| EPA Mandated Expenditures | | 106 | 30 | - | 30 | - | 30 | - | 30 | - | 30 | - | 30 | 286 |
| Utility Adequate Assurance Payment | | - | 403 | - | - | - | - | - | - | - | - | - | - | 403 |
| Flare Repair | | 136 | 50 | - | - | - | - | - | - | - | - | - | - | 186 |
| Hydrocarbon Removal | [6] | 407 | 660 | 310 | 310 | 660 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 4,519 |
| **Total    Cash Disbursements** | | $ 3,698 | $ 3,191 | $ 3,142 | $ 3,115 | $ 3,195 | $ 1,676 | $ 2,029 | $ 797 | $ 2,185 | $ 1,133 | $ 691 | $ 1,080 | $ 25,932 |
| **Operating Cash Flow** | | $ (3,598) | $ (3,191) | $ (3,042) | $ (3,115) | $ (2,595) | $ (1,676) | $ (1,369) | $ (297) | $15,823 | $ (1,133) | $19,409 | $ 1,920 | $ 17,136 |

**Limetree Bay Refinery**

**Forecasted Results of Operations and Cash Flows**

Wks Beginning   _8/9/21_   thru   _10/25/21_

| Week -----> | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning of Week | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | 9/20/21 | 9/27/21 | 10/4/21 | 10/11/21 | 10/18/21 | 10/25/21 | |
| End of Week | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | 9/26/21 | 10/3/21 | 10/10/21 | 10/17/21 | 10/24/21 | 10/31/21 | |
| **Other (Sources) / Uses** | | | | | | | | | | | | | |
| DIP Financing Costs [7] | $ 50 | $ - | $ - | $ - | $ 51 | $ - | $ - | $ - | $ 42 | $ - | $ - | $ 1,035 | $ 1,179 |
| Insurance Claims Professionals | - | - | - | 50 | - | - | - | - | 50 | - | - | 50 | 150 |
| Term Lender Agent Fee | - | 50 | - | - | - | - | - | - | - | - | - | - | 50 |
| Engineering Professionals (Turner Mason) | - | - | 75 | - | - | - | - | - | 75 | - | - | - | 150 |
| _Total_   Other (Sources) / Uses | 50 | 50 | 75 | 50 | 51 | - | - | - | 167 | - | - | 1,085 | 1,529 |
| **Net Cash Flow Before Professional Fees** | (3,648) | (3,241) | (3,117) | (3,165) | (2,646) | (1,676) | (1,369) | (297) | 15,656 | (1,133) | 19,409 | 835 | $ 15,608 |
| **Professional Fees** | | | | | | | | | | | | | |
| Debtor Legal | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 800 | $ - | $ - | $ 800 | $ 1,600 |
| DIP Lender Counsel | 50 | - | - | - | 200 | - | - | - | 200 | - | - | 200 | 650 |
| Debtor Chief Restructuring Officer | - | - | - | - | - | - | - | - | 280 | - | - | 280 | 560 |
| UCC Legal and Financial Advisor | - | - | - | - | - | - | - | - | 600 | 350 | - | - | 950 |
| Term Lender Professionals | - | - | - | - | - | - | - | - | 250 | - | - | - | 250 |
| Independent Director | - | - | - | - | - | - | - | - | 15 | - | - | - | 15 |
| Revolver Counsel | - | - | - | - | - | - | - | - | 100 | - | - | - | 100 |
| US Trustee Fees | - | - | - | - | - | - | - | - | - | - | 250 | - | 250 |
| Investment Banker | - | - | - | 100 | - | - | - | - | 100 | - | - | - | 200 |
| BMC - Claims Agent | - | - | - | - | - | - | - | - | 50 | - | - | - | 50 |
| _Total_ | $ 50 | $ - | $ - | $ 100 | $ 200 | $ - | $ - | $ - | $ 2,395 | $ 350 | $ 250 | $ 1,280 | $ 4,625 |
| **Net Cash Flow** | $ (3,698) | $ (3,241) | $ (3,117) | $ (3,265) | $ (2,846) | $ (1,676) | $ (1,369) | $ (297) | $ 13,261 | $ (1,483) | $ 19,159 | $ (445) | $ 10,983 |
| _Accumulated_ | $ (3,698) | $ (6,939) | $ (10,056) | $ (13,321) | $ (16,167) | $ (17,843) | $ (19,213) | $ (19,509) | $ (6,248) | $ (7,731) | $ 11,428 | $ 10,983 | |
| **Beginning Cash Balance** | $ 955 | $ 7,257 | $ 4,015 | $ 898 | $ 5,633 | $ 2,787 | $ 1,111 | $ 1,242 | $ 945 | $14,206 | $12,723 | $31,883 | |
| **Net Cash Flow** | (3,698) | (3,241) | (3,117) | (3,265) | (2,846) | (1,676) | (1,369) | (297) | 13,261 | (1,483) | 19,159 | (445) | |
| **DIP Draw** | 10,000 | - | - | 8,000 | - | - | 1,500 | - | - | - | - | - | |
| **DIP (Paydown)** | - | - | - | - | - | - | - | - | - | - | - | (25,000) | |
| **Ending Book Cash Balance** | $ 7,257 | $ 4,015 | $ 898 | $ 5,633 | $ 2,787 | $ 1,111 | $ 1,242 | $ 945 | $14,206 | $12,723 | $31,883 | $ 6,437 | $ 6,437 |
| **Ending DIP Balance** | $15,500 | $15,500 | $15,500 | $23,500 | $23,500 | $23,500 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $ - | $ - |
| _Debtor Professional Fees Accrued (Cumulative)_ | $ 1,558 | $ 1,869 | $ 2,181 | $ 2,492 | $ 2,804 | $ 3,115 | $ 3,427 | $ 3,738 | $ 2,970 | $ 3,282 | $ 3,593 | $ 2,825 | |
| _UCC Professional Fees Accrued (Cumulative)_ | $ 279 | $ 371 | $ 464 | $ 557 | $ 650 | $ 743 | $ 836 | $ 929 | $ 421 | $ 164 | $ 257 | $ 350 | |

[1] - The Debtors have outstanding invoices to BP in the amount of approximately $32 million in respect of operational expenses incurred during the months of August 2020 through the present, under the Tolling Agreement.  Such invoices are disputed by BP.  These amounts are not included in the 12-week projection period as the CRO is currently investigating the validity of these outstanding amounts as well as the validity of any set-off claims.

[2] - Additional $2.0 million in collections are projected after the 13-week period.

[3] - USVI holds a letter of credit in the amount of $50 million split 50/50 between LB Terminals and LB Refining.  Under the Operating Agreement such amounts can be used for payment defaults and environmental assurances.

[4] - Existing premiums; coverages are currently under review with agents.

[5] - Subject to mediation.

[6] - More spend after this period anticipated in order to complete hydrocarbon removal.  Budgeting currently in process.

[7] - Assumes DIP Draws of $5.5 million on 7/12/2021, $10.0 million on 8/9/2021, $8.0 million on 8/30/2021, and $1.5 million on 9/20/2021, and DIP Repayments of $25.0 million on 10/25/2021.  Assumes an annual cash interest rate of 3.0%, annual PIK interest rate of 9.0%, annual delayed draw interest of 1.5%, and an agent fee of 0.25% on the total commitment amount.