IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:<br><br>**LIMETREE BAY SERVICES, LLC,** *et al.*,[1]<br><br>Debtors. | CHAPTER 11<br><br>CASE NO.: 21-32351 (DRJ)<br><br>(Jointly Administered) |

**DEBTORS' APPLICATION FOR ENTRY OF ORDER (I) AUTHORIZING THE RETENTION OF GLASSRATNER ADVISORY & CAPITAL LLC DBA B. RILEY ADVISORY SERVICES TO PROVIDE CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, (II) DESIGNATING MARK SHAPIRO AS CHIEF RESTRUCTURING OFFICER EFFECTIVE AS OF THE PETITION DATE, AND (III) GRANTING RELATED RELIEF**

> **This Application seeks an order that may adversely affect you. If you oppose the Application, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the Application should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the Application and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the Application at the hearing.**
>
> **Represented parties should act through their attorney.**

Limetree Bay Services, LLC, *et al.* (collectively, the "**Debtors**"), as debtors and debtors in possession in the above-captioned, jointly administered bankruptcy cases (collectively, the "**Chapter 11 Cases**"), hereby file this Application (the "**Application**") for Entry of an Order (I) Authorizing the Retention of GlassRatner Advisory & Capital LLC dba B. Riley Advisory Services ("**B. Riley**") to Provide the Debtors with a Chief Restructuring Officer ("**CRO**") and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Certain Additional Personnel ("**B. Riley Personnel**"), (II) Designating Mark Shapiro ("**Mr. Shapiro**") as Chief Restructuring Officer Effective as of the Petition Date, pursuant to that certain engagement letter agreement by and between the Debtors and B. Riley, dated June 17, 2021, a copy of which is attached hereto as <u>Exhibit A</u> (the "**Engagement Agreement**"), and (III) Granting Related Relief. In support of the Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue of the Debtors' Chapter 11 Cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. The statutory predicates for the relief sought are Sections 105 and 363(b) of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Rules for the Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas.

## PROCEDURAL HISTORY

5. On July 12, 2021 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 13, 2021, the Court entered an order directing the joint administration of the Chapter 11 Cases (Doc. No. 20). The Debtors continue to operate their business as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors (the "**Committee**") was appointed in the Chapter 11 Cases on or about July 26, 2021. No request for

the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

## FACTUAL BACKGROUND

6.       The Debtors own and operate an oil refinery (the "**Refinery**") located on the island of St. Croix in the United States Virgin Islands. The Refinery is part of a 2,000-acre industrial complex located on the southern coast of St. Croix comprised of (a) the Refinery and (b) an oil storage facility (or terminal) and docks owned and operated by non-debtor affiliates of the Debtors.

7.       A discussion of the facts and circumstances surrounding these Chapter 11 Cases is set forth in the *Declaration of Mark Shapiro in Support of Chapter 11 Petitions and First Day Motions* (Doc. No. 8), which was filed on the Petition Date and is incorporated herein by reference in its entirety.

## RELIEF REQUESTED

8.       By this Application, the Debtors seek entry of an order substantially in the form attached hereto as Exhibit C, pursuant to Sections 105 and 363(b) of the Bankruptcy Code (a) authorizing (i) the retention of B. Riley to provide the Debtors with a CRO as well as additional B. Riley Personnel to assist the CRO in the performance of his duties, and (ii) designating Mr. Shapiro as the Debtors' CRO (together with the B. Riley Personnel, the "**Engagement Personnel**"), effective as of the Petition Date, and (b) granting related relief. Attached hereto as Exhibit B, and incorporated herein by reference, is the Declaration of Mark Shapiro (the "**Shapiro Declaration**") in support of the Application.

## RETENTION OF B. RILEY

9.       B. Riley was retained by the Debtors on June 17, 2021, as the Debtors' chief restructuring officer to assist the Debtors with evaluating their restructuring options and otherwise help maximize the value of the Debtors' business and estates for the benefit of their constituents.

10. In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors require the assistance of a qualified and experienced chief restructuring officer with the resources, capabilities, and experience of B. Riley, Mr. Shapiro, and the Engagement Personnel. B. Riley performs critical services that complement the services provided by the Debtors' other professionals.

11. The Debtors believe that B. Riley, Mr. Shapiro, and the Engagement Personnel are well qualified to provide restructuring management services that will assist and enhance the Debtors' efforts to maximize the value of their estates. B. Riley has a wealth of experience in providing restructuring advisory services, and enjoys an excellent reputation in the restructuring community for services it has rendered on behalf of debtors and creditors throughout the United States.

12. B. Riley's professionals have assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' Chapter 11 Cases.

13. Mark Shapiro, a CPA and a Senior Managing Director at B. Riley, will act as CRO for the Debtors. Mr. Shapiro has more than 25 years of strategy, finance, and turnaround experience gained from holding corporate management roles and from advising companies in transition. A list of Mr. Shapiro's representative engagements is set forth in the Shapiro Declaration.

**SERVICES TO BE PROVIDED**

14. Subject to Court approval, the Debtors propose to retain B. Riley to make available to the Debtors the Engagement Personnel, on the terms and conditions provided in the Engagement

Agreement,[2] except as otherwise set forth herein or in any order granting this Application. The terms and conditions of the Engagement Agreement were negotiated between the Debtors and B. Riley at arm's length and reflect the parties' mutual agreement as to the efforts that will be required for this engagement.

15. Generally, the Engagement Personnel shall perform activities and services to oversee the Debtors' Chapter 11 process and assist with maximizing the value of the Debtors' estates. The CRO shall report to the Debtors' board of directors. In addition to the ordinary course duties of a CRO, the Engagement Personnel may also work with the Debtors on other matters related to these Chapter 11 Cases, including, without limitation, the following:

(a) Assist in all aspects of the Debtors' business activities and operations, including budgeting, cash management, and financial management;

(b) Assist the Debtors in communications and negotiations with the Debtors' lenders, vendors, and other stakeholders;

(c) Review daily operating activity, purchases, and expenses;

(d) Review historical and projected financial information, including operating results, capital structure and funding mechanics, for the Debtors;

(e) Assist the Debtors in developing financial and liquidity projections;

(f) Identify and assess potential restructuring alternatives for the Debtors;

(g) Assist the Debtors with ongoing financial reporting;

(h) Assist the Debtors in preparation of the information required pursuant to statutory reporting requirements related to the Chapter 11 Cases, including the statements of financial affairs, schedules, and, during the pendency of the case, the monthly operating reports;

(i) Assist with the preparation of reports for, and communications with, the Court, creditors, and any other constituents;

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Engagement Agreement.

4823-9149-6182.1

(j)      Review, evaluate, and analyze the financial ramifications of proposed transactions for which the Debtors may seek Court approval;

(k)      Provide financial advice and assistance to the Debtors in connection with a sale transaction;

(l)      Assist the Debtors in developing and supporting a proposed plan of reorganization;

(m)      Render Court testimony in connection with the foregoing, as required, on behalf of the Debtors;

(n)      Assist in the negotiation of terms of debtor-in-possession financing;

(o)      Work with the Debtors and their professionals to maximize the value of the Debtors' estates; and

(p)      Any other duty or task which falls within the normal responsibilities of a CRO at the direction of the Board.

Such professional services are necessary to the Debtors' efforts to maximize value and to the ongoing operation and management of the Debtors' businesses while they are in Chapter 11.

16.      When necessary, B. Riley will inform the Debtors as to any changes to B. Riley's staffing of the Engagement Personnel and will not add additional B. Riley Personnel to the engagement without first notifying and consulting with the Debtors to obtain the Debtors' agreement that such resources are necessary and not duplicative of the services being provided by other employees or professionals.

## B. RILEY'S DISINTERESTEDNESS

17.      As stated more fully in the Shapiro Declaration, to the best of the Debtors' knowledge, and except to the extent disclosed herein and in the Shapiro Declaration, B. Riley: (a) has no connection with the Debtors, the Debtors' affiliates, the top 30 unsecured creditors on a consolidated basis, the Debtors' secured creditors, the Debtors' current and former directors, officers, and managers, the United States Bankruptcy Judges for the Southern District of Texas

and their staff, or the Office of the United States Trustee for the Southern District of Texas; (b) does not hold any interest adverse to the Debtors' estates; and (c) believes it is a "disinterested person" as defined by Section 101(14) of the Bankruptcy Code.

18. Although the Debtors respectfully submit that the retention of B. Riley is not governed by Section 327 of the Bankruptcy Code, B. Riley conducted a search of salient records in an effort to determine whether B. Riley or any B. Riley Personnel has any connections with known parties in interest. Except as disclosed in the Shapiro Declaration, B. Riley does not have connections with creditors, equity security holders, or other parties-in-interest related to these Chapter 11 Cases. B. Riley does not represent an interest materially adverse to the Debtors' estates and does not have a conflict of interest regarding the Debtors or these Chapter 11 Cases.

19. To the extent that any new facts or relationships bearing on the matters described herein are discovered or arise, B. Riley will promptly file supplemental disclosures.

## TERMS OF RETENTION

### I. Professional Compensation and Expense Reimbursement

20. B. Riley's acceptance of this engagement is conditioned upon its ability to be retained and compensated in accordance with its customary terms and conditions and in accordance with the Engagement Agreement (all such proposed terms, the "**Fee and Expense Structure**"), described more fully below and in the Engagement Agreement.

21. B. Riley was retained by the Debtors on June 17, 2021. The current hourly billing rates for Mr. Shapiro and the B. Riley Personnel rendering services to the Debtors are as follows:

| | |
|---|---|
| Mark Shapiro, CRO | $595 |
| Scott Van Meter | $550 |
| Frank Cottrell | $400 |
| Christina Reynolds | $350 |
| Other Associates & Directors | $250–$450 |

7

Subject to approval by the Debtors, as provided herein and in the Engagement Agreement, B. Riley reserves the right to add additional B. Riley Personnel to this matter, to the extent deemed necessary and beneficial to the Debtors and their estate. B. Riley may adjust its rates from time to time with reasonable advance notice to the Debtors.

22. In addition to compensation for professional services rendered by the Engagement Personnel, B. Riley will seek reimbursement for reasonable and necessary out-of-pocket expenses incurred in connection with these Chapter 11 Cases, including reasonable fees and expenses of its counsel incurred in connection with the enforcement of the Engagement Agreement. B. Riley will not charge for travel time.

## II. **Indemnification**

23. As more fully described in the Engagement Agreement, the Debtors seek authority to indemnify B. Riley and B. Riley Personnel, including Mr. Shapiro. Specifically, the Debtors have agreed to indemnify and hold harmless B. Riley (including any employees or affiliated persons) against all claims, liabilities, losses and damages arising out of services performed on the Debtors' behalf, except to the extent caused by gross negligence or willful misconduct.

## **FEES AND REPORTING**

24. Upon Court approval of the relief requested herein, B. Riley will be retained to provide the Debtors with the necessary Engagement Personnel, and Mr. Shapiro will be designated as the Debtors' CRO pursuant to Sections 363 and 105(a) of the Bankruptcy Code. Because B. Riley is not being employed as a professional under Section 327 of the Bankruptcy Code, the Debtors request that B. Riley not be required to submit fee applications pursuant to Sections 330 and 331 of the Bankruptcy Code. Instead, B. Riley will submit monthly invoices to the Debtors, and the Debtors seek authority to pay those invoices in the ordinary course of business. In addition,

B. Riley will serve on the U.S. Trustee and the Committee (collectively, the "**Notice Parties**") a quarterly report of compensation earned and expenses incurred (the "**Compensation Report**") summarizing the services provided, identifying compensation earned by each executive officer and staff employee, and itemized expenses incurred. The Notice Parties shall have twenty (20) days after the date on which each Compensation Report is served upon them to objection. Compensation and expenses identified in B. Riley's Compensation Reports will be subject to review by the Court in the event an objection is filed. B. Riley will serve its first quarterly Compensation Report by October 31, 2021 for the period from the Petition Date through September 30, 2021.

25.     Pursuant to the Engagement Agreement, the Debtors paid B. Riley $250,000 on July 18, 2021. In the ninety-day period prior to the Petition Date, the Debtors paid B. Riley $400,000 in the aggregate for professional services performed and expenses incurred.

## NO DUPLICATION OF SERVICES

26.     The Debtors expect to apply to the Court for authorization to retain (a) Baker & Hostetler LLP as bankruptcy counsel and (b) Beckstedt & Kuczynski LLP as special counsel. However, B. Riley and the Engagement Personnel will complement, and not duplicate, the services to be rendered by these and any other professionals retained in these Chapter 11 Cases. B. Riley will work cooperatively with all of the Debtors' other professionals to ensure that value is maximized and that services are not duplicated.

## ARGUMENTS & AUTHORITIES

27.     The Debtors seek to employ and retain B. Riley and appoint Mr. Shapiro as CRO pursuant to Sections 363 and 105(a) of the Bankruptcy Code, effective as of the Petition Date. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

9

estate." Further, pursuant to Section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

28. Under applicable case law in this and other jurisdictions, a debtor's proposed use of its assets pursuant to Section 363(b) of the Bankruptcy Code, other than in the ordinary course of business, is authorized when the debtor demonstrates a sound business purpose for the intended use. *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[I]mplicit in § 363(b) is the further requirement of justifying the proposed transaction. That is, for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business") (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *see also In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and encourages discretion"); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (use of assets outside the ordinary course of business permitted if "sound business purpose justifies such actions"); *Comm. of Asbestos-Related Litigants v. Johns- Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

29. The retention of a CRO is necessary and appropriate under the circumstances. The Debtors' back office is understaffed and lacks both the manpower and experience to handle the extensive administrative matters required in a Chapter 11 case, while at the same time operating the business and maximizing value. An experienced professional in financial, operational, and bankruptcy-specific matters is a necessary and integral part of maximizing value and ensuring

efficiency and compliance with the Bankruptcy Code, the Bankruptcy Rules, and the various bankruptcy reporting obligations imposed on debtors in possession.

30.     The decision to retain B. Riley and employ Mr. Shapiro as CRO is a sound exercise of the Debtors' business judgment. First, Mr. Shapiro has extensive experience as an advisor for many troubled companies and has extensive experience in chapter 11 cases. The Debtors believe that Mr. Shapiro, in his capacity as CRO, and the B. Riley Personnel, will provide services that will benefit the Debtors' estates and creditors. In addition, B. Riley has extensive experience in providing restructuring consulting services in chapter 11 proceedings and enjoys an excellent reputation as a restructuring firm throughout the United States. Second, the economic terms of B. Riley's retention are fair, reasonable, and beneficial to the Debtors' estates, and were negotiated at arm's length. The Debtors believe that the Fee and Expense Structure is comparable to those generally charged by restructuring advisors of similar stature to B. Riley for similar engagements. Given the numerous issues that B. Riley may be required to address in the performance of its services hereunder, and the market prices for B. Riley's services for engagements of this nature both in and out of court contexts, the Debtors believe that the Fee and Expense Structure is in line with market compensation for similar services and is fair and reasonable.

31.     For the reasons set forth herein, the Debtors respectfully submit that the retention of B. Riley and the employment of Mr. Shapiro as the Debtors' CRO is a sound exercise of the Debtors' business judgment and in the best interests of all parties in interest in these Chapter 11 Cases. The Debtors further believe that B. Riley is well qualified and equipped to represent the Debtors in a cost-effective, efficient, and timely manner. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to retain B. Riley to provide the Debtors with a CRO, as well as any additional and necessary B. Riley Personnel, and to designate Mr. Shapiro as the

CRO to the Debtors, effective as of the Petition Date, all pursuant to Section 363 of the Bankruptcy Code.

32. Courts in this District and in other jurisdictions have approved relief similar to that requested in this Application. *See, e.g., In re Buccaneer Res., LLC*, No. 14-60041, (DRJ) (Bankr. S.D. Tex. July 8, 2014) (Docket No. 191); *In re Rotary Drilling Tools USA LLC*, No. 16- 33433 (MI) (Bankr. S.D. Tex. Sept. 8, 2016) (Docket No. 146); *In re ATP Oil & Gas Corp.*, No 12-36187 (MI) (Bankr. S.D. Tex. Sept. 27, 2012) (Docket No. 481); *In re Alco Stores, Inc.*, No. 14-34941 (SGJ) (Bankr. N.D. Tex. Nov. 24, 2014) (Docket No. 379); *In re Pilgrim's Pride Corp.*, No. 08-45664 (DML) (Bankr. N.D. Tex. Feb. 9, 2009) (Docket No. 825); *In re Veritis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012) (Docket No. 293).

33. Based on the foregoing, the Debtors respectfully submit that the retention of B. Riley, and the designation of Mark Shapiro as the Debtors' CRO on the terms set forth herein and in the Engagement Agreement, is necessary, appropriate, and in the best interest of the Debtors' estates, creditors, and other parties in interest and should be approved.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

34. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

35. Notice of this Application will be provided to the Master Service List, including: (a) the U.S. Trustee; (b) all secured creditors; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest consolidated unsecured

creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g) other interested parties as identified by the Debtors; (h) the Committee members and their counsel, if known; (i) proposed counsel to the Committee; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The method of service for each party will be described more fully in the certificate of service prepared by the Debtors' claims and noticing agent.

36. The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

37. No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit C, granting the relief requested herein and such other and further relief as the Court deems just and proper.

*[the remainder of this page is intentionally blank]*

Dated: August 11, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
Telephone:  407.649.4000
Facsimile:   407.841.0168
Email: egreen@bakerlaw.com
           jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
*Admitted Pro Hac Vice*
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone:  212.589.4200
Facsimile:   212.589.4201
Email: jrose@bakerlaw.com

*Proposed Counsel for the Debtors and Debtors in Possession*

### CERTIFICATE OF SERVICE

I certify that on August 11, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Elizabeth A. Green*
Elizabeth A. Green