IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 (DRJ) |
| Debtors. | (Jointly Administered) |

### DEBTORS' RESPONSE AND RESERVATION OF RIGHTS TO THE TERMINAL ENTITIES' MOTION TO ALLOW AND COMPEL PAYMENT OF ADMINISTRATIVE EXPENSES

Limetree Bay Services, LLC and its debtor affiliates (collectively, the "**Debtors**"), as debtors and debtors in possession in the above-captioned, jointly administered chapter 11 cases (collectively, the "**Chapter 11 Cases**"), hereby submit this response and reservation of rights (the "**Response**") to *The Terminal Entities' Motion to Allow and Compel Payment of Administrative Expenses* [Doc. No. 435] (the "**Motion**")[2] filed by the Terminal Entities.  In support thereof, the Debtors state as follows:

### PRELIMINARY STATEMENT

1.      The Motion brings to the forefront a question simmering just under the surface since the commencement of the Chapter 11 Cases: Whether and to what extent are the Terminal Entities entitled to payment on account of the storage of non-estate property—namely, the J. Aron Product?[3]  The Terminal Entities contend that the Debtors should be obligated to pay the full contractual amount due and owing for any and all services rendered under the Included TSA for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Unless otherwise defined herein, defined terms shall have the meanings ascribed to them in the Motion.

[3] As discussed, *infra*, the Motion also pertains to the obligation to pay for the storage of Debtor Product; however, the Debtor Product accounts for less than 1% of the total Product stored at the Terminal.

the benefit of J. Aron.  Upon examination, however, the arguments advanced by the Terminal Entities in support of this position prove specious and unsubstantiated.

2.     ***First***, Section 365(d)(3) of the Bankruptcy Code is irrelevant to the circumstances presented.  Section 365(d)(3) of the Bankruptcy Code provides that the "trustee shall timely perform all obligations of the debtor … arising from and after the order for relief under any *unexpired lease of nonresidential real property*, until such lease is assumed or rejected…."  11 U.S.C. § 365(d)(3)(A) (emphasis added).  The TSAs, however, are not "lease[s] of nonresidential real property."  To the contrary, the TSAs grant LBRM the right ███████████████████████ ████████████████████████████ Included TSA, Doc. No. 326-1; *see* Non-Included TSA, Doc. No. 326-2.

3.     ***Second***, the Terminal Entities have not, and cannot, satisfy the basic *prima facie* elements for an award of an administrative claim under Section 503(b)(1) of the Bankruptcy Code. Simply put, the services rendered under the Included TSA are not "actual, necessary costs and expenses of preserving the estate" [11 U.S.C. § 503(b)(1)(A)] as such services did not "arise[] from a transaction with the debtor-in-possession" and "enhance[] the ability of the debtor-in-possession's business to function as a going concern."  *Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In re TransaAmerican Natural Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992).  To the contrary, any postpetition services rendered under the Included TSA arise from a transaction with J. Aron—not the Debtors—due to the prepetition delivery of a Trigger Event Notice.  For the same reason, services rendered under the Included TSA are not "necessary" to the preservation of the estate as, following the delivery of a Trigger Event Notice, the Terminal Entities have an independent obligation to J. Aron to continue providing services, including storing and assisting in the liquidation of the J. Aron Product, regardless of whether LBRM defaults under

the Included TSA—a provision undoubtedly included to prevent the Terminal Entities from refusing service if LBRM, an affiliate of the Terminal Entities sharing common ownership and management, failed to make payment under the Included TSA.  Finally, as discussed below, the liquidation of the J. Aron Product does not provide any cognizable benefit or substantial contribution to the estates.

4.      ***Third***, the Terminal Entities have failed to establish any basis to warrant the award of adequate protection under Section 363(e) of the Bankruptcy Code in excess of the adequate protection (i.e., $150,000 per week) provided under the Interim DIP Orders and Final DIP Order (as defined below).  More precisely, the Terminal Entities have failed to present any evidence whatsoever to support the conclusion that the storage of the Debtor Product is anticipated to cause additional wear and tear on the subject tanks in an amount equal to the full contractual storage fees due under the TSAs (or any other amount).

5.      Accordingly, and for the reasons discussed herein, the Debtors respectfully request that the Court deny the Motion in its entirety.

## **RESPONSE**

**A.     The Terminal Entities Are Not Entitled To Compel Payment Under The TSAs Pursuant To Section 365(d)(3) Of The Bankruptcy Code**

6.      Section 365(d)(3) of the Bankruptcy Code provides, in pertinent part, that a "trustee shall timely perform all obligations of the debtor … arising from and after the order for relief under any *unexpired lease of nonresidential real property*, until such lease is assumed or rejected…." 11 U.S.C. § 365(d)(3)(A).  The TSAs, however, do not constitute "lease[s] of nonresidential real property" and, as such, the Terminal Entities are not entitled to payment of amounts due thereunder pursuant to Section 365(d)(3) of the Bankruptcy Code.

3

      **1.**      **TSAs are not Leases of Nonresidential Real Property**

7.      Principally, the TSAs do not constitute "leases" for purposes of Section 365 of the Bankruptcy Code.  A "lease" is "the transfer for absolute control and possession of property at an agreed rental."  *Statement, Inc. v. Pilgrim's Landing, Inc.*, 49 A.D.2d 28, 33 (N.Y. Sup. Ct. 1975) (internal quotations omitted), *quoting Feder v. Caliguira*, 8 N.Y.2d 400, 404, 171 N.E.2d 316, 318 (N.Y. Ct. App. 1960);[4] *see also In re Mirant Corp.*, No. 03-46590 DML, 2005 WL 6443618, at *7 (Bankr. N.D. Tex. Nov. 22, 2005) ("It is well-established that a distinguishing feature of a lease of real property is the lessee's right to exclusive possession of the property."), *citing Delauter v. Shafer*, 374 Md. 317, 822 A.2d 423, 427 (Md.2003) (quoting 1 TIFFANY, THE LAW OF REAL PROPERTY § 79, at 117–118 (3d ed.1939)).  The TSAs do not effectuate a "transfer for absolute control and possession of property…."  *Statement, Inc.*, 49 A.D.2d at 33.  Indeed, the TSAs expressly provide ████████████████████████████████████████████████████████ ████████████████████████████████████████[5]  *See* Included TSA, Doc. No. 326-1, at §§ 1.1, 25 and 26; *see* Non-Included TSA, Doc. No. 326-2, at §§ 1.1, 25 and 26.

8.      In reality, the TSAs merely grant LBRM the right to use certain storage capacity in the Terminal—not the right to control or possess the tanks or any real property interests of the Terminal Entities.  *See, e.g.,* Included TSA, Doc. No. 326-1, at Recitals, ¶¶ B and C; Non-Included TSA, Doc. No. 326-2, at Recitals, ¶¶ B, D, and G.  Indeed, the TSAs do not contain a single reference to the lease of real property.  *See, generally*, Included TSA, Doc. No. 326-1; *see, generally*, Non-Included TSA, Doc. No. 326-2.  In fact, the only reference to "real property" in

---

[4] The TSAs are governed by and construed in accordance with the laws of the State of New York, without reference to the choice of law principles thereof.  *See* Included TSA, Doc. No. 326-1, at § 28.6(a); *see also* Non-Included TSA, Doc. No. 326-2, at § 28.6(a).

[5] Under the TSAs, "Limetree Bay" refers to Limetree Bay Terminals, LLC and "Terminal" includes "tanks, and all other related … real property."

the TSAs appears in the definition of "Terminal."  Non-Included TSA, Doc. No. 326-2, at § 1.1



;[6] *see* Included TSA, Doc. No. 326-1, at § 1.1 (same).  As noted, *supra*, TSAs expressly provide [REDACTED]

*See* Included TSA, Doc. No. 326-1, at §§ 25 and 26; *see* Non-Included TSA, Doc. No. 326-2, at §§ 25 and 26.

9.     The fact that the TSAs merely grant a right to use certain storage capacity is further illustrated by numerous provisions of the TSAs, including, without limitation, [REDACTED]

—demonstrating that it is the storage capacity, not any specific tanks or nonresidential real property, at issue in the TSAs.  *See* Included TSA, Doc. No. 326-1, at § 6.3; *see* Non-Included TSA, Doc. No. 326-2, at § 6.3. Additionally, the conduct of the Terminal Entities—i.e., commingling assets of the Debtors with assets of unaffiliated third parties in the tanks—implicitly acknowledges that the storage rights conferred under the TSAs were not exclusive leasehold rights for the tanks or real property upon which the tanks are located.[7]

10.     Based on the foregoing, the TSAs do not constitute leases of nonresidential real property subject to the requirements of Section 365(d)(3) of the Bankruptcy Code and, as such, LBRM is not obligated to pay the storage fees under the TSAs pending their assumption or rejection.

---

[6] Per the terms of the Share Services Systems Agreement (the "**SSSA**"), the Debtors own an undivided, tenant in common interest in certain real and personal property assets of the Terminal.  *See* SSSA, Doc. No. 326-4.  The Debtors are investigating their particular interests in the property upon which the subject tanks are located and, moreover, whether the Debtors own any portion of the subject tanks under the SSSA.

[7] As discussed below, such conduct also constitutes a breach of the TSAs relieving the Debtors of the obligation to perform under the TSAs and/or entitling the Debtors to damages, recoupment rights, and offsets.

### 2. Compelling the Debtors to Pay All Contractual Storage Fees under the TSAs would be Inequitable

11.    If the Court finds that the TSAs are subject to Section 365(d)(3) of the Bankruptcy Code, the Debtors submit that compelling the Debtors to pay the contractual storage fees would be inequitable.   Section 365(d)(3) of the Bankruptcy Code "does not expressly state what consequences follow from a debtor's violation of its terms."  *In re Southwest Aircraft Servs., Inc.*, 831 F.2d 848, 853 (9th Cir. 1987), cert. denied, 487 U.S. 1206 (1988); *see also In re Mr. Gatti's, Inc.*, 164 B.R. 929, 931 (Bankr.W.D.Tex.1994) ("While [Section 365(d)(3)] expressly requires a debtor-tenant to timely perform all obligations accruing under the lease after commencement of the case, it fails to set out the landlord's remedies in the event of a default."); *In re DBSI, Inc.*, 407 B.R. 159, 164 (Bankr. D. Del. 2009) ("[S]ection [365(d)(3)] does not prescribe a penalty for its violation."); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 752 (Bankr. S.D.N.Y. 1986) (same). As such, courts have discretion in determining the appropriate remedy in the event a debtor fails to comply with Section 365(d)(3) of the Bankruptcy Code.  *See In re Southwest Aircraft Servs., Inc.*, 831 F.2d at 854 ("Congress intended the bankruptcy courts to have the discretion to consider all of the particular facts and circumstances involved in each bankruptcy case and to decide whether the consequence of a violation of subsection (d)(3) should be forfeiture of the unassumed lease, some other penalty, or no penalty at all."); *In re Westview 74th St. Drug Corp.*, 59 B.R. at 754 (the appropriate remedy for violations of Section 365(d)(3) of the Bankruptcy Code "is one which should be formulated by the court after a review of the facts of a particular case.").

12.    Under the circumstance presented, compelling the Debtors to pay the amount due at the contractual rate under the TSAs would be inequitable.  First and foremost, LBRM is the only debtor entity party to the TSAs.  *See, generally,* Included TSA, Doc. No. 326-1; *see, generally,* Non-Included TSA, Doc. No. 326-2.  Accordingly, compelling the Debtors (other than LBRM) to

pay amounts due under the TSAs would be inequitable.  Second, LBRM has moved to reject the

TSAs *nunc pro tunc* to the Petition Date pursuant to Section 365 of the Bankruptcy Code, which

motions are still pending.  *See* Doc. Nos. 199 and 200.  If granted, the Terminal Entities would not

be entitled to payment of any amounts due under the TSAs pursuant to Section 365(d)(3) of the

Bankruptcy Code; rather, the Terminal Entities would only be entitled to a claim for compensation,

to the extent permitted under Section 503(b)(1) of the Bankruptcy Code.  Third, the Debtors are

informed and believe that the Terminal Entities improperly inflated the rates charged to the Debtors

under the TSAs, such that ordering LBRM to pay these above-market rates would be unreasonable

and unfair to creditors.  Fourth, the Debtors are informed and believe that the Terminal Entities

have improperly commingled third party assets with the Product of the Debtors, and, possibly, J.

Aron, in violation of the TSAs, which, if accurate, would preclude the Terminal Entities from

recouping storage and associated fees (e.g., fees for the full capacity of tanks containing third-

party product, tank cleaning fees, etc. [*see* Included TSA, Doc. No. 326-1, § 9.1; *see* Non-Included

TSA, Doc. No. 326-2, § 9.1]) or asserting a claim for amounts due under the TSAs [*see* 11 U.S.C.

§ 502(b)(1)] and, moreover, may entitle LBRM to damages, recoupment, reimbursement, and

offset.[8]  Similarly, the Terminal Entities owe the Debtors certain funds under the SSSA, which the

Debtors estimate total in excess of $7.3 million (as of the Petition Date) and may be offset against

any claims by the Terminal Entities under the TSAs.

13.    Accordingly, based on the foregoing, the Debtors submit that compelling the

Debtors to pay all amounts due under the TSAs pursuant to Section 365(d)(3) of the Bankruptcy

Code would be inequitable.

---

[8] The Debtors are investigating the conduct of the Terminal Entities in connection with the storage of Product under
the TSAs.

**B.      Terminal Entities Fail To Establish A Valid Administrative Claim**

14.      Pursuant to Section 503(b)(1)(A) of the Bankruptcy Code, the Court may allow an administrative priority claim for the "actual, necessary costs and expenses of preserving the estate…." 11 U.S.C. § 503(b)(1)(A).  The classification of a claim as an administrative expense "is significant because we presume that all 'creditors are equally innocent victims in th[e] bankruptcy.' The question is therefore 'not whether [the creditor] deserves to get paid, but whether [it] deserves to get paid at the expense of [the debtor's] existing unsecured creditors.'"  *In re Whistler Energy II, L.L.C.*, 931 F.3d 432, 441 (5th Cir. 2019) (internal citation omitted), *quoting In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 389 (5th Cir. 2001).  "The burden is upon the creditor seeking administrative expenses to prove that the costs or expenses are actual, necessary, and beneficial to the estate."  *In re Espinosa*, 542 B.R. 403, 410 (Bankr. S.D. Tex. 2015), *citing In re Buttes Gas & Oil Co.*, 112 B.R. 191, 193 (Bankr. S.D. Tex.1989) ("The burden of proof is on the movant or applicant in establishing their entitlement to an award under 11 U.S.C. § 503(b) and they must demonstrate by a preponderance of the evidence that a substantial contribution was made.").  "'Generally, section 503(b) priorities should be narrowly construed to maximize the value of the estate for all creditors.'"  *In re Northstar Offshore Grp., LLC*, 628 B.R. 286, 299 (Bankr. S.D. Tex. 2020), *quoting* 4 COLLIER ON BANKRUPTCY ¶ 503.06[2] (Richard Levin & Henry J. Sommers eds., 16th ed.).

**1.      Storage of J. Aron Product does not Constitute an Actual and Necessary Expense of Preserving the Estate**

15.      "In order to qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee that benefitted the estate."  *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001), *citing Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In re TransaAmerican Natural Gas*

*Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992). "A prima facie case under [Section] 503(b)(1) [of the Bankruptcy Code] may be established by evidence that (1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability of the debtor-in-possession's business to function as a going concern." *In re TransAmerican Nat. Gas Corp.*, 978 F.2d at 1416, *quoting NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991), cert. denied, 502 U.S. 1032 (1992).

> a. *Storage of J. Aron Product does not Arise from a Transaction with the Debtors and was not Induced by the Debtors*

16.     Postpetition services under the Included TSA are not the result of a transaction with the Debtors or action taken by the Debtors; rather, such services were directed and provided for the benefit of J. Aron. The Included TSA governs the storage of the J. Aron Product. The J. Aron Product is owned by J. Aron, not the Debtors, and does not constitute property of the estates under Section 541(a) of the Bankruptcy Code. Prior to the Petition Date, J. Aron delivered a "Trigger Event Notice" in accordance with Section 28.12 of the Included TSA. *See* Included TSA, Doc. No. 326-1, at § 28.12. █████████████████████████████████████████

███████████████████████████████ *See, generally,* Included TSA, Doc. No. 326-1.



4828-7238-6298.5

*See* Included TSA, Doc. No. 326-1, at § 28.12(a)(ii).  As such, at all relevant times to the Motion, the Terminal Entities rendered services under the Included TSA at the sole and exclusive direction of J. Aron.[9]  For the same reason, any services rendered by the Terminal Entities under the Included TSA was not, and could not be deemed to have been, induced by the Debtors as the Debtors lacked the ability to direct any action by the Terminal Entities under the Included TSA.  *In re Whistler Energy II, L.L.C.*, 931 F.3d 432, 442 (5th Cir. 2019) ("[I]n the context of commercial transactions for goods and services, a creditor must show some inducement by the debtor-in-possession" to establish a claim under Section 503(b)(1) of the Bankruptcy Code).

17.    The Terminal Entities, in fact, are independently obligated to perform any and all obligations under the Included TSA—regardless of whether LBRM is in default or fails to pay any amounts due thereunder, including storage fees. ███████████████████████████

███████████████████████████████████████  *See, e.g.,* Included TSA, Doc. No. 326-1, at § 3.1.  Upon delivery of a Trigger Event Notice, these provisions serve to substitute J. Aron for LBRM in all material provisions of the Included TSA.  *See, generally,* Included TSA, Doc. No. 326-1. ███████████████████████████



---

[9] By and through the Motion, the Terminal Entities reserve the right to seek payment of certain fees and costs, in addition to storage fees under the TSAs. ████████████████████████████████████ *ee* Included TSA, Doc. No. 326-1, at § 7.5.  Further, the Debtors are informed and believe that the Terminal Entities commingled Product subject to the TSAs and product owned by unidentified third parties (the Debtors' investigation of this point is ongoing). ██████████████████████  *ee* Included TSA, Doc. No. 326-1, at § 9.1; *See* Non-Included TSA, Doc. No. 326-2, at § 9.1.

*See, generally*, Included TSA, Doc. No. 326-1, § 28.12(a)(iii).  Pursuant to these provisions, the Terminal Entities agreed, and are obligated, to provide services to J. Aron following delivery of a Trigger Event Notice, notwithstanding LBRM's failure to comply with any provisions of the Included TSA or any ongoing breach(es) thereof, and J. Aron is empowered to enforce any and all obligations of the Terminal Entities thereunder.  *Id.*

18.     Based on the foregoing, it is beyond reasonable dispute that any fees and costs arising under the Included TSA on or after the Petition Date did not, and could not have, resulted "from a transaction with the debtor-in-possession" induced by the Debtors, as required to establish a claim under Section 503(b)(1) of the Bankruptcy Code, and, rather, resulted from the Terminal Entities' performance of obligations due and owing to J. Aron under the Included TSA following delivery of a Trigger Event Notice.  *Id.*; *In re TransAmerican Nat. Gas Corp.*, 978 F.2d at 1416.

        b.     *Storage of J. Aron Product did not Enhance the Ability of the Debtors' Business to Function as a Going Concern*

19.     Postpetition services under the Included TSA did not "enhance[] the ability of the [Debtors'] business to function as a going concern" (*In re TransAmerican Nat. Gas Corp.*, 978 F.2d at 1416) or "result in a *direct* benefit to the estate."  *In re Dahlgren Int'l, Inc.*, 147 B.R. 393, 402 (N.D. Tex. 1992) (emphasis added).  First and foremost, the Debtors ceased operations of the Limetree Bay refinery (the "**Refinery**") in accordance with the terms of the Clean Air Act Emergency Order issued by the United States Environmental Protection Agency on or about May 14, 2021.  As such, the storage of J. Aron Product following the Petition Date has not enhanced, and cannot be deemed to enhance, any going concern.

20.     Further, the storage and disposition of the J. Aron Product does not enhance the current operations of the Debtors' enterprise, which consists primarily of repairing and idling the

Refinery in preparation for a sale of the facility.  In fact, the storage and disposition of the J. Aron

Product has nothing to do with the repair and idling of the Refinery.  Rather, any postpetition

services under the Included TSA pertain exclusively to the liquidation of the J. Aron Product under

the terms of the J. Aron Transaction Documents—not the Debtors' business operations, as required

to warrant an administrative claim under Section 503(b)(1) of the Bankruptcy Code—and,

moreover, are rendered by the Terminal Entities in order to discharge their obligations to J. Aron

under the Included TSAs.  *In re TransAmerican Nat. Gas Corp.*, 978 F.2d at 1416.

21.     Finally, the Terminal Entities have not, and cannot, identify any direct benefit to

the estates from the storage of the J. Aron Product.  To the contrary, the Terminal Entities posit

that:

> The storage capacity and related services being provided to the Debtors under the
> Included TSA will allow the Debtors to fulfill their obligations to J. Aron.  This
> will allow the Debtors to recover for their estates certain refunds of margin funds,
> lien releases, and potentially additional proceeds under the J. Aron Transaction
> Documents ….

Doc. No. 435, at p. 14.  Such contingent and attenuated "benefit" fails to satisfy the "direct benefit"

and "substantial contribution" requirements for allowance of an administrative claim under Section

503(b)(1) of the Bankruptcy Code.  *In re Dahlgren Int'l, Inc.*, 147 B.R. at 402; *In re Espinosa*, 542

B.R. at 410.

22.     Due to the absence of any cognizable benefit to the Debtors and their estates, the

Terminal Entities are not entitled to an administrative expense claim for services rendered to J.

Aron under the Included TSA.

**C.      If Entitled To An Administrative Claim, The Requested Claim Is Grossly
Disproportionate To The Value Of Any Alleged Services Under The TSAs**

23.     Assuming, *arguendo*, the Terminal Entities are entitled to an administrative claim,

the administrative claim requested is grossly disproportionate to the value of any services rendered

under the TSAs.  The *sine qua non* of an administrative claim under Section 503(b)(1) of the Bankruptcy Code is actual, cognizable benefit to the estate.  *In re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir. 1998) ("An 'actual and necessary cost' *must have been of benefit to the estate and its creditors*.  This requirement is in keeping with the conceptual justification for administrative expense priority: that creditors must pay for those expenses necessary to produce the distribution to which they are entitled." (emphasis added)), *citing In re TransAmerican Natural Gas Corp.*, 978 F.2d at 1416; *In re ASARCO LLC*, 441 B.R. 813, 824 (S.D. Tex. 2010), *aff'd sub nom. In re ASARCO, L.L.C.*, 650 F.3d 593 (5th Cir. 2011) ("Crucial to satisfying the § 503 test is that the estate receive a 'discernible benefit' as a result of the expenditure.").

24.     By and through the Motion, the Terminal Entities seek an administrative claim in excess of any arguable benefit to the estates.  First and foremost, as discussed *supra*, the storage of the J. Aron Product does not "enhance[] the ability of the [Debtors'] business to function as a going concern" or "result in a direct benefit to the estate," and, as such, does not entitle the Terminal Entities to an administrative expense claim.  *In re TransAmerican Nat. Gas Corp.*, 978 F.2d at 1416; *In re Dahlgren Int'l, Inc.*, 147 B.R. at 402.  Furthermore, the J. Aron Product is not property of the estates under Section 541(a) of the Bankruptcy Code; rather, the J. Aron Product is owned by J. Aron and, as present, is being liquidated for the benefit of J. Aron under the J. Aron Transaction Documents.  Thus, the storage of the J. Aron Product does not directly benefit an estate asset; rather, the Terminal Entities continue to store the J. Aron Product pending liquidation of the same because the Terminal Entities are contractually obligated to provide such services to J. Aron under the Included TSA.

25.     Notwithstanding, even if the Terminal Entities have provided some benefit to the estates under the TSAs, the Terminal Entities request a claim far in excess of any arguable benefit

13

conferred.  By and through the Motion, the Terminal Entities request that the Court allow an administrative expense claim under Section 503(b)(1) of the Bankruptcy Code in an amount equal to the maximum storage fee due under the Included TSA, which consists ***primarily*** of fees for unused storage capacity.[10]  *See* Doc. No. 435, at pp. 8-10, 12-15.  Indeed, the Terminal Entities concede that the vast majority of the storage capacity for which the Terminal Entities seek an administrative claim is unused, *to wit*, only approximately 24% of the total storage capacity allocated under the TSAs is presently occupied with Product.[11]  Setting aside the question of whether any benefit is conferred by the storage of the Product, it is beyond reasonable dispute that the Debtors and the estates do not benefit from unused, "reserved" storage capacity at the Terminal—especially as the Debtors are not operating and J. Aron is liquidating the J. Aron Product in accordance with the Included TSA.

26.     As such, to the extent the Court allows an administrative claim, such claim must be limited to the actual storage capacity utilized under the Included TSA.  The Terminal Entities, however, have failed to establish the value of the actual storage capacity utilized under the TSAs and, thus, any arguable "benefit."  *See, generally*, Doc. No. 435.  "The burden is upon the creditor seeking administrative expenses to prove that the costs or expenses are actual, necessary, and

---

[10] While it is the Debtors' understanding that the Terminal Entities seek payment of the maximum storage fee under the TSAs, the Motion fails to provide any calculation for the amount of the requested administrative claim.  As a result, the Debtors cannot ascertain the basis for the requested administrative claim—beyond the Terminal Entities' assertion that "[e]ach month, the Debtors incur approximately $5.5 million in tank storage costs plus additional fees as provided under the TSAs….  As of the date of this motion, the Debtors owe $7,826,641.61 in unpaid storage fees for the period from the Petition Date through the end of July 2021 and for the month of August 2021 under the TSAs." Doc. No. 435, at p. 9.

[11] Debtors are continuing to investigate the amount of Product stored at the Terminal.  Notwithstanding, by and through the Motion, the Terminal Entities concede that only approximately 3,022,903 barrels of Product are stored in the tanks, ██████████████████████████████████  Further, of the 3,022,903 barrels of Product stored at the Terminal, only 23,273 barrels, or less than 1% of the Product, is Debtor Product.

Further, with respect to the Debtor Product, the Terminal Entities allege that the Debtors are utilizing the butane and propane to generate power for the benefit of the Refinery [*see* D.E. 435, at pp. 14-15]; however, the Terminal Entities fail to disclose that the Terminal Entities rely on power supplied by the Refinery to operate the Terminal and, as such, would benefit from the alleged use of the butane and propane to the same extent, if not more, than the Refinery.

14

beneficial to the estate." *In re Espinosa*, 542 B.R. at 410, *citing In re Buttes Gas & Oil Co.*, 112 B.R. at 193 ("The burden of proof is on the movant or applicant in establishing their entitlement to an award under 11 U.S.C. § 503(b) and they must demonstrate by a preponderance of the evidence…."). While the Terminal Entities identify the purported amount of Product as of the date of the Motion, the Terminal Entities fail to (i) provide an accounting of the Product stored between the Petition Date and the filing date of the Motion, (ii) identify the type(s) of Product stored at the Terminal under the TSAs, (iii) the amounts of each type of Product stored at the Terminal under the TSAs, which considerations is crucial as the storage fees per barrel under the TSAs depend on the type of product being stored, or (iv) provide an accounting of the allocation of the $1,350,000 paid to the Terminal Entities in accordance with the Interim DIP Orders and *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Doc. No. 495] (the "**Final DIP Order**"). Absent evidence of the foregoing, the Terminal Entities have failed to carry their evidentiary burden to establish any administrative claim and, as such, the Motion must be denied.[12]

**D.   Terminal Entities Are Not Entitled To Adequate Protection Under Section 363(e)**

27.   As an alternative to the relief requested under Section 365(d)(3) of the Bankruptcy Code, the Terminal Entities aver that the Debtors should be ordered to pay *the full amount allegedly due under the contract* (i.e., $7,826,641.61) as adequate protection under Section 363(e)

---

[12] In the course of their investigation, the Debtors have uncovered information that may affect the amounts due and owing under the TSAs, including whether exclusive rights to the storage capacity in the tanks were conferred and whether and to what extent the storage charge per barrel should be adjusted to reflect the non-exclusive nature of the storage, which places the product as greater risk of dilution or contamination. As noted below, unless the parties agree to a reasonable schedule for discovery and the adjudication of the Motion, the Debtors request a continuation of the hearing on the Motion to permit the Debtor to conduct discovery regarding this issue, among others.

of the Bankruptcy Code to compensate the Terminal Entities for additional wear and tear [*see* Doc. No. 435, at p. 16 ("Use of the tanks will result in additional wear and tear of the tanks reducing their operational lifespan")] and continued reservation of storage capacity in the tanks [*see* Doc. No. 435 at p. 16 ("Further, the Debtors lease the tanks exclusively; LBT is not able to seek new customers for those tanks so long as the Debtors continue to lease and store Product in them.")]. Stated mildly, the bases for the Section 363(e) argument are legally and factually dubious.

28.     As to the latter, while the Terminal Entities may be obligated to provide tanks to LBRM on an exclusive basis, the Terminal Entities have breached this obligation; accordingly, it strains credulity to contend that an obligation the Terminal Entities have breached warrants awarding all amounts purportedly due under the TSAs as adequate protection.[13]  Further, there is nothing in the TSAs that precludes the Terminal Entities from "seek[ing] new customers" for any tanks, and the Debtors do not have any issue with the Terminal Entities seeking new customers to populate any of the unused tanks or, with the Debtors' consent, any storage capacity in any tanks containing Debtor Product—especially as the Debtor Product only requires two (2) of the more than 30 tanks purportedly subject to the TSAs.

29.     Further, the Terminal Entities have failed to provide any support whatsoever for the contention that the postpetition storage of the Debtor Product has caused or will cause any additional wear and tear on the subject tanks in excess of $7.2 million attributable to such product (especially as third-party product is stored in the same tanks as the Debtor Product).  Further, the Debtors find it difficult to believe that additional wear and tear on the tanks and equipment equals the total storage fees under the TSAs.  If this were the case, the Terminal Entities priced the storage

---

[13] The Terminal Entities' request is also potentially barred under the terms of the TSAs. ███████████ ██████████████████████████████████████████████████████████████ Included TSA, Doc. No. 326-1, at § 16.3; Non-Included TSA, Doc. No. 326-2, at § 16.2.

fees under the TSAs without any allocation for profit, which is unlikely as the Debtors are informed and believe that the Terminal Entities charge non-debtor entities less than the pricing in the TSAs for the same services.

30.     As for the former issue, the Terminal Entities have failed to demonstrate any legal basis for adequate protection under Section 363(e) of the Bankruptcy Code.  As previously discussed, the TSAs do not constitute "leases" of real or personal property; rather, the TSAs merely grant LBRM the right to store certain hydrocarbons at the Terminal.  Indeed, all rights normally associated with a "lease" are expressly reserved for the Terminal Entities under the TSAs.  More precisely, as noted, *supra*, ████████████████████████████████████████ ████████████████████████████████████████ *See* Included TSA, Doc. No. 326-1, at §§ 1.1, 25 and 26; *see* Non-Included TSA, Doc. No. 326-2, at §§ 1.1, 25 and 26.  Similarly, to the extent the TSAs constitute "leases" of personal property for purposes of Sections 363(e) and 365 of the Bankruptcy Code, the Terminal Entities have failed to demonstrate which tanks are "used" by the Debtors (i.e., contain Debtor Product).

31.     Assuming, *arguendo*, the Terminal Entities are entitled to adequate protection under Section 363(e), the Debtors respectfully submit that the adequate protection provided under the Interim DIP Orders and Final DIP Order (i.e., $150,000 per week) sufficiently protects the Terminal Entities from any potential diminution in the value of the tanks containing Debtor Product resulting from the storage of the same.  As such, the Debtors respectfully request that the Court deny the request for adequate protection under Section 363(e).

**E.     The Terminal Entities' Request For An Administrative Claim Is Premature**

32.     In addition to the foregoing defects, consideration of the Motion is premature as the purported "benefit" is speculative and the investigation regarding the breach of the TSAs by the Terminal Entities and potential offset claims remains ongoing.

4828-7238-6298.5

33.     As noted above, the Terminal Entities argue that the Debtors are benefitted by the storage services provided under the TSAs because "[u]pon completion of this [J. Aron Product] liquidation process, the Debtors stand to receive, at minimum, 'a refund of certain posted margin funds and a release of a lien on the catalyst.'" *See* Doc. No. 435, at p. 10.  In addition to the fact that such "benefit" is not conferred upon the estates by the Terminal Entities, the receipt of the purported "benefit" is not certain.  To the contrary, the recovery of the posted margin funds and release of the J. Aron security interest are predicated on the satisfaction of the amounts due under the J. Aron Transaction Documents.  As such, if the liquidation of J. Aron Product fails to realize sufficient proceeds, the Debtors may only receive a portion of the posted margin funds, if any, and, moreover, may not receive a release of the J. Aron lien on the catalyst.  Additionally, any recovery premised upon the value of the catalyst is predicated not only on the release of the J. Aron lien, but also on the ultimate sale price of the catalyst, which cannot be known at this time.

34.     Further, the Debtors are informed and believe that the Terminal Entities breached the TSAs and/or engaged in improper conduct in violation of the TSAs and/or the duty of good faith and fair dealing by, among other things, (i) commingling third party products with the Debtor Product and/or J. Aron Product in violation of the TSAs, (ii) unnecessarily dividing Product among multiple Tanks in an effort to inflate the amounts due under the TSAs, (iii) billing and assessing fees, interests and penalties for storage capacity in tanks utilized by third parties, and (iv) concealing the foregoing in an effort to induce LBRM to perform under the TSAs prior to and following the Petition Date and to induce the Debtors to provide adequate protection under the Interim DIP Orders and Final DIP Order.  To the extent the Terminal Entities are in breach of the TSAs or the Debtors have claims against the Terminal Entities arising under the TSAs, or otherwise, including, without limitation, any amounts due and owing under the SSSA, the Debtors

may have the right to offset any such liability or obligations against the purported "benefit" conferred under the TSAs for purposes of calculating any administrative expense claim or challenge the allowance of any such claim under Section 502(b)(1) of the Bankruptcy Code.

35.     Based on the foregoing and need to conduct discovery related to several issues pertaining to the allowance of the requested administrative claim, the Debtors respectfully submit that consideration of the Motion is premature and, as such, the Motion should be denied.

## REQUEST FOR CONTINUATION TO CONDUCT DISCOVERY

36.     Proceedings to adjudicate the allowance of an administrative expense claim are contested matters subject to Bankruptcy Rule 9014.  *See In re TransAmerican Natural Gas Corp.*, 978 F.2d at 1416; *see also In re Health Diagnostic Laboratory, Inc.*, 557 B.R. 885, 889 (Bankr. E.D. Va. 2016).  Bankruptcy Rule 9014(c) authorizes parties to a contested matter to propound discovery in connection with the resolution of the contested matter.  As noted, *supra*, the Terminal Entities' request for the allowance of an administrative priority claim raises myriad issues.  At present, the Debtors and Terminal Entities are discussing the terms of a joint scheduling order for the resolution of the Motion, among other pending matters, including, without limitation, the scope and timeframe in which to conduct discovery; however, the parties have yet to finalize the terms of the envisioned order.  Accordingly, to the extent the Terminal Entities set the Motion for hearing without agreement on the terms of an appropriate discovery schedule, the Debtors request that the Court continue the hearing on the Motion to permit the Debtors a reasonable opportunity to conduct discovery in accordance with Bankruptcy Rule 9014.

37.     To the extent necessary under Local Rule 3007-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas, the Debtors intend to conduct any and all discovery permitted under Bankruptcy Rule 9014, or otherwise authorized by

the Court, and deemed due and proper by the Debtors, including, without limitations, propounding requests for the production of documents and deposing salient witnesses.

## **RESERVATION OF RIGHTS**

38.     The Debtors expressly reserve the right to amend or supplement this Response and to assert any other rights, objections and remedies under and relating to any and all agreements by and between the Debtors, or any of them, and the Terminal Entities, or any of them, including, without limitation, the TSAs, the assumption or rejection of any such contracts or agreements, any and all claims or interests asserted by the Terminal Entities, or any of them, in these Chapter 11 Cases, including, without limitation, the administrative claim sought by and through the Motion, the Bankruptcy Code, the Bankruptcy Rules, and/or other applicable law.  Nothing contained herein is intended or should be construed as, or deemed to constitute, an agreement or admission as to the validity of any claim against the Debtors on any grounds, a waiver or impairment of the Debtors' rights to dispute any claim on any grounds, or an assumption or rejection of, or agreement to assume or reject, any agreement, contract, or lease under Section 365 of the Bankruptcy Code.

[*Remainder Intentionally Blank*]

4828-7238-6298.5

**WHEREFORE**, the Debtors respectfully request that the Court deny the Motion in its entirety and grant the Debtors such relief as is appropriate.

RESPECTFULLY SUBMITTED this 15th day of September, 2021.

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: egreen@bakerlaw.com
        jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
(Admitted Pro Hac Vice)
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com

*Proposed Counsel for the Debtors and Debtors in Possession*

## Certificate of Service

I certify that on September 15, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Elizabeth A. Green*
Elizabeth A. Green