UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **LIMETREE BAY SERVICES, LLC, *ET AL.*,**[1] | ) | Case No. 21-32351 |
| | ) | |
| Debtors and Debtors-in-Possession | ) | (Jointly Administered) |
| | ) | |

**MOTION OF VWNA CARIBBEAN, LLC FOR ENTRY OF AN ORDER:
(A) AUTHORIZING AND DIRECTING DEBTOR LIMETREE BAY REFINING,
LLC TO REJECT AN EXECUTORY CONTRACT EFFECTIVE JULY 27,
2021; (B) AUTHORIZING VNWA CARRIBBEAN, LLC TO TERMINATE
SAID CONTRACT AND REMOVE PROPERTY AND MODIFYING THE
AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1) AS NECESSARY;
AND (C) APPROVING SALE OF PROPERTY TO LIMETREE BAY
<u>REFINING, LLC</u>**

**This Motion seeks an order that may adversely affect you. If you oppose the Motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy of the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the Motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the Motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the Motion at the hearing.**

**Represented parties should act through their attorney.**

VWNA Caribbean, LLC ("**VWNA**"), a creditor of debtor Limetree Bay Refining, LLC

("**LTBR**") files this Motion for entry of an Order: (i) authorizing and directing LTBR to reject

an executory contract with VWNA, effective July 27, 2021; (ii) authorizing VWNA to terminate

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC.(1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041

- 1 -

said rejected contract and remove certain property belonging to it and, to the extent necessary modifying the automatic stay pursuant to 11 U.S.C. §§ 105(a) and 362(d)(1) to permit such relief; and (iii) approving the sale of certain property of VWNA to LTBR ("**Motion**"). In support of the Motion, VWNA respectfully states as follows:

## Relief Requested

1.  On or about January 1, 2020 LTBR, non-debtor Limetree Bay Terminals, LLC ("**Terminals**") and VWNA entered into a Term Services Agreement ("**TSA**"). A copy of the TSA, which includes the current Scopes of Work issued thereunder, (Work Release Nos. 001 and 003) for wastewater treatment services and centrifuge processing services for oil-bearing secondary materials and non-oily sludge, is attached to the Declaration of Van A. Cates, Esq. filed contemporaneously herewith ("**Cates Dec**.") as Exhibit A. Under the TSA, VWNA provides waste water treatment services at a facility located as the Debtors' oil refinery located on St. Croix, USVI ("**Facility**") and provides certain ancillary services to Terminals. The TSA provides that it may be terminated for convenience on *ninety days'* notice to VWNA. On June 27, 2021 LBTR and Terminals served VWNA with a *thirty-day* notice of termination for convenience ("**Termination Notice**") of the TSA. By response letter dated July 7, 2021, VWNA responded to the Termination Notice, challenging its validity under the TSA. Copies of the Termination Notice and VWNA's July 7, 2021 response letter are attached to the Cates Dec. as consolidated Exhibit B.

2.  VWNA contends that, because the thirty days provided in the Notice had not run as of the Petition Date, the rights of LTBR under the TSA had not been terminated as of the Petition Date and are assets LTBR's bankruptcy estate. VWNA contended further that LTBR

may dispose of its rights and obligations under the TSA only by rejecting the TSA pursuant to § 365(a) of the Bankruptcy Code.

    3.    Therefore, VWNA respectfully requests entry an Order:

        a.    Authorizing and directing LTBR to reject the TSA effective July 27, 2021 at 7:00 p.m., the date and time noticed by LTBR and Terminals for termination of the TSA in the Notice, pursuant to 11 U.S.C. §§ 105(a) and 365(a) and Rule 6006(b) of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**");

        b.    Authorizing VWNA, upon the rejection of the TSA to terminate the TSA and demobilize and remove certain machinery, equipment and related property ("**VWNA Equipment**") from the premises at Limetree Bay in the USVI at which LTBR and Terminals operate an oil refinery and directing LTBR to cooperate and not interfere with that removal, and, to the extent necessary, modify the automatic stay pursuant to 11 U.S.C. §§ 105(a) and §362(d)(1) to permit such relief; and

        c.    Approving the purchase by LTBR certain property of VNWA necessary for the operation of a waste water treatment plant located at the aforesaid oil refinery to LTBR.

**Jurisdiction and Venue**

4. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408, 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

### Background

5. On July 12, 2021 ("**Petition Date**") the above-captioned Debtors and Debtors-in-Possession, including LBTR, filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*) ("**Bankruptcy Code**")

6. The Debtors continue to operate their businesses and debtors and debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

7. No request for the appointment of a trustee or examiner has been made in these Chapter 11 cases. An official committee of unsecured creditors was appointed on July 26, 2021.

8. Pursuant to the TSA, VWNA operated and maintained the wastewater treatment facility ("**Facility**") at the Debtors' refinery on Limetree Bay in the U.S.V.I. ("**Refinery**"). The Debtors purchased the Refinery and related assets out of the Hovensa, L.L.C. bankruptcy case in the United States Bankruptcy Court for the District of Delaware, Case No. 15-10003 in 2015. VWNA provided similar wastewater treatment services to Hovensa, L.L.C.

9. The Facility provides biological treatment for the removal of organics (hydrocarbons) and ammonia from the industrial water generated by the Refinery. The Facility includes: collection tanks, air coolers, equalization, activated sludge biological treatment (suspended-growth bacteria (biomass) that consume organics and ammonia in order to grow), clarification, tertiary filtration (currently out-of-services) and post aeration prior to discharge to Outfall 402, which flows out to Outfall 001 and is ultimately released to the ocean.

2908855.1 109077-01675
2908855.1 109077-91675

10. The United States Environmental Protection Agency ("**EPA**") places limits on the water that can be discharged from the Facility to Outfall 401 through a Territorial Pollutant Discharge Elimination System ("**TPDES**") Permit. Failure of the Debtors to comply with the TPDES Permit may result in the release of hazardous and/or toxic materials into the ocean and the coral reefs surrounding St. Croix, as well as other environmental damages and violations.

11. It is beyond dispute that professional and responsible operation of the Facility and treatment of the Refinery's wastewater is crucial to the avoidance of similar problems going forward. LTBR and Terminals entered into the TSA to ensure that the Facility met the requirements of the TPDES Permit and applicable law. A copy of the TPDES Permit is attached to the Cates Dec. as Exhibit C.

12. As this Court is likely aware, the Refinery has a history of environmental discharges dating to its ownership by Hovensa, L.L.C., and the EPA and the USVI environmental authorities have been heavily involved in monitoring and regulating the Refinery for many years. More recently, shortly before the Petition Date, the Refinery's equipment sprayed the VWNA Equipment, as well as surrounding residential areas, with oil resulting, at minimum, in contamination of the equipment. On July 26, 2021, the Debtors filed an adversary proceeding seeking to stay various class action suits filed by St. Croix residents based upon that release. As a result of that release, the EPA shut the Refinery's operations down. Operations have not yet resumed at the Refinery

13. As noted above, prior to the Petition Date, LBTR and Terminals issued the Termination Notice, advising VWNA that the Debtors intended to assume all operations and maintenance of the Facility, effective July 27, 2021. VWNA responded to the Termination

2908855.1 109077-01675
2908855.1 109077-91675

Notice by letter dated July 7, 2021, challenging its effectiveness under the TSA due to the lack of the requisite 90-day notice of termination for convenience.

14. Following VWNA's response to the Notice, representatives of LBTR and Terminals advised representatives of VWNA that LTBR and Terminals would prohibit VWNA's access to the WWTP from and after July 27, 2021, except to continue demobilizing the Facility and the VWNA Equipment. Accordingly, VWNA seeks an order confirming that LBTR in fact rejected the TSA on July 27, 2021, and directing LBTR to reject the TSA effective July 27, 2021, the effective date of LBTR's termination of the TSA, so that it is clear that VWNA bears no responsibility for LBTR's operation of the Facility thereafter, and, more importantly, for any environmental liability that may arise from LBTR's mismanagement of the Facility

15. LTBR and Terminals reached an agreement for VWNA to: (i) sell to LTBR certain supplies and other consumables utilized in the operations and maintenance of the Facility, i.e., the VWNA Consumables identified below; and (iii) demobilize and remove the VWNA Equipment from the Facility. The VWNA Equipment has been partly demobilized and packed for shipping to the continental United States and remains on site at the Facility and/or the Refinery.

16. In the performance of its duties under the TSA, VWNA utilized certain supplies and other consumables (collectively, "**VWNA Consumables**"), to wit:

- High-Ammonia VACUettes Refill (30 per box; 38 boxes)
- Low-Ammonia CHEMets Refills (30 per box; 24 boxes)
- Low-Ammonia Stabilizer Solution (6 per box; 27 boxes)
- Phosphate Activator Solution (6 per box; 24 boxes)
- Sulfide Activator Solution (6 per box; 17 boxes)

- Phenois CHEMets Refills (30 per box; 4 boxes)
- Chemitrics Sample Cup (5 per bag; 16 bags)
- COD Vials (150 per box; 19 boxes)
- Sulfuric Acid Standard Solution 0.035n (100 ml; 5 bottles)
- Bromcresol Green Methyl Red Indicator (100 per bag; 3.5 boxes)
- 47mm Glass Microfiber Disc (100 per box; 5 boxes)
- 110 mm Glass Microfiber Disc (100 per box; 6 boxes)
- Pipet 1-10ml Tips (50 per bag; 23 bags)
- 4 pH Buffer Solution (20l Carboy; 5 containers)
- 7 pH Buffer Solution (20l Carboy; 6 containers)
- 10 pH Buffer Solution (20l Carboy; 6 containers)
- 3 ml transfer disposable pipet (500 per box; 4 boxes)
- 1 Welch Piston Pump
- 1 Lab Dual Input Meter HQ4400
- 1 Replacement LDO Sensor
- 1 Portable Turbidimeter
- 1 Magnetic Stirrer
- 1 Analytical Balance
- 2 Pocket DO Meters
- 1 Replacement LDO Sensor Cap LDO101
- 2 Pocket Pro pH Testers
- 1 Conductivity Cell
- 1 Spectrophotometer
- 1 Digital Reactor Block

- 1 PHC101 pH Electrode
- 1 Pro20 DO Meter

17.     The VWNA Consumables are stored at the Refinery and were the property of VWNA and not of the bankruptcy estate of LTBR or property of Terminals.  Pursuant to an Invoice dated August 9, 2021, VWNA "(**Invoice**") sold the VWNA Consumables to LTBR for the price of $19,687.59, which amount was due on September 8, 2021 per the terms of the Invoice but has not yet been paid.  A copy of the Invoice is attached to the Cates Dec. as Exhibit D.  While this sale appears to be an ordinary course post-petition transaction that does not require Court approval, out of an abundance of caution, VWNA seeks retroactive Court approval by way of this Motion.

18.     LTBR's acquisition of the VWNA Consumables is facilitating LTBR's safe and proper operation of the Facility without the disruption of having to locate substitute supplies and other consumables. And the prices LTBR has paid for the VWNA Consumables is fair and reasonable.

19.     In the performance of its duties under the TSA, VWNA utilized the VWNA Equipment, to wit:

- Aeration Compressors (C-72797A/C-72797B/C-72797C)
- Wasting Tanks (7979A/7979B)
- Centrifuge with Conveyor and Stand (ST-004) (with related equipment ("**Centrifuge Equipment**")
- Strainer Pots (SP-004/SP-000)
- Manifolds (MAN-001/MAN-002/MAN-003)
- Haz Mix Frac Tanks
- Rental Bio Sludge Tanks

- 8 -

- Rental Belt Press
- HEMT & Transition Conveyor with Stand
- CONEX Parts

Although the VWNA Equipment is located at the Refinery, it is either the property of VWNA or has been leased by VWNA from a third party. In any event, no portion of the VWNA Equipment constitutes an asset of LTBR's bankruptcy estate or an asset of Terminals.

20. Pursuant to the Termination Notice and the agreement of VWNA and LBTR, the VWNA Equipment has been or is being demobilized and prepared for return to VWNA's facility in Texas per the terms of the TSA. Maintaining the remaining VWNA Equipment on St. Croix for any length of time would impose significant costs on VWNA without any offsetting revenues.

21. VWNA vacated the Facility as of July 27, 2021, but LTBR and Terminals have continued to provide for access for two designated VWNA personnel at the Facility for continued demobilization and removal of the VWNA Equipment.

22. The TSA provides, on termination, for LTBR's and Terminal's payment of (i) a one-time demobilization fee of $35,000 to VWNA and (ii) ocean transportation costs incurred in returning the demobilized VWNA Equipment to Texas.

**Basis for Relief Requested**

**A. The Court Should Approve and Direct the Rejection of the TSA**

23. Section 365(a) of the Bankruptcy Code authorizes a trustee or debtor-in-possession to reject executory contracts, subject to the approval of the bankruptcy court. See 11 U.S.C. § 365(a). Courts evaluate the decision to reject an executory contract under the "business judgment" standard. *See Lifemark Hospitals, Inc. v. Liljeberg Enterprises, Inc*. (*In re Liljeberg*

*Enterprises, Inc*.), 304 F.3d 410, 438 (5th Cir. 2002); *In re Ultra Petrolium Corp*., 621 B.R. 188, 197 (Bankr. S.D. Tex. 2020) ("An executory contract may normally be rejected under the deferential business judgment rule").

24. This standard is satisfied if the debtor has determined in the exercise of its business judgment that the rejection of the contract would benefit the estate. *See In re Pisces Energy, LLC*, 2009 WL 7227880, *6 (Bankr. S.D. Tex. Dec. 21, 2009) (*citing Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc*., 756 F.3d 1043, 1047-47 (4th Cir. 1985)/ The business judgment standard mandates that a court approve a debtor's business decision unless the decision is the product of bad faith, whim or caprice. *Ultra Petroleum Corp*., 621 B.R. at 197 (*citing In re Trans World Airlines, Inc*., 261 B.R. 103. 121 (Bankr. D. Del. 2001)). If the debtor has reasonably exercised its business judgment, a court should approve the rejection of an executory contract. *See Richmond Leasing Co. v. Capital Bank, N.A*., 762 F.2d 1303, 1309 (court approved rejection of a lease on the basis of the debtor's exercise of its business judgment); *In re Idearc, Inc*., 423 B.R. 138, 162 (Bankr. D. Tex. 2009), aff'd 662 F.3d 315 (5th Cir. 2011) ("In the absence of a showing of bad faith or an abuse of business discretion, the debtors business judgment will not be altered.).

25. Rejection under section 365 of the Bankruptcy Code is to enable the debtor to relieve its estate from burdensome and unprofitable contracts. *Stewart Title Guar. Co. v. Old Republic Nat'l Ins. Co*., 83 F.3d 735, 741 (5th Cir. 1996) ("'[Section 365] allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed.'") (quoting *In re Murexco Petroleum, Inc*., 15 F.3d 60, 62 (5th Cir. 1994)).

26. While contract rejection is typically entirely within a debtor's discretion, subject only to the broad parameters of business judgment, here, LTBR and Terminals, have taken the

unusual step of practically rejecting the TSA by issuing the Termination Notice and barring VWNA's operational access to the Facility.  While VWNA disputes the efficacy of the Termination Notice due to the lack of the requisite 90 day notice, the reality is that VWNA is out at the insistence of LTBR.  Thus, VWNA is entitled to the protection of an Order of this Court authorizing and directing LTBR to reject the TSA so that it is clear that VWNA bears no responsibility for LTBR's operations and potential errors in connection with the Facility after July 27, 2021, and so that VWNA can file a rejection damages claim in these chapter 11 cases.  Thus,  The TSA no longer serves any purpose for LTBR or its bankruptcy estate and can only be the source of further unnecessary obligations and expense. VWNA respectfully submits that the Court should order LTBR's rejection of the TSA effective July 27, 2021.

### B. Once the TSA is Rejected, VWNA Should Be Authorized to Terminate it and Remove its Property at the Facility, or, Alternatively, Cause Exists to Modify the Automatic Stay to Permit Such Relief.

27.    LTBR and Terminals have elected to assume the operation and maintenance of the Facility, thereby obviating the need for the TSA.  For that reason, the Debtors have decided, in the exercise of their business judgment, to effectively reject the TSA.  Having done so, they no longer have any need for the VWNA Equipment, which, as noted above, either belongs to VWNA or was leased by VWNA from a third party and does not belong to either LTBR or its bankruptcy estate.  Consequently, it is submitted that, even without leave of this Court VWNA may terminate the now unnecessary—and soon to be rejected—TSA and to demobilize, recover and remove from the Facility and the Refinery the VWNA Equipment

28.    Even were the automatic stay to bar VWNA from terminating the TSA or removing the VWNA equipment, cause exists to modify the stay to authorize such relief.  Section 362(d)(1) of the Bankruptcy Code mandates that bankruptcy courts grant relief from the

automatic stay, including modification of the stay, upon a showing of case.  11 U.S.C. § 362(d)(1).  "Cause" is not defined in the Bankruptcy Code and must be determined on a case by case basis based on an examination of the totality of the circumstances.  *In re Green*, 2011 WL 1297543 (Bankr. S.D. Tex. April 5, 2011) (*citing In re Mendoza*, 111 F.3d 1264 (5th Cir. 1997); *In re Reitnauer*, 152 F3d 341, 343 n. 4 (5th Cir. 1988).  However, in determining whether cause exists, courts consider, among other factors, the balance between the harms the debtor will suffer if the stay is modified and the harms the movant will suffer if the stay is not modified.  *In re Mosher*, 578 B.R. 765, 772 (Bankr. S.D. Tex. 2017) (*quoting In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014)).

29. Here, , the Debtors have decided, in the exercise of their business judgment, to effectively reject the TSA and assume the operations of the Facility.  That being the case, they have no need of the VWNA Equipment.  Consequently, authorizing VWNA to terminate the now unnecessary TSA and to demobilize and recover the VWNA Equipment would not harm, but would benefit LTBR's bankruptcy estate.

30. By contrast, VWNA would suffer significant harm if the automatic stay were not modified.  The rejection by LTBR and Terminals of the TSA constitutes a breach, not a termination.  *In re McLean Enterprises, Inc*., 105 B.R. 928, 933 (Bankr. D. Minn. 1989).  Moreover, the Termination Notice, while procedurally deficient, had the practivca  effect of excluding VWNA from the Facility.  Forman (and undisputed) termination of the TSA, therefore, is necessary to eliminate any future obligations on the part of, or claims against, VWNA, particularly environmental claims.  Similarly, none of the VWNA Equipment belongs to any of the Debtors; it is either the property of VWNA or leased by VWNA from a third party.  Consequently, prohibiting VWNA from demobilizing and removing the VWNA Equipment

would deprive VWNA of its use and potentially impose significant expense on VWNA in maintaining that equipment in the USVI.  It is submitted, therefore, that VWNA has demonstrated sufficient cause to mandate the modification of the automatic stay to permit it to remove the VWNA Equipment from the Facility and return it to Houston.

### C. The Court Should Approve LTBR's Purchase of the VWNA Consumables.

31. LTBR and Terminals have elected to operate the Facility, and LBTR has elected to purchase the VWNA Consumables in that effort.  While the sale of those materials under the terms of the Invoice has all of the indicia of an ordinary course transaction that does not need Court approval per 11 U.S.C. § 363(c)(1), out of an abundance of caution and given the unusual circumstances, VWNA seeks a comfort order authorizing the transaction.  This sale has been consummated with the presumed knowledge of Debtors' counsel as an ordinary course transaction, so that VWNA's request for the formality of Court approval should be uncontroversial

### Notice

Notice of this Motion will be given to the following parties: (a) the Debtors; (b) the United States Trustee for Region 6; (c) the Debtors' secured creditors; (d) the thirty (30) largest consolidated unsecured creditors of the Debtors; (e) the office of the Attorney General of the United States Virgin Islands; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The method of service for each party will be described more fully in the certificate of service prepared by undersigned counsel for VWNA.  VWNA respectfully submits that, under the circumstances, such notice is sufficient and that no other or further notice of this Motion is required.

**WHEREFORE,** the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, granting the Motion and granting all other relief that is appropriate under the circumstances.

**RESPECTFULLY SUBMITTED**,  this 24th day of September, 2021.

>  */s/ David N. Crapo*
> David N. Crapo (S.D. Tex. ID No. 433931; State Bar of Texas No. 05009475)
> Dale E. Barney (admitted *pro hac vice*)
>
> **GIBBONS P.C.**
> One Gateway Center
> Newark, New Jersey 07102
> Telephone: (973) 596-4500
> Facsimile: (973) 596-0405
> E-mail: dbarney@gibbonslaw.com
> E-mail: dcrapo@gibbonslaw.com
>
> *Attorneys for VWNA Caribbean, LLC*

**CERTIFICATE OF SERVICE**

I certify that on September 24, 2021, I caused copies of: (I) the foregoing Motion for Entry of an Order: (i) Authorizing and Directing LTBR to Reject an Executory Contract with VWNA, effective July 27, 2021; (ii) Authorizing VWNA to Terminate Said Rejected Contract and Remove Certain Property Belonging to It and, to the Extent Necessary Modifying the Automatic stay pursuant to 11 U.S.C. §§ 105(a) and 362(d)(1) to permit such relief; and (iii) Approving the Sale of Certain Property of VWNA to LTBR; (B) the supporting Declaration of Van A. Cates filed contemporaneously herewith; and a proposed from of Order to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

Dated: September 24, 2021         */s/ David N. Crapo*
                                  David N. Crapo

2908855.1 109077-01675
2908855.1 109077-91675