**BAKER BOTTS L.L.P.**

30 ROCKEFELLER PLAZA
NEW YORK, NEW YORK
10112-4498

TEL  +1 212.408.2500
FAX  +1 212.408.2501
BakerBotts.com

AUSTIN
BRUSSELS
DALLAS
DUBAI
HONG KONG
HOUSTON
LONDON

MOSCOW
**NEW YORK**
PALO ALTO
RIYADH
SAN FRANCISCO
WASHINGTON

October 17, 2021

Robin Spigel
TEL: 2124082545
FAX: 2122592545
robin.spigel@bakerbotts.com

**Via Email (jbrookner@grayreed.com)**

Jason S. Brookner, Esq.
Gray Reed
1300 Post Oak Boulevard, Suite 200
Houston, Texas 77056

Re:   In re *Limetree Bay Services LLC, et al.*, Case No. 21-32351

Dear Jason:

I write in response to your letter to counsel for the Debtors, dated October 15, 2021 (the "Notice"), wherein you gratuitously attempt to blame J. Aron for the Agent's decision to declare Events of Default under the DIP Credit Agreement. Capitalized terms not otherwise defined herein have the meanings given them in the Notice or the Final DIP Order, as applicable.

First, the Notice contains false and baseless allegations regarding J. Aron. Contrary to the statements in the Notice, no amounts are currently due by J. Aron to the Debtors under the J. Aron Transaction Documents. The J. Aron Transaction Documents, which were negotiated prepetition over a period of many months by sophisticated parties, provide for the occurrence of certain events prior to any obligation of J. Aron to return funds to the Debtors. Among other things, all of the IFF Property must be liquidated. The liquidation of the IFF Property, which entailed liquidating millions of barrels of crude and other Products and Feedstock, began promptly and has continued in earnest during the bankruptcy cases. However, as of the date hereof, not all IFF Property has been liquidated. The fact that J. Aron has liquidated almost all of the IFF Property is a testament to J. Aron's and BP's extraordinary efforts to diligently and cooperatively work together, but was far from guaranteed to be accomplished by this point in time. After all IFF Property is liquidated, J. Aron is then required to provide a statement (the "Settlement Amount Statement") – not a payment – to the Debtors showing in reasonable detail the calculation of the Settlement Amount. See Monetization Master Agreement, § 13.2(c). Despite that J. Aron has no obligation to provide the Settlement Amount Statement yet, it did so preliminarily on October 13th and provided an update on October 15th. In accordance with the *Stipulation Between Committee and Prepetition Agents Clarifying Certain Committee Challenge Rights Pursuant to Final Postpetition Financing Order*, dated September 23, 2021 [Docket No. 621], the Committee has until October 29, 2021 (or as otherwise agreed between the parties or ordered by the Court) to contest the Settlement Amount Statement. The Agent, Lenders and the Debtors did not object to that stipulation. J. Aron has a clear right under the J. Aron Transaction Documents, applicable law and the Final DIP Order to net and setoff Margin against any obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents.

Active 67907754.4

**BAKER BOTTS** LLP

Jason S. Brookner, Esq. - 2 - October 17, 2021

Accordingly, until all matters are settled between J. Aron, the Debtors, the Committee and all other applicable third-parties involved in the J. Aron Transactions, J. Aron has no obligation to return funds to the Debtors' estates.

Second, the DIP Credit Agreement does not contain any amortization or other scheduled repayment requirements prior to maturity. *See* DIP Credit Agreement, § 2.04. While the DIP Credit Agreement contains a number of mandatory prepayment requirements, all such requirements in section 2.04(b) of the DIP Credit Agreement are dependent on the occurrence of events, which the Agent in its Notice does not assert have occurred. Importantly, the only provision in the DIP Credit Agreement related to payments from J. Aron is a covenant that requires the Borrower to prepay, within five Business Days of the receipt of amounts from J. Aron, the aggregate principal amount of the Advances in an aggregate amount equal to such amounts. *See* DIP Credit Agreement, § 2.04(vi). There is nothing specific in the DIP Credit Agreement itself – which J. Aron is not even a party to – regarding timing or amount of any potential payments from J. Aron. This reflects the reality that there is not, and has never been, a definitive timeline in which all of the events that needed to occur under the J. Aron Transaction Documents would occur.

Third, the Debtors' breach of the DIP Credit Agreement is due to the Debtors' unrealistic projections regarding J. Aron payments, which J. Aron never agreed with. The Agent and Lenders knew or turned a blind eye to the fact that the Approved Budget did not contain realistic projections regarding receipts and disbursements in October. Despite the absence of any contractual obligation from J. Aron to make payments the week beginning October 4th, the Approved Budget nonetheless includes a projected $18 million receivable the week beginning October 4th and a projected $20 million receivable the week beginning October 18th. The Approved Budget also includes a paydown of the DIP facility of $5 million the week beginning October 11th; $7.5 million the week beginning October 18th; and $12.5 million the week beginning October 25th. While we understand that the Lenders reluctantly lent $25 million to the Debtors under the DIP Credit Agreement, the Lenders were on notice that such receivables contemplated in the Approved Budget were in no way guaranteed. At practically every hearing that occurred prior to entry of the Final DIP Order, J. Aron made it clear that it did not agree with the timing and amounts associated with the J. Aron Transaction Documents set forth in the Approved Budget. *See* Aug. 27 Hearing T'script 42:21 - 43:9; Aug. 11 Hearing T'script 18:24 – 19:19; Aug. 9 Hearing T'script 35:10 – 36:4. The Court acknowledged J. Aron's point at each such hearing and also understood that the assumptions in the DIP budget were not a certainty. *See, e.g.,* Aug. 9 Hearing T'script 36:5 – 36-7 (In response to my statement that J. Aron did not agree with the DIP budget as it related to potential sources of payment from J. Aron, the Court responded: "That's fair enough. Ms. Spigel, if it helps you, I don't believe it for a second. I've been around too long. So I got it. . . ."). Aug. 27 Hearing T'script 43:10 – 43:13. Mr. Shapiro also specifically stated in his testimony at the August 27th hearing that J. Aron has been very clear that it does not "acknowledge any amounts or tie that has to come in." Aug. 27 Hearing T'script 53:9 – 53:11. Willful blindness to the fact that there was not a realistic chance that amounts would be paid by J. Aron to the Debtors by this point in time provides no basis for your accusations against J. Aron or a rewriting of documents or history.

**BAKER BOTTS** LLP

Jason S. Brookner, Esq.                    - 3 -                    October 17, 2021

The Agent determined to declare the occurrence of Events of Default under the DIP Credit Agreement on the basis of breached covenants that are tied solely to a budget that I'm sure the Debtors would say was based on good faith, but was not based on historical operations or knowable future events. Further, if the Agent and Lenders relied on the fact that $38 million of receivables would have been received by the Debtors in October, then they ignored the statements of the Court related to the budget, the statements on the record of the various hearings in these cases, the testimony provided by Mr. Shapiro, and the J. Aron Transaction Documents. Pointing the finger at J. Aron in the Notice is just subterfuge for the reality that once the week of October 4th occurred, the Agent would have the ability to declare Events of Default and a Termination Event under the DIP Credit Agreement as a result of the Debtors failing to comply with stringent and, at this point, clearly unachievable budget compliance requirements (*see* DIP Credit Agreement, § 6.01(o)), rather than actual requirements regarding prepayments based on actual receipts in the DIP Credit Agreement itself.

Lastly, the proper solution is for the Debtors and the Agent and Lenders to reach an agreement. The parties are working in good faith to resolve all matters related to the J. Aron Transaction Documents. It is not helpful to the cases or the process to misplace blame on J. Aron for the Debtors' failure to meet unrealistic projected receipts and inability to prepay the Advances prior to the Maturity Date. Since (a) only the Approved Budget reflects paydowns under the DIP Credit Agreement at this early stage in the cases and (b) the Borrower has the obligation to pay the Lenders within five Business Days of any receipts from Aron, the Debtors should be requesting, and the Agent and Lenders should agree, to (x) waive the current and future Events of Default related to the $18 million receipt (which is not a realistic number) and the $20 million receipt (which is based on the sale of the catalyst in a liquidation scenario only) and (y) a budget that reflects the DIP Credit Agreement provisions regarding prepayments.

If you would like to discuss any of the foregoing prior to the status hearing set for Monday morning, please feel free to call me.

                                                      Sincerely,

                                                      */s/ Robin Spigel*

                                                      Robin Spigel

cc (via email): Elizabeth Green, Esq. (egreen@bakerlaw.com)
                Jorian Rose, Esq. (jrose@bakerlaw.com)
                Robert Feinstein, Esq. (rfeinstein@pszjlaw.com)
                Jeffrey Pomerantz, Esq. (jpomerantz@pszjlaw.com)
                Maxim Litvak, Esq. (mlitvak@pszjlaw.com)
                Michael Warner, Esq. (mwarner@pszjlaw.com)
                Sean O'Neal, Esq. (scgsh@cleary.com)
                Jane VanLare, Esq. (jvanlare@cleary.com)
                Scott Alberino, Esq. (salberino@akingump.com)
                Kevin Eide Esq. (keide@akingump.com)