IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| LIMETREE BAY SERVICES, LLC, *et al.*, | § | Case No. 21-32351 (DRJ) |
| | § | |
| Debtors.[1] | § | Jointly Administered |
| | § | |

**DIP LENDER'S LIMITED OBJECTION TO THE DEBTORS' EMERGENCY MOTION
FOR APPROVAL OF STIPULATION BETWEEN THE DEBTORS, J. ARON &
COMPANY, LLC, BP PRODUCTS NORTH AMERICA, INC., AND THE COMMITTEE
UNDER BANKRUPTCY RULE 9019**

Sentinel 405 LLC and Arena Investors, LP (together, the "DIP Lender"), for its Limited Objection ("Objection") to the *Debtors' Emergency Motion for Approval of Stipulation Between the Debtors, J. Aron & Company, LLC, BP Products North America, Inc. and the Committee Under Bankruptcy Rule 9019* [Docket No. 697] (the "Motion"), respectfully represents:

**PRELIMINARY STATEMENT**

1. As the Court knows, the value of the collateral underlying, and securing, the DIP financing has been at issue, and has been an issue, for the DIP Lender since nearly the outset of this case – in particular, the "margin" that was to be coming back to the estates from J. Aron, which serves as the principal collateral to repay the DIP loan. Indeed, the issue was placed front and center at the hearing on August 9, 2021. The Debtors contended that $38 million coming back from J. Aron & Company LLC ("J. Aron") was "money good."[2] The DIP Lender informed the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC. (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Aug. 9. Hrg. Tr. at 6:5-12; 8:17-9:14.

4864-7744-3841

Court of several "collateral value issues,"[3] and J. Aron, for its part, then responded to everyone with the equivalent of "not so fast, it might be $38 million, it might be zero, or it might be something in between."[4] And that is exactly what the DIP Lender has been worried about.[5]

2. In connection with the Motion, the Debtors filed the supporting declaration of Mark Shapiro [Docket No. 697-3], wherein reference is made to a "Settlement Statement" delivered by J. Aron to the Debtors. Per the Shapiro Declaration, the Debtors do not dispute the numbers/amounts contained in the Settlement Statement. However, the Settlement Statement is not attached to the Motion or the Shapiro Declaration for the Court's review, and to otherwise provide all parties in interest with the level of transparency the Court typically demands. As a result, the Settlement Statement is attached hereto as **Exhibit A**.[6]

3. A "confidential draft" of the Settlement Statement dated October 13, 2021 was provided to the DIP Lender by Debtors' counsel on October 14, 2021. On October 26, 2021, another Settlement Statement marked "For Settlement Discussion Only; Subject to FRE 408; Confidential; 10/15/21" was provided to the DIP Lender, but without any back up data. This is the Settlement Statement to which the Shapiro Declaration apparently refers in paragraph 4 (and which is attached hereto), and reflects that the final number owing back to the estates *decreased* over two days by approximately $450,000 (from approximately $9.66 million to approximately

---

[3] *Id.* at 29:9-25; 46:1-25.
[4] *Id.* at 35:10-36:4.
[5] As set forth below, subject to this Objection, it appears that approximately $9.2 million will be coming back to the estates. That does not account for approximately $20 million in catalyst, which will presumably be sold as part of a going concern sale or a liquidation. If, indeed, the catalyst is sold for approximately $20 million, that would result in a total of approximately $29 million returning to the estates, which is almost $10 million *less* than originally projected by the Debtors.
[6] Although the DIP Lender does not believe there is anything confidential about the Settlement Statement, the same has been filed under seal at the request of J. Aron.

$9.21 million), and the legal fees being claimed by J. Aron *increased* by approximately $300,000 (from approximately $1.29 million to approximately $1.6 million).[7]

4.      The DIP Lender had to ask for the underlying backup data and information. The flow of such information and data began on October 29 and continues today, and the DIP Lender remains in discussions with the Debtors about certain other calculations contained within the Settlement Statement. As part of the deliveries that commenced on October 29, 2021, a summary legal invoice for J. Aron's counsel was provided to the DIP Lender late in the afternoon on October 29, but only after it was specifically requested. *See* **Exhibit B**. No invoices were ever served by J. Aron's counsel pursuant to paragraph 8 of the Final DIP Order [Docket No. 495], which governs the payment of postpetition fees to counsel for the various groups of prepetition lenders, including J. Aron.

5.      As stated above, the Settlement Statement reflects what the DIP Lender believes is the unreasonable amount of $1.6 million in postpetition legal fees. The summary J. Aron legal fee invoice attached as **Exhibit B**, however, reflects postpetition fees of approximately $1.4 million (and includes an "estimate" of $100,000 through October 29, 2020, which is three days from the date of the invoice) plus another approximately $14,000 in expenses.

6.      Putting aside that the $1.6 million in fees reflected in the Settlement Statement does not foot to the $1.4 million reflected in the summary invoice attached as **Exhibit B**, both amounts are unreasonable on their face under the circumstances of this case without further explanation demonstrating reasonableness.

---

[7] The invoice provided to the DIP Lender seeks fees of approximately $1.4 million. There thus appears to be about a $200,000 disconnect between the legal invoice, and the Settlement Statement, in favor of J. Aron that will need to be reconciled. Moreover, as discussed below, the data underlying the Settlement Statement has only recently been provided to the DIP Lender. The DIP Lender continues to review the same and reserves the right to lodge additional objections, as appropriate.

3

7.      As a consequence, following the status conference before the Court on October 29, demand was made for the underlying invoices, showing the detail of the services provided. That request was refused on October 29, and again on October 31. *See* email exchange attached as **Exhibit C.**

8.      Because the request for the underlying J. Aron legal fee detail has been refused, and because the DIP Lender finds the fees sought by J. Aron excessive and unreasonable on their face, the DIP Lender objects to the Motion to the extent it seeks to pay J. Aron either the amount set forth in **Exhibit A** (Settlement Statement) or **Exhibit B** (invoice).[8]

## LIMITED OBJECTION

9.      The DIP Lender objects to the reimbursement of legal fees and expenses requested by J. Aron, and as requested to be paid as part of the Motion. Despite J. Aron's contention to the contrary in **Exhibit C**, as a party-in-interest in this chapter 11 case, and perhaps the one who is most impacted by Motion and the Settlement Statement, there is no question the DIP Lender has party-in-interest standing to object to the Motion and the amounts sought to be paid to J. Aron. Moreover, paragraph 8 of the Final DIP Order *requires* that the DIP Lender be served with copies of invoices from the prepetition lenders as a condition to payment. With respect to J. Aron, no invoices were received until October 29, and so the DIP Lender is well within the 10-day objection time frame set forth in paragraph 8 of the Final DIP Order.

10.     As to the fees themselves, it cannot be reasonably argued that a "reasonableness test" does not apply. To the contrary, not only does J. Aron admit that fees to be reimbursed must

---

[8] As stated above, the actual amount of fees to be charged needs to be reconciled, given that the Settlement Statement shows approximately $1.6 million while the invoice shows approximately $1.4 million.

be reasonable,[9] but paragraph 8 of the Final DIP Order also makes clear that J. Aron is only entitled to its "reasonable fees and costs." Further, neither J. Aron, its counsel, the Debtors, the DIP Lender nor any other party-in-interest is or can be the arbiter of what fees are (or are not) "reasonable" – that is the province of the Court.

11. It is also black letter law that a prepetition lender – to the extent oversecured – may only recover its *reasonable* attorney's fees. *See* 11 U.S.C. § 506(b); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989) ("Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose").[10]

12. As a result, unless and until J. Aron provides its underlying time detail so that the Court can make an informed determination as to the reasonableness of the postpetition fees sought by J. Aron, such fees should not be paid.

13. In that regard, since $1.6 million is in dispute, J. Aron should be required to deposit such amount into the registry of court until this fee issue has been resolved. The remaining approximately $9.2 million reflected in the Settlement Statement should be paid over to the Debtors forthwith, as that amount is not in dispute. This fee dispute should not in any way hold up the undisputed amounts owing back to the estate from J. Aron.

---

[9] *See* email from R Spigel to E. Green and J. Rose on October 29, 2021 (included in **Exhibit C**) ("The MMA, which the DIP lender is not a party to, specifies that J. Aron is entitled to payment of its reasonable attorney's fees and costs. See, e.g., MMA sec. 13.2(n)").

[10] *See also, e.g.*, *Welzel v. Advocate Realty Invs., LLC (In re Welzel)*, 275 F.3d 1308, 1320 (11th Cir. 2001) (holding reasonableness standard applied even when contractual attorney fees were enforceable under state law); *Atwood v. Chase Manhattan Mort. Co. (In re Atwood)*, 293 B.R. 227, 233 (B.A.P. 9th Cir. 2003) (stating that secured claim holder has the burden of proving the reasonableness of its fee claim under § 506(b)); *In re Prevo*, 394 B.R. 847, 852 (Bankr. S.D. Tex. 2008) (disallowing fees because the lender failed to submit documentation supporting the reasonableness of the fees and costs under § 506(b)); *In re 900 Corp.*, 327 B.R. 585, 593 (Bankr. N.D. Tex. 2005) (disallowing oversecured creditor's postpetition attorneys' fees because they were not reasonable under § 506(b)); *In re Cummins Util., L.P.*, 279 B.R. 195, 209 (Bankr. N.D. Tex. 2002) (finding attorneys' fees unreasonable under § 506 because they were "blatantly unnecessary").

## RESERVATION OF RIGHTS

14. The DIP Lender reserves all rights to supplement this Objection to raise other and additional issues and objections to the Settlement Statement. Because the flow of information and data underlying the Settlement Statement did not commence until October 29 and remains in progress, the DIP Lender may discover other issues or discrepancies that require Court intervention.

**WHEREFORE**, the DIP Lender requests that (i) any order entered by the Court approving the Motion require J. Aron to (A) place $1,601,412.26 in the Court's registry, pending resolution of this fee dispute, representing the full amount of the fees requested in the Settlement Statement and (B) turn over to the estates $9,212,126.69, which is the undisputed amount owing back to the estate pursuant to the Motion and the Settlement Statement and (ii) grant such other and further relief as may be just and proper.

[Remainder of page intentionally left blank]

Respectfully submitted this 1st day of November, 2021.

                **GRAY REED**

                By: */s/ Jason S. Brookner*
                    Jason S. Brookner
                    Texas Bar No. 24033684
                    Lydia R. Webb
                    Texas Bar No. 24083758
                1300 Post Oak Blvd., Suite 2000
                Houston, Texas 77056
                Telephone:  (713) 986-7000
                Facsimile:  (713) 986-7100
                Email:      jbrookner@grayreed.com
                                lwebb@grayreed.com

-and-

                **FOLEY & LARDNER LLP**
                    John P. Melko
                    Texas Bar No. 13919600
                    Michael K. Riordan
                    Texas Bar No. 24070502
                1000 Louisiana Street, Suite 2000
                Houston, Texas 77002
                Telephone:  (713) 276-5727
                Facsimile:  (713) 276-5555
                Email:      jmelko@foley.com
                                mriordan@foley.com

                **COUNSEL TO 405 SENTINEL LLC AND ARENA INVESTORS, LP**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of November, 2021, he caused a true and correct copy of the foregoing pleading to be served via CM/ECF on all parties who have subscribed for electronic notice in this case, and via electronic mail on counsel to the Debtors and J. Aron as set forth below.

| | |
|---|---|
| Jorian Rose, Esq. (jrose@bakerlaw.com)<br>Elizabeth Green, Esq. (egreen@bakerlaw.com)<br>**BAKER HOSTETLER**<br>Counsel to the Debtors | Robin Spigel, Esq. (robin.spigel@bakerbotts.com)<br>**BAKER BOTTS**<br>Counsel to J. Aron |

                */s/ Jason S. Brookner*
                Jason S. Brookner