**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 (DRJ) |
| Debtors. | (Jointly Administered) |

**BAY, LTD.'S PRELIMINARY OBJECTION TO THE PROPOSED SALE TO ST. CROIX ENERGY, LLLP AND <u>EMERGENCY</u> MOTION TO DELAY THE <u>DECEMBER 7 SALE HEARING TO PERMIT LIMITED DISCOVERY</u>**
[Relates to Docket No. 191, 829, & 830]

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN DECEMBER 7, 2021 BEFORE ANY SALE HEARING IS CONDUCTED.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **A HEARING WILL BE CONDUCTED ON THIS MATTER AS SOON AS THE COURT CAN ACCOMMODATE IT. YOU MAY PARTICIPATE IN THE HEARING BY AN AUDIO AND VIDEO CONNECTION.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT +1 (832) 917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE JONES' CONFERENCE ROOM NUMBER IS 205691. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE 'S HOME PAGE. THE MEETING CODE IS "JUDGE JONES". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE 'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Bay, Ltd. ("Bay") submits this: (i) preliminary objection to the proposed sale designation (the "Proposed Sale") of substantially all of the assets of the above-captioned debtors and debtors in possession (the "Debtors") to St. Croix Energy, LLLP ("St. Croix") and (ii) emergency motion to delay the Sale Hearing (as defined below) (the "Motion") to permit limited discovery to be taken; and in support thereof, Bay respectfully states as follows:

## Preliminary Statement[2]

1.　After multiple delays, last night, the Debtors filed a notice designating St. Croix as the Winning Bidder and the combined bids of Sabin Metal Corporation ("Sabin") and Bay as the Back-up Bidders (the "Winning Bidder Notice"). *See* Doc. No. 829. Bay contends the designation should be reversed, with St. Croix as the Back-up Bidder. By this Motion, Bay seeks entry of the Proposed Order briefly postponing the Sale Hearing currently scheduled for December 7, 2021 pending the Debtors' responses to Bay's (i) informal discovery requests submitted on November 30, 2021 before the designation was filed, for which no reply has yet been given, and (ii) formal discovery requests submitted on December 1, 2021. As reflected by the attached **Exhibits 1 and 2**, Bay's discovery requests include depositions around the negotiation, preference, and approval by Debtors of St. Croix, before, during and now after the Auction.

2.　A serious dispute exists on the much delayed, but recently announced selection of St. Croix as the Winning Bidder, which ignores the higher and better bids from Bay and Sabin. There is a fundamental change in circumstances arising due to Bay's successful participation in the Auction (which ironically Bay had to prepare to fight to even participate in, which casts further doubt on the Sale Process seeming to preordain a preference for St. Croix as the winner, regardless

---

[2] Capitalized terms used in this Preliminary Statement but not otherwise defined shall have the meanings given to such terms below.

of the Auction results). As a result of the Auction, it is now clear that the Back-up Bidders are actually for amounts far higher than for the St. Croix Bid, which was and appears to remain qualified and conditional before, during, and after the Auction. Based on Bay's participation in the Sale Process and the Debtors' lack of engagement before and after the Auction, Bay's perception is the Sale Process was tilted from the start, and throughout, to benefit St. Croix, for reasons Bay cannot understand. To the extent it represents an "option" to restart the refinery, the lack of engagement on the several agreements that are a prerequisite to this occurring make plain the bid really is simply another liquidation bid, only for less value that what is not provided by Bay and Sabin. As such, Bay respectfully requests that the Court delay the Sale Hearing pending Bay's discovery requests being addressed, wherein Bay seeks evidence to (i) test the perplexing decision made to favor St. Croix before, during and after the Auction, even though it remains throughout conditional and likely just a disguised liquidation bid, and to test the value thereof, (ii) whether the St. Croix Bid is indeed funded and without conditions since the Winning Bidder Notice makes clear it faces substantial hurdles and remains uncommitted, and (iii) whether the Sale Process truly represents a fair market test confirmed by the Debtors' independent judgment.

3. The Debtors originally represented in their Bid Procedures Motion that: "The paramount goal of any proposed sale of property of a debtor is to maximize the value received by the estate." *See* Doc. No. 191, ¶ 52. Moreover, a recent ruling from the Fifth Circuit makes clear that "The purpose of § 363 is to promote the finality of bankruptcy sales, thereby maximizing the purchase price of estate assets…. And ultimately, maximizing bidding on and the purchase price for a debtor's assets benefits a debtor's creditors." *Matter of Walker Cty. Hosp. Corp.*, 3 F.4th 229, 234 (5th Cir. 2021). While the Auction itself was capably handled, the events before and after the Auction appear to create more than a passing concern on whether a true market test was

sought, and in the end as reflected by the recently designated lead bidder, in fact the "best" bid put forth considering all circumstances, and realities.

4. The Debtors' delayed designation to date calls into question whether their business judgment in selecting St. Croix as the Winning Bidder was truly independent, fully informed, and free from other influences. Through the Winning Bidder Notice, the Debtors seem to acknowledge that the Bay and Sabin bids, which yields together $39 million of value, seemingly swamps the true notional value of the St. Croix bid, characterized as $33 million (but which actually is far less, as Bay's chart below illustrates). Moreover, the Bay and Sabin bids exclude several assets, which are left to the estate, that appear to be swept into the St. Croix Bid, effectively making the Bay and Sabin bids even more valuable.

5. Bay also wants it known that its bid is also in the interests of the Island itself, which while not a restart option for a perennially troubled refinery that sits idle and represents decades of pollution issues, involves a valuable opportunity for the island and its people. In addition to facilitating eventual fixes for longstanding pollution and environmental concerns, the straightforward dismantlement of the plant by Bay will entail that Bay employs many from the Island to facilitate the decommissioning work that will span approximately three years. While perhaps not a "value concern" in the strict sense for this bankruptcy, it should be considered that Bay's bid opens up new opportunities for the Island and will facilitate the resolution of longstanding federal and state concerns over the site, and the need to address—with the starting point being the removal of the twin refinery complexes.[3] But, on the more direct value comparison issue here, there is one piece of these cases that is not complicated, and that is the Debtors'

---

[3] Further, prior to submitting its bid, had Bay been provided with the appropriate information on the real property assets held by the Debtors, which Bay repeatedly requested, a proper due diligence related to on-going business units could have been performed, which support healthy environmentally friendly opportunities for the Island and its residents, a process that is being conducted now should Bay prevail.

obligation to select the highest and best bid to bring the maximum value to their estates. The Debtors, however, have failed to do so, as shown below. This chart compares the St. Croix Bid and the Bay and Sabin bids. The chart remains subject to update and discovery because (i) until late last night the St. Croix Bid remains shrouded as to its details, (ii) the essential Transition Services Agreement ("TSA") that has long been highly conditional for weeks is admitted to remain still incomplete and unsee; and (iii) several other agreements are needed for a restart for which no engagement has apparently occurred with counterparties, rendering the notion of a restart illusory:

|  | **St. Croix Bid** | **Bay and Sabin Combined Bid** | **Notes** |
|---|---|---|---|
| **Net Bid Amount** | The face amount of the St. Croix Bid is listed for $20 million. Certain amounts should be deducted, however, including<br><br>- (i) $15.1 million for St. Croix's acquisition of the Catalyst, without a separate value allocation[4]<br>- (ii) possible acquisition of unspecified A/R,<br>- (iii) acquisition of other unspecified assets reflected in the schedules at docket number 548 (Limetree Bay Refining Operating) and 550 (Limetree Bay Refining Marketing); and<br>- (iv) $1 million for the expense reimbursement.<br><br>In sum, the St. Croix Bid appears as one in which the Debtors are paying more than they are receiving. | The Winning Bidder Notice acknowledges (i) the Sabin bid is approximately $15.1 million and (ii) the Bay bid is approximately $24.8 million. | Bay and Sabin leave behind (i) all prepaids, deposits and inventory; and (ii) the underlying land other than access for the duration of dismantlement, which would be addressed only upon the dismantlement of the Plant over a period of three years.<br><br>Upon information and belief, at least $12 million of the "$14 million (est.) assumed and avoided liabilities and expense reimbursement pursuant to the [TSA]" includes expense reimbursements. But there appear to be no contracts assumed, and it cannot be determined since the schedules are not included what this comprises. As such, Bay asserts at least $12 million in expense reimbursement under the TSA is not creditable to the St. Croix Bid. |
| **Total Value** | Approximately $5.9 million[5] | Approximately $39.9 million |  |

---

[4] As noted further below, nothing prevents St. Croix from selling the catalyst to anyone immediately after closing, thus reducing the value it actually is paying for this option. In the absence of the competing higher bids, this might be permissible—but not now.

[5] St. Croix's APA filed at docket number 829-2 contemplates the inclusion of various schedules to fully describe the "Purchased Assets," including for example, business contracts, real property, leases, and permits. These schedules are not included with the filed APA, so it is impossible to determine which additional assets are included or excluded from the St. Croix Bid for comparative purposes. Thus, this total value amount may be even lower based on these missing schedules. But what we do know now is that the $20 million bid is reduced by $1 million for St. Croix costs,

5

|  | **St. Croix Bid** | **Bay and Sabin Combined Bid** | **Notes** |
|---|---|---|---|
| **The St. Croix Bid is Contingent on a TSA** | As described in open Court[6], and as recalled to be essentially repeated at the Auction,[7] the St. Croix Bid was and remains uncommitted and conditional on several matters, including a needed TSA: At the November 15 hearing at 19:40 [Counsel for lead bidder] "The other question that comes up is there is a transition services agreement that has to be negotiated and I believe the term lenders' counsel had asked about that. Obviously your honor if we [walk[?]] and we can't do this deal because we can't reach a TSA that is acceptable on Thursday before the auction, then we are not expecting that expense reimbursement because there is not a $20 million deal. We reserve the rights to bid less at the auction as if on terms such that we had not come to your honor today." | No contingencies. | When during the initial part of the Auction it was again stated by St. Croix that there must be a TSA in place which remained uncertain, Bay objected at the Auction to any efforts by St. Croix to have its bid considered if truly not committed and conditional, and to any effort to retract or reduce its bid, when this was initially presented at the opening of the Auction, and Bay reserved all rights. |
| **The St. Croix Bid is Contingent on Regulatory Approvals** | The restart of the refinery remains subject to required assumption of the EPA Consent Decree and related matters governing a restart, if it truly is a restart and not simply a disguised liquidation bid dressed as a restart to control the liquidation. Bay contends the evidence would show it is extremely unlikely, if not impossible, for any restart before the end of 2022, and more likely thereafter, entailing the proffered "carrot" of three months of funding post closing of $12 million is actually intended to promote a restart, rather than underwriting post closing costs. Moreover, any restart would require a prior commitment of hundreds of millions in further funding and expenditures by St. Croix, none of which is even in prospect, much less committed. | Bay and Sabin as dismantlement-oriented bids not involving operation of the refinery and have no similar restrictions. | The lack of any agreement on this with counterparties is indicative that the St. Croix bid is not a restart so much as an option which in reality masks it comprising a liquidation bid. |
| **The St. Croix Bid is Contingent on Shared Services with Terminal Entities** | As stated in the Terminal Entities' statement filed at docket number 822, the St. Croix Bid, as a restart bid, is subject to a shared services agreement with the Terminals, which apparently has not been negotiated, and which upon information and belief would necessarily be a required contract for a restart. | Bay and Sabine as dismantlement-oriented bids not involving operation of the refinery and have no similar restrictions. | The lack of any agreement on this with counterparties is indicative that the St. Croix bid is not a restart so much as an option which in reality masks it comprising a liquidation bid. |
| **The St. Croix Restart is Contingent on Assuming the Refinery Operating** | To implement the restart St. Croix must assume and perform this agreement, including cure payments for the amounts due the government as well as prospective amounts. This presents another barrier to restart, and the failure to secure it in advance is proof the restart is illusory. | This is inapplicable to the dismantlement bid from Bay. | The lack of any agreement on this with counterparties is indicative that the St. Croix bid is not a restart so much as an option which in reality masks it comprising a liquidation bid. |

---

and another $15.1 million because St. Croix can simply sell the catalyst any time after closing, rendering the true worth of its bid in contrast to Bay far lower.

[6] Quote stated from audio file of the November 15, 2021 hearing.

[7] The Debtors had the open proceedings in the Auction transcribed; Bay currently lacks a copy and requests it be provided.

6

|  | **St. Croix Bid** | **Bay and Sabin Combined Bid** | **Notes** |
|---|---|---|---|
| **Agreement with the State Government** |  |  |  |

6. Compounding this foregoing contrast in values emanating from the Auction, are other facts that question whether the process was unfairly tilted to the lower St. Croix Bid regardless of the Auction outcome. The facts Bay would present to challenge this judgment call beyond the baseline value comparison include several matters that seem unique to this sale process, which has been marked by continual last-minute delays, deferrals and indulgences that always favored St. Croix. Some of these objective facts that take this out of the routine sale process and which should be explored include:

- The Debtors' non-engagement to Bay's November 2 bid proposal, until preliminary comments were sent back after multiple inquiries late in the afternoon on November 14, 2021—mere days before the scheduled auction.

- The Debtors' non-engagement to Bay's further November 17 bid proposal, that was responsive to the preliminary Debtors comments from November 14, 2021, which lack of engagement has continued after the Auction.

  The Debtors' attempt starting the afternoon before the Auction to discourage or even prevent Bay from participating in the Auction, or cancelling the Auction altogether in favor of St. Croix, by questioning Bay's status as a Qualified Bidder, even though Bay submitted its bid, tendered its deposit, and notwithstanding the Debtors representatives had previously represented that Bay was already a Qualified Bidder well before November 17, 2021.

- The Debtors' suggesting the Auction could be cancelled entirely unless Bay *in advance of the Auction* submitted a bid exceeding the already conditional St. Croix notional Stalking Horse Bid.

- The Debtors' repeated unilateral extensions of the milestones and bid deadlines with little to no notice before the expiration of the actual deadline, and usually without any explanation. The Debtors' eleventh-hour extensions of these deadlines have forced Bay (and presumably, other bidders) to operate on extremely compressed timelines. Bay has received no comments to the most recent iteration of its Asset Purchase Agreement and no draft of a sale order, despite requests dating back to early November 2021 for a form of order to edit.

7

- Contrasting to the Debtors' repeated post Auction delays in designating a winning bidder, on November 18, 2021, St. Croix issued its own press release stating it was the winning bidder after the Auction closed, rendering more inexplicable the Debtors' delay until late on November 30 to file the Winning Bidder Notice, and suggesting that perhaps a decision made in its favor before the Auction even after the Auction turned out so much more favorable for the Debtors on the liquidation bids.

- The reality that the St. Croix bid, denominated as a "restart bid," appears to (i) lack funding for a restart; (ii) lack any engagement at all with the Terminal Entities on the shared services need for a restart, (iii) lack any realistic timetable for a restart when benchmarking it within three months of closing, (iv) lack engagement and agreement with the EPA on its requirements for a restart; (v) lack any assumption of the Refinery Operating Agreement, and (vi) that the issues and permits required to allow a restart, is proof a restart cannot be accomplished within the three-month window provided under the St. Croix Bid, much less any six or eight month period to continue to evaluate options. The St. Croix Bid's reliance on a series of as yet not agreed undertakings thus renders it a nullity and in reality, it is nothing more than a disguised dismantlement bid, entailing its $20 million notional but contingent amount must fall behind the Bay and Sabin bids, and be further discounted by the value of assets it takes which the Bay and Sabin bids leave behind.

7. The Debtors' selection of St. Croix as the Winning Bidder even though (i) the St. Croix Bid is apparently admitted (at least to the Auction itself) subject to stated contingencies and (ii) that the Debtors have now received other bids at the Auction which are higher in value than the St. Croix Bid and which leave substantial assets for the estate to benefit from, make this an easier call—Bay and Sabin are the prevailing bidders and should have been designated as such.

### Jurisdiction, Venue, and Standing

8. The United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

9. Venue is properly before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10. Bay has standing to file this Motion as a creditor in these Chapter 11 Cases as a creditor and bidder.

**Background**

A. **The Chapter 11 Cases**

11. On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC and certain of its affiliates (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").

12. On July 26, 2021, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Cases.

B. **The Events Leading up to the Auction Reveal a Sale Process Crafted to Cater to St. Croix**

   i. *The Debtors Discouraged Bay from Participating in the Auction*

13. On November 2, 2021, Bay submitted to the Debtors a timely Bid (the "Bay Bid") for the purchase of certain of the Debtors' assets. On November 3, 2021, Bay sent further information regarding the Bay Bid, including information about Bay, its substance as a company with experience in this area, and information to support schedules in the Asset Purchase Agreement. After delivering the Bay Bid, Bay was informed on several occasions it was a Qualified Bidder.

14. On November 10, 2021, the deadline to submit Good Faith Deposits under the first extension notice [Doc. No. 696] (which was then reset to November 12, 2021 by the second extension notice [Doc. No. 749]), Bay timely submitted its Good Faith Deposit to the Debtors, only to then be informed (i) the deadline would be delayed a day due to the federal holiday on November 11, 2021 and (ii) that the escrow account referenced in the Bidding Procedures did not exist, but that the deposit could be wired to an account maintained by the financial advisor.

9

15. On November 14, 2021—four days before the scheduled Auction—the Debtors belatedly provided Bay with comments to its Asset Purchase Agreement. On November 17, 2021, in an effort to be responsive to the Debtors' comments, Bay submitted to the Debtors an updated Asset Purchase Agreement, with a redline against the Debtors' original proposed Asset Purchase Agreement. To date, no comments back have been received.

16. Mid-day on November 17, 2021, the Debtors informed Bay—for the first time—that it questioned if Bay was a Qualified Bidder, and thus called into question whether Bay could participate in the next morning's Auction. Despite repeated requests to confirm this was inaccurate, whereby the Debtors would not confirm Bay why its status as a Qualified Bidder was in question, nor confirm its ability to participate, Bay needlessly spent most of the time until the morning of the Auction drafting pleadings for emergency relief to this sudden and new development if indeed it was cancelled out, or the auction cancelled itself.

17. Ultimately, Bay was permitted to attend and participate in the auction on November 18. As to the actual conduct of the Auction, it proceeded as it should, and the robust bidding for the decommissioning of the assets did occur after the prior pro forma acceptance by Debtors of the St. Croix bid, conditional as it was and apparently remains, as the "restart bid". But Bay's insistence that it be permitted to attend the auction and it not be cancelled demonstrated why an Auction was useful. The bidding went for hours and yielded bids that exceeded the St. Croix bid. Yet despite the extraordinary results obtained on that phase of the Auction, and the continuing equivocation of the St. Croix bid indicated in the last night notice, show Bay that the Auction results are now essentially ignored in favor of the inferior St. Croix bid.

### ii. The Repeated Extensions of Bid Deadlines and Milestones

18. This sale process has been fraught with procedural irregularities. While this might be a difficult case, the process has been a tough one for bidders to participate in. On August 11, 2021, this Court entered its *Order Granting Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* [Docket No. 392] (the "Bid Procedures Order").[8] Pursuant to the Bid Procedures Order, the Court approved the Bidding Procedures. *See* Docket No. 392, pp. 13–32. In the usual case, deadlines have importance and are not easily moved. This has not been such a case, and it has created burdens for bidders.

19. On September 10, 2021, the Debtors filed the *Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines* [Docket No. 565] (the "Motion to Extend"). On September 15, 2021, the Court entered its *Order Granting Emergency Motion to Amend Milestones and Bid Procedures Deadlines* [Docket No. 583] (the "Extension Order"), extending the deadlines in the Bid Procedures Order for approximately five weeks. The Extension Order provided that the extensions granted therein were without prejudice and the Debtors and Prepetition Secured Parties (as defined in the Motion to Extend) could mutually agree to extend the milestones and bid procedures deadlines without further order of the Court, "subject only to the Debtors providing notice to the Court, the U.S. Trustee, the DIP Agent, and Committee of any further extensions." *See* Extension Order, ¶ 5.

20. Since entry of the Extension Order, the Debtors have unilaterally extended the milestones and bid procedures deadlines by notice six additional times. *See* Doc. Nos. 696, 749,

---

[8] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Bid Procedures Order.

761, 799, 819, & 829. Each extension has occurred without any explanation, and if Bay was informed on any of them it would only have been in the midst of the deadline actually running. As a routine, the Debtors have filed various extension late in the day on same day as an existing deadline, causing Bay to scramble unnecessarily.[9] Three of the extensions predated the Auction; three occurred after the Auction, which itself is extraordinary and likely inferential proof of the lack of ability by St. Croix to commit to any schedule or funding. The current extension [Doc. No. 829] pushes various deadlines but all extensions proposed to maintain the Sale Hearing on December 7, 2021. This creates great difficulty for the backup bidders, leaving them hanging with the omnipresent risk of loss of their deposits, which had been tendered in good faith. Until the filing of the sixth extension notice, the deadline for the Winning Bidder to close was scheduled three days later on December 10, 2021, and the deadline for a Back-up Bidder to close was scheduled six days later on December 13, 2021. Now, the Debtors have unilaterally deemed December 17, 2021 as the deadline for the Winning Bidder to close and "TBD" as the deadline for the Back-up Bidder to close.

21. Under the Bidding Procedures, the Winning Bidder and the Back-Up Bidder are deemed to forfeit their deposit if they fail to close timely. *See* Bid Procedures Order, pp. 28–29 of 30. As of the date of this pleading, Bay has not received any comments from the Debtors to its revised form of Asset Purchase Agreement submitted on November 17, 2021.

---

[9] For example, under the first extension notice, the deadline to submit Good Faith Deposits was Wednesday, November 10, 2021 at 10:00 a.m. CT. *See* Doc. No. 696-1. On November 10, 2021, the Debtors filed the second extension notice pushing the deadline to submit Good Faith Deposits to Friday November 12, 2021 at 5:00 p.m. CT. *See* Doc. No. 749-1. Bay was previously negotiating with the Debtors to serve as a stalking horse bidder and thus would not have to submit a deposit. On November 10, 2021 at 4:22 p.m. CT, the Debtors informed Bay the Debtors were not going to designate a stalking horse bidder. Thus, Bay was left to scramble (unnecessarily) to submit a Good Faith Deposit, only to find out that the Debtors were further extending this deadline.

22. Moreover, despite asking weeks ago, Bay has not received a form of a sale order from the Debtors from which it could provide comments and assure the usual protections in the purchase, if able to do so. Yesterday, Bay was advised that now St. Croix is in charge of the form of sale order, so Bay hereby requests it be sent a draft so that regardless of its status as lead or back-up bidder, it be given a reasonable opportunity before any hearing to provide for review and comments. This order is critically important in this case, where a dismantlement that would employ hundreds of locals and involve the decommissioning of two massive refinery complexes, and the offloading onto ocean going vessels the personal property, will take up to three years. The Debtors' continued unilateral and last-minute extensions of the milestones and bid procedures deadlines, combined with the lack of engagement on the final asset purchase agreement form after the Auction, coupled with no draft sale order, places the prevailing bidders in an untenable position—if selected as the Winning Bidder (as it should be), Bay is forced to close on an extremely compressed timeline or forfeit its deposit.

> iii. *St. Croix is Designated as the Stalking Horse Bidder then Unilaterally Announces "we won" regardless of the auction outcome, the Debtors lack of timely notification, and the higher Piecemeal Bids*

23. On November 14, 2021, the *Debtors filed the Debtors' Emergency Motion to Amend Bid Procedures Order and Other Related Relief* [Doc. No. 760] (the "Motion to Amend"), which was approved by the Court at Docket Number 813 (the "Amended Bid Procedures Order"). Pursuant to the Amended Bid Procedures Order, the Court authorized the designation of St. Croix as the Stalking Horse Bidder with a $20 million purchase price for substantially all of the Debtors' assets on a going-concern basis to restart the refinery (the "St. Croix Bid"). The St. Croix Bid includes a $1 million expense reimbursement (see Doc. No. 813, ¶ 2); thus, the estate theoretically nets approximately $19 million from the St. Croix Bid. *But see supra* ¶ 5.

24. The St. Croix Bid, however, has various material contingencies. At the hearing on the Motion to Amend, counsel for St. Croix represented that the St. Croix Bid was contingent on "reach[ing] a transition services agreement that is acceptable. . . ." *See* Nov. 15 Hr'g Courtspeak at 19:40. At the Auction, counsel for Bay raised an objection when this same TSA issue presented itself, because it had previously been presented as a gating item, and it remained uncommitted. Remarkably, St. Croix even reserved the right to further reduce its bid, to which Bay reserved all rights. Plainly, the St. Croix Bid remains uncommitted, as the Winning Bidder Notice indicates the TSA is still uncertain, though a soft commitment is made to assure it will be filed before the sale hearing. As of the date of this Objection, Bay notes St. Croix and the Debtors have not finalized any "acceptable" transition services agreement. Moreover, the filing by Terminal Entities at Docket 822 makes plain St. Croix has not engaged at all on the needed shared services agreement required for a restart. Moreover, it is understood that engagement with the EPA on adherence to the Consent Order is also missing.

25. The St. Croix Bid is promoted as a going-concern bid to restart the refinery operations. But in reality, prudent business judgment alone would disqualify that bid because there is no practical reality that this bidder can restart the refinery anytime soon—both because (i) the EPA obligations have to be satisfied, and apparently the EPA has been stonewalled too, and (ii) there has been no coordination with the Terminal Entities. Moreover, a restart would require massive added funding, which is nowhere in prospect. In effect, the St. Croix bid smacks of nothing more than a disguised dismantlement bid, and in a head-to-head with Bay and Sabin, it falls far short.

26. Although the Debtors did not file anything on the docket noticing the winning bid until November 30, 2021, on November 18, 2021, St. Croix curiously released its own statement stating that it "emerge[d] as the top bidder. . .for the Limetree Bay Refining assets." See **Exhibit 3**. This statement violated the Bid Procedures Order, which requires the Debtors to provide notice of the Winning Bid and Back-up Bid and may be another factor leaving the Debtors feeling cornered to push it through even though it is inferior. But it also renders more inexplicable why the Debtors delayed several times in filing the Winning Bidder Notice, inferring to Bay it was trying to jam the designation closer to the sale hearing, in effect rendering the Debtors' designation a *fait accompli*, and correspondingly precluding discovery in regard to any objections. That alone warrants some delay to accommodate the discovery Bay seeks.

**C.   After the Auction, the Combined Piecemeal Bids are the Highest Bids, but the Debtors Select St. Croix as the Winning Bidder**

27. On November 18, 2021, the Debtors held the auction (the "<u>Auction</u>"). The Auction was conducted in apparent compliance with the Bid Procedures. Despite the Debtors' prior questioning of Bay's Qualified Bidder status, Bay participated in the Auction as a Qualified Bidder.

28.     During the Auction, St. Croix resubmitted its qualified $20 million Stalking Horse Bid. But in doing so, the Auction transcript should reveal the same equivocations cited to this Court a few days earlier and quoted above—the bid was not committed, had outs, remained dependent on a TSA, and was hardly firm. It then even reserved the right to *lower* its bid. After quickly bypassing Bay's objection raised to this initial bid proceeding as somehow separate from the remaining bid process the Debtors and the potential of St. Croix lowering its bid, the parties then did the auction on the Catalyst, which Sabin won at a stated $15.1 million without further contest. Once done, then the bidding on dismantlement proceeded whereby Bay emerged the highest and best after thirteen rounds that lasted until the evening. As noted by the chart above (*supra* ¶ 5), the combined value of these bids exceeds the value of the St. Croix Bid.

    **D.**    **Bay Serves Discovery Requests on the Debtors**

29.     Given the lack of engagement, the delays, the numerous barriers to any St. Croix closing, and the foregoing concerns raised including the squeezed timeline before the upcoming sale hearing, Bay transmitted its concerns to the Debtors about the process on November 30, 2021. *See* **Exhibit 1.** Because of its concerns, Bay included initial informal discovery requests on the Debtors. Bay seeks to understand the internal business decisions made regarding the preferences for St. Croix as the preferred Winning Bidder, notwithstanding the auction results, and to depose representatives with knowledge. Bay has received no response from the Debtors. Given the exigencies, Bay has also issued a more formal requests in the absence of voluntary responses. **Exhibit 2.**

## Relief Requested

30.     By this Motion, Bay seeks entry of an order, substantially in the form attached hereto (the "Proposed Order"), postponing the Sale Hearing currently scheduled for 4:00 p.m. CT

on December 7, 2021 pending responses to Bay's discovery requests, which will permit evidence to be adduced in a form needed as part of the Court's review of these matters. Documents focused on the issues herein should be produced, and a deposition permitted. This is reasonable, and the need for time due to the Debtors' own unilateral delays in adhering to deadlines. With a closing date now moved back another week, a sale hearing on December 13 or 14 will permit the needed discovery to occur next week.

## Basis for Emergency Relief

31. Bay seeks emergency relief because the Sale Hearing is scheduled for December 7, 2021, which is less than twenty-one (21) days after the date of filing this Motion. As a result, and to the extent the discovery is needed in connection with an irregular process and flawed decision, Bay seeks emergency consideration so that its discovery can be addressed before any consideration of approval of the sale.

## Notice

32. Notice of this Motion will be provided to (i) counsel to the Debtors; (ii) counsel to the Committee; (iii) the Office of the United States Trustee; (iv) the Office of the United States Attorney; and (v) any other party entitled to notice pursuant to Local Rule 9013-1(d).

## Reservation of Rights

33. Bay files this Motion to protect its rights in connection with the Bid Procedures Order and the Sale Process. Bay expressly reserves, and does not waive, any further objections, claims, defenses, or other rights of any kind, relating to the Bid Procedures Order and the Sale Process.

**Conclusion**

**WHEREFORE,** the Bay respectfully requests that the Court enter the Proposed Order (i) postponing the Sale Hearing currently scheduled for December 7, 2021 pending Bay's discovery requests; and (ii) granting any related relief to which Bay is justly entitled.

Respectfully submitted this 1st day of December 2021.

By: */s/ Patrick L. Hughes*
Patrick L. Hughes
Texas State Bar No. 10227300
Martha Wyrick
Texas State Bar No. 24101606
**HAYNES AND BOONE, LLP**
1221 McKinney, Suite 4000
Houston, TX 77010
Telephone No.: (713) 547-2000
Facsimile No.: (713) 547-2600
Email: patrick.hughes@haynesboone.com
Email: martha.wyrick@haynesboone.com

and

Butch Boyd
Texas Bar No. 00783694
Jeremy Stone
Texas Bar No. 24013577
**BUTCH BOYD LAW FIRM**
2905 Sackett Street
Houston, TX 77098
Telephone No.: (713) 589-8477
Facsimile No.: (713) 589-8563
Email: butchboyd@butchboydlawfirm.com
Email: jeremystone@butchboydlawfirm.com

**COUNSEL FOR BAY LTD.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case on December 1, 2021.

*/s/ Patrick L. Hughes*
Patrick L. Hughes

## CERTIFICATE OF ACCURACY

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify the accuracy of the nature of the emergency described above.

*/s/ Patrick L. Hughes*
Patrick L. Hughes

**Exhibits Referenced in the Motion**

Exhibit 1:   Email from Bay counsel to counsel to the Debtors, dated November 30, 2021

Exhibit 2:   Bay Ltd.'s Rule 30(b)(66) Notice of Deposition of Limetree Bay Services, et al. and Subpoena Duces Tecum

Exhibit 3:   St. Croix LLLP's November 18, 2021 Press Release