**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC,** *et al.*,[1] | **CASE NO.: 21-32351 (DRJ)** |
| Debtors. | **(Jointly Administered)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT AGREEMENT BY AND AMONG THE DEBTORS, OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND BP PRODUCTS NORTH AMERICA INC., AND (II) GRANTING RELATED RELIEF**

> **A hearing will be conducted on this matter on December 7, 2021, at 4:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk St., Houston, Texas 77002. You may participate in the hearing by audio/video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691.**
>
> **You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**
>
> **If you object to the relief requested, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **Relief is requested not later than December 7, 2021.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Limetree Bay Services, LLC and its debtor affiliates (collectively, the "**Debtors**"), as debtors and debtors-in-possession in the above-captioned, jointly administered chapter 11 cases (the "**Chapter 11 Cases**"), respectfully represent as follows in support of this motion (the "**Motion**").

## Relief Requested

1. By this Motion, the Debtors respectfully request entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), (i) approving the Settlement Agreement between the Debtors, the Official Committee of Unsecured Creditors (the "**Committee**"), and BP Products North America Inc. ("**BPPNA**") attached hereto as Exhibit B (the "**Settlement Agreement**")[2] and (ii) granting related relief.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

3. The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. The bases for the relief requested herein are Sections 105(a) and 363(b) of the title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Bankruptcy

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Settlement Agreement.

Rule 9019, and Local Rule 9013-1(b) of the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").

## Background

5. On July 12, 2021 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code—thereby commencing the above-captioned Chapter 11 Cases. The Debtors continue to operate their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On July 13, 2021, the Court entered an order jointly administering the Chapter 11 Cases under Case No. 21-32351 (DRJ) (Doc. 20). A discussion of the facts and circumstances surrounding these Chapter 11 Cases and underlying the relief requested herein is set forth in the *Declaration of Mark Shapiro in Support of Chapter 11 Petitions and First Day Motions* (Doc. 8) and *Declaration of Mark Shapiro in Support of the Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Settlement Agreement by and among the Debtors, Official Committee of Unsecured Creditors, and BP Products North America Inc., and (II) Granting Related Relief* attached hereto as <u>Exhibit C</u>.

6. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. On or about July 26, 2021, an Official Committee of Unsecured Creditors was appointed (Doc. 189) (the "**Committee**").

7. The Debtors and BPPNA are parties to various prepetition agreements, including, without limitation, (i) a feedstock supply agreement (the "**Feedstock Supply Agreement**") pursuant to which BPPNA supplied crude oil and other refining feedstock to Limetree Bay Refining Marketing, LLC ("**LBRM**"), and (ii) a product offtake agreement pursuant to which BPPNA lifted refined product from LBRM (the "**Product Offtake Agreement**"). Additionally, the Debtors and BPPNA and/or affiliates of BPPNA (BPPNA, together with BP Corporation North

3

America Inc. and BPPNA's other affiliates, collectively, "**BP**") are parties to various other prepetition agreements, including, without limitation, an Amended and Restated Tolling Agreement dated as of February 22, 2021 (the "**Tolling Agreement**") (all agreements between the Debtors and BP are listed on Schedule 1 of the Settlement Agreement and are collectively referred to herein as the "**BP Agreements**").

8. Pursuant to the terms of the Tolling Agreement, BPPNA agreed to pay LBRM an amount equal to 50% of the absolute value of Commissioning Margin Share (as defined in the Tolling Agreement; hereinafter, "**CMS**"), if negative, which amounts were to be invoiced monthly by LBRM and, to the extent not disputed, paid by BPPNA. In the event of a dispute over a CMS invoice, BPPNA would deliver a dispute notice (a "**Dispute Notice**") to LBRM and timely pay the undisputed portion of such invoice. The Debtors assert that they are owed funds from BPPNA on account of accrued and unpaid CMS pursuant to the Tolling Agreement, and BPPNA disputes that it owes any such amounts, as set forth in Dispute Notices delivered to the Debtors (the "**CMS Dispute**").

9. Pursuant to that certain *Order Granting Stipulation between the Debtors, J. Aron & Company, LLC, BP Products North America, Inc., and the Committee Pursuant to Bankruptcy Rule 9019* entered by the Court on November 2, 2021 (Docket No. 712) (the "**Stipulation**"), Debtors' counsel, Baker & Hostetler LLP, is holding in escrow, for the benefit of BPPNA, the Escrow Funds (as defined therein) in the amount of $4,464,236, which represents the sum of (i) Trade Contract Amounts (as defined therein) of $3,964,236 owed to BPPNA on account of certain trade contracts identified on Exhibit A thereto, and (ii) the Sale Reserve (as defined therein) of $500,000 as a reserve for potential claims of BP against J. Aron & Company LLC ("**J. Aron**")

4

and/or the Debtors relating to feedstocks and products purchased by BP pursuant to that certain Liquidation Put Agreement by and among BPPNA and J. Aron, dated as of March 3, 2020.

10. On November 12, 2021, BPPNA filed a proof of claim (the "**BP Proof of Claim**") in the Chapter 11 Cases, Claim No. 143, asserting a claim of not less than $34,376,981.98 owed to BPPNA by the Debtors under the BP Agreements, plus certain contingent and unliquidated amounts.

11. There may be potential claims belonging to the Debtors' estates, whether arising under the BP Agreements or otherwise (collectively, the "**Potential Claims**"), that could be asserted against BP, and BP denies that any Potential Claims have any legal merit and BP asserts that it would vigorously defend any Potential Claims if litigated.

12. Accordingly, the parties desire to enter into the Settlement Agreement to, *inter alia,* (i) avoid the delay, uncertainty, inconvenience and expense of litigation relating to the CMS Dispute and any other Potential Claims and/or causes of action that could be asserted against BP by or on behalf of the Debtors' estates; (ii) facilitate the prompt payment by BPPNA of the Settlement Amount (defined below) to the Debtors; (iii) resolve the Escrow Account, with such funds to be turned over to the Debtors' estates on the terms and conditions set forth herein; and (iv) resolve and/or otherwise address certain other matters among the Debtors and BP related to the BP Agreements.

**I.    The Proposed Settlement Agreement**

13. The Settlement Agreement includes many key provisions, including without limitation, the following:[3]

---

[3] Paragraph 13 contains a summary of the Settlement Agreement, and is not intended to limit, affect, alter, or otherwise modify the rights of the parties under the terms of the Settlement Agreement. If any inconsistency exists between the summary provided herein and the Settlement Agreement, the terms of the Settlement Agreement shall control in all

- Consideration.

    i. BPPNA shall pay to the Debtors the total sum of $5,035,764 (the "**Settlement Amount**"), which shall consist of gross settlement consideration of $9,000,000, *less* Trade Credit Amounts of $3,964,236,[4] which amount shall be satisfied through a release of Escrow Funds;

    ii. BPPNA shall remit the Settlement Amount to LBRM per payment instructions to be provided by the Debtors along with required KYC information not less than three (3) business days prior to the Effective Date; and

    iii. The BP Proof of Claim shall be deemed withdrawn with prejudice, and without any further action required of BP.

- CMS Dispute/Tolling Agreement. Upon the occurrence of the Effective Date, the CMS Dispute shall be fully and finally settled, resolved and released, BP and the Debtors shall owe no further CMS obligations to one another, and the Tolling Agreement shall be deemed terminated by BP as of such date pursuant to Section 3.2(b) thereof, without further action required.

- Escrow Funds. Upon the occurrence of the Effective Date, (i) BPPNA will release and waive any and all liens, security interests, claims, rights and entitlements with respect to the Escrow Funds and any proceeds thereof, and (ii) Debtors' counsel shall be authorized and instructed by the Debtors and BPPNA to transfer the Escrow Funds in the amount of $4,464,236[5] to the Debtors, which upon receipt shall become property of the Debtors' estate pursuant to Section 541 of the Bankruptcy Code. Upon transfer of the Escrow Funds, Debtors' counsel shall be deemed to have satisfied and shall be released from any duties or obligations with respect to the Escrow Funds.

- Termination of BP Agreements. Upon the occurrence of the Effective Date, to the extent that any BP Agreements are not terminated pursuant to the terms of the Settlement Agreement, such BP Agreements shall be deemed rejected by the Debtors as of such date pursuant to Section 365(a) of the Bankruptcy Code without further action required.

- Releases. Upon the occurrence of the Effective Date, the Debtors and BP shall grant full releases of any and all claims against each other arising prior to the Effective Date.

---

respects. In evaluating the Settlement Agreement, interested parties should read the Settlement Agreement in full, and should not, and may not, rely upon the summary provided in Paragraph 13.

[4] The Trade Credit Amounts of $3,964,236 is presently held by BakerHostetler LLP as part of the Escrow Funds, which shall be released to the Debtors on, or as soon as practicable following, the Effective Date of the Settlement Agreement.

[5] The Escrow funds are comprised of the Trade Credit Amounts ($3,964,236) and the Sale Reserve ($500,000).

- <u>Covenant Not to Sue</u>.  Upon the occurrence of the Effective Date: (i) the Debtors, on behalf of themselves, their estates and the other Estate Releasees, shall promise and covenant not to commence any litigation or prosecute any claim against any BP Releasee; and (ii) the Committee shall promise and covenant not to commence any litigation or prosecute any claim against any BP Releasee.

14. The benefit of the settlement and compromise contemplated by the Settlement Agreement—obtained through significant effort between the parties—inures to the Debtors, their estates, their creditors, and all parties in interest. The settlement reflects a favorable outcome for the Debtors and maximizes the value of their assets for all creditors and parties in interest. Accordingly, pursuing the settlement is a sound exercise of the Debtors' business judgment and in the best interest of the Debtors' estates. The Debtors respectfully request that the Settlement Agreement be approved and the Court authorize the Debtors to take any further actions necessary to perform thereunder.

**Basis for Relief**

A. **Consummating the Settlement Agreement is a Sound Exercise of the Debtors' Business Judgment.**

15. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. It is well-established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under Section 363(b)(1) of the Bankruptcy Code if there is a good business reason for doing so. *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)); 441 B.R. 813, 830

7

(Bankr. S.D. Tex. 2010); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Filene's Basement, LLC*, No. 11-13511 (KJC) (Bankr. D. Del. Apr. 29, 2014) (stating that, under the business judgment standard, once the debtor presents "a reasonable basis for its business decisions…courts will generally not entertain objections to the debtor's conduct").

16.  The Debtors respectfully submit that the Settlement Agreement represents a fair and reasonable compromise that is in the best interest of the Debtors', their estates, their creditors, and all parties in interest. The Settlement Agreement resolves complex disputes pertaining to the parties' respective rights under the BP Agreement to certain CMS amounts. Further, the Settlement Agreement provides the Debtors capital at a critical point during the Chapter 11 Cases, which enables the Debtors to administer the estates through the closing of the envisioned sale without the need for additional financing. In addition, the Settlement Agreement was the result of extensive arms-length negotiations among the parties. If approved by the Court, the Settlement Agreement will allow the parties to avoid costly, time-consuming, and distracting litigation and, in so doing, permit the Debtors to focus their efforts on pending issues in these Chapter 11 Cases, including, most notably, the ongoing sale of substantially all assets of the Debtors and anticipated exit from bankruptcy.

17.  Accordingly, the Debtors respectfully request that the Court enter the Proposed Order and authorize the Debtors to take such action that is a reasonable exercise of the Debtors' business judgment and in the best interest of their bankruptcy estates.

**B.     The Settlement Agreement Satisfies the Standards of Bankruptcy Rule 9019 and Should be Approved.**

18.  Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, … and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

19. "To minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). *See also Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) ("[s]ettlements are favored [in bankruptcy]"); *In re Key3Media Grp., Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006) (same); *In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348 (Bankr. D. Del. 2007) (same). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).

20. Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See in re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, "approval of a compromise is within the sound discretion of the bankruptcy court." *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Jackson Brewing*, 624 F.2d at 602–03.

21. In *Jackson Brewing*, the United States Court of Appeals for the Fifth Circuit set forth a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements. The factors the Court must consider are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay,

and (3) all other factors bearing on the wisdom of the compromise. *See Age Ref. Inc.*, 801 F.3d at 540 (internal citations omitted).

22. Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.*; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

23. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

24. Based on the foregoing considerations, the Debtors respectfully submit that the Settlement Agreement represents a fair and reasonable compromise that is in the best interest of the Debtors, their estates, their creditors, and all parties in interest. The Debtors have determined in their reasonable business judgment that the benefits of the settlement outweigh their costs after considering the probability of success in litigating the parties' disputes, the complexity and likely duration of litigation, related expenses and inconvenience, and all other factors bearing on the wisdom of the compromise, including the interests of the creditors and the extent to which the settlement is the product of an arms-length negotiation.

25. The Debtors satisfy these standards with respect to the Settlement Agreement. The first two factors of the *Jackson Brewing* balancing test, taken together, suggest that the Settlement

Agreement is fair, reasonable, and in the best interests of the Debtors, their estates, their creditors, and all parties in interest. Indeed, success in litigation is not guaranteed; moreover, any such litigation, without this settlement and compromise, would necessarily take a significant amount of time to litigate and result in the unnecessary expenditure of expenses, which the Debtors can ill-afford. In contrast, the settlement provides certainty in the amount and timing of payments. It also monetizes a significant asset and introduces needed liquidity to the Debtors' estates. Further, this settlement allows the Debtors to focus their efforts on the successful administration of these Chapter 11 Cases.

26. The Settlement Agreement meets other factors that bear on approval of the compromise, as it benefits the creditors' interests and is truly the product of arms-length bargaining. From the creditors' perspective, this Settlement Agreement brings value in the gross settlement amount of $9,000,000 (exclusive of the Sale Reserve) and reduces liabilities through the waiver of the BP Proof of Claim, which asserts a claim of not less than $34,376,981.98. Further, there is no reasonable basis for concern that the Settlement Agreement was the product of fraud or collusion.

27. For all of these reasons, the Debtors respectfully request that the Court approve the Settlement Agreement.

### Waiver of Bankruptcy Rule 6004(h) Stay

28. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale or, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons discussed above, the Debtors request that the Court waive the 14-day stay under Bankruptcy Rule 6004(h) and order that the relief requested herein take immediate effect.

**Request for Emergency Relief**

29. For the reasons discussed above, the Debtors respectfully submit that emergency consideration of this Motion is warranted to allow the Debtors to resolve the multitude of issues addressed by the Settlement Agreement and facilitate payment of the Settlement Amount and release of the Escrow Funds, which will provide the Debtors essential capital at a critical phase of these Chapter 11 Cases.

**Certification of Accuracy**

30. Pursuant to Local Rule 9013-1(i), this Motion is verified as to its accuracy by Debtors' counsel.

**Notice**

31. Notice of this Motion will be provided to the Master Service List, including: (a) the U.S. Trustee; (b) all secured creditors; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest consolidated unsecured creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g) other interested parties as identified by the Debtors; (h) the Committee members and their counsel, if known; (i) counsel to the Committee; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The method of service for each party will be described more fully in the certificate of service prepared by the Debtors' claims and noticing agent. The Debtors submit that no other or further notice is required.

**No Prior Request**

32. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, granting the Motion and granting all other relief that is appropriate under the circumstances.

Dated: December 1, 2021

BAKER & HOSTETLER LLP

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
Telephone:  407.649.4000
Facsimile:  407.841.0168
Email: egreen@bakerlaw.com
          jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
*Admitted Pro Hac Vice*
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York 10111
Telephone:  212.589.4200
Facsimile:  212.589.4201
Email: jrose@bakerlaw.com

*Counsel for the Debtors and Debtors in Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Elizabeth A. Green*
Elizabeth A. Green

**Certificate of Service**

I certify that on December 1, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Elizabeth A. Green*
Elizabeth A. Green