# EXHIBIT 7

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 |
| Debtors. | (Jointly Administered) |

## DEBTORS' MOTION TO (I) APPROVE SALES OF GOODS FREE AND CLEAR OF ALL CLAIMS, LIENS, AND ENCUMBRANCES BY NRI INDUSTRIAL SALES, LLC AND (II) APPROVE NRI'S COMMISSION FOR SALES

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Limetree Bay Services, LLC and its debtor affiliates (collectively, the "**Debtors**"), as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), respectfully represent as follows in support of this motion (the "**Motion**").

## Introduction

1.      The Debtors require various materials, equipment, and machinery to maintain the operations of the refinery and related facilities.  Due to the remote location of the facility, the Debtors acquire and maintain an inventory of such materials, equipment, and machinery on site. Prior to the Petition Date (defined below), Limetree Bay Refining, LLC and NRI Industrial Sales

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

LLC ("**NRI**") entered into an agreement, pursuant to which NRI agreed to liquidate certain surplus or unnecessary materials, equipment, and machinery.  LBR and NRI entered into the Contract (defined below) and, following the commencement of the Chapter 11 Cases, continued performing in accordance therewith in the ordinary course of business.  Notwithstanding, out of an abundance of caution, the Debtors hereby seek approval of the ongoing sale of the Goods (defined below) and payment of the Commission (defined below) to NRI pursuant to the Contract.

<u>**Relief Requested**</u>

2.        Pursuant to Sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "**Bankruptcy Code**"), and rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request entry of an order (i) approving the sale of certain Goods (defined below) free and clear of any and all liens, claims, and encumbrances (collectively, the "**Liens**"), in any individual transaction or series of transactions to a single buyer or multiple buyers, without the need for further Court approval and with Liens attaching to the proceeds of such sale with the same validity, extent, and priority as such Liens attached to the subject asset(s) immediately prior to the sale or transfer; and (ii) approving the payment of any and all commissions, fees and reimbursements (the "**Commission**") required under the master consignment agreement (the "**Contract**") between Limetree Bay Refining, LLC ("**LBR**") and NRI for NRI's services in selling the Goods.

3.        A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

4.        A discussion of the facts and circumstances surrounding the Contract and the sale of the Goods is set forth in the *Declaration of Mark Shapiro in Support of Debtors' Motion to (I) Approve Sales of Goods Free and Clear of All Claims, Liens, and Encumbrances by NRI Industrial*

*Sales, LLC and (II) Approve NRI's Commission for Sales* (the "**Shapiro Declaration**"), which is attached hereto as **Exhibit B** and incorporated herein by reference in its entirety.

### Jurisdiction and Venue

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

### Background

6.      On July 12, 2021 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code—thereby commencing the above-captioned Chapter 11 Cases. The Debtors continue to operate their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. On July 26, 2021, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (Doc. No. 189).

7.      On July 13, 2021, this Court entered an order authorizing the joint administration of the Chapter 11 Cases (Doc. No. 20).

### The NRI Contract

8.      On or about March 9, 2021, LBR and NRI entered into the Contract.  A true and correct copy of the Contract is attached as **Exhibit C**.  The Contract provides, in pertinent part, that NRI will market and sell certain surplus and used industrial materials, equipment, and machinery of the Debtors (collectively, the "**Goods**"), as further described in the Contract and identified on Exhibit A thereto. The Contract authorizes NRI to market and sell the Goods through an online platform or via an auction. In exchange for its services, NRI is entitled to receive forty

percent (40%) of gross proceeds from a sale via the NRI online platform and twenty percent (20%) of gross proceeds from a sale via an auction—in either case with the remainder of gross proceeds, net of certain reimbursements and deductions (e.g., transportation costs for the Goods), being payable to LBR. The Contract is for a term of twenty-four (24) months but provides that it may be terminated upon the occurrence of an Event of Default (as defined in the Contract). Additionally, the Contract provides that NRI shall pay LBR a guaranteed, non-refundable minimum payment of $2.6 million with respect to the sale of Goods under the Contract.

9.      NRI has continued to manage LBR's inventory and sold the Goods in the ordinary course of the Debtors' business post-petition. Out an abundance of caution, the Debtors seek Court approval of NRI's continued services under the Contract and for the payment of the Commission.

**Basis for Relief Requested**

10.      Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although Section 363 of the Bankruptcy Code does not set forth a specific standard, bankruptcy courts routinely authorize sales of estate assets outside the ordinary course of business if such sale is based upon the sound business judgment of the debtor. See *Asarco, Inc. v. Elliott Management (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011), (quoting *The Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986)) ("'[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.").

11.      In conducting such an evaluation, however, courts generally accord significant deference to a debtor's business judgment to use or sell estate assets outside the ordinary course

of business. *See In re ASARCO, L.L.C.*, 650 F.3d at 601 ("The business judgment standard in section 363 is flexible and encourages discretion."); *see also GBL Holding Co. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005) ("Great judicial deference is given to the Trustee's exercise of business judgment."), (citing *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 516 (Bankr. N.D. Ala.2002)); *see also In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836–37 (Bankr. E.D. Va. 1997) ("[G]reat deference is given to a business in determining its own best interests."); *see also In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n. 58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the case law.").

12.     The Debtors submit that the proposed sale of the Goods reflects a reasonable exercise of their business judgment. By selling the Goods, the Debtors will be able to obtain the value of these assets for the benefit of their estates and creditors. Further, authorizing the sale of the Goods through NRI's online platform or auction will ensure that the Debtors obtain the highest and best price for these assets in an efficient and cost-effective manner. Requiring the Debtors to file a motion with the Court each time the Debtors seek to dispose of a Good or group of Goods would cause the Debtors to incur unnecessary costs that would reduce the benefit to the estates. Additionally, NRI's Commission is reasonable and will allow the Debtors to realize the benefit of selling the Goods due to the commission-based compensation and guaranteed payment. Accordingly, the Debtors submit that the proposal to sell the Goods per the terms of the Contract reflects the Debtors' exercise of sound business judgment and, thus, may and should be approved under Section 363(b) of the Bankruptcy Code.

13.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable non-bankruptcy law permits such a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (d) the interest is in *bona fide* dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. 11 U.S.C. § 363(f). The Debtors request approval of a sale free and clear of any Liens to ensure the Debtors are able to market and convey clean title to the Goods.  The Debtors believe the Goods may be subject to certain Liens, including, without limitation, Liens of 405 Sentinel, LLC.

14.     Sale free and clear of Liens is warranted under Section 363(f) of the Bankruptcy Code. The Debtors propose to sell or transfer the Goods in a commercially reasonable manner and expect that the value of the proceeds from such sales or transfers will fairly reflect the value of the Goods sold. The Debtors further propose that any party with a Lien on Goods sold or transferred pursuant to this Motion shall have a corresponding security interest in the proceeds from the sale of the subject Goods. Moreover, the Debtors propose that the failure to file an objection to the entry of the Order approving this Motion following the provision of notice be deemed "consent" to any sales or transfers pursuant to the Order within the meaning of Section 363(f)(2) of the Bankruptcy Code. As such, the requirements of Section 363(f) of the Bankruptcy Code would be satisfied for any proposed sales or transfers of any Goods free and clear of Liens.

15.     Purchasers are entitled to treatment as good faith purchasers under Section 365(m) of the Bankruptcy Code. Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under Section 363(b) of the Bankruptcy Code of a sale or lease of property of the estate does not affect the validity of the subject sale or

lease as to a purchaser who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless the subject authorization and sale or lease were stayed pending appeal. *See* 11 U.S.C. § 363(m). Although the Bankruptcy Code does not define "good-faith purchaser," "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of [purchaser's] conduct in the course of the sale proceedings." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (internal citations omitted); *see Factory Mutual Insurance, Co. v. Panda Energy Int'l, Inc. (In re Hereford Biofuels, L.P.)*, 466 B.R. 841, 860 (Bankr. N.D. Tex. 2012). "Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders." *In re Hereford Biofuels, L.P.*, 466 B.R. at 860. The Debtors submit that the sale of any Goods will be the result of an arms'-length transaction through an online platform or auction open to any potential purchasers and, thus, the purchaser should be entitled to the protections of Section 363(m) of the Bankruptcy Code.

### Bankruptcy Rules 6004(a) and 6004(h)

16.     The Debtors also request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

17.     Notice of this Motion will be provided to the Master Service List, including: (a) the U.S. Trustee; (b) all secured creditors; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest consolidated unsecured creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g)

other interested parties as identified by the Debtors; (h) the Committee members and their counsel, if known; (i) proposed counsel to the Committee; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. Notice of this Motion will also be provided to *all creditors* in accordance with Bankruptcy Rule 2002(a)(2). The Debtors shall serve the Motion via U.S. Mail without a copy of Exhibit A to the NRI Contract due to its voluminous nature and the attendant costs of reproduction; however, any party in interest may obtain an electronic copy of Exhibit A to the NRI Contract by submitting a written request via email to dmerola@bakerlaw.com or by downloading the Motion through the website for the Debtors' claims agent at www.bmcgroup.com/limetree The method of service for each party will be described more fully in the certificate of service prepared by the Debtors' claims and noticing agent. The Debtors respectfully submit that, under the circumstances, such notice is sufficient and that no other or further notice of this Motion is required.

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and for all other relief that is appropriate under the circumstances.

RESPECTFULLY SUBMITTED this 29th day of October, 2021.

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: egreen@bakerlaw.com
     jparrish@bakerlaw.com


**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Admitted Pro Hac Vice)*

*Proposed Counsel for the Debtors and Debtors
in Possession*


<u>**Certificate of Service**</u>

I certify that on October 29, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Elizabeth A. Green*

Elizabeth A. Green

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| **LIMETREE BAY SERVICES, LLC,** *et al.* [2] | CASE NO.: 21-32351 |
| Debtors. | (Jointly Administered) |

**ORDER GRANTING DEBTORS' MOTION TO (I) APPROVE SALES OF GOODS
FREE AND CLEAR OF ALL CLAIMS, LIENS, AND ENCUMBRANCES BY NRI
INDUSTRIAL SALES, LLC AND (II) APPROVE NRI'S COMMISSION FOR SALES**

Upon the motion ("**Motion**")[3] of the debtors and debtors in possession (collectively, the

"**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") for

entry of an order (the "**Order**") approving NRI's sale of the Goods and payment of NRI's

Commission in accordance with the terms and procedures described in the Motion; finding this

Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; finding that this matter is a

core proceeding pursuant to 28 U.S.C. § 157; finding this Court may enter final orders in this

matter consistent with Article III of the United States Constitution; finding that this matter is

properly venued in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; finding notice of the Motion

due and proper under the circumstances and in accordance with all applicable rules and orders,

and no further or additional notice of the Motion being warranted; receiving no objections to the

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[3] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

relief requested in the Motion; having considered the Motion, the declaration of Mark Shapiro in support thereof, and all other documents submitted in support of the Motion; and, after due deliberation, finding that the relief requested by and through the Motion is due and proper, is supported by the Debtors' sound business judgement, and serves the best interests of the estates and their creditors; and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED:**

1.      The Motion is granted as set forth herein.

2.      Pursuant to Section 363(b) of the Bankruptcy Code, the Debtors, through NRI, are authorized (a) to sell and transfer the Goods, or any of them, by any commercially reasonably means through one or more transactions without further order of this Court and (b) to pay any commissions, fees and reimbursements to NRI provided under and per the terms of the Contract.

3.      Pursuant to Section 363(f) of the Bankruptcy Code, any sales or transfer of the Goods pursuant to this Order are, without need for any action by any party, free and clear of any and all Liens, with such Liens attaching to the proceeds of such sale or transfer with the same validity, extent, and priority as such Liens attached to the subject Goods immediately prior to such sale or transfer, subject to any claims and defenses the Debtors or any other party may possess with respect thereto.  The holder of any valid Lien or interest on such Goods shall, as of the effective date of such sale or transfer, be deemed to have waived and released such Lien, without regard to whether such holder has executed or filed any applicable release, and such Lien shall automatically, and with no further action by any party, attach to the proceeds of the sale of the Goods subject to such Lien(s), to the extent set forth herein. Notwithstanding the foregoing, any

holder of a Lien on any Goods is authorized and directed to execute and deliver any waivers, releases, or other related documentation, as reasonably requested by the Debtors. To the extent deemed necessary, the Debtors may file a copy of this order as conclusive evidence of the release of any and all Liens in the Goods.

4.      NRI shall be deemed to be a consignee of the Goods, which Goods shall remain property of the Debtors' estates until such time as such Goods are sold to a third-party buyer.  At no time shall NRI be deemed to be an owner of, or title holder to, any of the Goods and shall not have any authority to pledge or encumber any of the Goods, absent further order of this Court.

5.      The Debtors shall file with the Court a report (the "NRI Report") on the last business day of every other calendar month, concerning all transactions consummated during the two (2) calendar months immediately preceding the month in which the report is filed pursuant to the terms of this Order and/or the Contract; *provided*, *that*, the initial NRI Report shall include, to the extent known and not confidential, an itemized listing of any and all sales of Goods under the Contract from the Petition Date through and including October 31, 2021.  The initial NRI Report shall be due 30 calendar days following entry of this Order.  Each NRI Report shall include, to the extent known and not confidential, the following information with respect to each Good sold: (a) the purchaser's name; (b) the purchase price; (c) the book value of the subject Good; (d) the date on which payment of the purchase price was received by NRI, the means of sale (*i.e.*, online or auction format); and (e) any commission attributable thereto.

6.     Any sales or transfers of Goods pursuant to this Order shall be deemed arms'-length transactions, and such purchasers and transferees of the Goods shall be entitled to the protections afforded to good-faith purchasers under Section 363(m) of the Bankruptcy Code.

7.     The Debtors and any purchasers of the Goods are authorized to take any and all actions and execute any and all documents necessary or appropriate to effectuate the sale or transfer of any Goods.

8.     Any sale transactions pursuant to this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby.

9.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

12.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

DATED:

_____
Honorable David R. Jones
United States Bankruptcy Judge

## **EXHIBIT B**

**DECLARATION OF MARK SHAPIRO IN SUPPORT OF MOTION**

4832-3564-7742.1
DOCS_NY:44274.3 52622/002
4869-4507-6737.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| **LIMETREE BAY SERVICES, LLC**, *et al.* [1] | **CASE NO.: 21-32351** |
| **Debtors.** | **(Jointly Administered)** |

### DECLARATION OF MARK SHAPIRO IN SUPPORT OF DEBTORS' MOTION TO (I) APPROVE SALES OF GOODS FREE AND CLEAR OF ALL CLAIMS, LIENS, AND ENCUMBRANCES BY NRI INDUSTRIAL SALES, LLC AND (II) APPROVE NRI'S COMMISSION FOR SALES

I, Mark Shapiro, declare as follows:

1.       I am a Senior Managing Director for GlassRatner Advisory & Capital Group LLC, d/b/a B. Riley Advisory Services ("**B. Riley**" or the "**CRO**").  On or about June 17, 2021, Limetree Bay Services,  LLC, Limetree Bay Refining Holdings, LLC, Limetree Bay Refining Holdings II, LLC, Limetree Bay Refining, LLC, Limetree Bay Refining Operating, LLC, and Limetree Bay Refining Marketing, LLC (collectively, the "**Debtors**") retained B. Riley as chief restructuring officer.  I am the principal representative of B. Riley in its capacity as CRO.

2.       I am a duly authorized representative of the Debtors for purposes of executing any and all documents in connection with the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), and representing the Debtors in the course of these Chapter 11 Cases and any related proceedings.  I am authorized to submit this Declaration on behalf of the Debtors.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

3.      I submit this Declaration in support of the *Debtors' Motion to (I) Approve Sale of Goods Free and Clear of All Claims, Liens, and Encumbrances by NRI Industrial Sales, LLC and (II) Approve NRI's Commission for Sales* (the "**Motion**").  Unless otherwise defined herein, all defined terms shall have the meanings ascribed to them in the Motion.

4.      I am familiar with the Debtors' businesses, day-to-day operations, and financial affairs.  Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents and records created and maintained by the Debtors in the ordinary course of business, information provided to me by employees and consultants working under my supervision with personal knowledge of the veracity of such information, and/or my opinion based on experience, knowledge, and information concerning the Debtors' operations and financial condition.  If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

5.      LBR and NRI entered into the Contract in the ordinary course of business.  Under the Contract, NRI sells certain surplus and used industrial materials, equipment, and machinery (i.e., the Goods).  The Debtors do not require the Goods to idle the refinery or maintain the operation of the ancillary systems.  As such, the services of NRI are critical to the Debtors ability to liquidating unnecessary inventory and, thereby, maximize recoveries for creditors.

6.      In my sound business judgment, I believe it is in the best interest of the Debtors' estates to continue to sell the Goods pursuant to the terms set forth in the Motion, including paying NRI's Commission, which I believe to be fair and reasonable.

*[Remainder of Page Intentionally Blank]*

I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated: October 29, 2021                    ___/s/ Mark Shapiro_____

                                           Mark Shapiro, CRO

## EXHIBIT C

### NRI CONTRACT

**EXHIBIT A TO NRI CONTRACT IS NOT**

**BEING PROVIDED VIA U.S. MAIL BUT**

**MAY BE REQUESTED VIA EMAIL TO**

**DMEROLA@BAKERLAW.COM OR**

**DOWNLOADED FOR FREE AT**

**WWW.BMCGROUP.COM/LIMETREE**

## MASTER CONSIGNMENT AGREEMENT

---

**This Master Consignment Agreement is expressly limited to and made conditional upon the exclusivity of these terms and conditions. Any proposal for additional or different terms or any attempt to vary, in any degree, any of the terms of this Agreement shall be deemed a material alteration hereof and is expressly rejected. The terms and conditions of this Agreement may only be amended by the parties' specific, written assent to the change.**

---

This **MASTER CONSIGNMENT AGREEMENT** (the '***Agreement***') is made effective on the date indicated below (the "***Effective Date***") by and between NRI Industrial Sales LLC, a Delaware limited liability company with offices at 6401 Rogers Road, Delta, Ohio 43515 ("***NRI***", "***Consignee***", "***we***", and "***us***") and the person or entity identified below (the "***Consignor***", "***Limetree***", "***you***", and "***your***"). NRI and Consignor are hereinafter referred to jointly as the "***parties***" and individually as a "***party***".

| Consignor Information | | | |
|---|---|---|---|
| Name: Limetree Bay Refining, LLC. | | Type of Entity LLC. | |
| Street Address 1 Estate Hope | City Christiansted | District Virgin Islands | Mail Code 00820 |
| Telephone 340-692-3658 | | Fax Number | |
| Contact Name Michael Magill | | Email mmagill@lbenergy.com | |
| Business ID No. | Website Address | Effective Date March 9, 2021 | |

## RECITALS

**WHEREAS**, NRI is in the business of purchasing and selling surplus and used industrial equipment including electrical, hydraulic, pneumatic, power transmission, pumps, tools, valves, and instrumentation

**WHEREAS**, Consignor desires to consign to NRI certain goods for the purpose of facilitating a sale of such goods by NRI and to engage NRI to act as Consignor's exclusive agent for the sale of such consigned goods; and

**WHEREAS**, NRI is willing to accept delivery of the goods and to make necessary payment to the Consignor upon the sale of the goods on the terms and subject to the conditions set forth in this Agreement.

**NOW THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which the parties hereto both acknowledge, the Consignor and the Consignee hereby agree as follows:

1.      **Definitions.**  Terms not otherwise defined herein shall have the following meanings:

"***Consigned Goods***" or "***Goods***" means that equipment, products, or goods as set forth on the attached Exhibit A, as such Exhibit may from time to time be amended in writing, and any and all other equipment, products, or goods that you deliver to NRI and which NRI agrees to take possession.

"***Gross Proceeds***" means the aggregate of all revenue from the sale of the Goods actually received by NRI, but excluding (a) all refunds made in good faith, (b) any sales taxes that are collected by NRI for or on behalf of any governmental taxing authority and paid thereto, and (c) any shipping costs paid by the buyer of the Goods.

"***Premises***" means NRI's facility located at 6401 Rogers Road, Delta, Ohio, 43515, 4901 Rockaway Blvd, Bldg G, Rio Rancho, New Mexico, 87124, 2530 Speers Rd, Unit 8-9, Oakville, ON L6L 5K8, or such other facility designated by NRI in the continental United States, Canada or the United Arab Emirates as NRI may in its sole discretion provide. Notwithstanding the foregoing, NRI shall give Consignor written notice of the location of the Goods and any change thereto prior to sale.  NRI shall ensure that any such Premises is safe and secure and that the Goods are stored and handled in a manner to preserve their value.

2.      **Right to Sell.**  Throughout the Term of this Agreement (as hereafter defined), you agree that NRI shall be the sole Consignee of the Consigned Goods, and you shall assign NRI the exclusive right to sell the Consigned Goods in accordance with the terms of this Agreement.

3.      **Consignment of Goods.**

a.      NRI agrees to use its reasonable commercial efforts to sell the Goods, as a whole, on the most favorable terms. We shall have complete professional discretion as to the time and place of sale of the Goods, the sale and venue in which the Goods are offered, and the manner in which any sale is promoted and conducted. Notwithstanding the foregoing, NRI (i) shall use only such written sales materials provided by Consignor or approved by Consignor in writing (the "***Approved Sales Materials***"), and (ii) shall not make any promises or statements with respect to the Goods that are not expressly set forth in the Approved Sales Materials.  NRI shall have discretion to determine the manner in which items are grouped into auction lots (if any).

b.      Unless otherwise instructed in writing by Consignor, NRI may clean and dismantle any Goods for the purpose of making the Goods ready for sale. All detritus generated from above activities will be disposed of by NRI. Any scrap of value generated from above activities will be treated as Consigned Goods.

c.      Unless otherwise agreed in writing by the parties, NRI shall obtain custody and risk of loss of the Goods after NRI inspects the Goods and approves the loading methodology to be used by Consignor for loading of the Goods, at Consignor's refinery in St. Croix, USVI (the "***Receipt Point***").  NRI shall coordinate the transportation of the Goods to the Premises; provided that Consignor shall reimburse NRI for all reasonable and documented costs and expenses incurred by NRI in connection with the transportation of such goods to the Premises. Consignor shall insure the Goods while in transit and upon receipt of the Goods at the Receipt Point, NRI shall insure the Goods for their liquidation value, at its sole

cost and expense.  For purposes of this Agreement, the term "liquidation value" means eleven percent (11%) of the book value of the Goods.

d.      The Consigned Goods shall remain the sole property of Consignor until immediately prior to the sale of the Goods to a buyer. NRI hereby acknowledges that it takes possession of the Consigned Goods only on a consignment basis and it does not acquire any property right or security interest in the Consigned Goods. Your consignment is not a consignment intended as a security.

e.      NRI maintains a comprehensive return policy which allows buyers to return unwanted items within thirty (30) days. Any Goods which are returned will result in an adjustment of amounts to be paid pursuant to <u>Section 4</u> below.

f.      You may choose to recall Goods that are not committed to sold at any time prior to sale through Consignee's web portal.  If the value of the Goods recalled is one percent or less of the total value of the Goods, as specified in Exhibit A, no adjustment shall be made to the Minimum Payment.  If the value of the recalled Goods is greater than one percent (1%), then the Minimum Payment will be adjusted on a pro rata basis. NRI will make the recalled items available for pickup by you and you agree to be responsible for all shipping costs associated with such recalled items.

g.      If sold at auction, neither you, your principal, if any, nor any other representative or agent of you or your principal shall bid for the Goods.  All bids to protect your reserves, if any, will be made at our discretion by our representatives.  If you violate your foregoing commitments and you (or your principal, agent or representative) become the successful bidder on your Goods, we may either return the Goods to you in exchange for the commissions set forth in <u>Section 4</u> based on the bid price, or retain and sell the Goods without reserve in order to recover the commissions due from such sale and the commissions due on the sale concluded in violation of this paragraph including, in each case, all expenses to which we are entitled.

**4.      Proceeds and Terms of Sale.**

a.      Online Sales (Orderly Liquidation). NRI shall retain forty percent (40%) of the Gross Proceeds from the sale of each item Goods consigned and shall remit to Consignor an amount equal to sixty  percent (60%) of the Gross Proceeds, less any and all shipping charges paid by the customer, refund adjustments, or applicable sales taxes  on the Goods.

b.      Auction Sales (Forced Liquidation). NRI shall retain twenty percent (20%) of the Gross Proceeds from the sale of each item Goods consigned and shall remit to Consignor an amount equal to eighty percent (80%) of the Gross Proceeds, less any and all shipping charges paid by the customer or applicable sales taxes on the Goods. NRI maintains the right to collect a buyer's premium on any sales from the buyer.

c.      Subject to the provisions of Section 3f, NRI shall pay Consignee a guaranteed, non-refundable minimum payment of $2,600,000 (the "***Minimum Payment***"), with respect to all sales of Goods under this Agreement.  For purposes of this <u>Section 4(c)</u>, the term "***Start Date***" means thirty (30) days after NRI has provided notice of signoff to Consignor and all of the Goods have been loaded onto containers. If twelve (12) months after the Start Date (the "***Payment Date***"), Consignor's

cumulative collected funds is less than the Minimum Payment, NRI shall pay Consignor an amount equal to the difference between the Minimum Payment and the cumulative collected funds disbursed to Consignor as of the Payment Date (such amount being referred to herein as the "***Payment Advance***"). NRI shall have the right to continue sales under this Agreement until the earlier of (i) twelve (12) months after the Payment Date, or (ii) the complete disposition of the Goods. For all periods after the Payment Date, additional sales of Goods shall be subject to the sharing ratios set forth in Sections 4(a) and 4(b) above, except that no funds will be due and payable to Consignor during such period until NRI's share of earned funds is equal to the Payment Advance.

d.       NRI shall be responsible for collecting all funds from its customers, the record of which shall be visible on the NRI Portal (as defined below). Within eight (8) days of the end of each calendar month, NRI shall disburse to Consignor its share, as specified in Sections 4(a) and 4(b), of the gross sales revenues received during the immediately prior month and NRI shall retain NRI's share, as specified in Sections 4(a) and 4(b), as NRI's commission (the "***Commission***") with respect to such sales. NRI shall pay Consignor its share via electronic transfer of same day funds in U.S. Dollars, to a bank account or accounts designated by Consignor. Each payment shall be in the full amount due to Consignor pursuant to the provisions of this Section 4. All payments under this Agreement not paid by the due date as defined herein shall accrue interest at the lesser of 1% per month or the highest rate permitted by applicable law. Interest shall run from, and including, the applicable due date of the payment to, but excluding, the date that payment is received.

e.       Goods that are not sold will be evaluated by both NRI and Consignor if not sold within twenty-four (24) months after acceptance by NRI. If you decide to remove the remaining consigned Goods after such period, you take responsibility for retrieving the Goods or for delivery costs that may result for such delivery.

**5.       NRI's Proprietary Consignment Portal.** In consideration of your agreement to retain NRI as your exclusive consignee for all sales of any Consigned Goods during the Term of this Agreement, NRI hereby grants you access to NRI's exclusive and proprietary consignment portal located at https://consignment.nriparts.com (the "***NRI Portal***"). The NRI Portal will enable you to monitor reports on the status of NRI's inventory of your Goods, the sales of Goods, payments, and other information. Your use of the NRI Portal shall at all times be subject to NRI's Terms of Use set forth at www.nriparts.com/terms and NRI's Privacy Policy set forth at www.nriparts.com/privacy as such terms may from time to time be modified and amended by NRI upon delivery of notice to you. NRI will provide you with unique, sign on identifications and passwords ("***IDs***") to enable you to access the NRI Portal. You and any authorized users shall maintain the confidentiality of the IDs. You agree to immediately notify NRI if a security breach occurs or if you suspect that a security breach may have occurred with respect to your license to use the NRI Portal.

**6.       Consignor's Warranties and Indemnity.**

a.       You represent and warrant that: (i) you have the right, power and authority to consign the Goods for sale, to enter into this Agreement and to perform all of your obligations hereunder; (ii) the Goods are, and until sold shall remain, free and clear of all liens, encumbrances or claims arising by, through and under you; (iii) you alone hold good title to the Goods, and good title will pass to any buyer upon sale, except for any liens created by, through or under NRI; (iv) to your knowledge, there are no legal, contractual or other restrictions on our right to exhibit the Goods or

reproduce images of the Goods or on our right to use or reproduce any images or materials provided by you to us for the purposes contemplated herein, and (v) to your knowledge, the Goods are not counterfeit.

b.      EXCEPT AS SPECIFICALLY SET FORTH IN <u>SECTION 6(A)</u> ABOVE, CONSIGNOR MAKES NO WARRANTIES OF ANY KIND OR NATURE (EXPRESS OR IMPLIED) REGARDING THE GOODS, AND NRI SHALL INFORM ALL POTENTIAL PURCHASERS THAT THE GOODS ARE BEING SOLD "AS IS, WHERE IS" WITHOUT ANY WARRANTIES OF ANY KIND WHATSOEVER (EITHER EXPRESS OR IMPLIED) AND THAT ALL WARRANTIES ARE EXPRESSLY DISCLAIMED (INCLUDING WARRANTIES OF MERCHANTABILITY, FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE).

c.      To the fullest extent permitted by applicable law, you agree to defend and indemnify NRI, its affiliates, and their directors, officers, employees, representatives, agents, and subcontractors against, and hold us and them harmless from, any and all claims, actions, damages, losses, liabilities, and expenses (including reasonable attorneys' fees for counsel of our choice, including in-house counsel) arising out of or concerning title to the Goods at the time of sale to NRI's purchaser.

d.      Your warranties and this indemnity shall survive the completion of the transactions contemplated by this Agreement for a period of two (2) years and shall be applicable to any Goods sold or consigned for sale hereunder.

## 7.      NRI's Warranties, Obligations and Indemnity.

a.      NRI represents and warrants that it shall not permit any liens to be placed on the Goods while in its custody and control.

b.      NRI shall comply with all applicable laws in performing its obligations under this Agreement, including all trade and export regulations.  Without limiting the foregoing, NRI represents and warrants that it is familiar with, and will comply with, all applicable laws concerning the sale of the Goods, including any laws concerning, relating to or affecting (i) the import and/or export thereof, (ii) sales to "restricted persons," and (iii) the U.S. Foreign Corrupt Practices Act and similar laws.

c.      NRI shall comply with Consignor's policies ("***Consignor's Policies***") concerning (i) gifts, kickbacks or other payments to Consignor's employees and contractors or any other person and (ii) access to and conduct on Consignor's property, including Consignor's St. Croix refinery.  In addition, at all times when NRI has access to Consignor's property, NRI shall maintain the insurance set forth in Exhibit B hereto. NRI acknowledges and recognizes the importance of the safety and health of all persons, including, but not limited to, employees of Consignor, NRI and other contractors.  NRI shall strictly and carefully comply with all requirements of this Agreement and all of Consignor's policies and procedures pertaining to safety, health and environmental matters.  NRI agrees to devote special care and attention to, and to exercise its best efforts to attain, the desired objective of performing the Services without injury to any person.

d.      If required under applicable law, NRI will hold a valid Virgin Islands Business License (a "VI License") in order to perform the Services.

e.     Except as otherwise provided in this Agreement, NRI shall be responsible for the payment of the costs and expenses incurred or committed to in connection with the sale of the Goods, including all advertising and other costs and expenses, it being understood and agreed that the Commission includes the reimbursement of all of, and NRI shall not be entitled to reimbursement for any such costs and expenses.

f.     During the Term and for a period ending two (2) years after the termination of this Agreement, (a) NRI shall keep and maintain complete and accurate records (the "*Sales Records*") regarding the sale of the Goods, and (b) Consignor shall have the right (at its sole cost and expense) to inspect, copy and audit the Sales Records at NRI's offices and during NRI's normal business hours.  Access to such Sales Records may be provided via NRI's Portal.

g.     To the fullest extent permitted by applicable law, NRI shall defend, indemnify and hold harmless Consignor, its affiliates, and their directors, officers, employees, representatives, agents and contractors for and against any liabilities directly or indirectly arising out of (i) any breach by NRI of any covenant or agreement contained herein or any representation or warranty of NRI made herein proving to be false or misleading, (ii) any failure by NRI to comply with or observe any applicable law or Consignor's Policies, (iii) NRI's negligence or willful misconduct, (iv) injury, disease, or death of any person or damage to or loss of any property, fine or penalty, to the extent caused by NRI, its employees or representatives, and (v) any liabilities directly or indirectly arising out of or relating to the Goods on and after the date of receipt by NRI at the Receipt Point.  The foregoing indemnity shall survive termination of this Agreement for a period of two years.

h.     NRI's warranties and indemnity shall survive the completion of the transactions contemplated by this Agreement for a period of two (2) years and shall be applicable to any Goods sold or consigned for sale hereunder.

**8.     WAIVER AND RELEASE.** YOU HEREBY EXPRESSLY WAIVE AND RELEASE US (AND ALL OF OUR OFFICERS, STOCKHOLDERS, INSURERS, AGENTS AND EMPLOYEES) FROM ANY JOINT AND/OR SEVERAL LIABILITY WITH YOU OR ANY OTHER PERSON OR ENTITY TO ANY BUYER OF THE CONSIGNED GOODS RELATING TO OR ARISING FROM AN ALLEGED DEFECT IN THE TITLE, EXCEPT TO THE EXTENT THAT SUCH DEFECT IS CAUSE BY OR ARISES BY, THROUGH OR UNDER NRI.   The provisions of this Paragraph 8 shall survive the transactions covered by this Agreement.

**9.     Limitation of Liability.**

a.     NRI shall have risk of loss with respect to the Goods at all times after receipt at the Receipt Point and while under its care, custody and control.  During all such times, NRI shall insure the Goods for their liquidation value as set forth in Section 3(c) of this Agreement.  In the event of any casualty loss to the Goods while in NRI's custody, Consignor shall receive 60 percent of the insurance proceeds and NRI shall receive 40 percent of the insurance proceeds.

b.     IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES, INCLUDING WITHOUT LIMITATION, BUSINESS INTERRUPTION, DAMAGES FOR LOSS OF PROFITS, INCURRED BY THE OTHER PARTY ARISING OUT OF THE SERVICES PROVIDED UNDER THIS AGREEMENT,

EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**10.**     **[Intentionally Deleted]**

**11.**     **Term.**  This Agreement is effective as of the Effective Date and shall continue for a period of twenty-four (24) months thereafter (the "***Term***").

**12.**     **Independent Contractor.**  NRI is, and shall remain, an independent contractor selling to third-party buyers the Consigned Goods. Nothing contained in this Agreement will be deemed to create any association, partnership, joint venture, or relationship of principal and agent between the parties.

**13.**     **Assignment.**  Neither party shall assign this Agreement, or any rights or obligation hereunder without the prior written consent of the other party and any attempted assignment shall be void and of no effect.

**14.**     **Events of Default**.  Notwithstanding any other provision of this Agreement, an event of default (an "***Event of Default***") shall be deemed to occur with respect to a party when:

   a.   Such party fails to make payment when due under this Agreement and such failure is not cured within five (5) days of receipt of written notice of nonpayment.

   b.   Other than a Default described in Sections 14(a) and (c), such party fails to perform any obligation or covenant to the other party under this Agreement, which failure is not cured to the satisfaction of the other party (in its sole discretion) within fifteen (15) business days from the date that such party receives written notice that corrective action is needed.

   c.   Such party breaches any material representation or material warranty made or repeated or deemed to have been made or repeated in this Agreement by such party, or any warranty or representation in this Agreement proves to have been incorrect or misleading in any material respect when made or repeated or deemed to have been made or repeated under this Agreement; *provided, however,* that if such breach is curable, it is only an Event of Default if such breach is not cured to the reasonable satisfaction of the other party (in its sole discretion) within ten (10) business days from the date that such party receives notice that corrective action is needed.

   d.   Such party (i) is dissolved, other than pursuant to a consolidation, amalgamation or merger, (ii) becomes insolvent or is unable to pay its debts or fails or admits in writing its inability generally to pay its debts as they become due, (iii) makes a general assignment, arrangement or composition with or for the benefit of its creditors, or (iv) institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law bankrupt.

**15.**     **Remedies**.  Notwithstanding any other provision of this Agreement, upon the occurrence of an Event of Default with respect to either party (the **"*Defaulting Party*"**), the other party (the **"*Performing Party*"**) shall in its sole discretion, in addition to all other remedies available to it and without incurring any liabilities to the Defaulting Party or to third parties, be entitled to do one or more of the following: (a) suspend its performance under this Agreement without prior notice to the Defaulting Party, (b) proceed against the Defaulting Party for damages occasioned by the Defaulting Party's failure to perform, and (c) upon one (1) business day's notice to the Defaulting Party, terminate this Agreement. Notwithstanding the foregoing, in the case of an Event of Default described in Section

14(d), no prior notice shall be required. If NRI is the Defaulting Party and such default is material, Consignor shall have the right to enter NRI's Premises and remove all of its Goods.

16. **Obligations upon Termination.**  If any Goods remain unsold at the expiration of this Agreement, Consignor shall, at its sole option, (i) instruct NRI to liquidate the remaining Goods pursuant to <u>Section 4(b)</u> at liquidation value with the parties to share the proceeds in accordance with <u>Section 4(b)</u> of this Agreement,  (ii) request that the remaining Goods be shipped back to Consignor's refinery, at Consignor's sole cost and expense, or (iii) dispose of the Goods for scrap value, all of the proceeds of which shall be for Consignor's account.  Consignor shall have no obligation to pay NRI any Commission with respect to any Goods returned to Consignor at the expiration of this Agreement or sold for scrap value.

17. **Notices.**  Except as otherwise specifically provided, any notice required or permitted to be given under this Agreement shall be in writing and (i) delivered in person, which delivery the recipient agrees to acknowledge in writing; (ii) transmitted by e-mail with a confirming copy delivered on the next business day by a nationally recognized overnight courier service; (iii) deposited in the United States postal service mail (or, if outside the United States, such other country's postal service mail) postage fee prepaid, for mailing by first-class, registered or certified mail or (iv) sent by a nationally recognized overnight courier service, addressed as follows:

If to Consignor:
Director, Supply Chain Management
1 Estate Hope
Christiansted, U.S. Virgin Islands 00820-5652
Email: mmagill@lbenergy.com

With a copy to (which shall not constitute notice):

General Counsel
1 Estate Hope
Christiansted, U.S. Virgin Islands 00820-5652
Email: generalcounsel@lbenergy.com

If to NRI:

NRI Industrial Sales LLC
6401 Rogers Road
Delta, OH 43515
Attention:  Saif Syed
Title:  Vice President of Operations
E-Mail:  saif@nri-isd.com

18. **Governing Law.**  The Agreement shall be construed and enforced in accordance with the laws of the State of Delaware, without reference to or inclusion of the principles of choice of law or conflicts of law of that jurisdiction.  Each party irrevocably agrees that any legal action, suit or proceeding brought by it in any way arising out of the Agreement must be brought solely and exclusively in any federal or state courts of the State of Delaware, and irrevocably accepts and submits to the sole and exclusive jurisdiction of each of the aforesaid courts in persona, generally and unconditionally with respect to any action, suit or proceeding in any way arising out of the Agreement brought by it or against it by the other party.  Each party hereto further irrevocably consents to the service of process from

any of the aforesaid courts by mailing copies thereof by registered or certified mail, postage prepaid, to its address designated pursuant to the Agreement.  To the fullest extent permitted by applicable law, each party waives its right to a trial by jury.

19.     **Severability.**  If any provision of this Agreement shall be held to be illegal, invalid or unenforceable under present or future laws, such provisions shall be fully severable, this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect.

20.     **Entire Agreement; Amendment.**  This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior or contemporaneous representations, discussions, proposals, negotiations, conditions, communications and agreements, whether written or oral, between the parties relating to the subject matter hereof and all past courses of dealing or industry custom. No modification of or amendment to this Agreement shall be effective unless in writing and signed by each of the parties.

21.     **Waiver.**  The waiver by either party of a breach of or a default under any provision of this Agreement shall not be effective unless in writing and shall not be construed as a waiver of any subsequent breach of or default under the same or any other provision of this Agreement, nor shall any delay or omission on the part of either party to exercise or avail itself of any right or remedy that it has or may have hereunder operate as a waiver of any right or remedy.

22.     **Captions.**  The headings used in this Agreement are for convenience only and shall not be used to limit or construe the contents of any of the sections of this Agreement.

23.     **Counterparts**.  This Agreement may be signed in several counterparts, each of which shall be deemed an original and all such counterparts together shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page of this Agreement electronically (including by fax, email or PDF) shall be effective as delivery of a manually executed counterpart of this Agreement.

24.     **Force Majeure**.  No party shall be liable or responsible to the other party, nor be deemed to have defaulted under or breached this Agreement, for any failure or delay in fulfilling or performing any term of this Agreement, when and to the extent such failure or delay is caused by or results from acts beyond the impacted party's ("**Impacted Party**") reasonable control, including, without limitation, the following force majeure events: (a) acts of God; (b) flood, fire, earthquake, or explosion; (c) war, invasion, hostilities (whether war is declared or not), terrorist threats or acts, riot or other civil unrest; (d) government order, law, or actions; (e) embargoes or blockades in effect on or after the date of this Agreement; (f) national or regional emergency; (g) strikes, labor stoppages or slowdowns, or other industrial disturbances; (h) shortage of adequate power or transportation facilities; and (i) other similar events beyond the reasonable control of the Impacted Party.  A party's performance hereunder shall be excused only if the Impacted Party gives the other party prompt written notice of such event and its expected duration and impact.  The Impacted Party shall also give the other party prompt written notice when such event has ended.

25.     **Interpretation**.  For purposes of this Agreement, (a) the word "dollars" shall mean United States dollars; (b) the words "include," "includes," and "including" are deemed to be followed by the words "without limitation"; (c) the word "or" is not exclusive; and (d) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Agreement as a whole. Unless the context otherwise requires, references herein: (x) to sections, schedules,

and exhibits mean the sections of, and schedules and exhibits attached to, this Agreement; (y) to an agreement, instrument, or other document means such agreement, instrument, or other document as amended, supplemented, and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The schedules and exhibits referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

[Signature Page to Follow]

**IN WITNESS WHEREOF**, the parties have signed this Agreement as of the date first set forth above.

**NRI Industrial Sales LLC.**
("NRI")

By:_____

Print Name: _____Derrill Meyer_____

Title:__Vice President, NRI Industrial Sales__

**Limetree Bay Refining, LLC**
("Consignor")

By:_____

Print Name: _MICHAEL F. MAGILL_

Title:_DIRECTOR, SUPPLY CHAIN MANAGEMENT_

**THE LIST OF GOODS ATTACHED TO THE NRI MOTION IS VOLUMINOUS AND CAN BE FOUND AT DOCKET NO. 701-3**