**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | § | Case No. 21-32351 (DRJ) |
| Debtors. | § | (Jointly Administered) |

**THE TERMINAL ENTITIES' LIMITED OBJECTION AND RESERVATION OF RIGHTS TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDER: (I) ESTABLISHING BIDDING AND SALE PROCEDURES; (II) APPROVING THE SALE OF ASSETS; AND (III) GRANTING RELATED RELIEF**
**[Relates to Docket No. 191]**

The Terminal Entities[2] submit this limited objection and reservation of rights (the "**Objection**") to the *Debtors Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* (the "**Sale Motion**")[3] [Docket No. 191] and respectfully state as follows:

## INTRODUCTION

1. As set forth previously,[4] the Terminal Entities welcome the proposed sale (the "**Proposed Sale**") of substantially all of the assets of the Debtors to St. Croix Energy, LLLP ("**SCE**"), or any other successful buyer, and stand ready to assist SCE or such other buyer in

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] The Terminal Entities are: Limetree Bay Terminals, LLC ("**LBT**"), Limetree Bay Terminals Holdings, LLC, Limetree Bay Terminals Holdings II, LLC, Limetree Bay Cayman, Ltd., and Limetree Bay Financing, LLC.

[3] Capitalized terms used but not defined herein have the meanings given to them in the Sale Motion.

[4] *See The Terminal Entities' Statement and Reservation of Rights Concerning Proposed Sale* (the "**Sale Statement**") [Docket No. 822].

managing the transition and working to restart the Refinery.[5] However, the issues raised by the Terminal Entities in the Sale Statement have not been adequately addressed as of the date of this Objection.

2. As a result, it remains unclear how SCE, or any other buyer, will be able to manage the transition, comply with applicable environmental and safety obligations, and, ultimately, restart the Refinery. The Terminal Entities understand that SCE intends to rely on the Shared Services Systems Agreement (defined below), an executory contract between the Debtors and the Terminal Entities to which SCE is not a party and which the Debtors are not seeking to assume and assign at this time, to require the Terminal Entities to continue providing the Shared Services to SCE post-Closing. The Debtors and SCE propose to do this by entering into a TSA (defined below), under which SCE will pay the Debtors a monthly lump sum and have the Debtors in turn "provide" the necessary services.

3. The problem is this does not actually work. The Debtors are incapable of providing the services themselves and will instead have to rely on the Terminal Entities to provide the services through the Shared Services Systems Agreement. This is despite the fact that the Debtors will no longer own the assets governed by the Shared Services Systems Agreement and SCE will not be subject to the contractual terms of the Shared Services Systems Agreement.

4. In addition, while the Terminal Entities have been providing the Shared Services without interruption since the commencement of these cases, the Debtors have failed to pay all amounts due and owing postpetition for these essential services (e.g., power for the Refinery). And the Debtors have not confirmed that they will pay all amounts owed under the Shared Services

[5] The Terminal Entities note the filing of the *Debtors' Emergency Motion to (I) Reopen Auction Pursuant to Bidding Procedures, (II) Approve schedule and procedures for Continued Auction, and (III) Grant Related relief* [Docket No. 862], and the situation remains fluid. However, as of the filing of this Objection, there has been no change to the deadline to object to the Proposed Sale.

Systems Agreement after the Closing under the proposed TSA structure. Rather, the Debtors have indicated there will be a fixed amount paid to the Terminal Entities for Shared Services, irrespective of actual costs, leaving open the possibility that the Terminal Entities will be expected to provide Shared Services without adequate compensation.

5. Further, the Shared Services incorporate a number of regulatory and legal obligations and permits. The Shared Services Systems Agreement contains provisions governing how the Debtors and the Terminal Entities are supposed to manage the Shared Authorizations (defined below).[6] However, if SCE (or any other buyer) is not bound by those obligations, their failure to comply with the requirements of the Shared Authorizations may place the Terminal Entities (and the Debtors) at risk.

6. To address these issues, the Terminal Entities have discussed with counsel for the Debtors and SCE additional language for the order approving the Proposed Sale (the "**Sale Order**"). While SCE's counsel has indicated that the proposed language would likely be acceptable, counsel for the Debtors have not signed off on it, and the Sale Order filed by the Debtors last Friday did not include the requested language.[7] The Court should not approve the Proposed Sale absent clarification and preservation of the Terminal Entities' rights and inclusion of the proposed language set forth below.

## <u>BACKGROUND</u>

7. As the Court and other parties in interest are aware, the Terminal Entities supply critical services to the Debtors, including, but not limited to, power generation, wastewater treatment, lab facilities, administration buildings, and employee housing (the "**Shared Facilities**").

[6] *See* Shared Services Systems Agreement, Art. 5.

[7] *See Notice of Filing Proposed Sale Order and Transactional Documents* (the "**Sale Order Notice**") [Docket No. 857].

The Terminal Entities also currently provide a number of employees to the Debtors (the "**Shared Employees**")[8] and are named parties under certain of the governmental licenses, permits, and other authorizations required to operate the Debtors' and the Terminal Entities' assets (the "**Shared Authorizations**," and together with the Shared Facilities and the Shared Employees, the "**Shared Services**").

8. The Terminal Entities provide the Shared Services to the Debtors under the terms of that certain Shared Services Systems Agreement dated as of November 30, 2018 (the "**Shared Services Systems Agreement**") by and among LBT, debtor Limetree Bay Refining, LLC, and debtor Limetree Bay Refining Marketing, LLC.[9] Under the terms of the Shared Services Systems Agreement, the Debtors are required to compensate the Terminal Entities for Shared Services provided by the Terminal Entities. As of this date, the Debtors have not paid all their obligations on either a prepetition or postpetition basis due under the Shared Services Systems Agreement, with approximately $2.9 million still owed (and continuing to accrue) to the Terminal Entities for postpetition Shared Services.

9. On November 30, 2021, the Debtors filed the *Notice of (I) Designation of Winning Bid and Back-up Bids and (II) Sixth Notice of Extension of Milestones and Bid Procedures Deadlines* (the "**Winning Bid Notice**") [Docket No. 829]. The Winning Bid Notice disclosed that the Debtors had designated SCE as the Winning Bidder under the terms of the Bid Procedures. The Winning Bid Notice also included a copy of the Asset Purchase Agreement between the

---

8 The Debtors terminated substantially all of their operational employees at the end of September 2021. Many of these employees were subsequently hired by LBT and continue to do work for the Debtors.

9 The Shared Services Systems Agreement contains proprietary business information and is subject to certain confidentiality requirements. On information and belief, a copy of the Shared Services Systems Agreement and any other relevant documents are in the possession of the Debtors. Copies of the relevant documents will be provided upon request and in compliance with any confidentiality agreements or provisions. A copy of the Shared Services Systems Agreement was also filed under seal at Docket No. 326-4.

Debtors and SCE (the "**APA**") [Docket No. 829-2]. Under the terms of the APA, the Debtors and SCE are required to enter into a transition services agreement (the "**TSA**").[10] Delivery of the executed TSA is also a closing requirement for both the Debtors and SCE.[11]

10. On December 3, 2021, the Debtors filed the Sale Order Notice. The Sale Order Notice included copies of the exhibits and schedules to the APA, including a copy of the Proposed Sale Order and TSA and related Budget. According to the Sale Order Notice, these documents are not final and remaining subject to further discussion.

11. As described in the summary of SCE's bid in the Winning Bid Notice, the Debtors are to provide "required services" to SCE under the terms of the TSA.[12] However, as noted above, many of the "required services" are actually services that can only be provided by the Terminal Entities, including power generation, wastewater treatment, security, and other personnel. In apparent acknowledgment of this reality, the APA provides that SCE will perform the Debtors obligations under any contracts (which presumably includes the Shared Services Systems Agreement) after the Closing.[13]

12. The APA further provides that SCE shall have 150 days from the Closing to determine which of the Debtors' executory contracts it would like assumed and assigned to it. This presumably includes the Shared Services Systems Agreement, which was identified on the Debtors' *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (the "**Cure Notice**") [Docket No. 750]. The Cure Notice listed a

---

[10] APA Art. 1.4(i).

[11] APA Art. 3.4(a)(iv) and (b)(v).

[12] Winning Bid Notice, Exh. A, at p. 4 of 7.

[13] APA Art. 1.4(i).

proposed cure amount of $100,950 for the Shared Services Systems Agreement.[14] However, the actual cure amount as of the date of this Objection is no less than $64,863,555, including approximately $2.9 million in postpetition charges. As the Terminal Entities are continuing to provide Shared Services on a postpetition basis, this cure amount will continue to increase.[15]

## Limited Objection and Reservation of Rights

13. Maintenance of the status quo at the Refinery and any eventual restart will require SCE (or any other buyer) to work with the Terminal Entities in connection with the provision of the Shared Services. The Shared Services provided by the Terminal Entities are quite literally keeping the lights on at the Refinery. Despite the critical nature of the Shared Services, counsel for the Debtors and SCE have indicated that they do not intend to have a separate agreement with the Terminal Entities regarding the post-Closing provision of the Shared Services. Instead, as set forth above, it appears that the Debtors and SCE intend to have the Terminal Entities provide the Shared Services to SCE after the Closing under the fiction that the Debtors are actually providing these services while SCE reimburses the Debtors for their cost.

14. This construct is untenable. First, the Terminal Entities have no obligation to provide Shared Services to SCE (or any other buyer) absent an assumption and assignment of the Shared Services Systems Agreement. SCE is not a party to the Shared Services Systems Agreement, and the Debtors do not have a right under the Shared Services Systems Agreement to

---

[14] Similarly, the Cure Notice identified the Terminal Services Agreement (not including locations) between the Debtors and Limetree Bay Terminals, LLC (the "**Terminal Services Agreement**") and a stated cure amount of $17,155.091.01. However, the actual amount owed by the Debtors under the Terminal Services Agreement is $25,559,254 as of October 31, 2021.

[15] Consistent with the assumption procedures set forth in the APA, the Debtors have extended the Contract Assumption Objection Deadline to April 29, 2022. *See* Winning Bid Notice, Exhibit C. The Terminal Entities reserve their right to object to any proposed assumption or assumption and assignment of any agreements between the Debtors and Terminal Entities, including, without limitation, the Shared Services Systems Agreement or the Terminal Services Agreements, on any grounds.

require the Terminal Entities to provide the Shared Services to another party absent a full assignment of the Debtors' rights and obligations under the Shared Services Systems Agreement.[16]

15. Second, any funds paid by SCE to the Debtors for reimbursement of the costs of the Shared Services would become property of the Debtors' estates. Whether and when those funds would be paid to the Terminal Entities is unclear as the Debtors are not currently paying for the full cost of the Shared Services. Absent an assumption and assignment of the Shared Services Systems Agreement or an alternative agreement between SCE and the Terminal Entities, all the Terminal Entities will have is an administrative claim against an estate that is administratively insolvent. The Terminal Entities cannot be compelled to continue providing valuable services without fair compensation, particularly when those services are to be provided to a non-debtor third party.

16. Third, because many of the Shared Authorizations impose obligations on the holder, the Shared Services Systems Agreement sets forth detailed requirements to ensure that both the Debtors and the Terminal Entities cooperate with each other to meet those obligations.[17] This includes requirements that each party comply with all applicable terms and conditions of the Shared Authorizations, including monitoring, testing, and record keeping.[18] The Shared Services Systems Agreement also allows one party to step in and perform any obligations under the Shared Authorizations that the other party fails to perform.[19] Absent these provisions, or an agreement with SCE that imposes similar obligations, a failure by SCE to comply with the obligations under

---

[16] Shared Services Systems Agreement §§ 14.7.2 and 14.7.3.

[17] *See* Shared Services Systems Agreement, Art. 5.

[18] *Id.* § 5.3.

[19] *Id.* § 5.7.

the Shared Authorizations could result in liability to the Terminal Entities (and the Debtors) with no effective remedy.

17. Accordingly, the Sale Order should include language safeguarding and clarifying the Terminal Entities' rights in connection with the Proposed Sale. The Terminal Entities have proposed the following language for inclusion in the Sale Order:

- Sale of Debtors' Interest in Assets Only. Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, nothing in this Order authorizes, permits, or shall be deemed to authorize or permit, the Debtors to sell to Purchaser or any other party any Non-Debtor Assets (as defined in the Bid Procedures) including, for the avoidance of doubt, the interests of the LBT Entities[20] in any property jointly owned by the Debtors and the LBT Entities or any property owned by the LBT Entities.

- LBT Entities Not Affiliates of the Debtors. Notwithstanding anything to the contrary in this Order, the Asset Purchase Agreement or any applicable Transition Services Agreement, the LBT Entities are not, and shall not be considered, affiliates of the Debtors for purposes of this Order, the Asset Purchase Agreement or any applicable Transition Services Agreement, including, without limitation, with respect to any obligations, rights, representations, warranties, covenants, indemnification, or releases set forth in this Order or the Asset Purchase Agreement, and no such obligations, rights, representations, warranties, covenants, indemnification or releases shall be deemed to bind, extend to, or be enforceable against any of the LBT Entities in their capacity as an affiliate of the Debtors; *provided* that, for the avoidance of doubt, any provisions of this Order that apply to the LBT Entities in any capacity other than as an affiliate of the Debtor shall not be modified in any way by the terms of this paragraph [2].

- No Assumption or Assumption and Assignment. Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, (i) no agreements between the Debtors and LBT Entities, including that certain Shared Services Systems Agreement dated as of November 30, 2018 by and among Limetree Bay Terminals, LLC Limetree Bay Refining, LLC, and Limetree Bay Refining Marketing, LLC (the "***SSSA***"), are being assumed or assumed and assigned solely as a result of this Order or the Asset Purchase Agreement and all rights of the LBT Entities relating to any potential assumption or assumption and assignment of all agreements with the Debtors, including the SSSA, are expressly reserved and preserved, including, without limitation, the right to contest adequate assurance of future performance or any proposed cure amount; (ii) the Debtors are not authorized to transfer any rights under the SSSA to the Purchaser or any other party without compliance with section 365 of the Bankruptcy Code; (iii) nothing contained in this Order, the Asset Purchase Agreement, or any applicable Transition Services Agreement, obligates or

[20] The term "LBT Entities" as used herein shall mean, collectively or individually, (i) Limetree Bay Terminals Holdings, LLC (ii) Limetree Bay Terminals Holdings II, LLC; (iii) Limetree Bay Cayman, Ltd.; (iv) Limetree Bay Terminals, LLC; and (v) Limetree Bay Financing, LLC.

requires, or shall be deemed to obligate or require, the LBT Entities, the Debtors, or the Purchaser to provide any services, or goods including, without limitation, employees, fuel, or power to the LBT Entities, the Debtors, or the Purchaser, including pursuant to the SSSA; and (iv) nothing contained in this Order, the Asset Purchase Agreement, or any applicable Transition Services Agreement, waives or shall be deemed to waive any rights of the LBT Entities or the Debtors under or with respect to the SSSA or the rights of the Debtors, LBT Entities or Purchaser with respect to potential assumption or assumption and assignment of the SSSA pursuant to section 365 of the Bankruptcy Code.

- <u>Rights of LBT Entities are Preserved.</u> Notwithstanding anything to the contrary in this Order, the Asset Purchase Agreement or any applicable Transition Services Agreement, all rights of the LBT Entities, the Debtors, and the Purchaser under or with respect to any agreements against the LBT Entities, the Debtors, and the Purchaser are expressly and fully reserved and preserved, including, without limitation, all easements and rights of use or access to the Debtors' property and property jointly owned by the Debtors and the LBT Entities as set forth in the SSSA and, for the avoidance of doubt, the LBT Entities may continue to use and benefit from all such easements and rights of use or access after Closing in accordance with the SSSA or any other agreements between the Debtors and the LBT Entities.

- <u>Environmental Obligations.</u> Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, (i) Purchaser shall be required to comply with all environmental and safety obligations related to the Purchased Assets as may be required by applicable regulatory or governmental law or authorities, including all applicable permit obligations, (ii) Purchaser shall not take any action or fail to take any action that would cause the LBT Entities to be in violation of applicable regulatory or governmental law or authorities, and (iii) nothing in this Order or the Purchase Agreement imposes any obligation of the Purchaser or the Debtors to comply with applicable regulatory or governmental laws or authorities on the LBT Entities.

- <u>Payment of Budgeted Amounts under Transition Services Agreement.</u> Notwithstanding anything in this Order or any previous order of the Court, the Debtors are authorized, directed to and shall use any payments or proceeds received from the Purchaser under the Transition Services Agreement to first pay the amounts set forth in the budget attached to the Transition Services Agreement before such payments or proceeds are used for any other purpose by the Debtors.

Inclusion of this proposed language will ensure the Terminal Entities rights under the Shared Services Systems Agreement are preserved. As noted above, while counsel for SCE has indicated that this language is likely acceptable, the Debtors have not stated whether they will agree to include the proposed language, and the filed Sale Order does not include any such language.

18. The Terminal Entities stand ready and able to continue providing the Shared Services to the Debtors and SCE (or any other buyer). The Terminal Entities recognize the importance of keeping the lights on at the Refinery and ensuring that the Debtors and any party who may purchase the Refinery are able to meet their environmental and safety obligations. But given the critical nature of the Shared Services to the Refinery, it is essential that the Debtors and SCE engage with the Terminal Entities to ensure a smooth transition after the Closing. Given the uncertainty that still persists regarding how the Debtors and SCE intend to address the provision of the Shared Services, the Terminal Entities reserve all rights under the Shared Services Systems Agreement and applicable law, including seeking to lift the stay and terminate the Shared Services Agreement. The Terminal Entities further reserve the right to object to any proposed assumption or assumption and assignment of any agreements between the Debtors and the Terminal Entities on any grounds.

## CONCLUSION

19. For the reasons set forth above, the Terminal Entities respectfully request inclusion of their proposed language in the Sale Order and such other and further relief as may be just and proper.

Dated: December 6, 2021
Houston, Texas

Respectfully Submitted,

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II (TX Bar No. 24012503)
Joseph P. Rovira (TX Bar No. 24066008)
Ashley Harper (TX Bar No. 24065272)
Philip M. Guffy (TX Bar No. 24113705)
**HUNTON ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, Texas 77002
Tel: 713-220-4200
Fax: 713-220-4285
Email: taddavidson@HuntonAK.com
josephrovira@HuntonAK.com
ashleyharper@HuntonAK.com
pguffy@HuntonAK.com

*Counsel for Limetree Bay Terminals, LLC, Limetree Bay Terminals Holdings, LLC, Limetree Bay Terminals Holdings II, LLC, Limetree Bay Cayman, Ltd., and Limetree Bay Financing, LLC*

## CERTIFICATE OF SERVICE

I certify that on December 6, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II