United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 08, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 (DRJ) |
| Debtors. | (Jointly Administered) |
|  | Related to Docket No. 837 |

**ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT AGREEMENT
BY AND AMONG THE DEBTORS, OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, AND BP PRODUCTS NORTH AMERICA INC.
AND (II) GRANTING RELATED RELIEF**

Upon motion ("**Motion**")[2] of the debtors and debtors in possession herein (collectively, the "**Debtors**") for entry of an order (this "**Order**"), pursuant to Sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 9019, approving that certain settlement agreement by and among the Debtors, as debtors and debtors in possession, on behalf of themselves and their bankruptcy estates, the Official Committee of Unsecured Creditors, and BP Products North America Inc. (the "**Settlement Agreement**"); and this Court having jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334; and venue of these Chapter 11 Cases and the Motion being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having authority to enter a final order on the Motion consistent with Article III of the United States Constitution; and the Debtors having provided adequate notice under the circumstances and no other or further notice being needed; and a reasonable opportunity to object or be heard regarding the relief granted herein having been

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Motion or the Settlement Agreement, as applicable.

afforded pursuant to Bankruptcy Rule 6004(a); and upon the record of the hearing, and all proceedings had before this Court; and this Court having found that the relief granted hereby is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and the legal and factual bases set forth in the Motion and during the hearing on the Motion establishing just cause for the relief granted hereby; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled on the merits; after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is GRANTED as set forth herein.

2. The Settlement Agreement, a copy of which is attached as **<u>Exhibit A</u>** hereto, is approved in its entirety pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and its terms are incorporated fully herein as an order of this Court.

3. Upon the occurrence of the Effective Date of the Settlement Agreement, (i) BPPNA shall pay to the Debtors the sum of $5,035,764 in full satisfaction of the Settlement Amount, per the instructions furnished by the Debtors, (ii) BakerHostetler LLP shall be authorized and instructed to release the Escrow Funds ($4,464,236) to the Debtors and, upon transfer of the Escrow Funds, shall be deemed to have satisfied and shall be released from any duties or obligations with respect to the Escrow Funds, including, without limitation, any obligations under the Stipulation or order thereon with respect to the Escrow Funds, (iii) the CMS Dispute shall be fully and finally settled, resolved and released pursuant to the terms of the Settlement Agreement, (iv) the releases provided in the Settlement Agreement shall be deemed effective, (v) the BP Proof of Claim shall be deemed withdrawn with prejudice, and without any further action required of BP, and (vi) to the extent that any BP Agreements not terminated pursuant to the terms of the

4880-9403-7765.1

Settlement Agreement are still in existence, such BP Agreements shall be deemed rejected by the Debtors pursuant to Section 365(a) of the Bankruptcy Code and, whether terminated by BP pursuant to the terms of the Settlement Agreement or rejected by the Debtors, such BP Agreements shall be fully and automatically terminated, cancelled and of no further force and effect, and the parties thereto shall have no further obligations, duties, commitments or responsibilities in connection therewith.

4.      Notwithstanding anything to the contrary in the Settlement Agreement, (a) the Debtors and the Terminal Entities[3] expressly maintain and preserve any and all claims, defenses, and rights against each other, including, without limitation, all claims, defenses, and rights under the Shared Services Systems Agreement dated as of November 30, 2018 by and between LBT and Limetree Bay Refining, LLC, whether now existing or hereafter arising, and nothing in the Settlement Agreement or this Order shall have any effect on or release such claims, defenses, and rights; and (b) the Terminal Entities and BP expressly maintain and preserve any and all claims, defenses, and rights against each other, whether now existing or hereafter arising,  including, without limitation, all claims, defenses, and rights against each other arising in, arising in connection with, or relating in any way to any of the Class Actions.  For the avoidance of doubt, (x) nothing in the Settlement Agreement or this Order is intended or shall be construed to maintain or preserve any claims, defenses or rights of the Estate Releasors that could be brought or asserted against any BP Releasees by the Terminal Entities, on behalf of any Estate Releasors, all of which such claims, defenses and rights of the Estate Releasors are released and discharged pursuant to Section 9(a) of the Settlement Agreement; and (y) the Terminal Entities shall not be considered affiliates of the Debtors or an Estate Releasor for purposes of the Settlement Agreement and this

---

[3] The Terminal Entities are: Limetree Bay Terminals, LLC ("**LBT**"), Limetree Bay Terminals Holdings, LLC, Limetree Bay Terminals Holdings II, LLC, Limetree Bay Cayman, Ltd., and Limetree Bay Financing, LLC.

Order, including, without limitation, with respect to any releases set forth in the Settlement Agreement or this Order.

5.      The Debtors are authorized and empowered to take any and all actions necessary to carry out and effectuate the terms, conditions and provisions of the Settlement Agreement and this Order.

6.      The terms of the Settlement Agreement may not be modified by a chapter 11 plan and shall be binding upon any duly-appointed chapter 7 or 11 trustee and any plan administrator appointed in or any trust formed under the terms of any confirmed chapter 11 plan or plans.

7.      The fourteen (14) day stay of effectiveness imposed by Bankruptcy Rule 6004(h) is hereby waived and the relief granted herein shall take effect immediately upon entry of this Order.

8.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Order.

**Signed:  December 08, 2021.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

4880-9403-7765.1

## Exhibit A

**Settlement Agreement**

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (this "**Agreement**") is made and entered into as of November 30, 2021 (the "**Execution Date**") by and among (i) Limetree Bay Services, LLC, Limetree Bay Refining Holdings, LLC, Limetree Bay Refining Holdings II, LLC, Limetree Bay Refining, LLC, Limetree Bay Refining Marketing, LLC, and Limetree Bay Refining Operating, LLC (collectively, the "**Debtors**"), as debtors and debtors in possession in the Chapter 11 Cases (defined below), on behalf of themselves and their bankruptcy estates, (ii) the Committee (as defined below), and (iii) BP Products North America Inc. ("**BPPNA**").  The Debtors, Committee and BPPNA may be referred to hereinafter collectively as the "**Parties**" and each individually as a "**Party**".

## Recitals

**WHEREAS**, on July 12, 2021 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**"), thereby commencing chapter 11 cases that are being jointly administered for procedural purposes only *sub nom. In re Limetree Bay Services, LLC et al.*, Case No. 21-32351 (DRJ) (collectively, the "**Chapter 11 Cases**");

**WHEREAS**, on July 26, 2021, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "**Committee**") in these Chapter 11 Cases;

**WHEREAS**, prior to the Petition Date, the Debtors owned and operated a refinery (including related facilities) and a commodity marketing and trading business located at Limetree Bay, St. Croix, U.S. Virgin Islands;

**WHEREAS**, the Debtors and BPPNA are parties to various pre-petition agreements, including, without limitation, (i) a feedstock supply agreement pursuant to which BPPNA supplied crude oil and other refining feedstock to Limetree Bay Refining Marketing, LLC ("**LBRM**"), and (ii) a product offtake agreement pursuant to which BPPNA lifted refined product from LBRM;

**WHEREAS**, the Debtors and BPPNA and/or affiliates of BPPNA (BPPNA, together with BP Corporation North America Inc. and BPPNA's other affiliates, collectively, "**BP**") are parties to various other pre-petition agreements, including, without limitation, an Amended and Restated Tolling Agreement dated as of February 22, 2021 (the "**Tolling Agreement**") (all agreements between BP and the Debtors are listed on Schedule 1 hereto and are referred to herein, collectively, each as amended, restated, amended and restated, modified and/or supplemented from time to time, as the "**BP Agreements**");

**WHEREAS**, on the terms and conditions set forth in the Tolling Agreement, BPPNA agreed to pay LBRM an amount equal to 50% of the absolute value of Commissioning Margin Share (as defined in the Tolling Agreement; hereinafter," **CMS**"), if negative, which amounts were to be invoiced monthly by LBRM and, to the extent not disputed, paid by BPPNA;

**WHEREAS**, in the event of a dispute over a CMS invoice, BPPNA would deliver a dispute notice (a "**Dispute Notice**") to LBRM and timely pay the undisputed portion of such invoice;

**WHEREAS,** the Debtors assert that they are owed funds from BPPNA on account of accrued and unpaid CMS pursuant to the Tolling Agreement, and BPPNA disputes that it owes any such amounts, as set forth in Dispute Notices delivered to the Debtors (the "**CMS Dispute**");

**WHEREAS**, the Toll Start Date did not occur by the FCT Stop Date of August 15, 2021 (each as defined in the Tolling Agreement) and the Tolling Agreement was not terminated by BPPNA prior to such time, as a result of which, pursuant to Sections 3.2(b) and (c) thereof, (i) BPPNA's share of any CMS was conclusively deemed to be zero ($0) dollars from and after the FCT Stop Date, and (ii) BPPNA has the right to terminate the Tolling Agreement at any time;

**WHEREAS**, pursuant to that certain *Order Granting Stipulation between the Debtors, J. Aron & Company, LLC, BP Products North America, Inc., and the Committee Pursuant to Bankruptcy Rule 9019* entered by the Court on November 2, 2021 (Docket No. 712) (the "**Stipulation**"), Debtors' counsel, Baker & Hostetler, LLP, is holding in escrow, for the benefit of BPPNA, the Escrow Funds (as defined therein) in the amount of $4,464,236, which represents the sum of (i) Trade Contract Amounts (as defined therein) of $3,964,236 owed to BPPNA on account of certain trade contracts identified on Exhibit A thereto, and (ii) the Sale Reserve (as defined therein) of $500,000 as a reserve for potential claims of BP against J. Aron & Company LLC ("**J. Aron**") and/or the Debtors relating to feedstocks and products purchased by BP pursuant to that certain Liquidation Put Agreement by and among BPPNA and J. Aron, dated as of March 3, 2020;

**WHEREAS**, the Debtors acknowledged and agreed, and the Stipulation provides, that the Trade Contract Amounts shall be applied as a credit against unpaid, undisputed CMS amounts previously invoiced by the Debtors to BPPNA, *provided that* the Debtors and BPPNA reserved all rights with respect to CMS other than as explicitly set forth in the Stipulation;

**WHEREAS**, on November 12, 2021, BPPNA filed a proof of claim (the "**BP Proof of Claim**") in the Chapter 11 Cases, Claim No. 143, asserting a claim of not less than $34,376,981.98 owed to BPPNA by the Debtors under the BP Agreements, plus certain contingent and unliquidated amounts;

**WHEREAS**, there may be potential claims belonging to the Debtors' estates, whether arising under the BP Agreements or otherwise (collectively, the "**Potential Claims**"), that could be asserted against BP, and BP denies that any Potential Claims have any legal merit and BP asserts that it would vigorously defend any Potential Claims if litigated;

**WHEREAS**, the Parties and their respective advisors have negotiated extensively, at arm's length and in good faith, in an effort to settle and compromise the various disputed issues and Potential Claims addressed by this Agreement, this Agreement is the product of those discussions, and the Committee has approved and fully supports this Agreement; and

**WHEREAS**, the Parties enter into this Agreement to, *inter alia,* (i) avoid the delay, uncertainty, inconvenience and expense of litigation relating to the CMS Dispute and any other Potential Claims and/or causes of action that could be asserted against BP by or on behalf of the Debtors' estates; (ii) facilitate the prompt payment by BPPNA of the Settlement Amount (defined

170792334                                    2

below) to the Debtors; (iii) resolve the Escrow Account, with such funds to be turned over to the Debtors' estates on the terms and conditions set forth herein; and (iv) resolve and/or otherwise address certain other matters among the Debtors and BP related to the BP Agreements.

**Agreement**

**NOW, THEREFORE**, in consideration of the mutual promises, covenants, considerations, waivers, and releases set forth herein, the receipt and sufficiency of which are hereby acknowledged by each Party, each Party hereby agrees as follows:

1.      **Recitals**.  The recitals set forth above are fully incorporated herein by reference and made an express part of this Agreement. The Parties stipulate and agree that each of the recitals and terms and conditions of this Agreement are an integral part of this Agreement.

2.      **Court Approval**.  This Agreement is subject in all respects to the Court's entry of an order (the "**9019 Order**") approving this Agreement and authorizing the Debtors to perform hereunder. The 9019 Order shall be in substantially the form of the proposed order attached as **Exhibit A** hereto, and any modifications shall be acceptable in form and substance to BPPNA.

3.      **Settlement Consideration**.  Upon the occurrence of the Effective Date (as defined below), in consideration of the various agreements contained in this Agreement including, without limitation, the releases in Section 9 hereof, (a) BPPNA shall pay to the Debtors the total sum of $5,035,764 (the "**Settlement Amount**"), which shall consist of gross settlement consideration of $9,000,000, *less* Trade Credit Amounts of $3,964,236, which Trade Credit Amounts shall be satisfied through BP's release of the Escrow Funds to the Debtors pursuant to Section 5, *infra*; (b) BPPNA shall remit the Settlement Amount to LBRM per payment instructions to be provided by the Debtors (such instructions to be provided not less than three (3) business days prior to the Effective Date); and (c) the BP Proof of Claim shall be deemed withdrawn with prejudice, and without any further action required of BP.

4.      **CMS Dispute/Tolling Agreement**.  Upon the occurrence of the Effective Date, the CMS Dispute shall be fully and finally settled, resolved and released by this Agreement, BP and the Debtors shall owe no further CMS obligations to one another, and the Tolling Agreement shall be deemed terminated by BP as of such date pursuant to Section 3.2(b) thereof, without further action required.

5.      **Escrow Funds**.  Upon the occurrence of the Effective Date, in consideration of the various agreements contained in this Agreement including, without limitation, the releases in Section 9 hereof, (i) BPPNA hereby releases and waives any and all liens, security interests, claims, rights and entitlements with respect to the Escrow Funds and any proceeds thereof, and (ii) by this Agreement, Debtors' counsel shall be authorized and instructed by the Debtors and BPPNA to transfer the Escrow Funds in the amount of $4,464,236 to the Debtors, which upon receipt shall become property of the Debtors' estate pursuant to Section 541 of the Bankruptcy Code.  Upon transfer of the Escrow Funds, Debtors' counsel shall be deemed to have satisfied and be released from any duties or obligations with respect to the Escrow Funds.

6.        **BP Agreements**.   The Parties hereby acknowledge and agree that, upon the occurrence of the Effective Date, to the extent that any BP Agreements not terminated pursuant to the terms hereof are still in existence, such BP Agreements shall be deemed rejected by the Debtors as of such date pursuant to Section 365(a) of the Bankruptcy Code without further action required and all of the BP Agreements, whether terminated by BP pursuant to the terms hereof or rejected by the Debtors:

a.        shall be fully and automatically terminated, cancelled and of no further force and effect, and the parties thereto shall have no further obligations, duties, commitments or responsibilities in connection therewith; and

b.        all respective obligations of the parties under the BP Agreements shall be deemed fully paid, discharged and satisfied, and any and all other liabilities, indebtedness and other obligations owing by any party to another party under the BP Agreements shall be forever and irrevocably discharged, released and satisfied in full and terminated.

Notwithstanding anything contained in this Section 6, the termination of the BP Agreements shall not (i) terminate, alter, or otherwise effect the obligations of the Parties under this Agreement or (ii) terminate, alter, or otherwise effect any obligations of the applicable parties under the BP Agreements to maintain confidentiality pursuant to the terms of the BP Agreements.

7.        **Motion**. The Debtors shall file a motion (the "**Motion**") with the Court requesting approval of this Agreement pursuant to the Rule 9019 of the Federal Rule of Bankruptcy Procedure (the "**Bankruptcy Rules**") not later than two (2) business days after the Execution Date. The Debtors shall provide a draft of the Motion to BPPNA for review and comment prior to filing and the Motion shall be reasonably acceptable in form and substance to BPPNA.

8.        **Cooperation**. Following the Execution Date, the Parties shall act in good faith to support and obtain entry of the 9019 Order and occurrence of the Effective Date. The Parties shall not take any actions inconsistent with this Agreement, and each Party shall use commercially reasonable efforts to cooperate with the Debtors' efforts to obtain entry of the 9019 Order.

9.        **Releases**.

a.        **Releases by the Debtors**. Upon the occurrence of the Effective Date, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the Debtors, on behalf of themselves, their estates, and any predecessors, successors and/or assigns of any of the foregoing, including, without limitation, any chapter 7 or 11 trustee, any entity or person acting on his or her behalf, or any entity or person such as a liquidating or post-confirmation trust or plan administrator acting under a chapter 11 plan (collectively, the "**Estate Releasors**"), hereby irrevocably releases and forever discharges BP and its current and former officers, directors, managers, members, shareholders, general partners, limited partners, employees, advisors, agents, professionals, affiliates, subsidiaries, parents, guarantors and controlling persons (each in their respective capacities as such), together with the predecessors, successors and/or assigns of each of the foregoing (collectively, the "**BP Releasees**"), from any and all claims, demands, rights, actions, causes of action, suits, obligations, damages, judgments, contracts, decrees, controversies, liabilities, crossclaims, counterclaims, rights of payment, rights

of setoff or recoupment, reimbursement, contribution and/or indemnification, costs, expenses or attorneys' fees, of whatever kind or nature, whether at law or in equity, fixed or contingent, liquidated or unliquidated, foreseen or unforeseen, accrued or not accrued, known or unknown, now or hereafter existing, whether individual, class or derivative in nature, any statutory, common law, contract, tort or other theory, or intentional or negligent or other wrongdoing, for compensatory, consequential, punitive or exemplary damages or any damages or relief whatsoever, including any right to any equitable remedy (whether or not such right to an equitable remedy gives rise to a right to payment or is reduced to judgment), from the beginning of time to the Effective Date, including, without limitation, the Potential Claims, the CMS Dispute and/or the BP Agreements, which any of the Estate Releasors have, had, or can, shall, or may hereafter have against any BP Releasee by reason of any matter, cause or thing whatsoever based upon, arising out of, or in any way relating to the Debtors and/or the Chapter 11 Cases, be it a claim or cause of action at common law or pursuant to federal, state or any other law including Chapter 5 of the Bankruptcy Code (collectively, the "**Estate Released Matters**"); *provided, however*, that the foregoing does not release and shall not be construed to release any of BPPNA's obligations under this Agreement. The Estate Releasors acknowledge that they may, after the Execution Date, discover facts other than or different from those which they know or believe to be true with respect to the BP Releasees relating to the Estate Released Matters. Notwithstanding any such discovery of facts, the Estate Releasors waive and fully, finally and forever settle and release any known or unknown, suspected or unsuspected, contingent or noncontingent claim that accrued prior to the execution of this Agreement relating to the Estate Released Matters whether or not concealed or hidden, without regard to the subsequent discovery or existence of such other facts. The Estate Releasors expressly waive and release any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides:

> Section 1542. <u>Certain Claims Not Affected by General Release</u>. A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

      b.      **Releases by BP**. Upon the occurrence of the Effective Date, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, BP hereby irrevocably releases and forever discharges the Debtors, their estates, and their current and former officers, directors, managers, employees, advisors, agents, and professionals (each in their respective capacities as such), together with the successors and/or assigns of each of the foregoing (collectively, the "**Estate Releasees**"), from any and all claims, demands, rights, actions, causes of action, suits, obligations, damages, judgments, contracts, decrees, controversies, liabilities, crossclaims, counterclaims, rights of payment, rights of setoff or recoupment, reimbursement, contribution and/or indemnification, costs, expenses or attorneys' fees, of whatever kind or nature, whether at law or in equity, fixed or contingent, liquidated or unliquidated, foreseen or unforeseen, accrued or not accrued, known or unknown, now or hereafter existing, whether individual, class or derivative in nature, any statutory, common law, contract, tort or other theory, or intentional or negligent or other wrongdoing, for compensatory, consequential, punitive or exemplary damages

or any damages or relief whatsoever, including any right to any equitable remedy (whether or not such right to an equitable remedy gives rise to a right to payment or is reduced to judgment), from the beginning of time to the Effective Date, which BP has, had, or can, shall, or may hereafter have against any Estate Releasee by reason of any matter, cause or thing whatsoever based upon, arising out of, or in any way relating to the Debtors and/or the Chapter 11 Cases, be it a claim or cause of action at common law or pursuant to federal, state or any other law (collectively, the "**BP Released Matters**"); *provided, however*, that the foregoing does not release and shall not be construed to release any of the Debtors' or Committee's obligations under this Agreement.  BP acknowledges that it may, after the Execution Date, discover facts other than or different from those which it knows or believes to be true with respect to the Estate Releasees relating to the BP Released Matters. Notwithstanding any such discovery of facts, BP waives and fully, finally and forever settles and releases any known or unknown, suspected or unsuspected, contingent or noncontingent claim that accrued prior to the execution of this Agreement relating to the BP Released Matters whether or not concealed or hidden, without regard to the subsequent discovery or existence of such other facts. BP expressly waives and releases any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides:

> Section 1542. <u>Certain Claims Not Affected by General Release</u>. A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

For the avoidance of doubt, notwithstanding anything to the contrary in this Agreement, BP is not releasing, and nothing in this Agreement is intended or shall be construed to release: (i) Limetree Bay Energy, LLC, Limetree Bay Terminals, LLC, Limetree Bay Terminals Holdings, LLC, Limetree Bay Terminals Holdings II, LLC, Limetree Bay Cayman, Ltd., Limetree Bay Cayman II, Ltd., Limetree Bay Financing, LLC, Limetree Bay Ventures, LLC, the Committee, ArcLight Capital Partners, LLC, Freepoint Commodities LLC, or EIG Global Energy Partners, LLC, or any predecessors, successors, non-Debtor subsidiaries or affiliates, agents, insurers or assigns of any of the foregoing, or (ii) any claims, third-party claims, crossclaims, counterclaims, defenses or affirmative defenses that BP has asserted or could in the future assert against any non-Debtor parties arising in, arising in connection with, or relating in any way to any of the Class Actions.[1]

    10.    **Covenant Not to Sue**.

        a.    **Estate Releasees**. Upon the occurrence of the Effective Date, the Debtors, on behalf of themselves, their estates and the other Estate Releasees, hereby promises, covenants

---

[1] The term "**Class Actions**" shall refer herein to the following: *Cotton et al. v. Limetree Bay Ventures, LLC et al.*, Case No. 1:21-CV-00261-WAL (U.S.D.C., D.V.I.); *Shirley et al. v. Limetree Bay Ventures, LLC*, Case No. 1:21-CV-00259 (U.S.D.C., D.V.I.); *Charles et al. v. Limetree Bay Ventures, LLC, et al.*, Case No. 1:21-CV-00260 (U.S.D.C., D.V.I.); *Boynes, et al. v. Limetree Bay Ventures, LLC, et al.*, Case No. 1:21-CV-00253-WAL (U.S.D.C., D.V.I.); and any other action that may be filed against BP relating to alleged emissions from the Debtors' refinery located at Limetree Bay, St. Croix, U.S. Virgin Islands.

and agrees not to commence, initiate, file, institute, assert, aid, prosecute, encourage, support, induce, participate in or assist, directly or indirectly, any lawsuit, action, claim or other proceeding of any kind, at any time, against any BP Releasee, in any court or administrative proceeding, in any venue, based upon, arising out of, or relating in any way to the Estate Released Matters.

b.      **Committee**. Upon the occurrence of the Effective Date, the Committee hereby promises, covenants and agrees not to commence, initiate, file, institute, assert, aid, prosecute, encourage, support, induce, participate in or assist, directly or indirectly, any lawsuit, action, claim or other proceeding of any kind, at any time, against any BP Releasee, in any court or administrative proceeding, in any venue, based upon, arising out of, or relating in any way to the Estate Released Matters, including, without limitation, any claim or cause or action that could be brought or asserted by the Committee directly against any BP Releasee (a "**Direct Claim**") or derivatively on behalf of the Debtors' estates. The Committee represents and warrants that it is not aware of any potential Direct Claims and agrees that it is hereby estopped and enjoined from bringing or asserting any Direct Claims.

*provided, however,* that this Section 10 shall not prohibit, prevent, or otherwise preclude the Debtors or any of their successors in interest, including, without limitation, any trustee or post-confirmation trust, from taking any action to enforce this Agreement against BP.

11.      **Remedies**. The Parties agree that any failure on their part to take any action required of them under this Agreement would cause irreparable damage and that any monetary relief, even if available, would not be an adequate remedy. To the fullest extent permitted by law, the Parties acknowledge and agree that (i) the Parties shall be entitled to seek specific performance or other injunctive or equitable relief to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof, without proof of damages or otherwise, this being in addition to any other remedy to which they are entitled under this Agreement or at law or in equity, and (ii) such right of specific enforcement is an integral part of this Agreement. The Parties agree not to assert that a remedy of specific enforcement is unenforceable, invalid, contrary to law or inequitable for any reason, and not to assert that monetary damages would provide an adequate remedy or that the Parties otherwise have an adequate remedy at law.  The Parties acknowledge and agree that any party seeking an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement shall not be required to provide any bond or other security in connection with any such order or injunction.

12.      **Conditions to Effective Date**.  This Agreement shall become effective (such date, the "**Effective Date**") upon satisfaction of each of the following conditions:

a.      this Agreement shall have been duly executed by each of the Parties; and

b.      the Court's entry of the 9019 Order; and

c.      receipt by the Debtors' estates of the Settlement Amount.

13.      **Termination; Effect**. Any Party may terminate this Agreement, in its sole and absolute discretion, if the Effective Date has not occurred on or before December 31, 2021. If the Court declines to enter the 9019 Order, or this Agreement is terminated by a Party pursuant to this

Section 12, this Agreement shall be *void ab initio* and of no further force of effect, and the Parties shall be returned to their respective positions as if this Agreement were never in existence.

14.     **Access; Books and Records.**   The Debtors covenant and agree to provide BP with reasonable access, at reasonable times, to the Debtors' books, records and documents and employees in connection with the Class Actions until the earlier of (a) conclusion of BP's involvement with the Class Actions and (b) December 31, 2022. The Debtors further agree that if, prior to such date, the Debtors' assets are sold to one or more purchasers or control over such books and records is transferred to a plan administrator or chapter 7 or 11 trustee, the Debtors shall negotiate in good faith and use commercially reasonable efforts to ensure that BP shall continue to have reasonable access, at reasonable times, to the Debtors' books, records and documents for the duration of such period; *provided, however,* that BP acknowledges and agrees that (y) the Debtors' inability to provide access to books, records or documents no longer within their possession, custody or control shall not constitute a breach of this Agreement and, (z) if such access is afforded to BP, (i) access may be subject to or conditioned upon the payment or reimbursement of out-of-pocket costs and expenses associated therewith (excluding, for purposes hereof, any attorneys' fees incurred by such purchaser or custodian) and, (ii) if access is so conditioned, BP shall be solely responsible for the payment of any such costs and expenses.

15.     **Due Authorization; Binding Agreement; No Conflict**. Each of the Parties hereby represents and covenants to the other Parties as follows:

          a.     such Party has the power, authority and the legal right to execute, deliver and perform under this Agreement;

          b.     the person executing this Agreement on such Party's behalf has the full right and authority to enter into this Agreement on behalf of such Party and has the full right and authority to execute this Agreement and to fully bind such Party to the terms and conditions hereof;

          c.     this Agreement has been duly executed and delivered by such Party and constitutes a legal, valid and binding obligation of such Party, enforceable in accordance with its terms; and

          d.     such Party's execution and delivery of this Agreement, and the its performance of its obligations hereunder, have been duly authorized and do not and will not: (i) violate any provision of any law, rule, regulation, order, judgment, injunction, decree or determination applicable to such Party or the organizational documents of such Party, or (ii) result in a breach of or constitute a default under any agreement or instrument to which such Party may be bound or affected;

*provided, however*, that the Parties acknowledge and agree that the Debtors' foregoing representations and covenants in this Section 14 are subject to entry of the 9019 Order.

16.     **Notice**. Any notice or other written instrument required or permitted to be given pursuant to this Agreement shall be in writing signed by the Party giving notice and shall be sent by hand delivery, certified mail, return receipt requested or overnight courier to the other Parties at the address(es) set forth below:

If to the Debtors:

Limtree Bay Services, LLC, *et al.*c/o B. Riley Advisory Services
3500 Maple Avenue, Suite 420
Dallas, TX 75219
Attn:   Mark Shapiro
Email: mshapiro@brileyfin.com

> *with a copy to (which shall not constitute notice):*

Elizabeth A. Green
BAKER & HOSTETLER LLP
200 South Orange Avenue
Suite 2300
Orlando, FL 32801
Telephone:     (407)649-4000
Facsimile:     (407)841-0168
Email: egreen@bakerlaw.com

-and-

Jorian L. Rose
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone:     (212)589-4200
Facsimile:     (212)589-4201
Email: jrose@bakerlaw.com

If to the Committee:

Michael D. Warner
PACHULSKI STANG ZIEHL & JONES LLP
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone:     (713) 691-9385
Facsimile:     (713) 691-9407
Email: mwarner@pszjlaw.com

-and-

Jeffrey N. Pomerantz
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone:     (310) 277-6910
Facsimile:     (310) 201-0760

Email: jpomerantz@pszjlaw.com

If to BPPNA and/or any of its affiliates:

Matthew Swartz, Managing Counsel
30 S. Wacker Drive, Suite 700
Chicago, IL 60606
E-mail: Matthew.Swartz@bp.com
Telephone: (832) 619-4894

> *with a copy to (which shall not constitute notice):*

D. Tyler Nurnberg
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Suite 4200
Chicago, IL 60602-4231
Telephone: (312) 583 2300
Facsimile: (312) 583 2360
Email:  tyler.nurnberg@arnoldporter.com

> -and-

Rosa J. Evergreen
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Telephone: (202) 942 5000
Facsimile: (202) 942 5999
Email:  rosa.evergreen@arnoldporter.com

Notice may be provided to counsel for the Parties by electronic mail. Notices may also be provided to such other address or addresses subsequently provided in writing by a Party to the other Parties.

17. **Construction**.  The Parties participated jointly in the drafting and preparation of this Agreement.  Therefore, in any interpretation or construction of this Agreement, the Agreement shall not be construed for or against any Party on that basis. No ambiguity shall be construed against any Party based upon a claim that such Party drafted the language.

18. **Amendment**.  This Agreement may not be modified, amended, or otherwise altered except in writing executed and delivered by each of the Parties.

19. **Successors and Assigns**.  This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and assigns, including, without limitation, any chapter 11 or 7 trustee that may be appointed. None of the provisions in this Agreement are intended by the Parties, nor shall they be deemed, to confer any benefit on any individual or entity not a Party to this Agreement or a successor or assignee of a Party to this Agreement.

20. **Attorneys' Fees and Costs**. Each of the Parties shall bear its own costs and expenses in connection with this matter, including, without limitation, legal fees and expenses.

21. **Time of the Essence**. Time is of the essence for purposes of this Agreement. The Motion shall request that the Proposed Order be effective immediately upon its entry by the Court. Time periods shall be calculated in accordance with Bankruptcy Rule 9006.

22. **No Admission**. This Agreement is intended to be and is a settlement and compromise of a dispute between the Parties, and neither this Agreement, nor any acts or omissions related thereto, shall constitute an admission or disclaimer of the existence of liability of any kind (other than the liability created by this Agreement). The Parties agree that nothing in this Agreement shall constitute or be introduced, treated, deemed, or otherwise interpreted or construed as evidence in any judicial or arbitration proceedings except to enforce or defend the terms hereof.

23. **Entire Agreement**. This Agreement constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, understandings, representations and statements, oral or written, between the Parties on the subject matter hereof, which agreements shall be of no further force or effect. Each Part acknowledges that, in entering into this Agreement, such Party is not relying on any statements or representations made by the other Parties other than as expressly set forth herein.

24. **No Assignment**. Each of the Parties represents and warrants that such Party is the owner of the claims that it released in this Agreement, and has not assigned or otherwise transferred, pledged or hypothecated such claims or any portion thereof to any third party.

25. **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement, binding on the Parties. The Parties agree that facsimile or electronic copies of signatures shall be deemed original signatures for all purposes hereof.

26. **Headings.** Headings in this Agreement are for convenience only and do not constitute a part of this Agreement.

27. **Governing Law.** This Settlement shall be governed by, interpreted, construed, and enforced in accordance with the laws of the State of New York, without regard for that State's conflicts of law or choice of law principles.

28. **Jurisdiction**. This Court (or, upon withdrawal of this Court's reference, the United States District Court for the Southern District of Texas) shall retain jurisdiction and venue over this Agreement and the Parties for the duration of the performance of the terms and provisions of this Agreement and for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or interpretation of this Agreement or to effectuate or enforce compliance with its terms.

**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, each Party has executed this Agreement as of the Execution Date.

Limetree Bay Services, LLC

By: _____
    Name:  Mark Shapiro
    Title:  Chief Restructuring Officer

Limetree Bay Refining Holdings, LLC

By: _____
    Name:  Mark Shapiro
    Title:  Chief Restructuring Officer

Limetree Bay Refining Holdings II, LLC

By: _____
    Name:  Mark Shapiro
    Title:  Chief Restructuring Officer

Limetree Bay Refining, LLC

By: _____
    Name:  Mark Shapiro
    Title:  Chief Restructuring Officer

Limetree Bay Refining Marketing, LLC

By: _____
    Name:  Mark Shapiro
    Title:  Chief Restructuring Officer

Limetree Bay Refining Operating, LLC,

By: _____
    Name:  Mark Shapiro
    Title:  Chief Restructuring Officer

BP Products North America Inc.

By: _____

    Name:

    Title:   Vice President


Official Committee of Unsecured Creditors


By: _____

    Name:

    Title:

BP Products North America Inc.

By: _____

    Name:

    Title:

Official Committee of Unsecured Creditors

By: _____

    Name:

    Title: PAchulski Stang Ziehl + Jones
    Counsel for Creditors
    Committee

SETTLEMENT & RELEASE AGREEMENT (BP) 11-30-21

## **Schedule 1**

### **BP Agreements**

1. Amended & Restated Tolling Agreement, dated as of February 22, 2021, by and among Limetree Bay Refining, LLC, Limetree Bay Refining Marketing, LLC, and BP Products North America Inc., as amended, restated, amended and restated, modified or otherwise supplemented from time to time.

2. BP-LBRM Side Agreement, dated as of March 3, 2020, between BP Products North America Inc. and Limetree Bay Refining Marketing, LLC, as amended, restated, amended and restated, modified or otherwise supplemented from time to time.

3. Feedstock Supply Agreement, dated as of November 15, 2018, between BP Products North America Inc., and Limetree Bay Refining Marketing, LLC, as amended by that certain Amendment No. 1 to Feedstock Supply Agreement, dated as of February 22, 2021, and as further amended, restated, amended and restated, modified or otherwise supplemented from time to time.

4. Guaranty Agreement, dated as of November 15, 2018, by BP Corporation North America Inc. in favor of Limetree Bay Refining, LLC and Limetree Bay Refining Marketing, LLC, as amended, restated, amended and restated, modified or otherwise supplemented from time to time.

5. Product Offtake Agreement, dated as of November 15, 2018, between BP Products North America Inc., and Limetree Bay Refining Marketing, LLC, as amended by that certain First Amendment to Product Offtake Agreement, dated as of April 15, 2019, as further amended by that certain Second Amendment to Product Offtake Agreement, dated as of February 22, 2021, and as further amended, restated, amended and restated, modified or otherwise supplemented from time to time.

6. Reaffirmation Agreement, dated as of February 22, 2021, by and between Limetree Bay Refining, LLC, Limetree Bay Refining Marketing, LLC, BP Products North America Inc., as amended, restated, amended and restated, modified or otherwise supplemented from time to time.

7. Any and all other instruments or agreements between BP and one or more of the Debtors, as amended, restated, amended and restated, modified or otherwise supplemented from time to time.